249

FILED

MAR 1 3 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

DANIEL MAJOR EDSTROM
2690 BROWN BEAR COURT
COOL, CA 95614
TEL: 916/207-6706 | FAX: 888/552-2503
Plaintiff and Debtor-in-Possession

TERI ANNE EDSTROM
935 LINCOLN WAY #213
AUBURN CA, 95603
TEL: 916/207-4412
Plaintiff

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| In re DANIEL MAJOR EDSTROM,<br><br>    Debtor-in-possession. | CASE NO. 12-29353<br>CHAPTER 11<br>DC NO. DME-1<br>A.P. NO. 12-02546-B |
| DANIEL MAJOR EDSTROM, an individual, and TERI ANNE EDSTROM, an individual,<br>    Plaintiffs,<br><br>v.<br><br>NDEX WEST, LLC, a Delaware limited liability company, et al<br><br>    Defendants. | **DECLARATION OF DANIEL MAJOR EDSTROM IN SUPPORT OF PLAINTIFFS OPPOSITION TO DEFENDANT NDEX WEST, LLC's MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing:<br>Date: March 19, 2013<br>Time: 9:32 a.m.<br>Ctrm.: 32<br>Hon. Thomas C. Holman<br>501 I Street, 6th Floor, Sacramento, California 95814, Tel.: (916) 930-4473 |

I, DANIEL MAJOR EDSTROM, declare:

-1-

DECLARATION OF DANIEL EDSTROM

1.     I am a Plaintiff in the above-entitled action.  I have personal knowledge of the matters set forth herein. If called upon to testify as to these matters, I could and would competently testify to these matters.

2.     On or around 8/10/2004 Daniel Major Edstrom and Teri Anne Edstrom ("**Plaintiffs**" or "**Edstrom**") acquired the property at 2690 Brown Bear Court Cool, California 95614 ("**Subject Property**").

3.     On or around 8/10/2004 Edstrom became obligated on a residential mortgage loan in favor of Central Pacific Mortgage.

4.     On 8/31/2004 the Deed of Trust dated 8/10/2004 was assigned, sold, conveyed and delivered to New Century Mortgage Corporation, including "All right, title and interest in said Note and all rights accrued or to accrue under said Deed of Trust." The assignment was recorded as Document Number 2005-0020961-00 in Office of the Recorder for the County of El Dorado in California.

5.     A search of the El Dorado County Records shows that no other assignment of Deed of Trust has been recorded against the Edstrom Deed of Trust dated 8/10/2004.

6.     On or about 9/7/2005 Edstrom attempted consummation of a loan transaction. Attached as Exhibits 1 and 2 to this declaration are documents from the loan closing, specifically (among other things) the borrowers and lenders closing instructions.  Attached as Exhibit 3 to this declaration is a MERS disclosure. I was present at the attempted loan closing on 9/7/2005 and was actively involved in the attempted closing process. These documents were provided at the closing (Exhibits 1 and 3) or were mailed in by the title company in response to a request for the closing information (Exhibit 2).  The 9/7/2005 loan closing transaction has the following conditions precedent:

          a.     No exceptions for encumbrances exist for the 9/7/2005 Closing Instruments except for a new Note and Deed of Trust in Favor of Mortgage Lenders Network USA, Inc. No exception was listed for the encumbrance of Mortgage Electronic Registration Systems, Inc. ("**MERS**") on the Deed of

Trust.  The Deed of Trust states that MERS is the beneficiary and that "Borrower understands and agrees that MERS holds only legal title to the interests granted by the Borrower in this Security Instrument…"

    b.  No exception exists in the Borrowers closing instructions from the 9/7/2005 attempted closing for the encumbrance of New Century Mortgage Corporation.  The money used at closing was sent to Ocwen Loan Servicing, LLC.   In addition, a Substitution of Trustee and Full Reconveyance was subsequently recorded whereby Ocwen Loan Servicing LLC stated that they were the beneficiary of the Edstrom 8/10/2004 Deed of Trust (El Dorado County Recorder Document # 2004-0066954-00).  The Substitution of Trustee and Full Reconveyance dated 9/19/2005 and recorded as document # 2005-0087063-00 states that Ocwen Loan Servicing, LLC is the beneficiary.

    c.  The Lenders Closing Instructions to the 9/7/2005 attempted closing state on page 4: "Residential Funding Corporation has a security interest in any amounts advanced by it to fund this mortgage loan and in the mortgage loan funded with those amounts.  You must promptly return any amounts advanced by Residential Funding Corporation and not used to fund this mortgage loan.  You also must immediately return all amounts advanced by Residential Funding Corporation if this mortgage loan does not close and fund within 1 Business Day of your receipt of those funds."

7.  On 9/19/2005 Ocwen Loan Servicing, LLC executed a Substitution of Trustee and Full Reconveyance whereby they declared that they were the beneficiary of the 8/10/2004 Deed of Trust and substituted in Paul Neff as the trustee, who then allegedly reconveyed the Deed of Trust.

1    8.    No assignment exists as part of the record from New Century Mortgage
2  Corporation to Ocwen Loan Servicing, LLC in relation to the 8/10/2004 Deed of Trust. Ocwen
3  Loan Servicing, LLC is a stranger to the transaction.

4    9.    Because the Plaintiffs specific instructions to escrow were not followed, Plaintiffs
5  never gave written permission for the consummation of the loan.    The lenders closing
6  instructions for the 9/7/2005 loan contemplate the signing of documents before all of the
7  conditions are met. Further the lenders closing instructions state that the loan will not close until
8  all conditions are met. As of today the conditions listed above have not been met and the loan
9  has not closed.

10    10.    Edstrom did not find out that the New Century Mortgage Corporation had an
11  assignment for the 8/10/2004 loan until some point in 2011.  Edstrom did not start to fully
12  comprehend the disconnect between the 8/10/2004 assignment and the Substitution of Trustee
13  and Full Reconveyance until sometime very late in 2011.  At that point Edstrom began
14  investigating and researching the related issues.

15    11.    The named payee of the alleged Edstrom note dated 9/7/2005 is Mortgage
16  Lenders Network USA, Inc ("**MLN**"). However, MLN never provided any of their own capital
17  to fund the loan closing and the note describes a financial transaction that did not occur.

18    12.    The Plaintiffs signatures on the note and Deed of Trust are forgeries.

19    13.    Late in December 2008 I received two letters from NDeX West, LLC ("NDeX")
20  stating that the creditor to whom the debt is owed "US BANK NATIONAL ASSOCIATION AS
21  TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING
22  CORPORATION ATTORNEY IN FACT" ("**Lender**").  Exhibit 4 is a true and correct copy of
23  the letter mailed to me, while Exhibit 5 is a true and correct copy of the letter mailed to my
24  spouse, Teri Edstrom. The representation from these letters was that the creditor and beneficiary
25  was Lender.

26    14.    Because of the absurd nature of the naming of Lender, I sent a letter to NDeX
27  West, LLC disputing the validity of the debt on 1/8/2009 (together with my spouse). This letter is

28

-4-

1   attached as Exhibit "6" to this declaration. Additionally I ordered NDeX West, LLC to Cease

2   and Desist from numerous actions. NDeX West, LLC never provided a verification of debt or

3   otherwise responded to me or my wife.

4          15.    I sent a letter to NDeX objecting to the Notice of Default on 3/16/2009 (together

5   with my spouse). Attached is Exhibit "7" to this declaration. NDeX remained silent and never

6   responded.

7          16.    Plaintiff is fully aware that an obligation arose as a result of the money funded at

8   the non-closing escrow. However, there is no valid party to which that debt obligation is owed

9   that has made a valid claim. Plaintiff Edstrom has voluntarily filed for bankruptcy in the Eastern

10   District of California Sacramento Division case # 12-29353-B-11 (filed on 5/15/2012) ("Edstrom

11   Bankruptcy").

12          17.    I have no obligation, lien, default or other duty to NDeX West, LLC or to their

13   putative beneficiary, who they now claim is US Bank, National Association as Trustee. NDeX

14   West, LLC is not the "limited signing agent" nor are they a substituted trustee.

15          18.    On or about February 25, 2012 I received NDeX's response to discovery I

16   propounded on them. Attached as Exhibit 8 is a true and correct copy of NDeX's response to my

17   Request for Admissions ("**Admissions**"). Attached as Exhibit 9 is a true and correct copy of

18   NDeX's response to my Request for Interrogatories ("**Interrogatories**"). Attached as Exhibit 10

19   is a true and correct copy of NDeX's response to my Request for Production of Documents

20   ("**Documents**"). Attached as Exhibit 11 are the relevant documents produced including their

21   original bates stamped numbers (the numbers were put in place by NDeX before my receipt of

22   the documents) ("Relevant Documents").

23          19.    Relevant Documents bates stamped as number 1001 and number 1002 show that

24   NDeX was instructed "Do not initiate Foreclosure in the name of MERS, Fannie Mae or Freddie

25   Mac." And "If title comes up in the name of MERS and you have Power of Attorney to sign on

26   behalf of MERS, please prepare, execute and record the assignment from MERS to Wells Fargo

27   Bank, N.A. dba Americas Servicing Company and forward a copy fo the executed assignment

28

DECLARATION OF DANIEL EDSTROM

1  via VendorScape to the 'Assignment Issues' processor." There is no indication who this

2  communication was sent to and who it came from. There is no declaration of default and

3  demand for sale to be found in any of the documents produced by NDeX, whether included here

4  in the Relevant Documents or not.

5

6      I declare under penalty of perjury under the laws of the State of California that the

7  foregoing statements are true and correct. Executed this 13th day of March 2013, at Auburn,

8  California, County of Placer.

9

10

11
                                       /s/ Daniel Edstrom
                                       DANIEL EDSTROM, declarant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-6-

DECLARATION OF DANIEL EDSTROM

1

# EXHIBIT 1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DANIEL EDSTROM

*RETURN ALL CLOSING DOCUMENTS TO THE ADDRESS BELOW:*

## LOAN CLOSING INSTRUCTIONS

**MORTGAGE LENDERS NETWORK USA, INC.**

Attn; Funding Dept
Madison Square II
5343 North 16th Street Suite 240
Phoenix AZ 85016

Funder: Angela Plaehn

**PHONE:** 602-274-5500   **FAX:** 602-274-2624

| | | |
|---|---|---|
| **Closing Agent:** | FIDELITY NATIONAL TITLE COMPANY OF CALIFORNIA | 9/7/2005 |
| **Address:** | 785 Orchard Drive, Suite 100 | |

**City, State, Zip:** Folsom, CA 95630

| | | | |
|---|---|---|---|
| **Phone:** | 916-984-5950 | **Fax:** | 916-984-3094 |

**Client Firm:** First Priority Financial Inc.

**Contact:** BRENT STAGG

| | | | |
|---|---|---|---|
| **Address:** | 9490 Madison Ave #2   Orangevale, CA 95662 | | |
| **Phone:** | 916-989-5626 | **Fax:** | 916-989-5636 |
| **Processor:** | Doug Monroe   Phone: 602-274-5500 | **Fax:** | 602-274-2624 |
| **Borrower:** | DANIEL MAJOR EDSTROM | | |
| **Borrower:** | TERI ANNE EDSTROM | | |
| **Borrower:** | | | |
| **Borrower:** | | | |

**Property Address:** 2690 BROWN BEAR COURT

**City, State, Zip:** COOL, CA 95614

| | | | |
|---|---|---|---|
| **Loan Number:** 4040021649 | **Closing Date:** 9/7/2005 | **Type of Loan:** Conv 1st O/O Full Doc | |
| **Term:** 360 | **Interest Rate:** 7.2000 | **Prepayment Penalty:** Y | / 1 |
| **Mortgage Amount:** 500,000.00 | **P & I:** 3,393.95 | **Lien** First | |
| **ARM Index:** 4.0613 | **Caps:** 3 1 6 | **Margin:** 6.00000 | |

**Please prepare, Execute and/or Collect the following items below and return with package:**

**All closing conditions must be resolved prior to disbursement of funds. "See Below"**

( X )   Must obtain a legible copy of a Photo ID for each Borrower(s). In the event that a Photo ID is not available or not permitted by law, a loan closing affidavit must be completed by the closing agent.

( X )   All funds brought to closing by Borrower must be in the form of certified checks, copy to be returned to Lender with closing package.

4040021649

## GENERAL INSTRUCTIONS
### Requirements for Execution of Documents

1. The loan documents will not be valid if signed by borrower(s) on any date after the loan document date.
   **Item # 1 does not apply to dry fundings. Please see page 4 for signing instructions.**

2. **No changes may be made to any loan document without Lender approval.**
3. With Lender approval, all corrections and amendments to documents must by initialed by all borrowers.
4. Borrower(s) must sign all documents in ink (where applicable).

5. Ensure all areas of documents that require a notary and witnesses are properly notarized and witnessed.
6. Borrower(s)/Mortgagor(s) must sign exactly as their name(s) appear on the documents.
   a. If the Borrower(s)/Mortgagor(s) signatures vary from the printed documents, the enclosed Signature Name Affidavit must be signed with each variation.
   b. Names as listed on the Mortgage/Deed of Trust and Riders must appear exactly as listed on Title to the property. PURCHASES: Mortgage/Deed of Trust must appear as Title will be taken.
7. For electronically transmitted closing documents (fax, Digidocs, etc.); closing agent/title company is responsible for verifying all closing documents have been received.

### Requirements for Funding Loans

1. See HUD1/HUD1A for distribution of all loan proceeds.
2. Lender has provided you with a HUD for informational purposes. **No changes can be made to any figures without the Lender's permission.** These changes may affect the APR and/or Section 32 calculations. If this occurs, Lender will provide you with an updated Truth-In-Lending Disclosure and Section 32 Disclosure, if applicable.
3. Review the Net Funding Display form for the correct wire amount.
4. **Lender should be in receipt of all closing documents within 24 hours of signing.**
5. If the customer rescinds or cancels, the closing agent must contact the region office immediately by telephone, and fax the signed original Notice of Right to cancel to **602-274-2624** If the closing is rescheduled, the closing agent must return the closing package to Lender. Lender will provide a new closing package to the closing agent with the revised closing information.


Please fully complete the Tax Information Detail Form for escrowed and non-escrowed loans and return to Lender with the closing package (Name and address of Taxing Authority is required).


1. Lender must be in receipt of a marked up Title Commitment insuring its successors and assigns ATIMA in the amount of $ __500,000.00__ and in __1__ lien position.
2. All liens, judgements and past due taxes must be cleared.
   a. Exceptions to real estate taxes can only be listed as "not yet due and payable".
   b. Exceptions to matters which would be shown by an accurate survey or physical inspection of the premises are not acceptable.
   c. Exceptions to mechanics liens are not acceptable.
3. Borrower(s)/Mortgagor(s) name(s) must appear on all documents exactly as it will appear on final Title. In states where spouse must sign to waive homestead, and/or community property rights, spouse must sign Mortgage/Deed of Trust, Riders to the Mortgage, Notice of Right to Cancel, Truth-In-Lending, HUD1/HUD1A, and Section 32 if applicable, or other documents required to give Lender priority over any homestead, dower and/or community property rights afforded by law.
4. Title Commitment issue date cannot be greater than 60 days from funding. If date of issuance or search date is greater than 60 days from funding, GAP language must be provided.
5. Provide a copy of any and all Warranty Deeds, Quit Claim Deeds or additional recordable instruments to document title at closing.
6. Final Alta Policy is required within 60 days of closing. Lender will not accept "short form" policies. The final Alta endorsements on this loan is/are as follows:

| Endorsement | | Coverage |
|---|---|---|
| ☐ | * ALTA 4 | Condominiums/Endorsements |
| ☒ | * ALTA 5 | PUD's |
| ☒ | * ALTA 6, 6.1 | ARM's |
| ☐ | * ALTA 7 | Manufactured Housing |
| | | (see Closing Instructions for manufactured homes) |
| (*) ☒ | ALTA 8.1 | EPA- ALL LOANS |
| ☐ | * Form 9 | Florida loans |
| | Balloon Endorsements | Balloon Loans |
| ☒ | Endorsements 100 | Restrictions, covenants, and setback lines (CA) |
| ☐ | T42/T42.1 | Texas Home Equity Endorsements |
| (+) ☒ | Secondary Marketing Endorsements | All Loans |

If the ALTA form is not provided, a like endorsement must be provided with final Title Policy.
If not provided, provide an equivalent Endorsement that insures lender against any loss due to restrictions, encroachments, minerals and if 2(a)(above) is not met, real estate taxes.

LNCLOSA2  6/05 dga                                                          **Page 2 of 4**

4040021649

1. Schedule A or legal description must be included and/or attached to the certified copy of the Deed.
2. Final Title Policy and the original recorded instruments or a town/county sealed True & Certified copy of the recorded instruments must be sent to the <u>Lender</u> c/o Secondary Marketing Operations Department, 213 Court Street, Middletown, CT 06457.

## CLOSING DOCUMENTS

Please have the Borrower execute the documents checked below and immediately following execution, deliver Borrower's copies of loan documents to Borrower(s) and overnight **original** loan documents to:

**MORTGAGE LENDERS NETWORK USA, INC.**
**Madison Square II**
**5343 North 16th Street Suite 240**
**Phoenix AZ 85016**
**Attn: Funding Dept**

(X) Addendum to Closing Instructions
( ) Closing Instructions for Manufactured Homes
( ) Limited Power of Attorney - Manufactured Homes
(X) Closing Agent Instructions for Automatic Payment
(X) Authorization Form for Automatic Payment
( ) Rate Lock Agreement
(X) Application (To be signed and initialed on each page)
(X) Deed of Trust/Security Deed/Mortgage
    (1 True Certified Copy, Notarized)
( ) Home Equity Line of Credit Agreement/Note
    (Properly Executed, Original & 1 Copy)
( ) Balloon Rider (1 True Certified Copy)
( ) Condominium Rider (1 True Certified Copy)
(X) PUD Rider (1 True Certified Copy)
(X) Adjustable Rate Rider (1 True Certified Copy)
( ) Second Home Rider (1 True Certified Copy)
( ) Manufactured / Mobile Home Rider
    (1 True Certified Copy)
( ) 1-4 Family Rider (1 True Certified Copy)
(X) Note (Properly Executed, Original & 1 Copy)
( ) Balloon Note Addendum (Properly Executed,
    Original & 1 Copy)
(X) Prepayment Note Addendum (Properly Executed,
    Original & 1 Copy)
(X) Truth-in-Lending (Original)
(X) Itemization of Amount Financed
( ) Payment Reduction Note Addendum (Properly
    Executed,Original & 1 Copy)
(X) HUD1/HUD1A & HUD Addendum (Original)
( ) Mortgage Loan Origination Agreement
(X) Original Notice of Right to Cancel (**2 Originals to**
    **each Signee, 1 Original to Lender**)
(X) Title Affidavit (Notarized)
(X) Compliance Agreement
(X) Borrower's Authorization to Release Information
(X) Affidavit of Occupancy (Notarized)
(X) W-9 Form(s)
(X) Signature/Name Affidavit (Notarized)
( ) Second Mortgage Notice
(X) Address & Telephone Verification
( ) Government Monitoring Information Form

(X) 4506 IRS Tax Authorization Form
(X) Initial Escrow Disclosure Statement
(X) Tax Authorization Form (Multi or State Specific)
(X) Tax Information Detail Form
(X) Homeowners Insurance Verification and Authorization
( ) PMI Disclosures
( ) Kansas Loan Selection Agreement (non-UCCC)
( ) Kansas Loan Selection Agreement (UCCC)
(X) Loan Closing Identification Affidavit
(X) Acknowledgement of Certain Pre-Disclosures
( ) Waiver of Marital Rights
( ) Request for Insurance Application (Borr1)
( ) Request for Insurance Application (Borr2)
( ) Option for Life Insurance Notice (Borr1)
( ) Option for Life Insurance Notice (Borr2)
( ) AI Arbitration Disclosure and Agreement
( ) Section 32 Disclosures
( ) State Specific Documents When Applicable
( ) _____
( ) _____
( ) _____

### PRE-DISCLOSURE DOCUMENTS

( ) HUD Settlement Booklet
(X) CHARM Booklet
( ) HELOC Booklet
(X) Good Faith Estimate of Settlement Charges
(X) Provider of Service Addendum
(X) RESPA Servicing Disclosure
( ) Home Equity Line of Credit Initial Disclosure
( ) Initial Truth-in-Lending Disclosure Statement
( ) Itemization of Amount Financed
( ) Section 32 Disclosure
(X) Variable Rate Disclosure
( ) PMI Disclosures
( ) Notice to Applicants Regarding Tax Deductibility
    Disclosure
(X) Appraisal Disclosure
( ) State Specific Documents When Applicable

Residential Funding Corporation has a security interest in any amounts advanced by it to fund this mortgage loan and in the mortgage loan funded with those amounts. You must promptly return any amounts advanced by Residential Funding Corporation and not used to fund this mortgage loan. You also must immediately return all amounts advanced by Residential Funding Corporation if this mortgage loan does not close and fund within 1 Business Day of your receipt of those funds.

**Closing Agent/Attorney acknowledges the foregoing instructions and understands that failure to properly follow set of instructions may result in legal recourse by MORTGAGE LENDERS NETWORK USA, INC.**

_____          _____
Date                                               Date

4040021649

## ADDENDUM TO LOAN CLOSING INSTRUCTIONS

**NOTICE: THE DOCUMENTS THAT WERE SENT TO YOU ALONG WITH THESE CLOSING INSTRUCTIONS EXPIRE 5 BUSINESS DAYS AFTER THE NOTE DATE. PLEASE OBTAIN NEW CLOSING DOCUMENTS FROM THE LENDER IF THE BORROWERS HAVE NOT SIGNED WITHIN 5 BUSINESS DAYS OF THE NOTE DATE.**

**THE LOAN MUST FUND WITHIN 9 BUSINESS DAYS OF THE SIGNING DATE, OR THIS TRANSACTION WILL BE CANCELLED.**

The following conditions may be outstanding on the signing date. However, this loan cannot fund until all of these conditions are satisfied.

TAXES REQUIRED TO BE PAID & IMPOUNDED AT CLOSE

WRITTEN MORTGAGE PAYOFF; AM REVIEW

ITEM #10 REMOVED FROM FINAL TITLE POLICY

ALL CHARGE OFFS PAST 2 YEARS MUST BE PAID BELOW $2500 TOTAL

DOCS/STIPS MUST RETURN TO MLN 24 HOURS OF SIGNING

FAX HUD TO FUNDER FOR APPROVAL PRIOR TO SIGNING

_____    _____
Borrower                                               Date

_____    _____
Co-Borrower                                          Date

Closing Agent/Attorney acknowledges the foregoing instructions and understands that failure to properly follow set of instructions may result in legal recourse by **MORTGAGE LENDERS NETWORK USA, INC.**

_____    _____
                        Date                                               Date

LNADD  12/02                              Page 4 of 4

# Fidelity National Title Company

785 Orchard Drive, Suite 100, Folsom, CA  95630
916-984-5950 • FAX 916-984-3094

## BORROWER'S ESCROW INSTRUCTIONS

Date:  September 7, 2005
Escrow No.:  05-**4008203**-LC
Locate No.:  CAFNT0909-0934-0002-0000321335
Escrow Officer:  LaVette Cozzitorto

I/We hand you herewith:
- Executed loan documents (new loan)
- Balance of funds to close escrow in the form of wire transfer, certified check, cashier's check or teller's check payable to Fidelity National Title Company pursuant to the "Deposit of Funds," Paragraph 1 contained in the General Provisions attached hereto and made a part hereof
- Approved copy of Preliminary Report

You are authorized to deliver and/or record the above and close in accordance with the estimated closing statement contained herein (subject to adjustment);

and when you can procure/issue a **06-ALTA Loan w/Form 1 - 1992** coverage form Policy of Title Insurance from **Fidelity National Title Insurance Company** with a liability of **$500,000.00** on the property described in your Preliminary Report No. 4008203, dated August 16, 2005, a copy of which I/we have read and hereby approve.

SHOWING TITLE VESTED IN:
Daniel Major Edstrom and Teri Anne Edstrom, husband and wife as joint tenants

FREE FROM ENCUMBRANCES EXCEPT:
1.  Current general and special taxes for the fiscal year in which this escrow closes, and taxes for the ensuing year, if any, a lien not yet due and payable;
2.  The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California;
3.  Bonds and Assessments with no delinquent payments, if any;
4.  Covenants, conditions, restrictions, reservations, easements and rights of way now of record, if any;
5.  Exceptions numbered 1,3-9 inclusive as shown in your preliminary report above-referenced.
6.  A First Deed of Trust, to record, securing a note for $500,000.00 in favor of Mortgage Lenders Network USA, Inc..

BORROWER STATES THAT PROPERTY ADDRESS IS:
**2690 Brown Bear Court, Cool, CA  95614**

ADDITIONAL INSTRUCTIONS:
1.  The items indicated by "P.O.C." or "PAID" or "*" are included at the direction of the Lender for disclosure purposes only.  The Escrow Holder/Settlement Agent has no knowledge of these expenditures, except as provided by the Lender.  They have not and cannot be verified as to the amount, the payee, nor actual payment and no liability is assumed by the closing agent as to the validity and/or sufficiency thereof.

2.  Borrower is aware the new loan may be funded at least one day prior to the date of recordation of documents and close of escrow and that interest will commence on said loan as of the date of funding.  Should escrow close after a weekend or holiday, Borrower is aware that interest will be charged during such weekend or holiday and Borrower agrees to bear the cost of said interest and will hold Escrow Holder harmless in connection therewith.

3.  Borrower agrees to provide new hazard insurance policy acceptable to lender and to authorize payment of premium through escrow unless a paid receipt is provided to escrow.

4.  The undersigned hereby authorize and instruct Escrow Holder to charge each party to the escrow for their respective Federal Express, special mail handling/courier and/or incoming/outgoing wire transfer fees.  Unless specified in writing by the undersigned, Escrow Holder is authorized to select special mail/delivery or courier service to be used.

5.  Borrower is aware that interest on the existing loan(s) does not stop accruing at close of escrow, but continues until the actual day of receipt of the payoff by Lender.

Borrower is aware that interest will accrue through weekends or holidays.

Initials:  _____

# EXHIBIT 2

DECLARATION OF DANIEL EDSTROM



US POSTAGE
PITNEY BOWES
$ 000.450
02 1P
0003152113    OCT 10 2012
MAILED FROM ZIP CODE 95825

**Fidelity National Title**
2410 Fair Oaks Blvd., Suite 110
Sacramento, CA 95825

956143241G H002



## Fidelity National Title Company

2410 Fair Oaks Blvd., Suite 110
Sacramento, CA 95825

Mr. and Mrs. Daniel Major Edstrom
2690 Brown Bear Court
Cool, CA 95614

DATE:  October 9, 2012
ESCROW NO.:  05-**4008203**-LC
LOCATE NO.:  CAFNT0909-0934-0002-0000321335
TITLE NO.:  05-**321335**-KD
PROPERTY ADDRESS:
2690 Brown Bear Court, Cool, CA  95614

Dear Mr. and Mrs. Edstrom:

Per your request in connection with the above-mentioned property, enclosed please find the following:

Copy of Borrowers escrow instructions
Final Hud-1

We appreciate the opportunity of being of service to you. If we can be of further assistance, please feel free to call upon us.

Sincerely,

Debbie Welch

enclosure(s)

Miscellaneous Transmittal Letter (misctran)(07-08)

Print Date: September 15, 2005 10:16 AM · ·

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | B. TYPE OF LOAN | | | | | OMB No. 2502-0265 |
|---|---|---|---|---|---|---|

SETTLEMENT STATEMENT

1. [   ] FHA    2. [   ] FmHA    3. [ X ] Conv. Unins
4. [   ] VA    5. [   ] Conv. Ins

**Fidelity National Title Company**

6. **ESCROW NUMBER:**    7. **LOAN NUMBER:**
05-**4008203**-LC    4040021649

8. MORTGAGE INSURANCE CASE NUMBER:

NOTE: THIS FORM IS FURNISHED TO GIVE YOU A STATEMENT OF THE ACTUAL SETTLEMENT COSTS. AMOUNTS PAID TO AND BY THE SETTLEMENT AGENT ARE SHOWN. ITEMS MARKED "(P.O.C.)" WERE PAID OUTSIDE OF THE CLOSING; THEY ARE SHOWN HERE FOR INFORMATIONAL PURPOSES AND ARE NOT INCLUDED IN THE TOTALS.

| D. NAME & ADDRESS OF BORROWER: | E. NAME & ADDRESS OF SELLER: | F. NAME & ADDRESS OF LENDER: |
|---|---|---|
| Daniel Major Edstrom  and Teri Anne Edstrom<br>2690 Brown Bear Court<br>Cool, CA 95614 | | Mortgage Lenders Network USA, Inc.<br>5343 North 16th Street, Suite 240<br>Phoenix, AZ 85016 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 2690 Brown Bear Court | Fidelity National Title Company | |
| Cool, California  95614 | PLACE OF SETTLEMENT: | September 14, 2005 |
| | 785 Orchard Drive, Suite 100 | |
| | Folsom, CA  95630 | |

| J. SUMMARY OF BORROWER'S TRANSACTIONS | | K. SUMMARY OF SELLER'S TRANSACTIONS | |
|---|---|---|---|
| 100.  GROSS AMOUNT DUE FROM BORROWER | | 400.  GROSS AMOUNT DUE TO SELLER | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 31,503.84 | 403. | |
| 104. Payoff to Ocwen Loan Servicing, LLC | 329,595.08 | 404. | |
| 105. | | 405. | |
| Adjustments: Items Paid by Seller in Advance | | Adjustments: Items Paid by Seller in Advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | ' |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 117. | | 417. | |
| 118. | | 418. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 361,098.92 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 500,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Adjustments: Items Unpaid by Seller | | Adjustments: Items Unpaid by Seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220.  Total Paid By/For Borrower | 500,000.00 | 520.  Total Reductions in Amount Due Seller | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER | | 600. CASH AT SETTLEMENT TO/FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 361,098.92 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 500,000.00 | 602. Less reduction in amount due seller (line 520) | |
| 303. CASH ( FROM) (XX TO) BORROWER | 138,901.08 | 603. CASH ( TO) ( FROM) SELLER | |

| L. SETTLEMENT CHARGES | Escrow: 05-4008203-LC Locate: CAFNT0909-0934-0002-0000321335 | | |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION = $0.00 | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
| Division of Commission (line 700) as follows: | | | |
| 701. | | | |
| 702. | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | |
| 801. Loan Origination Fee | | | |
| 802. Loan Discount | | | |
| 803. Appraisal Fee to Richard L. Wessing | | 400.00 | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee | | | |
| 807. Yield Spread Premium $7,500.00 POC $7500 paid by lender POC to First Priority Financial | | | |
| 808. Underwriting Fee to Mortgage Lenders Network USA, Inc. | | 549.00 | |
| 809. Broker Processing Fee to First Priority Financial | | 350.00 | |
| 810. Broker Admin Fee to First Priority Financial | | 495.00 | |
| 811. Doc Prep Fee to Mortgage Lenders Network USA, Inc. | | 250.00 | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest @ $98.63 per day fr 9/14/2005 to 10/1/2005 to Mortgage Lenders Network USA, Inc. | | 1,676.71 | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium $1208.00 POC to Mortgage Lenders Network USA, Inc. | | | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | |
| 1001. Hazard Insurance 4 months @ $100.67 per month to Mortgage Lenders Network USA, Inc. | | 402.68 | |
| 1002. Mortgage Insurance     months @ $     per month | | | |
| 1003. City property taxes     months @ $     per month | | | |
| 1004. County property taxes 10 months @ $140.30 per month to Mortgage Lenders Network USA, Inc. | | 1,403.00 | |
| 1005. Annual assessments     months @ $     per month | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. Aggregate Adjustment | | -722.92 | |
| 1100. ESCROW AND TITLE CHARGES | | | |
| 1101. Settlement or Closing Fee to Fidelity National Title | | 300.00 | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title insurance binder | | | |
| 1105. Document preparation to Fidelity National Title | | 50.00 | |
| 1106. Notary fees | | | |
| 1107. Endorsement Fee(s) | | 25.00 | |
| 1108. Title Insurance  Fidelity National Title Insurance Company | | 1,186.50 | |
| | | | |
| 1109. Lender's coverage - 06-ALTA Loan w/Form 1 - 1992 for $500,000.00; $1,186.50 | | | |
| 1110. Owner's coverage | | | |
| 1111. Overnight Delivery Fee | | 31.50 | |
| 1112. | | | |
| 1113. | | | |
| 1114. | | | |
| 1115. | | | |
| 1116. | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording Fees: Deed $0.00   Mortgage $75.00   Release $0.00 | | 75.00 | |
| 1202. City/county tax/stamps: $0.00   Mortgage $ | | | |
| 1203. State tax/stamps: Deed $   Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. defaulted taxes 2005-2006 due by 9/30/05 073-141-03-100 to El Dorado County Tax Collector | | 1,952.65 | |
| 1304. consumer debt to CITI CARDS CBSDNA | | 12,147.00 | |
| 1305. consumer debt to FIRST USA BANK | | 5,116.00 | |
| 1306. consumer debt to RSHK/CBUSA | | 2,289.00 | |
| 1307. consumer debt to SHELL/CITI | | 1,240.00 | |
| 1308. supplementals 2005-2006 073-141-03-100 to El Dorado County Tax Collector | | 1,080.38 | |
| 1309. homeowners insurance to State Farm Insurance | | 1,107.34 | |
| 1310. notary services to Laura Capparelli | | 100.00 | |
| 1311. | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K) | | 31,503.84 | |

Print Date:  September 15, 2005 10:16 AM
Escrow No.:  05-**4008203**-LC
Locate No.:  CAFNT0909-0934-0002-0000321335
Settlement Agent:  Fidelity National Title Company

Page 3

## ATTACHMENT TO RESPA

|  | BUYER | SELLER |
|---|---|---|
| **Payoff charges for Ocwen Loan Servicing, LLC** |  |  |
| Principal Balance | 325,689.91 |  |
| Interest to 09/14/2005 | 3,631.67 |  |
| Interest on Principal Balance at $82.50 per day from 9/14/2005 thru 9/16/2005 | 247.50 |  |
| satisfaction cost | 26.00 |  |
| **Subtotal** | **329,595.08** |  |

**FROM LINE 807 - Mortgage Lenders Network USA, Inc.**
The Lender is paying a Yield Spread Premium in the amount of
$7,500.00, Interest at 0.00%, 0.00 points to First Priority
Financial, through this Escrow.

# Fidelity National Title Company

785 Orchard Drive, Suite 100, Folsom, CA 95630
916-984-5950 • FAX 916-984-3094

## BORROWER'S ESCROW INSTRUCTIONS

Date:  September 7, 2005
Escrow No.:  05-**4008203**-LC
Locate No.:  CAFNT0909-0934-0002-0000321335
Escrow Officer:  LaVette Cozzitorto

I/We hand you herewith:
- Executed loan documents (new loan)
- Balance of funds to close escrow in the form of wire transfer, certified check, cashier's check or teller's check payable to Fidelity National Title Company pursuant to the "Deposit of Funds," Paragraph 1 contained in the General Provisions attached hereto and made a part hereof
- Approved copy of Preliminary Report

You are authorized to deliver and/or record the above and close in accordance with the estimated closing statement contained herein (subject to adjustment);

and when you can procure/issue a **06-ALTA Loan w/Form 1 - 1992** coverage form Policy of Title Insurance from **Fidelity National Title Insurance Company** with a liability of **$500,000.00** on the property described in your Preliminary Report No. 4008203, dated August 16, 2005, a copy of which I/we have read and hereby approve.

SHOWING TITLE VESTED IN:
Daniel Major Edstrom and Teri Anne Edstrom, husband and wife as joint tenants

FREE FROM ENCUMBRANCES EXCEPT:
1.  Current general and special taxes for the fiscal year in which this escrow closes, and taxes for the ensuing year, if any, a lien not yet due and payable;
2.  The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California;
3.  Bonds and Assessments with no delinquent payments, if any;
4.  Covenants, conditions, restrictions, reservations, easements and rights of way now of record, if any;
5.  Exceptions numbered 1,3-9 inclusive as shown in your preliminary report above-referenced.
6.  A First Deed of Trust, to record, securing a note for $500,000.00 in favor of Mortgage Lenders Network USA, Inc..

BORROWER STATES THAT PROPERTY ADDRESS IS:
**2690 Brown Bear Court, Cool, CA 95614**

ADDITIONAL INSTRUCTIONS:
1.  The items indicated by "P.O.C." or "PAID" or "*" are included at the direction of the Lender for disclosure purposes only.  The Escrow Holder/Settlement Agent has no knowledge of these expenditures, except as provided by the Lender.  They have not and cannot be verified as to the amount, the payee, nor actual payment and no liability is assumed by the closing agent as to the validity and/or sufficiency thereof.

2.  Borrower is aware the new loan may be funded at least one day prior to the date of recordation of documents and close of escrow and that interest will commence on said loan as of the date of funding. Should escrow close after a weekend or holiday, Borrower is aware that interest will be charged during such weekend or holiday and Borrower agrees to bear the cost of said interest and will hold Escrow Holder harmless in connection therewith.

3.  Borrower agrees to provide new hazard insurance policy acceptable to lender and to authorize payment of premium through escrow unless a paid receipt is provided to escrow.

4.  The undersigned hereby authorize and instruct Escrow Holder to charge each party to the escrow for their respective Federal Express, special mail handling/courier and/or incoming/outgoing wire transfer fees. Unless specified in writing by the undersigned, Escrow Holder is authorized to select special mail/delivery or courier service to be used.

5.  Borrower is aware that interest on the existing loan(s) does not stop accruing at close of escrow, but continues until the actual day of receipt of the payoff by Lender.

Borrower is aware that interest will accrue through weekends or holidays.

Initials: _DE_  _JE_

Borrower is aware he/she/they are responsible for payment of all of such interest and will indemnify and hold Escrow Holder harmless in connection with the payment of such interest.

6.  **CHECKS TO BE ISSUED AT CLOSE OF ESCROW:**  I/We the undersigned buyer/borrower/seller hereby acknowledge that we are aware that Fidelity National Title Company will issue a check payable to the undersigned in payment of seller's proceeds/borrower's proceeds or buyer's excess deposit refund.  I/We further acknowledge and agree that said check will be presented to the bank for deposit as soon as possible after receipt, and collection and payment of the funds will only be done through the regular banking channels.

7.  **DEMANDS NOT IN:**  Borrower hereby acknowledges that Fidelity National Title Company has not received, as of this date, a written demand from Ocwen indicating the amounts necessary to pay the loan of said lender in full.  The figures shown in the Borrower's Estimated Closing Statement are approximate predicated on amounts provided by the Borrower or on amounts provided verbally by the Lender.  You are hereby authorized and instructed to pay said lender's demand based on their written statement, including but not limited to, the principal balance, interest, prepayment penalties, impound deficiencies and any other fees required by said lender without further approval from the undersigned.  We hereby acknowledge that the figures shown herein as the approximate amounts due to said lender are subject to change pursuant to the written demand of the lender and you are authorized to adjust our net proceeds accordingly.

8.  **DOCS SIGNED IN COUNTERPART:**  These instructions/documents are executed in counterpart to facilitate this transaction each of which so executed shall, irrespective of the date of its execution and delivery, be deemed an original, and these counterparts together constitute one and the same instrument.

9.  **FACSIMILE SIGNATURE:**  Escrow Holder is hereby authorized and instructed that, in the event any party utilizes "facsimile" transmitted signed documents or instructions to Escrow Holder, you are to rely on the same for all escrow instruction purposes and the closing of escrow as if they bore original signatures.  Each party shall provide to the other party and to Escrow Holder, within 72 hours after transmission, duplicate original documents or instructions bearing the original signatures.  Not withstanding the foregoing, any and all escrow instructions pertaining to the release or disbursement of funds from escrow prior to close of escrow shall not be effective until Escrow Holder has received such instructions from all parties bearing original signatures.  Each party further acknowledges and agrees that documents with non-original signatures may not be accepted for recording by the County Recorder, therefore no closing or recording may take place without the submission of the original documents.

10.  **GOOD FUNDS-DISBURSE WHEN AVAILABLE:**  Borrower authorize and instruct Fidelity National Title Company to record all documents required in this escrow when all the conditions of this escrow have been met and upon receipt and deposit of all funds necessary to consummate this transaction in the form of a cashier's check, teller's check or certified check regardless of whether the funds are available for disbursement in accordance with Reg. CC.  Immediately upon availability of the deposited instrument, Fidelity National Title Company is instructed to disburse all funds in accordance with these instructions and/or the attached estimated closing statement.

## ESTIMATED CLOSING STATEMENT

**CLOSING DATE:** September 12, 2005

| | $ DEBITS | $ CREDITS |
|---|---|---|
| **FINANCIAL:** | | |
| New 1st Trust Deed to Mortgage Lenders Network USA, Inc. | | 500,000.00 |
| **TITLE CHARGES:** | | |
| 06-ALTA Loan w/Form 1 - 1992 for $500,000.00 | 1,186.50 | |
| Endorsement Fee(s) | 25.00 | |
| Recording Trust Deed(s) | 75.00 | |
| **ESCROW CHARGES:** | | |
| Escrow Fee to Fidelity National Title | 300.00 | |
| Doc Prep Fees to Fidelity National Title | 50.00 | |
| Express Mail | 31.50 | |
| Notary Fees | 100.00 | |
| **NEW LOAN CHARGES - Mortgage Lenders Network USA, Inc.** | | |
| **Total Loan Charges: $5,000.73** | | |
| Appraisal Fee to Richard L. Wessing | 400.00 | |
| Yield Spread Premium $7500 paid by lender POC to First Priority Financial | | |
| Underwriting Fee to Mortgage Lenders Network USA, Inc. | 549.00 | |
| Broker Processing Fee to First Priority Financial | 350.00 | |
| Broker Admin Fee to First Priority Financial | 495.00 | |
| Doc Prep Fee to Mortgage Lenders Network USA, Inc. | 250.00 | |
| Interest at $98.63 per day from 9/12/2005 to 10/1/2005 to Mortgage Lenders Network USA, Inc. | 1,873.97 | |
| Insurance for 4 months @ $100.67 per month to Mortgage Lenders Network USA, Inc. | 402.68 | |
| County Taxes for 10 months @ $140.30 per month to Mortgage Lenders Network USA, Inc. | 1,403.00 | |
| Aggregate Adjustment to Mortgage Lenders Network USA, Inc. | | 722.92 |
| **PAYOFFS - Ocwen - EST ONLY** | | |
| **Total Payoff $326,000.00** | | |
| Principal Balance to Ocwen - EST ONLY | 326,000.00 | |
| **MISCELLANEOUS:** | | |
| CITI CARDS CBSDNA-NEED STATEMENT for consumer debt | 12,147.00 | |
| FIRST USA BANK-NEED STATEMENT for consumer debt | 5,116.00 | |
| RSHK/CBUSA-NEED STATEMENT for consumer debt | 2,289.00 | |
| SHELL/CITI-NEED STATEMENT for consumer debt | 1,240.00 | |
| El Dorado County Tax Collector for defaulted taxes 2005-2006 due by 9/30/05 073-141-03-100 | 1,952.65 | |
| ESTIMATED REFUND DUE BORROWER | $144,486.62 | |
| ESTIMATED TOTALS | $500,722.92 | $500,722.92 |

Continued on Following Page

Initials:  *PE  JE*

Date: September 7, 2005                                                      Page 4
Escrow No.: 05-**4008203**-LC
Locate No.: CAFNT0909-0934-0002-0000321335

The Undersigned hereby instruct and authorize Escrow Holder to disburse proceeds/refund as follows:

[ ]  TRANSFER      [ ] All Net Proceeds, or [ ] $_____
        TO:            _____
        ATTN:          _____
        ESCROW NO:   _____

[ ]  HOLD check for PICK UP
[ ]  CALL when check is ready for PICK UP, PHONE NUMBER
[X]  WIRE funds to (Bank Name)  _Farmers Bank_   _Greenwood AR_  _72936_
        Address:          _082902265_
        Routing No.:      _082902265_
        Account No.:      _____970 4_

[ ]  MAIL      [ ] FEDERAL EXPRESS check to _____

_Daniel Major Edstrom_   _9-7-05_                _Teri Anne Edstrom_
Daniel Major Edstrom                             Teri Anne Edstrom



# GENERAL PROVISIONS

## 1. DEPOSIT OF FUNDS

The law dealing with the disbursement of funds requires that all funds be available for withdrawal as a matter of right by the title entity's escrow and/or sub escrow account prior to disbursement of any funds. Only cash or wire-transferred funds can be given immediate availability upon deposit. Cashier's checks, teller's checks and Certified checks may be available one business day after deposit. All other funds such as personal, corporate or partnership checks and drafts are subject to mandatory holding periods which may cause material delays in disbursement of funds in this escrow. In order to avoid delays, all fundings should be wire transferred. Outgoing wire transfers will not be authorized until confirmation of the respective incoming wire transfer or of availability of deposited checks.

All funds received in this escrow shall be deposited with other escrow funds in a general escrow account or accounts of Fidelity National Title Company, with any state or national bank, or savings and loan association (the "depository institution") and may be transferred to any other such general escrow account or accounts. The parties to this escrow acknowledge that the maintenance of such escrow accounts with some depository institutions may result in Escrow Holder's being provided with an array of bank services, accommodations or other benefits by the depository institution. Escrow Holder or its affiliates also may elect to enter into other business transactions with or obtain loans for investment or other purposes from the depository institution. All such services, accommodations and other benefits shall accrue to Escrow Holder and Escrow Holder shall have no obligation to account to the parties to this escrow for the value of such services, accommodations or other benefits.

Said funds will not earn interest unless the instructions otherwise specifically state that funds shall be deposited in an interest-bearing account. All disbursements shall be made by check of Fidelity National Title Company. The principals to this escrow are hereby notified that the funds deposited herein are insured only to the limit provided by the Federal Deposit Insurance Corporation. Any instruction for bank wire will provide reasonable time or notice for Escrow Holder's compliance with such instruction. Escrow Holder's sole duty and responsibility shall be to place said wire transfer instructions with its wiring bank upon confirmation of (1) satisfaction of conditions precedent or (2) document recordation at close of escrow. Escrow Holder will NOT be held responsible for lost interest due to wire delays caused by any bank or the Federal Reserve System, and recommends that all parties make themselves aware of banking regulations with regard to placement of wires.

In the event there is insufficient time to place a wire upon any such confirmation or the wires have closed for the day, the parties agree to provide written instructions for an alternative method of disbursement. WITHOUT AN ALTERNATIVE DISBURSEMENT INSTRUCTION, FUNDS WILL BE HELD IN TRUST IN A NON-INTEREST BEARING ACCOUNT UNTIL THE NEXT OPPORTUNITY FOR WIRE PLACEMENT.

## 2. PRORATIONS AND ADJUSTMENTS

All prorations and/or adjustments called for in this escrow are to be made on the basis of a thirty (30) day month unless otherwise instructed in writing. You are to use information contained on last available tax statement, rental statement as provided by the Seller, beneficiary's statement and fire insurance policy delivered into escrow for the prorations provided for herein.

## 3. SUPPLEMENTAL TAXES

The within described property may be subject to supplemental real property taxes due to the change of ownership taking place through this escrow. Any supplemental real property taxes arising as a result of the transfer of the property to Buyer shall be the sole responsibility of Buyer and any supplemental real property taxes arising prior to the closing date shall be the sole responsibility of the Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER.

## 4. UTILITIES/POSSESSION

Transfer of utilities and possession of the premises are to be settled by the parties directly and outside escrow.

## 5. PREPARATION AND RECORDATION OF INSTRUMENTS

Escrow Holder is authorized to prepare, obtain, record and deliver the necessary instruments to carry out the terms and conditions of this escrow and to order the policy of title insurance to be issued at close of escrow as called for in these instructions. Close of escrow shall mean the date instruments are recorded.

## 6. AUTHORIZATION TO FURNISH COPIES

You are authorized to furnish copies of these instructions, supplements, amendments, notices of cancellation and closing statements, to the Real Estate Broker(s) and Lender(s) named in this escrow.

## 7. RIGHT OF CANCELLATION

Any principal instructing you to cancel this escrow shall file notice of cancellation in your office in writing. You shall, within two (2) working days thereafter, deliver, one copy of such notice to each of the other principals at the addresses stated in this escrow. UNLESS WRITTEN

OBJECTION TO CANCELLATION IS FILED IN YOUR OFFICE BY A PRINCIPAL WITHIN TEN (10) DAYS AFTER DATE OF SUCH MAILING, YOU ARE AUTHORIZED TO COMPLY WITH SUCH NOTICE AND DEMAND PAYMENT OF YOUR CANCELLATION CHARGES. If written objection is filed, you are authorized to hold all money and instruments in this escrow and take no further action until otherwise directed, either by the principals' mutual written instructions, or by final order of a court of competent jurisdiction.

## 8. PERSONAL PROPERTY

No examination or insurance as to the amount or payment of personal property taxes is required unless specifically requested.

By signing these General Provisions, the parties to the escrow hereby acknowledge that they are indemnifying the Escrow Holder against any and all matters relating to any "Bulk Sales" requirements, and instruct Escrow Agent to proceed with the closing of escrow without any consideration of matter of any nature whatsoever regarding "Bulk Sales" being handled through escrow.

## 9. RIGHT OF RESIGNATION

Escrow Holder has the right to resign upon ten (10) days written notice delivered to the principals herein. If such right is exercised, all funds and documents shall be returned to the party who deposited them and Escrow Holder shall have no liability hereunder.

## 10. AUTHORIZATION TO EXECUTE ASSIGNMENT OF HAZARD INSURANCE POLICIES

Either Buyer, Seller and/or Lender may hand you the insurance agent's name and insurance policy information, and you are to execute, on behalf of the principals hereto, form assignments of interest in any insurance policy (other than title insurance) called for in this escrow, forward assignment and policy to the insurance agent, requesting that the insurer consent to such transfer and/or attach a loss payable clause and/or such other endorsements as may be required, and forward such policy(s) to the principals entitled thereto. It is not your responsibility to verify the information handed you or the assignability of said insurance. Your sole duty is to forward said request to insurance agent at close of escrow.

Further, there shall be no responsibility upon the part of Escrow Holder to renew hazard insurance policy(s) upon expiration or otherwise keep it in force either during or subsequent to the close of escrow. Cancellation of any existing hazard insurance policies is to be handled directly by the principals, and outside of escrow.

## 11. ACTION IN INTERPLEADER

The principals herein expressly agree that you, as Escrow Holder, have the absolute right at your election to file an action in interpleader requiring the principals to answer and litigate their several claims and rights among themselves and you are authorized to deposit with the clerk of the court all documents and funds held in this escrow. In the event such action is filed, the principals jointly and severally agree to pay your cancellation charges and costs, expenses and reasonable attorney's fees which you are required to expend or incur in such interpleader action, the amount thereof to be fixed and judgment therefore to be rendered by the court. Upon the filing of such action, you shall thereupon be fully released and discharged from all obligations imposed by the terms of this escrow or otherwise.

## 12. TERMINATION OF AGENCY OBLIGATION

If there is no action taken on this escrow within six (6) months after the "time limit date" as set forth in the escrow instructions or written extension thereof, your agency obligation shall terminate at your option and all documents, monies or other items held by you shall be returned to the parties depositing same. In the event of cancellation of this escrow, whether it be at the request of any of the principals or otherwise, the fees and charges due Fidelity National Title Company, including expenditures incurred and/or authorized shall be borne equally by the parties hereto (unless otherwise agreed to specifically).

## 13. CONFLICTING INSTRUCTIONS

Upon receipt of any conflicting instructions, you are to take no action in connection with this escrow until non-conflicting instructions are received from all of the principals to this escrow (subject to sections 7, 9, 11 and 12 above).

## 14. REIMBURSEMENT ATTORNEY FEES/ESCROW HOLDER

In the event that a suit is brought by any party or parties to these escrow instructions to which the Escrow Holder is named as a party which results in a judgment in favor of the Escrow Holder and against a principal or principals herein, the principals or principals' agent agree to pay said Escrow Holder all costs, expenses and reasonable attorney's fees which it may expend or incur in said suit, the amount thereof to be fixed and judgment therefore to be rendered by the court in said suit.

## 15. DELIVERY/RECEIPT

Delivery to principals as used in these instructions unless otherwise stated herein is to be by regular mail, and receipt is determined to be 72 hours after such mailing. All documents, balances and statements due to the undersigned are to be mailed to the address shown herein.

## 16. STATE/FEDERAL CODE NOTIFICATIONS

According to Federal Law, the Seller, when applicable, will be required to complete a sales activity report that will be utilized to generate a 1099 statement to the Internal Revenue Service.

Initials: _____ _____

Pursuant to State Law, prior to the close of escrow, Buyer will provide Escrow Holder with a Preliminary Change of Ownership Report. In the event said report is not handed to Escrow Holder for submission to the County in which subject property is located, upon recording of the Grant Deed, Buyers acknowledge that the applicable fee will be assessed by said County and Escrow Holder shall debit the account of Buyer for same at close of escrow.

Buyer and Seller herein represent and warrant that they will seek and obtain independent legal advice and counsel relative to their obligations under the "Foreign Investors In Real Property Act", and any other applicable federal and/or state laws regarding same, and will take all steps necessary in order to comply with such requirements and hereby hold you harmless relative to their compliance therewith.

**17. ENCUMBRANCES**

Escrow Holder is to act upon any statements furnished by a lienholder or his agent without liability or responsibility for the accuracy of such statements. Any adjustments necessary because of a discrepancy between the information furnished Escrow Holder and any amount later determined to be correct shall be settled between the parties direct and outside of escrow.

You are authorized, without the need for further approval, to debit my account for any fees and charges that I have agreed to pay in connection with this escrow, and for any amounts that I am obligated to pay to the holder of any lien or encumbrance to establish the title as insured by the policy of title insurance called for in these instructions. If for any reason my account is not debited for such amounts at the time of closing, I agree to pay them immediately upon demand, or to reimburse any other person or entity who has paid them.

**18. ENVIRONMENTAL ISSUES**

Fidelity National Title Company has made no investigation concerning said property as to environmental/toxic waste issues. Any due diligence required or needed to determine environmental impact as to forms of toxification, if applicable, will be done directly and by principals outside of escrow. Fidelity National Title Company is released of any responsibility and/or liability in connection therewith.

**19. USURY**

Escrow Holder is not to be concerned with any questions of usury in any loan or encumbrance involved in the processing of this escrow and is hereby released of any responsibility or liability therefore.

**20. DISCLOSURE**

Escrow Holder's knowledge of matters affecting the property, provided such facts do not prevent compliance with these instructions, does not create any liability or duty in addition to these instructions.

**21. CLARIFICATION OF DUTIES**

Fidelity National Title Company serves ONLY as an Escrow Holder in connection with these instructions and cannot give legal advice to any party hereto.

Escrow Holder is not to be held accountable or liable for the sufficiency or correctness as to form, manner of execution, or validity of any instrument deposited in this escrow, nor as to the identity, authority or rights of any person executing the same. Escrow Holder's duties hereunder shall be limited to the proper handling of such money and the proper safekeeping of such instruments, or other documents received by Escrow Holder, and for the disposition of same in accordance with the written instructions accepted by Escrow Holder.

The agency and duties of Escrow Holder commence only upon receipt of copies of these Escrow Instructions executed by all parties.

THIS AGREEMENT IN ALL PARTS APPLIES TO, INURES TO THE BENEFIT OF, AND BINDS ALL PARTIES HERETO, THEIR HEIRS, LEGATEES, DEVISEES, ADMINISTRATORS, EXECUTORS, SUCCESSORS AND ASSIGNS, AND WHENEVER THE CONTEXT SO REQUIRES THE MASCULINE GENDER INCLUDES THE FEMININE AND NEUTER, AND THE SINGULAR NUMBER INCLUDES THE PLURAL. THESE INSTRUCTIONS AND ANY OTHER AMENDMENTS MAY BE EXECUTED IN ANY NUMBER OF COUNTERPARTS, EACH OF WHICH SHALL BE CONSIDERED AS AN ORIGINAL AND BE EFFECTIVE AS SUCH.

MY SIGNATURE HERETO CONSTITUTES INSTRUCTION TO ESCROW HOLDER OF ALL TERMS AND CONDITIONS CONTAINED IN THIS AND ALL PRECEDING PAGES AND FURTHER SIGNIFIES THAT I HAVE READ AND UNDERSTAND THESE GENERAL PROVISIONS.

**Fidelity National Title Company conducts escrow business under a Certificate of Authority No. 2597-3 issued by the California Department of Insurance.**

Daniel Major Edstrom

Teri Anne Edstrom

RECEIVED BY: Fidelity National Title Company

BY: _____

DATE: _____

Fidelity National Financial Group of Companies' Privacy Statement

**July 1, 2001**

We recognize and respect the privacy expectations of today's consumers and the requirements of applicable federal and state privacy laws. We believe that making you aware of how we use your non-public personal information ("Personal Information"), and to whom it is disclosed, will form the basis for a relationship of trust between us and the public that we serve. This Privacy Statement provides that explanation. We reserve the right to change this Privacy Statement from time to time consistent with applicable privacy laws.

**In the course of our business, we may collect Personal Information about you from the following sources:**

- From applications or other forms we receive from you or your authorized representative;
- From your transactions with, or from the services being performed by, us, our affiliates, or others;
- From our internet web sites;
- From the public records maintained by governmental entities that we either obtain directly from those entities, or from our affiliates or others; and
- From consumer or other reporting agencies.

**Our Policies Regarding the Protection of the Confidentiality and Security of Your Personal Information**

We maintain physical, electronic and procedural safeguards to protect your Personal Information from unauthorized access or intrusion. We limit access to the Personal Information only to those employees who need such access in connection with providing products or services to you or for other legitimate business purposes.

**Our Policies and Practices Regarding the Sharing of Your Personal Information**

We may share your Personal Information with our affiliates, such as insurance companies, agents, and other real estate settlement service providers. We also may disclose your Personal Information:

- to agents, brokers or representatives to provide you with services you have requested;
- to third-party contractors or service providers who provide services or perform marketing or other functions on our behalf; and
- to others with whom we enter into joint marketing agreements for products or services that we believe you may find of interest.

In addition, we will disclose your Personal Information when you direct or give us permission, when we are required by law to do so, or when we suspect fraudulent or criminal activities. We also may disclose your Personal Information when otherwise permitted by applicable privacy laws such as, for example, when disclosure is needed to enforce our rights arising out of any agreement, transaction or relationship with you.

One of the important responsibilities of some of our affiliated companies is to record documents in the public domain. Such documents may contain your Personal Information.

**Right to Access Your Personal Information and Ability to Correct Errors or Request Changes or Deletion**

Certain states afford you the right to access your Personal Information and, under certain circumstances, to find out to whom your Personal Information has been disclosed. Also, certain states afford you the right to request correction, amendment or deletion of your Personal Information. We reserve the right, where permitted by law, to charge a reasonable fee to cover the costs incurred in responding to such requests.

All requests must be made in writing to the following address:

Fidelity National Financial, Inc.
Privacy Compliance Officer
601 Riverside Avenue
Jacksonville, FL 32204

**Multiple Products or Services**

If we provide you with more than one financial product or service, you may receive more than one privacy notice from us. We apologize for any inconvenience this may cause you.

# EXHIBIT 3

DECLARATION OF DANIEL EDSTROM

Loan Number:    **4040021649**

# DISCLOSURE STATEMENT ABOUT MERS

Mortgage Electronic Registration Systems, Inc. (MERS) is named on your mortgage as the mortgagee in a nominee capacity for:

**MORTGAGE LENDERS NETWORK USA, INC.**

(Lender).  MERS is a company separate from your lender that operates an electronic tracking system for mortgage rights.  MERS is not your lender; it is a company that provides an alternative means of registering the mortgage lien in the public records.  MERS maintains a database of all loans registered with it, including the name of the lender on each loan.  Your lender has elected MERS as the mortgagee in a nominee capacity and record the mortgage in the public land records to protect its lien against your property.

**Naming MERS as the mortgagee and registering the mortgage on the MERS electronic tracking system does not affect your obligation to your Lender, under the Promissory Note.**

MERS 08/03

# **EXHIBIT 4**

DECLARATION OF DANIEL EDSTROM

NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telephone: (866) 795-1852
Telecopier: (972) 661-7800

December 24, 2008

DANIEL MAJOR EDSTROM
2690 BROWN BEAR COURT
COOL, CA 95614

Re: Loan No.:        1115033372
    TS No.:          20080134014711

NDEx West, L.L.C. ("NDEx") has been authorized by the Servicer/Creditor to collect a debt associated with a Deed of Trust associated with a real property loan. The current creditor to whom the Debt is owed is **US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT**. The loan is being serviced by **AMERICA'S SERVICING COMPANY**.

We have been advised by our client that the amount of the debt as of the date of this Notice according to the records of our client is $513,172.26. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which case we will inform you before depositing the check for collection. For further information, write the undersigned or call 866-795-1852.
PLEASE BE ADVISED THAT NDEX MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT THE ABOVE REFERENCED DEBT.    ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.

Unless, within thirty days after you receive this letter you dispute the validity of the Debt or any part of it, NDEx will assume that the debt is valid. If you notify NDEx in writing within that same thirty-day period that the debt, or any portion thereof, is disputed NDEx will obtain verification of the Debt or a copy of a judgment, if any, and a copy of such verification or judgment will be mailed to you. Upon your written request within that same thirty-day period NDEx will furnish you with the name and address of the original creditor, if the original creditor is different from the current creditor.

The law does not require NDEx to wait until the end of the thirty-day period before taking action to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within thirty days of receipt of this letter, the law requires NDEx to suspend its efforts (through litigation or otherwise) to collect the debt, even if we have already initiated foreclosure proceedings, until we mail you the information validating the debt and/or until we provide you with the name and address of the original creditor.

The California Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

If you are not obligated on the Debt, or if the Debt has been discharged in a bankruptcy proceeding, this letter is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only. You are being given this notice as a courtesy because your interest in the property loan may be affected.
Sincerely,

NDEx West, L.L.C.

1

# **EXHIBIT 5**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DANIEL EDSTROM

**NDEx West, L.L.C.**
15000 Surveyor Boulevard, Suite 500
Addison, Texas  75001-9013
Telephone: (866) 795-1852
Telecopier: (972) 661-7800

**December 24, 2008**

TERI ANNE EDSTROM
2690 BROWN BEAR COURT
COOL, CA  95614

Re:  Loan No.:       1115033372
       TS No.:         20080134014711

NDEx West, L.L.C. ("NDEx") has been authorized by the Servicer/Creditor to collect a debt associated with a Deed of Trust associated with a real property loan.  The current creditor to whom the Debt is owed is US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT. The loan is being serviced by AMERICA'S SERVICING COMPANY.

We have been advised by our client that the amount of the debt as of the date of this Notice according to the records of our client is $513,172.26.  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which case we will inform you before depositing the check for collection. For further information, write the undersigned or call 866-795-1852.
PLEASE BE ADVISED THAT NDEX MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT THE ABOVE REFERENCED DEBT.   ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.

Unless, within thirty days after you receive this letter you dispute the validity of the Debt or any part of it, NDEx will assume that the debt is valid. If you notify NDEx in writing within that same thirty-day period that the debt, or any portion thereof, is disputed NDEx will obtain verification of the Debt or a copy of a judgment, if any, and a copy of such verification or judgment will be mailed to you. Upon your written request within that same thirty-day period NDEx will furnish you with the name and address of the original creditor, if the original creditor is different from the current creditor.

The law does not require NDEx to wait until the end of the thirty-day period before taking action to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within thirty days of receipt of this letter, the law requires NDEx   to suspend its efforts (through litigation or otherwise) to collect the debt, even if we have already initiated foreclosure proceedings, until we mail you the information validating the debt and/or until we provide you with the name and address of the original creditor.

The California Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**If you are not obligated on the Debt, or if the Debt has been discharged in a bankruptcy proceeding, this letter is not an attempt to impose personal liability upon you for payment of that debt.  In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only.  You are being given this notice as a courtesy because your interest in the property loan may be affected.**
Sincerely,

NDEx West, L.L.C.

# EXHIBIT 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF DANIEL EDSTROM

Not Negotiable

## Notice of Dispute

Daniel M. Edstrom (***-**-1674)
Teri A. Edstrom (***-**-3629)
2690 Brown Bear Court
Cool, CA 95614

NDEx West, LLC
15000 Surveryor Boulevard, Suite 500
Addison, Texas 75001-9013
Fax: 972-661-7800

January 7, 2009

Certified Mail #:
Faxed on January 7, 2009
Mailed on January 7, 2009
Subject Property: 2690 Brown Bear Court, Cool, CA 95614
APN #: 073-141-03-100
Servicer Loan #: 1115033372
Loan #: 4040021649

**Notice to Agent is Notice to Servicer.  Notice to Servicer is Notice to Agent.**

**Notice to Principle is Notice to Agent.  Notice to Agent is Notice to Principle.**

**Notice to Agent is Notice to Lender.  Notice to Lender is Notice to Agent.**

**Notice to Agent is Notice to Master Servicer.  Notice to Master Servicer is Notice to Agent.**

**Notice to Agent is Notice to Holder(s) in Due Course.  Notice to Holder(s) in Due Course is Notice to Agent.**

- **This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).**
- **This letter is a request under the Truth In Lending Act 15 U.S.C. section 1601**
- **This letter is a "written demand" in compliance with California Civil Code Section 2943**
- **This letter is a dispute letter under the Fair Debt Collection Practices Act (15 U.S.C. § 1691-1692 et seq.)**
- **This letter is a dispute letter under the Rosenthal Fair Debt Collection Practices Act (California Civil Code § 1788 et seq.)**

Not Negotiable

To whom it may concern,

While this letter is written in part for purposes of settlement and compromise it is already a demand letter which can and will be used as necessary.  It is therefore not a confidential communication protected under the rules of settlement disclosures and correspondence.

**Notice Disputing the Validity of Debt**

Because it is obvious you are not a holder in due course and you are not authorized by the actual holder(s) in due course (the real parties in interest), you are therefore an unauthorized debt collector.

Verification

- (law) an **affidavit** attached to a statement **confirming** the truth of that statement
- The act of verifying; the state of being verified; **confirmation; authentication; Confirmation** by evidence;
- verified - **proved** to be true; "a verified claim"

Verification is the same as the following:

- Confirmation
    - additional **proof** that something that was believed is correct
- Proof
    - any **factual** evidence that helps to establish the **truth** of something
- Validation
    - the act of validating; finding or testing the **truth** of something
- Substantiation
    - **evidence, proof**
- Authentication
    - **attested**: established as genuine
- Attest
    - The act of **witnessing** the execution of an instrument.
    - the action of bearing **witness**
- Witness
    - someone who sees an event and reports what happened
    - (law) a person who **attests** to the genuineness of a document or signature by adding their own signature
    - (law) a person who testifies under oath in a court of law
- Certification
    - documentation: confirmation that some fact or statement is true through the use of documentary evidence

Not Negotiable

Borrowers are disputing the validity of this debt including the principal, interest, late fees, attorney's fees, foreclosing fees and any and all other fees that have been imposed. Borrowers expect not to hear from you again until you provide a true and complete verification:

- Verification of debt
    - Including a copy of the original note (all pages front and back)
    - Including ALL attachments thereto (all assignments, allonges etc)
    - An affidavit under oath from a competent witness with first hand knowledge that the debt is valid. This includes:
        - A witness of the original note itself that contains the borrowers actual original signature
        - A witness of each and every assigment
        - A witness of all payments alleged to be due and owing.

Note that the servicer (ASC) turned into a debt collector when it initiated foreclosure. Borrowers have no business relationship with ASC. ASC is NOT the holder in due course and has no authority to verify anything. The Trustee represented in foreclosure documents is not the original Trustee and without providing proof of assignments and proof of the most current assignment, any documents or evidence provided is hearsay. Additionally, the only parties that can provide evidence of the validity of debt of the payments due are the real parties in interest – the holder(s) in due course. Borrowers dispute that the real parties in interest have not received all payments due

If NDEx West, LLC provides verification to borrowers, borrowers demand that NDEx West, LLC setup a meeting in the Northern California areas of Sacramento and/or the San Francisco Bay Area, at the time and place of your choosing (between 9 AM and 3 PM Pacific Standard Time), in order for borrowers and/or borrower's attorneys and/or borrower's agents to inspect the ORIGINAL documents used for verification. This meeting will be set for 15 to 30 days after NDEx West, LLC provides verification of debt to borrowers. Borrowers will require a minimum of 2 hours for this inspection.

If the debt collectors and/or the holder(s) in due course and/or any other party fails to provide full, authenticated verification and the collection of this debt resumes, borrowers will exercise all legal remedies at their disposal.

This mortgage was rescinded on 12/29/2008 and is null and void. You are hereby notified that this mortgage is deficient and fraudulent and no good title passes with fraud.

Not Negotiable

## Cease and Desist

The borrowers do not have a business relationship with NDEx West, LLC. The borrowers do not have a business relationship with America's Servicing Company (hereinafter "ASC"). Borrowers do not wish to have a business relationship with NDEx West, LLC. Borrowers do not wish to have a business relationship with ASC – especially in light of the actions recently undertaken by ASC. ASC was hired by others to "service" the borrower's loan payments. ASC failed in their duties to the borrowers in their accounting and handling of borrower's financial information. ASC has failed in their communications with the borrowers as to the true accounting of borrower's transactions. Apparently, ASC has now decided to invade borrower's privacy and attempt to take borrowers personal property without authorization, under the color of authority. On top of that ASC has slandered borrowers name and credit. ASC is apparently trying to extort borrower's personal property. Take note that borrower's will not allow this to happen. These are serious crimes to which NDEx West, LLC is now on notice of. You should also be aware that on 12/29/2008 borrowers notified ASC of the rescission of borrower's loan. NDEx West, LLC therefore has lost any authority it may have had. Borrower's demand therefore the following of NDEx West, LLC:

- Cease and desist from proceeding with the foreclosure
- Cease and desist from attempting to collect a debt
- Cease and desist from substituting, assigning, transferring or giving our credit, note, mortgage, debt, deed of trust, trust deed, personal information or any other information, document or accounting to any other party
- Cease and desist from reporting anything to any credit reporting bureau
- Cease and desist from retaining any of borrower's personal information, financial information, credit information or anything else that pertains to borrower's
- Cease and desist your unauthorized relationship with ASC or any other party in regards to borrower's loan, mortgage, account, payments or in any other capacity
- Cease and desist all communications with anyone in regards to borrower, borrowers personal information or anything else that pertains to borrowers

Not Negotiable

## Loan Modification Offer

As previously stated by the borrowers, borrowers are willing, able and ready to execute a loan modification with the following terms:

- Loan Amount: $275,000.00
- New Interest Rate: 7.2% fixed
- New Loan Length: 30 years
- New Payment: $1,866.67

Because this offer exceeds the anticipated recovery through foreclosure on a net present value basis (appraisal for $275,000.00 already sent to servicer), the lender is required to accept this offer pursuant to California Civil Code 2823.6. Failure to accept this loan modification allows the borrower to sue for specific performance or wrongful foreclosure in State Court.

Govern yourselves accordingly!

Respectfully,

Daniel and Teri Edstrom
2690 Brown Bear Court
Cool, CA 95614

# EXHIBIT 7

DECLARATION OF DANIEL EDSTROM

Not Negotiable

## Objection to Notice of Default

**Request to Enjoin, Objection to Trustee, Duties of the Trustee, Loan Modification Offer, Notice Disputing the Validity of Debt, Adequate Assurance of Due Performance, Notice of Identity Theft and Notice of Other Violations**

Daniel M. Edstrom (***-**-1674)
Teri A. Edstrom (***-**-3629)
2690 Brown Bear Court
Cool, CA 95614

NDEx West, LLC
15000 Surveryor Boulevard, Suite 500
Addison, Texas 75001-9013

ASC
P.O. Box 10388
Des Moines, IA 50306-0388
Fax: 866-453-6315

March 16, 2009

Certified Mail #:
Mailed on March 16, 2009
Subject Property: 2690 Brown Bear Court, Cool, CA 95614
APN #: 073-141-03-100
Loan #: 4040021649
Servicer Loan #: 1115033372
Escrow #: 05-4008203-LC
Locate No.: CAFNT0909-0934-0002-0000321335
Escrow Officer: LaVette Cozzitorto
This document contains 41 pages

**Notice to Agent is Notice to Servicer.  Notice to Servicer is Notice to Agent.**

**Notice to Principle is Notice to Agent.  Notice to Agent is Notice to Principle.**

**Notice to Agent is Notice to Lender.  Notice to Lender is Notice to Agent.**

**Notice to Agent is Notice to Master Servicer.  Notice to Master Servicer is Notice to Agent.**

**Notice to Agent is Notice to Holder(s) in Due Course.  Notice to Holder(s) in Due Course is Notice to Agent.**

Not Negotiable

- **This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).**
- **This letter is a request under the Truth In Lending Act 15 U.S.C. section 1601**
- **This letter is a "written demand" in compliance with California Civil Code Section 2943**
- **This letter is a notice of rescission**
- **This letter disputes all of the debt, payments owed on the debt, billing on the debt and credit reporting on the debt**

Dear Original Trustee and/or duly appointed Substituted Trustee and/or acting as Agent for the Trustee or Beneficiary and/or debt collector and/or Lender and/or servicer (hereinafter "The Lender"):

While this letter is written in part for purposes of settlement and compromise it is already a demand letter which can and will be used as necessary. It is therefore not a confidential communication protected under the rules of settlement disclosures and correspondence.

Borrowers demand that you send a copy of this letter to the following:

- Your compliance officer and/or compliance department
- Your ethics officer and/or ethics department
- Your legal department
- Your insurance carrier(s)
- The real parties in interest

This document by no means details all aspects of the full transaction entered into by the borrower's on or around September 7, 2005. Borrower's thought they were entering into a simple loan transaction whereby Mortgage Lenders Network would loan borrowers Mortgage Lenders Network capital (lawful money) at which Mortgage Lenders Network capital (lawful money) would be at risk. Instead of this fairly simple type of loan transaction, the actual transaction was a huge, convoluted, complex transaction for the purposes of making it nearly impossible for the borrowers to determine what actually happened and where there security instrument (and borrowers identity) would go. The borrowers have only recently learned of the "financial engineering" involved with borrower's loan. Borrowers will spend the next few years attempting to reverse engineer this transaction in order to determine what actually transpired. However, borrowers have just been presented with a notice of default (the start of non-judicial foreclosure) and now have less then 30 days to act before the presumed sale of their property.

Borrowers are extremely disconcerted at the callous disregard of the borrower's rights by all parties involved in this loan transaction. The flagrant and numerous violations of law, lack of response and utter failure to take any action at all (with the exception of attempting to extort borrowers property through a foreclosure under the color of authority) leave borrowers no choice but to eventually file a lawsuit or declare bankruptcy (in an attempt to halt what can only be described as a monstrous, unstoppable machine).

**Request to Enjoin the Sale of the Subject Property**
COMES NOW Daniel M. Edstrom and Teri A. Edstrom (hereinafter "borrowers") and moves the Trustee of this non-judicial proceeding to enjoin the sale of the subject property on the grounds that this non-judicial proceeding lacks subject Matter and in personnam jurisdiction, to wit: the alleged lender is not the owner of the mortgage note and security agreement, has not alleged or attached documentation supporting said fact and thus lacks standing to pursue foreclosure and/or sale of the subject property.

The borrowers move the Trustee of this non-judicial proceeding to enjoin the sale of the subject property pursuant to California Code of Civil Procedure Sections 389-389.5 to wit: this non-judicial proceeding lacks joinder because of the known presence of necessary and indispensable parties to any dispute that the true holders in due course might have against borrowers, only a judicial proceeding in which all parties are included will provide a fair determination of the rights, obligation and title to the property, mortgage and note. Pursuant to California Civil Procedure Section 389(b), if a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include:

1. to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties;
2. the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;
3. whether a judgment rendered in the person's absence will be adequate;
4. whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder.

In the event the Trustee does not or cannot add the "necessary and indispensable parties", the real holder(s) in due course, to the non-judicial foreclosure, the Trustee is obligated to enjoin the sale of the subject property.

The borrowers move the Trustee of this non-judicial proceeding to enjoin the sale of the subject property on the grounds that the parties have all been notified that borrowers are ready, willing, and able to accept a loan modification that exceeds the net present recovery value basis. Pursuant to California Civil Code §2823.6, the lender/servicer/trustee/holder(s) in due course/agent is/are contractually bound to accept the borrowers loan modification.

The borrowers move the Trustee of this non-judicial proceeding to enjoin the sale of the subject property on the grounds that the parties involved have committed numerous SEC violations and have violated Sarbanes-Oxley legislation. These acts have been egregious and involved the highest degree of scienter.

The borrowers move the Trustee of this non-judicial proceeding to enjoin the sale of the subject property on the grounds that the parties involved have committed common law negligence,

breach of contract, and negligence per se, and a failure of all parties involved in this scheme to adhere to the customer records privacy and data security safeguards rule of the Gramm-Leach-Bliley Act ("GLBA").

The borrowers move the Trustee of this non-judicial proceeding to enjoin the sale of the subject property on the following grounds:

NDEx West, LLC has apparently been assigned this loan, however this assignment is defective and unenforceable (null and void). NDEx West did not take possession of the note without defect or prior claims:

> Holder in Due Course
> an innocent party who purchases a negotiable instrument for value without any apparent defect in the instrument nor any notice of dishonor. (Black's Law Dictionary 2nd Pocket ed. 2001 pg. 322).

Not only did NDEx West, LLC receive prior notice of defects (see prior certified mailings of alleged borrowers), the instrument has obvious defects on its face (see the alleged borrowers audit of the loan documents), the instrument has been obviously dishonored before NDEx West, LLC took possession (NDEx West, LLC was hired to foreclose based on alleged borrowers alleged non-payment), and the alleged borrowers have real defenses – including fraud in the factum (among many other defenses). In addition, NDEx West, LLC is NOT holding the actual original instrument, and thus is not a holder of anything of substance. No party that has authorized NDEx West, LLC or worked with NDEx West, LLC in any capacity is in possession of the original instrument and thus they are not a holder of anything either. In addition, as of this date, NDEx West, LLC has not provided the requested validation of debt and has taken the assignment of this alleged debt without providing validation as requested by the alleged borrowers. This validation includes an affidavit under oath from a competent witness with first hand knowledge that this alleged debt is valid as well as first hand knowledge that Mortgage Lenders Network loaned Mortgage Lenders Network own capital putting Mortgage Lenders own capital at risk of loss.

The borrowers move the Trustee of this non-judicial proceeding to dismiss the foreclosure with prejudice based upon one or more of the objections set forth below, as borrower's are entitled to a release and satisfaction of the note and mortgage.

## Objection to Trustee

We are in receipt of the recorded **Notice of Default** which was recorded December 23, 2008 and a letter specifying a Notice of Default dated on December 24, 2008 and received on December 29, 2008. **We hereby object to the Notice of Default.** Borrowers demand that you send a copy of this letter from borrowers, certified, return receipt requested, to any parties undisclosed in the closing papers. Borrowers also demand that you send a copy of this letter sent from borrowers to your own errors and omissions carrier and to the carrier for the title

insurance, since there was a cloud on title created AT CLOSING by the knowledge of the parties that the loan was "sold forward" or already committed to third parties who were undisclosed real parties in interest and who collectively constitute the real lender. We are objecting for the following reasons – numbered 1 through 54. Each of these objections shall be considered on its own merits as well as considered along with the merits of each of the other objections.

1. All facts in this case are in dispute and can only be heard at a full judicial trial.
2. Borrowers deny payment was not made, as any missed payments were made by a third party. If any money is owed after all of borrowers set-offs, defenses, affirmative defenses and counterclaims are heard, it isn't to the party(ies) seeking to foreclose, who have no money on the table, who have no loss and who have no authority to represent the real people who put up the money for the loan.
3. There is no delinquency or default.
4. There is a conflict of interest. Specifically, the sub-Servicer (ASC) is owned by Wells Fargo Bank. Wells Fargo Bank is the Custodian. (This is according to pooling and servicing agreements in sworn SEC filings).
5. There is a conflict of interest. The foreclosing party is ASC (Wells Fargo Bank). Wells Fargo Bank is also the sub-servicer. Wells Fargo Bank is also the Custodian. (This is according to pooling and servicing agreements in sworn SEC filings).
6. There is a conflict of interest. ASC is the sub-servicer. The sub-servicer is required to advance principal and interest payments missed by the borrowers. The sub-servicer is also the Custodian. (This is according to pooling and servicing agreements in sworn SEC filings).
7. Upon information and belief, the sub-servicer failed to report delinquencies that began starting on July 2008. This is a clear violation of servicing agreements and is being used by the servicer and/or lender and/or Trustee to block borrower's attempts at an honest and open negotiation. The Trust (RASC Series 2005-EMX4 Trust) enforces a 60 day servicing repurchase trigger. The servicer is required to repurchase the loan should the borrower fall 60 days behind. The servicer is playing games with the borrowers and forcing them into foreclosure.
8. The sub-servicer notified borrowers that they "may" do a loan modification if the borrowers agree to a forbearance that the sub-servicer knows is virtually impossible for the borrowers to keep the terms of.
9. The Lender has been paid in full plus an undisclosed fee for standing in for an undisclosed third party lender that was not properly registered or regulated as a financial institution or lender at the time the transaction took place.
10. The Lender has failed to state the name or address of the holder(s) in due course, John Does 1-1000, being the holders of certificates of asset backed securities, which are backed by the security instrument (mortgage) on the subject residential property.
11. Because of the known presence of necessary and indispensable parties to any dispute that the true holders in due course might have against us, only a judicial proceeding in which all parties are included will provide a fair determination of the rights, obligation and title to the property, mortgage and note.

- The title for borrower's property was intentionally clouded at closing by the loan securitization process (unbeknownst to borrowers).
- The Trustee lacks joinder to foreclose:
  - o The proper parties have not come together to authorize you to foreclose.

12. The Lender does not own, possess or control the note or the mortgage, which has been satisfied in full. Demand is herewith made for satisfaction of mortgage to be filed in the appropriate county records.
    - The Trustee has no standing to foreclose
    - The Trustee has no jurisdiction to foreclose

13. Upon information and belief, the original note was lost, stolen destroyed, misplaced, counterfeit, or was transferred to a structured investment vehicle which may be located offshore, which also has no interest in the note or mortgage or revenue thereunder

14. Your authority as Trustee has also been transferred to the Trustee of the pooled mortgages and/or notes on various properties, real and personal, that were included in an asset pool that was eventually securitized and sold to investors, who along with others in the chain of securitization acquired rights and obligations to the note, mortgage, and stream of revenue eventually due to the investor.

15. You are not the Trustee because there is no "Trust Instrument." If you claim there is a "Trust Instrument", the beneficiaries under the Deed of Trust are
    - not the originating lender
    - not the mortgage wholesaler/aggregator
    - not the owners of the securities that were issued
    - not Mortgage Electronic Registration Systems, Inc (MERS)

16. The Deed of Trust has been assigned, transferred and/or sold and thus the original Beneficiary, Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS"), is no longer the Beneficiary (if in fact, they were ever the Beneficiary).

17. NDEx West, LLC is claiming the debt is owed to US Bank National Association as Trustee by Residential Funding Company LLC FKA Residential Funding Corporation Attorney in Fact. In addition, NDEx West, LLC is claiming MERS is the current Beneficiary. The Trustee and the Beneficiary as stated by NDEx West, LLC are mutually exclusive. Either the entire note was assigned, transferred and/or sold or it was not assigned, transferred and/or sold. If the note was not sold then the Beneficiary could possibly be MERS and the Trustee is Mitchell L. Heffernan. If the note was sold, the Trustee may be US Bank National Association (depending on what the latest assignment states) and the Beneficiary is an unknown party (depending on what the latest assignment states). Because the original note and ALL VALID ASSIGNMENTS were not sent to the borrowers, borrowers do not know who has been assigned as the actual Trustee and the actual Beneficiary.

18. MERS cannot be the Beneficiary because the original note was satisfied in full.

19. Residential Funding Company LLC FKA Residential Funding Corporation is claiming to be the lender and/or the attorney in fact for the lender. Proof of any power of attorney has not been provided and is hearsay. If Residential Funding Corporation was the original lender, this was never disclosed to borrowers. Borrowers would be able to

rescind (borrowers have in fact rescinded). If Residential Funding Corporation has the power of attorney for another lender, this would mean that the note has been assigned, transferred and/or sold. Thus the original Beneficiary, MERS, no longer has authority and NDEx West, LLC cannot use MERS as a basis for foreclosure.

20. Numerous SEC violations and Sarbanes-Oxley violations have occurred. The lack of transparency and accountability into the borrower's entire loan securitization process reeks of fraud and other illegal activities. No good title passes with fraud. The loan has been extinguished and is null and void. See the sections later in this document regarding the SEC and Sarbanes-Oxley.

21. Borrower's appraisal showed the property is now worth $275,000.00. Borrowers offered lender and/or servicer a loan modification for a principal balance of $275,000.00 (see appraisal for $275,000.00 sent to servicer) and a payment at the going interest rate. Although this offer exceeded the anticipated recovery through foreclosure on a net present value basis, the servicer rejected this offer. Pursuant to California Civil Code 2823.6, the lender was and is contractually bound to accept the loan modification borrowers are willing, able and ready to execute.

22. There is a separation between the alleged security instrument and provisions, the Trustee's authority and the note, all of which end up being different people who were all "real parties in interest" receiving fees and value not disclosed in the GFE or settlement statement. In the closing we were subjected to a series of documents that hide the true nature of the transaction, the true source of funds, the true lender, and the application of funds contrary to the terms of the note.

23. The "loan closing" was in fact a scheme to trick the borrowers into issuing a negotiable instrument that was pre-sold to investors as an unregulated security. The parties and their fees were not revealed nor was the true APR disclosed, as it was inflated considerably by the intentional overstatement of the appraisal on the property.

24. The title agent, which might well be the same as the Trustee also has insurance for errors and omissions and the title insurance company that issued the policy will have total liability for this fraudulent transaction to the extent they had knowledge through its agents of the fraudulent scheme.

25. The Trustee (successor master-servicer) is a fiduciary of both the borrower and lender. Thus far Trustee has failed to exercise proper due diligence on the status of the ownership of the mortgage and note and whether payments or refunds were due.

26. The sub-servicer is a fiduciary of both the borrower and the lender. Thus far the sub-servicer has failed in its responsibilities to borrowers.

27. The master-servicer is a fiduciary of both the borrowers and the lender. Thus far the sub-servicer has failed in its responsibilities to borrowers.

28. The Custodian (Wells Fargo Bank, and, because of conflicts of interest, ASC) is a fiduciary of both the borrowers and the lender. Thus far the Custodian has failed in its responsibilities to borrowers.

29. NDEx West, LLC is a fiduciary of both the borrowers and the lender(s) and ASC. Thus far the Custodian has failed in its responsibilities to borrowers.

30. Residential Funding Company AKA Residential Funding Corporation (hereinafter "RFC") is required to purchase the borrowers loan back in the event there is ANY law broken in

the origination of borrowers loan OR if the servicer breaks any law. RFC is aware of violations that have occurred but has as yet not performed as required (they have not purchased borrowers loan back as required).

31. Upon information and belief, the Custodian and/or Trustee have stopped making ALL payments from the funds collected from all borrowers in the pool of mortgages of the RASC Series 2005-EMX4 Trust. Even though the Custodian and/or Trustee have been receiving some amount of payments from borrowers, they are withholding these payments from the investors. They are keeping this money for themselves.

- Borrowers demand a full accounting of all payments made to the investors – including the amounts that cover borrower's obligation. This includes payments, payment advances, insurance, credit default swaps, cross collateralization, over collateralization, Federal bailout money and any other contrivance used to pay, on behalf of borrowers and/or all pooled borrowers, any amounts at all in connection with the pool to which borrowers mortgage is a part of (allegedly RASC Series 2005-EMX4 Trust).

32. The Trustee does not have personal knowledge that any event of default has occurred. The Trustees are relying on hearsay.

33. This loan was rescinded on December 29, 2008. Therefore any authority any of the Trustee's may have had or may have acquired is now extinguished as the note is null and void.

- The statute and regulation specify that the security interest, promissory note or lien arising by operation of law on the property becomes automatically void upon rescission. (15 U.S.C. § 1635(b); Reg. Z §§ 226.15(d)(1), 226.23(d)(1).
- Also, the security interest is void and of no legal effect irrespective *of whether the creditor makes any affirmative response to the notice of rescission*. Also, strict construction of Regulation Z would dictate that the voiding be considered absolute and not subject to judicial modification.
- The real lender, who lent their own capital (lawful money), put at risk of loss, never delivered any notice of rescission to the borrowers. As such, the 3-day rescission, 3-year rescission and general rescission time limits have not run out.

34. Judicial proceedings are now required because the foreclosure process has changed from simple to complex litigation by virtue of the fact that securitization of loans introduced many new parties into the transaction, many of whom were not disclosed, each of whom received compensation that was not disclosed, each of whom violated Truth in lending laws, Unfair and Deceptive Trade Practices Acts, and Securities laws and rules, with multiple rights of rescission accruing to the borrower from a variety of applicable laws.

35. Even though the note has been assigned, transferred and/or sold numerous times, no assignments have been recorded with El Dorado County, as required by Federal and state laws.

36. The original mortgage company is under a duty to notify borrowers of the transfer to EMAX Financial Group, LLC. Mortgage Lenders Network failed to give proper notice to the borrowers, and that failure provides a defense against foreclosure. (See, e.g., Winger v EMC Mortgage Corporation, 103 Cal. App. 4th 1125; 127 Cal. Rptr. 2d 685

Not Negotiable

(2002)), in which a mortgagor neglected to provide notice required by the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. 2601 et seq. The estate of the borrower was able to present the failure to provide proper notice to the borrower as a defense against foreclosure.

37. The security instrument cannot be assigned, transferred or sold because at this point the assignment cannot be taken without notice of fraud, statutory violations or other irregularities at the loan closing.  At this point the assignment can only be done with fraudulent concealment.

38. That Deed of Trust contained a false representation on its face when it represented that MERS was a beneficiary under the Deed of Trust. Paragraph (E) States that "MERS is a separate corporation that is acting solely as a Nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument."  MERS is NOT the beneficiary under the Deed of Trust, it never had ownership or possession of the Promissory Note which is the obligation which is secured by the Deed of Trust, and MERS has never been entitled to receive one cent of remuneration from the Borrower's loan proceeds. The statement that MERS is the nominee is nonsensical language which means nothing in a real estate transaction and most certainly, MERS has never been nor is it now the beneficiary under the Deed of Trust.  The language is a sham.

39. The note is null and void due to the fact that the security interest was separated from the obligation to pay, adding obligors who had liability for payment, and adding receivers of income:

    - The original note has been recorded with the El Dorado County recorders office. Even though the note has been assigned, transferred and/or sold numerous times, no assignments have been recorded with El Dorado County, as required by law.

    - The significance of this is that the party alleging non-payment by the borrower is NOT and CANNOT allege non-payment to the entity or person (investor) who is entitled to that payment. The person entering the foreclosure process is the trustee or the originating lender filing foreclosure. But they do not know if the investment bank, an insurer or some other third party, including another borrower or even the loan servicers was contributing to the flow of payments that the investor received, nor do they know the allocation of those funds which the investor received.

    - The default alleged is non-payment – and the entity or person making the allegation must prove the non-payment AND that proving that the borrower did not make one or more payments does NOT prove that the party (investor) entitled to payment did not get paid in whole or in part. Thus no default has been alleged without alleging that no payment was received by the holder of the original note and mortgage and the party to whom payment was to be received as a result of the income stream from this mortgage combined with thousands of other mortgages.

40. Based on 10k and 8k filings from GMAC and Residential Funding Company FKA Residential Funding Corporation and Residential Asset Security Corporation, it would appear that there are multiple investors who own shares in borrower's mortgage or

note, all of whom have a clear claim as holders in due course. Thus any direction or instruction the Trustee has received from the "lender" is not from a party with an interest in the mortgage or note and is void or meaningless.

41. NDEx West, LLC is using Unfair and deceptive practices in the collection of a debt.

42. NDEx West, LLC is making false representation of the true nature of the business or services being rendered by the debt collector.

43. NDEx West, LLC sent a letter to borrower's demanding money when the claim was not actually assigned to the collection agency.

44. The sub-servicer is fraudulently concealing from borrowers material information - the payments sub-servicer has made to the lender and/or master servicer and/or holders in due course. Borrowers demand to have an accounting specifically of what payments the sub-servicer has sent to the lender and/or master servicer and/or holders in due course. This specifically includes principal and interest advances (hereinafter "payment advances"). If the sub-servicer has stopped making payments and payment advances to the lender and/or master servicer and/or holders in due course, the sub-servicer will provide borrowers an accounting of all payments and payment advances made and the dates on which sub-servicer failed to make payments and payment advances.

   - This information is not proprietary or confidential. This information is crucial for borrowers to be able to determine the actual amount due to the holder(s) in due course. Not the amounts allegedly due to the sub-servicer. Borrowers have no contract with the sub-servicer; borrowers have a contract with the holder(s) in due course. The sub-servicer is specifically and intentionally interfering with the borrower's ability to negotiate a settlement and payoff, to negotiate a loan modification and/or to negotiate anything with the holder(s) in due course. The sub-servicer has intentionally and continuously violated the terms of the pooling and services agreement to which the sub-servicer has specifically agreed with when it took over servicing of loans from Mortgage Lenders Network and/or EMAX.

45. The master-servicer is fraudulently concealing from borrowers material information - the payments master-servicer has made to the lender and/or Trustee and/or holders in due course. Borrowers demand to have an accounting specifically of what payments the master-servicer has sent to the lender and/or Trustee and/or holders in due course. This specifically includes principal and interest advances (hereinafter "payment advances"). If the master-servicer has stopped making payments and payment advances to the lender and/or Trustee and/or holders in due course, the master-servicer will provide borrowers an accounting of all payments and payment advances made and the dates on which master-servicer failed to make payments and payment advances.

   - This information is not proprietary or confidential. This information is crucial for borrowers to be able to determine the actual amount due to the holder(s) in due course. Not the amounts allegedly due to the master-servicer. Borrowers have no contract with the master-servicer; borrowers have a contract with the holder(s) in due course. The master-servicer is specifically and intentionally interfering with the borrower's ability to negotiate a settlement and payoff, to

Not Negotiable

negotiate a loan modification and/or to negotiate anything with the holder(s) in due course. The master-servicer has intentionally and continuously violated the terms of the pooling and services agreement to which the master-servicer has specifically agreed to in Sworn SEC filings.

46. The Trustee (successor master-servicer) is fraudulently concealing from borrowers material information - the payments Trustee has made to the lender and/or holders in due course. Borrowers demand to have an accounting specifically of what payments the Trustee has sent to the lender and/or holders in due course. This specifically includes principal and interest advances (hereinafter "payment advances"). If the Trustee has stopped making payments and payment advances to the lender and/or holders in due course, the Trustee will provide borrowers an accounting of all payments and payment advances made and the dates on which Trustee failed to make payments and payment advances.

- This information is not proprietary or confidential. This information is crucial for borrowers to be able to determine the actual amount due to the holder(s) in due course. Not the amounts allegedly due to the Trustee. Borrowers have no contract with the Trustee; borrowers have a contract with the holder(s) in due course. The Trustee is specifically and intentionally interfering with the borrower's ability to negotiate a settlement and payoff, to negotiate a loan modification and/or to negotiate anything with the holder(s) in due course. The Trustee has intentionally and continuously violated the terms of the pooling and services agreement to which the Trustee has specifically agreed to in Sworn SEC filings.

47. Based upon SEC filings, and borrowers consultation with experts in mortgage backed securities, Mortgage Lenders Network and/or GMAC and/or Residential Funding Company FKA Residential Funding Corporation entered into agreements wherein borrowers loan payments could be allocated to payments due on notes from OTHER borrowers in whole or in part – as a consequence of the cross guarantee agreements between tranches in the SPV and between SPV entities. Borrowers demand to know whether this has in fact occurred.

48. Under Article 3 of the Uniform Commercial Code, an instrument is negotiable if it is: (1) a written instrument signed by the endorser or maker; (2) **an unconditional promise to pay a certain amount of money, either on demand or at a future date**; and (3) payable to the holder or bearer. A person who becomes a Holder in Due Course of a negotiable instrument by delivery, or by delivery and endorsement, has an unrestricted claim to the instrument, and can sue other people in his or her own name. The Borrowers signed the original note (negotiable instrument) **giving an unconditional promise to pay**. When this negotiable instrument was added to the RASC Series 2005-EMX4 Trust (a pool of mortgage loans), various **conditions were attached to the note with the result that this note is no longer a negotiable instrument**. The obligation, if it is not extinguished (null and void), is no longer secured by real property (unsecured).

49. Further, borrowers are informed that in addition to cross guarantee agreements there was overcollateralization of borrowers loan as part of the overall scheme of lenders issuance of the note and insurance purchased with the proceeds of sale of the loan to

borrowers and investors in which reserve pools and guarantees of payment were created through payments to third parties, none of which was disclosed to borrowers.

- And lastly, and perhaps most importantly, the appraisal value was shown by subsequent events to be over market. This was an undisclosed cost of the loan obtained, in addition to damages suffered by the fraud committed on borrowers, and that neither the Good Faith Estimate nor any other effort was made to disclose that this was the case.
- The inflated appraisal when added to the other costs of the loan, created a usurious transaction in which the real lender was in fact a private, undisclosed, unregistered, unchartered, unregulated entity that had failed to pay taxes and fees to the State of California, in addition to failing to report its activities within the State.
- The real lender entered into an illegal agreement in which the nominal lender in fact agreed to "lend its license" to the real lender and was paid a fee of approximately 2.5% as a fee to do it, in addition to points and all other costs and fees of closing the "loan", and interest paid from inception of the "loan."
- Since the transaction constituted usury, borrowers hereby declare the obligation on the note null and void and demand treble damages for the original face value of the note.

50. Upon information and belief, the revenue stream deriving from the note and mortgage was eviscerated upon one or more assignments of the note and mortgage to third parties and parsing of obligations as part of the securitization process, some of whom were joined as co-obligors and co-obligees in connection with the closing.

51. To the extent that the lender has been paid on the underlying obligation or has no legal interest therein or in the note or mortgage, or does not have lawful possession of the note or mortgage, the Agent and/or Trustees and/or Lenders and/or Beneficiaries allegations of possession and capacity to institute foreclosure constitute a fraud.

52. Borrowers have requested, but have never received the production of the documents that assigned, sold or otherwise transferred the security interest, the income from the note or the risk of non-payment to one or more parties.

53. Identity theft

- The borrower's identities have been stolen and used for unlawful means including unlawful financial gain.
- Although borrower's initially gave First Priority Financial and Mortgage Lenders Network permission to use their identity in the issuance of a loan to borrowers (of the lenders actual capital, putting the lender at risk), these companies and the others involved, took borrower's identities and used them for numerous other crimes, including (but not limited to) crimes for financial gain and numerous frauds (in fact most, if not all illegal activities specified in this document).

54. Borrowers have been denied equal protection under the law

- Payments and credits have been given to the holder(s) in due course resulting in the holder(s) in due course sustaining no loss under borrower's security

> instrument. However, the parties involved in foreclosing on the borrower have not applied these payments and credits to borrower's account. In fact, the parties involved in foreclosing on borrower's refuse to tell borrower's anything, refuse to investigate borrower's disputes and are trying to conceal information from borrowers.

## Objection Summary

The lack of transparency and in fact, the totality of the transaction violates numerous state and federal laws including SEC laws, Sarbanes-Oxley legislation, IRS statutes, usury, Truth in Lending, deceptive business practices, administrative standards for the practice of professions as well as many other laws and regulations.

Please tell borrowers who the real holder in due course of our note is. The borrowers demand a copy of the "Trust Instrument" under which The Lender is claiming to have authority. The borrowers believe that The Lender does not have authority in this matter. The parties involved in this non-judicial foreclosure are attempting theft, theft by deception, larceny and/or grand larceny.

Therefore, please confirm the filing and recording of the satisfaction of mortgage, send the original note back to me (or tell me where it is), and confirm the retraction of the attempt to collect a debt which is incorrectly stated, improperly computed, improperly obtained, and fraudulently produced and transmitted.

The borrowers demand that the Trustee provide the following documents:

- The following that the Trustee has in its possession or has ever had in its possession:
  - Resolutions
  - Certificates
  - Statements
  - Opinions
  - Reports
  - Documents
  - Orders
  - Other Instruments, if any
  - Officer's Certificate
  - Certificate of Auditors
  - Notices
  - Requests
  - Consents
  - Appraisals
  - Bonds
  - Any other paper or document the Trustee has received
  - Consultations with counsel, if any
  - Consultations with financial advisors, if any

Not Negotiable

- o Consultation with accountants, if any
- o Names of counsel, financial advisors and accountants used
- o Advice from counsel, financial advisors or accountants
- o Opinions from counsel, financial advisors or accountants
- o Investigation results
- o Certificates owned by Trustee
- o Agreement, if any, between Trustee and Securities Administrator for fees and expenses

## Duties of the Trustee

Upon information and belief, the Trustee of borrower's security instrument would be the one to foreclose. Upon information and belief, none of the foreclosing parties are actual Trustees of borrower's security instrument, none of the foreclosing parties are the holder(s) in due course and none of the foreclosing parties are authorized by the holder(s) in due course. Upon information and belief, the following are the duties of the Trustee based on the pooling and services agreement authorized by the RASC Series 2005-EMX4 Trust, to which the borrowers loan has been added (not all inclusive):

1. The Trustee is not responsible for the accuracy or content of any resolution, certificate, statement, opinion, report, document, order or other instrument.
    a. Thus, the Trustee cannot vouch for any allegation or fact or instruction issued with regard to delinquency, default or foreclosure.
2. The Trustee is not relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct.
    a. Thus the borrower's name all Trustees as potential defendants and, should a judicial proceeding be brought up by either party, borrowers will name all Trustees as defendants.
3. The Trustee receives its authority to act from the certificate holders, who are the real holders in due course.
4. The Trustee has no authority to sign a sworn affidavit or give sworn testimony in a non-judicial or judicial proceeding because:
    a. They need know nothing in their own personal knowledge
    b. They can rely on the statements of others
    c. They are not bound by the truth or falsity of any fact.
5. The Trustee and Custodians will not and cannot vouch for the authenticity of the alleged default if there is any break in the chain of title, any defect in the securities, negotiability of the instruments, or any payment received that occurred between any party on behalf of the borrower to any party on behalf of the investor.
    a. Thus, the Trustee and Custodian can provide a letter or document stating what they believe, but they cannot offer a sworn document or sworn testimony.
6. The Trustee is not required to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing

Not Negotiable

Not Negotiable

to do so by the Holders of Certificates evidencing not less than 25% of the Voting Rights allocated to each Class of Certificates.

a. Thus, the borrowers want to know if the Trustee made any investigation. If yes, what did they find out? If yes, why did they do so despite the clear wording that says they didn't have any obligation to investigate and obviously were not expected to perform one? If no, then the Trustee is admitting they do not know the status of the loan, ownership of the note, enforceability of the mortgage or existence of the obligation.

7. Trustee may execute any of the trusts or powers under the pooling and servicing agreement or perform any duties either directly or by or through agents, accountants or attorneys.

a. If the Trustee used the resources of any agents, accountants or attorneys, borrowers would like to know who they are and who is responsible for the negligence, fraud or malpractice of the agents, accountants or attorneys? If there was such an appointment by this Trustee, how was it done? Where is the document that shows what they did and how there were to do it? How do borrowers know NDEx West, LLC is actually representing the Trustee, the Investors, the Sub-Servicer, the Master Servicer or someone else?

8. The Trustee shall not be required to risk or expend its own funds or otherwise incur any financial liability in the performance of any of its duties or in the exercise of any of its rights or powers hereunder if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not assured to it

a. Borrowers would like to know how Trustee got its authority to initiate this foreclosure action against borrowers. Who gave the Trustee the authority? Who is paying the Trustee, its agents, accountants and attorneys? Where are they getting the money for these payments? Is there any undisclosed third party involved? Has the Trustee allowed Champerty, maintenance and conspiracy?

9. The Trustee shall not be deemed to have knowledge of an event of default until a responsible officer of the Trustee shall have received written notice thereof, unless a responsible officer of the Trustee has actual knowledge of the occurrence of an event of default.

a. The Trustee shall be under no obligation to exercise any of the trusts, rights or powers vested in it by the pooling and services agreement or to institute conduct or defend any litigation hereunder or in relation hereto at the request, order or direction of any of the Certificate Holders, pursuant to the pooling and services agreement, unless such Certificate Holders shall have offered to the Trustee reasonable security or indemnity satisfactory to the Trustee against the costs, expenses and liabilities which ay be incurred therein or thereby.

i. Thus since the Trustee is NEVER deemed to have actual knowledge because the Trustee is required ONLY to rely up on the representations of others without doing any investigation on its own, it may never, in its own name bring a foreclosure action or order the foreclosure sale of any property. The certificate holders, unless they have received information

> from a source other than the Trustee (which is hearsay), are getting their information from the Trustee. Thus they are in no better position than the Trustee to know anything.

10. The Trustee is not liable for Certificates or Mortgage Loans. The recitals contained in the pooling and services agreement and in the Certificates shall be taken as the statements of the Depositor and the Trustee assumes no responsibility for their correctness. The Trustee makes no representations as to the validity or sufficiency of the pooling and services agreement or of the Certificates or of any Mortgage Loan or related document. The Trustee shall not be accountable for the use or application by the Depositor, the Securities Administrator or a Servicer of any funds paid to the Depositor, the Securities Administrator or a Servicer in respect of the Mortgage Loans or deposited in or withdrawn from any Collection Account or the Distribution Account by the Depositor, the Securities Administrator or a Servicer.

    a. This gives borrowers the authority to request a judicial proceeding to account for the money that was paid by the borrower and third parties and to account for the alleged assignments or negotiation of notes, whose terms were changed by the very act of pooling and then collateralizing within the Special Purpose Vehicle.

11. The Trustee may own Certificates.

The borrowers would like to know if the Trustee owns any Certificates. If so, where are the Certificates now?

### Written Demand

Please take notice that by this document, the Trustor and/or Borrower of this loan and trust deed hereby requests a beneficiary statement as described in California Civil Code §2943. Such statement must be furnished to the trustor within 21 days of the beneficiary's or trustee's receipt of this request.

1. A true, correct, and complete copy of the note or other evidence of indebtedness with any modification thereto;
    a. The borrowers demand a copy of the actual note along with all attachments, allonges, etc.
2. A Beneficiary statement reflecting:
    a. The amount of the unpaid balance of the obligation secured by the mortgage or deed of trust and the interest rate, together with the total amounts, if any, of all overdue installments of either principal or interest, or both, and their itemization.
    b. The amounts of periodic payments, if any.
    c. The date on which the obligation is due in whole or in part.
    d. The date to which real estate taxes and special assessments have been paid to the extent the information is known to the beneficiary.
    e. The amount of hazard insurance in effect and the term and premium of that insurance to the extent the information is known to the beneficiary.

Not Negotiable

      f.  The amount in an account, if any, maintained for the accumulation of funds with
          which to pay taxes and insurance premiums.

      g.  The nature and the amount, **and a detailed itemization**, of any additional charges,
          costs, or expenses paid or incurred by the beneficiary which have or will become a
          lien on the real property involved and a detailed description, itemization and
          accounting of these charges, costs or expenses.

      h.  Whether the obligation secured by the mortgage or deed of trust can or may be
          transferred to a new borrower.

Please also take notice that by this document, the Trustor and/or Borrower of this loan and
trust deed hereby **requests a Payoff Demand Statement as described in California Civil Code
§2943**. Such statement must be furnished to the trustor within 21 days of the beneficiary's or
trustee's receipt of this request.

By this request, the trustor requests the following information and statement:

A detailed written statement, including breakdown and itemization, setting forth the amounts
required, as of the date of preparation by the beneficiary, to fully satisfy all obligations secured
by the loan that is the subject of this payoff demand statement. The written statement is to
include information reasonably necessary to calculate the payoff amount on a per diem basis
for the period of time, not to exceed 30 days, during which the per diem amount is not changed
by the terms of the note.

By this request, the trustor requests the following information:

Please provide the name(s) of the current holder(s) in due course to which the trustor may
negotiate a settlement and payoff with.

The Borrowers demand that the following information be furnished:

- Provide the borrowers with all loan documents given to the borrowers before closing, at
  closing and after closing which make up the entire loan closing documents. Federal law

requires that these documents be held by all parties (including the original lender and all who have been assigned the note) for a period of 5 years.

- Provide the name(s) of the individual(s) and/ entities that actually provided the capital (lawful money) used to fund the borrowers loan
- Provide the name(s) of all beneficiaries of borrower's loan – past and present
- Provide the name(s) of all Trustee's of borrower's loan – past and present
- Provide proof of all assignments and the name(s) of all parties to which borrower's loan has been assigned
  - o This will include one or more affidavit(s) under oath from one or more competent witnesses with first hand knowledge of these assignments
- Please provide all accountings and proof of ALL payments made to the holder(s) in due course on the borrower's behalf. This includes actual payments made by the borrowers themselves, other borrowers in the loan pool, insurance carriers, servicers, credit default swaps, Federal bailouts, etc. that were made to the holder(s) in due course in regards to the borrower's loan.
  - o This will include one or more affidavit(s) under oath from one or more competent witnesses with first hand knowledge of these payments and/or accountings.

**Loan Modification Offer**

As previously stated by the borrowers, borrowers are willing, able and ready to execute a loan modification with the following terms:

- Loan Amount: $275,000.00
- New Interest Rate: 7.2% fixed
- New Loan Length: 30 years
- New Payment: $1,866.67

Because this offer exceeds the anticipated recovery through foreclosure on a net present value basis (appraisal for $275,000.00 already sent to servicer), the lender is required to accept this offer pursuant to California Civil Code 2823.6. Failure to accept this loan modification allows the borrower to sue for specific performance or wrongful foreclosure in State Court.

California Legislature Findings

1. Recently, the California Legislature found and declared the following in enacting California Civil Code 2923.6 on July 8, 2008:
   a. California is facing an unprecedented threat to its state economy because of skyrocketing residential property foreclosure rates in California. Residential property foreclosures increased sevenfold from 2006 to 2007, in 2007, more

than 84,375 properties were lost to foreclosure in California, and 254,824 loans went into default, the first step in the foreclosure process.

b.  High foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise. According to statistics released by the HOPE NOW Alliance the number of completed California foreclosure sales in 2007 increased almost threefold from 2002 in the first quarter to 5574 in the fourth quarter of that year. Those same statistics report that 10,556 foreclosure sales, almost double the number for the prior quarter, were completed just in the month of January 2008. More foreclosures mean less money for schools, public safety, and other key services.

c.  Under specified circumstances, mortgage lenders and servicers are authorized under their pooling and servicing agreements to modify mortgage loans when the modification is in the best interest of investors. Generally, that modification may be deemed to be in the best interest of investors when the net present value of the income stream of the modified loan is greater than the amount that would be recovered through the disposition of the real property security through a foreclosure sale.

d.  It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure. These Changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided. Those additional foreclosures will further destabilize the housing market with significant, corresponding deleterious effects on the local and state economy.

e.  According to a survey released by the Federal Home Loan Mortgage Corporation (Freddie Mac) on January 31, 2008, 57 percent of the nation's late-paying borrowers do not know their lenders may offer alternative to help them avoid foreclosure.

f.  As reflected in recent government and industry-led efforts to help troubled borrowers, the mortgage foreclosure crisis impacts borrowers not only in nontraditional loans, but also many borrowers in conventional loans.

g.  This act is necessary to avoid unnecessary foreclosures of residential properties and thereby provide stability to California's statewide and regional economies and housing market by requiring early contact and communications between mortgagees, beneficiaries, or authorized agents and specified borrowers to explore options that could avoid foreclosure and by facilitating the modification or restructuring of loans in appropriate circumstances.

Not Negotiable

2. "Operation Malicious Mortgage' is a nationwide operation coordinated by the U.S. Department of Justice and the FBI to identify, arrest, and prosecute mortgage fraud violators." San Diego Union Tribune, June 19, 2008. As shown has been shown, borrowers were victims of such mortgage fraud.

3. "Home ownership is the foundation of the American Dream. Dangerous mortgages have put millions of families in jeopardy of losing their homes." CNN Money, December 24, 2007. The Loan which is the subject of this non-judicial proceeding is of such character.

4. "Finding ways to avoid preventable foreclosures is a legitimate and important concern of public policy. High rates of delinquency and foreclosure can have substantial spillover effects on the housing market, the financial markets and the broader economy. Therefore, doing what we, can to avoid preventable foreclosures is not just in the interest of the lenders and borrowers. It's in everybody's best interest." Ben Bernanke, Federal Reserve Chairman, May 9, 2008. Borrower alleges that the lender, the servicer, investor and/or the foreclosing agent all had the duty to prevent such foreclosure, but thus far have failed to so act.

5. "Most of these homeowners could avoid foreclosure if present loan holders would modify the existing loans by lowering the interest rate and making it fixed, capitalizing the arrearages, and forgiving a portion of the loan. The result would benefit lenders, homeowners, and their communities." CNN Money, id.

6. "Fewer than l%" of homeowners have experienced any help "from the Bush-Paulson plan." San Diego Union Tribune, id. Borrowers' are not of that sliver that have obtained help.

7. The Gravamen of borrower's complaint is that the lender, the servicer and other companies have joined together and violated State and Federal laws which were specifically enacted to protect such abusive, deceptive, and unfair conduct by them, and that they cannot legally enforce a non-judicial foreclosure. VIOLATION OF CALIFORNIA CIVIL CODE 2923.6

8. Borrowers reallege and incorporate by reference the above paragraphs as though set forth fully herein.

9. The lenders' Pooling and Servicing Agreement (hereinafter "PSA") contains a duty to maximize net present value to its investors and related parties.

10. California Civil Code 2823.6 broadens and extends this PSA duty by requiring servicers to accept loan modifications with borrowers.

11. Pursuant to California Civil Code 2823.6(a), a servicer acts in the best interest of all parties if it agrees to or implements a loan modification where the (1) loan is in payment default, and (2) anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

12. California Civil Code 2823.6(b) now provides that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

13. Borrowers' loan is presently in default.

Not Negotiable

14. Borrowers are willing, able, and ready to execute a modification of their loan on the following terms:
    a. New Loan Amount: $275,000.00
    b. New Interest Rate: 7.2%
    c. New Loan Length: 30 years
    d. New Payment: $1,866.67
15. The present fair market value of the property is $275,000.00.
16. The Joint Economic Committee of Congress estimated in June, 2007, that the average foreclosure results in $77,935.00 in costs to the homeowner, lender, local government, and neighbors.
17. Of the $77,935.00 in foreclosure costs, the Joint Economic Committee of Congress estimates that the lender will suffer $50,000.00 in costs in conducting a non-judicial foreclosure on the property, maintaining, rehabilitating, insuring, and reselling the property to a third party. Freddie Mac places this loss higher at $58,759.00.
18. The anticipated recovery through foreclosure on a net present value basis is $225,000.00 or less.
19. The recovery under the proposed loan modification at $275,000.00 exceeds the net present recovery through foreclosure of $225,000.00 by $50,000.00.
20. Pursuant to California Civil Code §2823.6, Defendants are now contractually bound to accept the loan modification as provided above.

**Previous Qualified Written Requests and Written Demands**

Borrowers have sent notice previously to The Lender that borrowers are disputing all aspects of this mortgage, debt and payments and have not received an adequate response, nor any indication the lender has started a serious investigation.  In fact, the lender has continued to report borrowers account delinquent to credit reporting agencies despite multiple dispute requests.  These are flagrant violations of Federal and State laws.  Take note that you are hereby notified that you are not authorized by law to record the Notice of Default.

**Notice Disputing the Validity of Debt**

All parties, with the exception of the holder(s) in due course, are considered debt collectors.

Due to the confusion lenders, servicers and debt collectors have about the definition of validation and verification, the following defines these terms:

Verification

- (law) an **affidavit** attached to a statement **confirming** the truth of that statement
- The act of verifying; the state of being verified; **confirmation**; **authentication**; **Confirmation** by evidence;
- verified - **proved** to be true; "a verified claim"

Not Negotiable

Verification is considered all of the following:

- Confirmation
    - additional **proof** that something that was believed is correct
- Proof
    - any **factual** evidence that helps to establish the **truth** of something
- Validation
    - the act of validating; finding or testing the **truth** of something
- Substantiation
    - **evidence, proof**
- Authentication
    - **attested**: established as genuine
- Attest
    - The act of **witnessing** the execution of an instrument.
    - the action of bearing **witness**
- Witness
    - someone who sees an event and reports what happened
    - (law) a person who **attests** to the genuineness of a document or signature by adding their own signature
    - (law) a person who testifies under oath in a court of law
- Certification
    - documentation: confirmation that some fact or statement is true through the use of documentary evidence

Borrowers are disputing the validity of this debt including the principal, interest, late fees, attorney's fees, foreclosing fees and any and all other fees that have been imposed. Borrowers dispute that the lender provided the lenders own capital (lawful money). Borrowers dispute that the lender was at risk of losing their own capital (lawful money) at such time as the lender allegedly loaned this capital (lawful money) to borrowers. Borrowers expect not to hear from you again until you provide a true and complete verification:

- Verification of debt
    - Include a copy of the original note (all pages front and back)
    - Include ALL attachments thereto (all assignments, allonges etc)
    - An affidavit under oath from a competent witness with first hand knowledge that the debt is valid. This includes:
        - A competent witness with first hand knowledge of the original note itself and the amount of lawful money that was loaned, including various aspects of the contract/promissory note, the check issued, and the accounts used – including the account the check was drawn from and the account the check was deposited into.
        - Execute an affidavit from a witness with first hand knowledge of the alleged debt and return it to the alleged borrowers within 14 days.



Not Negotiable

You are fraudulently concealing from borrowers material information - the payments that have been made to the lender and/or master servicer and/or holders in due course. Borrowers demand to have an accounting specifically of what payments have been sent to the lender and/or master servicer and/or holders in due course. This specifically includes principal and interest advances (hereinafter "payment advances"). If you have stopped making payments and payment advances to the lender and/or master servicer and/or holders in due course, provide an accounting of all payments and payment advances made and the dates on which you did not make payments and payment advances.

This information is not proprietary or confidential. This information is crucial for borrowers to be able to determine the actual amount due to the holder(s) in due course. Not the amounts due to you (the servicer). Borrowers have no contract with you (the servicer), borrowers have a contract with the holder(s) in due course. You are specifically and intentionally interfering with the borrower's ability to negotiate a settlement and payoff, to negotiate a loan modification and/or to negotiate anything with the holder(s) in due course. You have intentionally and continuously violated the terms of the pooling and services agreement to which you have specifically agreed with when you took over servicing of loans from Mortgage Lenders Network and/or EMAX.

**Demand for the Truth**

Alleged Borrowers demand to know who the true holder in due course is. Alleged Borrowers demand to know where all payments to the holder in due course have come from and where they went under this loan. This includes any and all payments made by the alleged borrowers, any and all payments made by any servicer, any and all payments made by any trustee and any and all payments made by any other 3rd party including the following (not all inclusive):

- Other loans in the loan pool that were setup to guarantee the alleged borrowers payments to the holder in due course
- Credit default swaps that were used to guarantee the alleged borrowers payments to the holder in due course
- Other cross collateralizations that were used to guarantee the alleged borrowers payments to the holder in due course
- Reserve pools that were used to guarantee the alleged borrowers payments to the holder in due course
- Treasure department bailouts and/or Federal bailouts that were used to guarantee, payoff or otherwise change the amount due for the alleged borrowers loan
- Any other method or contrivance of financial engineering used to make payments to the holder in due course for the alleged borrowers loan

**ADEQUATE ASSURANCE OF DUE PERFORMANCE**

Not Negotiable

Before Borrowers pay, Borrowers want to know the details of what the entire agreement is, and if you and/or all parties performed according to the agreement.

It has come to the attention of the alleged Borrower, after consulting with Borrower's CPA and researching the United States Code, the corresponding Code of Federal Regulations, the Uniform Commercial Code, certain Federal Reserve Bank Publications, California Civil Code, and sworn SEC filings of some of the companies involved, that there is reason to believe that the alleged Lender is not the Holder in Due Course of the Borrower's promissory note and/or may have breached the agreement concerning the above-referenced, alleged loan or loan of credit.

Since the Borrower paid money in the form of a promissory note to the Lender to perform according to a loan agreement, the Borrower is now hereby requesting Adequate Assurance of Due Performance pursuant to UCC 2-609 that the Lender has performed according to the loan agreement and that the original lender used their own money to purchase the Borrower's promissory note and that the lender did not do any of the following:

- Accept the Borrower's promissory note as money or like money to fund the check or similar instrument that the Lender then lent to the Borrower – which would have an economic effect similar to stealing, counterfeiting and swindling
- Accept capital (lawful money) from an unknown, undisclosed third party and pass this on to Borrowers as if the Lender were loaning Borrower's the Lenders own capital (lawful money), putting the Lenders own capital (lawful money) at risk

The Borrowers are demanding to know that the Lender has also followed the Federal Laws 12 USC Sec. 1831n(a)(2)(A) and/or 12 CFR 741.6(b) regarding Generally Accepted Accounting Principles and Generally Accepted Auditing Standards concerning this loan.

The Borrower is hereby requesting that an authorized officer or agent of the Lender sign and return the attached affidavit (LAWFUL * VERIFICATION OF FULL ACCOUNTING) within 21 days of the date of this notice.  Also attached are affidavits signed by each of the Borrowers stating the Borrower's personal knowledge of the terms of the agreement.  This is the Borrower's good faith attempt to settle this matter and clear up any confusion about the terms of the loan agreement prior to an Administrative Hearing on the matter.  Failure to respond will be deemed a dishonor of this Notice.  The affidavits are evidence that may be used according to the Federal Rules of Evidence to prosecute or enforce any default by you in this matter.

**Warning**

You are now being given 14 days to provide borrowers with the requested affidavits and to notify the borrowers that you have stopped the foreclosure process. If borrower is not notified that this process has been stopped, borrower will retain expert witness and legal assistance (of which the borrower has already consulted) and will use every legal means available to stop the foreclosure, return clear title to the borrowers, clear borrowers credit of derogatory remarks and seek full justice against all people and entities involved in the borrowers loan, securitization and foreclosure. The borrowers will seek full treble, compensatory, punitive and exemplary damages from all parties. You are hereby notified these violations include violations of the following laws, legislation, statutes and/or regulations (not all inclusive): SEC, Sarbanes-Oxley, IRS, RICO, conspiracy, wire fraud, mail fraud, monetary transactions involving more then $10,000 in crime proceeds (in fact the total value of money involved in this scheme exceeds $1,000,000.00), fraud in the factum, fraud in the execution, fraud in the inducement, Predatory Lending, FDCPA/RFDCPA, Fair Credit Reporting, Fair Credit Billing, Gramm-Leach-Bliley Act, RESPA, TILA, HOEPA, etc. (including numerous other Federal and State laws). The borrowers have been driven to the end of their rope and will not stop until justice is served. This is your last chance to stop foreclosure, avoid extensive litigation and to return clear title to the borrowers.

**Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.)**

1. The Lender must provide complete and accurate information to the credit reporting agencies.
2. The Lender has the duty to investigate disputed information from consumers, and The Lender must correct an error, or explain why the credit report is correct within 90 days of receipt of notice of a dispute.
3. The Lender must inform consumers about negative information which has been or is about to be placed on a consumer's credit report within 30 days.

Under § 616 of the Act, (15 U.S.C. § 1681n), borrowers may recover either actual damages or a minimum of $100 and a maximum of $1000 plus punitive damages and reasonable attorney's fees and costs for willful noncompliance with the Act. Under § 617 of the Act, (15 U.S.C. § 1681o), recovery for a negligent violation is of actual damages, plus attorney's fees. Under § 618, a consumer may file suit in state or federal court to enforce the Act, and the statute of limitations is the earlier of 2 years from discovery and 5 years from the violation. (15 U.S.C. § 1681p.)

The lender has not provided complete and accurate information to the credit reporting agencies. The Lender failed in their duty to investigate the disputed information from consumers within 90 days of receipt of a notice of dispute. The Lender failed to correct the error and/or failed to explain why the credit report is correct within 90 days of receipt of notice

Not Negotiable

of a dispute. The Lender failed to inform consumers that negative information which has been placed on borrower's credit report within 30 days.

**Fair Debt Collection Practices Act (15 U.S.C. § 1691-1692 et seq.)**

**Rosenthal Fair Debt Collection Practices Act (California Civil Code § 1788 et seq.)**

Once again, we dispute the validity of the entire debt. We maintain that the full balance you claim as being owed is incorrect. We are not being billed the correct monthly amount. We believe payments have been posted to our account for our benefit that we have not been notified of. We believe that our payments have been commingled.

You are concealing from borrowers the payments you have made to the lender and/or master servicer and/or holders in due course. Borrowers demand to have an accounting specifically of what payments have been sent to the lender and/or master servicer and/or holders in due course. This specifically includes principal and interest advances (hereinafter "payment advances"). If you have stopped making payments and payment advances to the lender and/or master servicer and/or holders in due course, provide an accounting of all payments and payment advances made and the dates on which you did not make payments and payment advances.

This information is not proprietary. This information is critical for borrowers to be able to determine the actual amount due to the holder(s) in due course. Not the amounts due to you (the servicer). Borrowers have no contract with you (the servicer), borrowers have a contract with the holder(s) in due course. You are specifically and intentionally interfering with the borrower's ability to negotiate a settlement and payoff, to negotiate a loan modification and/or to negotiate anything. You have intentionally and continuously violated the terms of the pooling and services agreement to which you have specifically agreed with when you took over servicing of loans from Mortgage Lenders Network and/or EMAX.

**Title 26, Title V of Gramm-Leach-Bliley Act (15 U.S.C. § 6801 et seq)**

In regards to the Gramm-Leach-Bliley Act, please answer the following questions:

1. Have you transferred our personally identifiable, nonpublic financial information to non-affiliated 3rd parties?
2. Have we received written or electronic notices required under this law (or any Federal or State privacy law) from all parties who have been given our personally identifiable, nonpublic financial information before, during and after the origination of our loan?

Please answer the following questions in regards to the borrower's privacy:

1. Have all parties involved in our loan taken adequate procedures to protect our privacy and/or our personally identifiable information?

2. Have all parties notified the borrower's that they have our personal information and/or our personally identifiable information?

3. For each 3rd party that, because of our loan, is in possession of our personal information and/or personally identifiable information, please provide the law or authorization that allowed them to acquire and maintain this information.

4. Has the original lender and/or any assigns and/or any servicers and/or any other party involved in our loan process disclosed our financial records to a 3rd party without legal process or consent?

Complaint regarding privacy:

- Borrowers have never received a privacy notice from any of the companies involved in this scheme. These companies have retained the borrower's personally identifiable information, financial information, note and/or security instrument, etc. They are attempting to hide the fact that they have this information and that they have never disclosed anything to borrower's (regarding privacy or otherwise). Even though borrowers have notified many of these companies of borrowers dispute, they have failed to respond to any of borrower's requests. The companies that are involved (that are known for sure) are the following companies:
    - GMAC and/or Residential Funding Company (AKA Residential Funding Corporation)
    - U.S. Bank National Association
    - Mortgage Lenders Network
    - First Priority Financial
    - Fidelity National Title Company of California
    - Fidelity National Title Insurance Company
    - America's Servicing Company
    - Richard L. Wessing, Appraiser
    - Credit Reporting Agencies:
        - Experian
        - TransUnion
        - Equifax
    - NDEx West, LLC
    - Mortgage Electronic Registration Systems, Inc.
    - Wells Fargo Home Mortgage
    - Emax Financial Group, LLC
    - Residential Asset Securities Corporation
    - RASC  Series 2005-EMX4 Trust
- Companies that may be involved are as follows:
    - HomeWell Mortgage
    - ShoreLine Capital Group
    - The Mortgage Outlet
    - Loans America, LLC
    - Wells Fargo Financial BR
    - Deutsche Bank AG
- Other companies and/or entities that are unknown are also involved:

- o RASC Series 2005-EMX4 Trust.  Upon information and belief, this trust is not allowed to own assets, yet the borrower's note is part of a pool belonging to this Trust.  This Trust also is the issuer of Certificates (Residential Asset Securities Corporation Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX4)
- o Residential Funding Securities Corporation (bookrunner and underwriter)
- o Barclays Capital (bookrunner and underwriter)
- o Cede & Co. (Depository and/or Clearing Corporation and/or clearing agency)
- o And others

## Identity Theft

The borrower's identities have been stolen and their personal information has been misused. Identity theft is a catch-all term for crimes involving illegal usage of another individual's identity and/or personal information.  The Borrower's originally authorized the use of their personal information for the obtaining of a loan from Mortgage Lender's Network (hereinafter "MLN"). This loan was to be the lending of MLN's own capital (money), put at risk.  The loan given was a predatory loan with an inflated appraisal in which the true terms of the loan were concealed from the borrowers, excess fees were paid outside of closing (or without borrowers knowledge) and all parties involved were aware of the true terms with the exception of the borrowers.  In actuality, another "lender" provided the money to MLN and this "lender" used financial engineering to create a complex transaction in which the borrower's security instrument was pooled with other borrowers to fraudulently issue illegal and unregistered securities to investors.  It is well established that these securities were fraudulently appraised at a high value.  Numerous other crimes were committed, as described elsewhere in this document. Besides federal law violations, these actions violate California Penal Code Sections 528-539.

## Other Violations

### Sarbanes-Oxley Violations

Numerous Sarbanes-Oxley violations have occurred.  Here are just a few instances in regards to borrower's loan/securitization transaction.  Note that without these companies enticing borrower to sign the loan application, the borrower's security instrument could never have been created and certificates could never have been created and sold to investors.  The money trail goes fully from the investors to the borrowers and from the borrowers back to the investors.  This money trail for the borrower's loan and securitization is well in excess of $1,000,000.00.

### Sarbanes-Oxley sections 302(a)(4) and 404

- The companies involved in this scheme have assigned and transferred borrowers note (and/or security instrument) numerous times.  In fact, borrower's actual note (and/or security instrument) has not been transferred as REQUIRED to any of these companies (the companies include, but are not limited to Mortgage Lenders Network, Mortgage Electronic Registration Systems, EMAX Financial Group, GMAC and/or Residential

Funding Company and/or Residential Funding Corporation, Residential Asset Security Corporation, and numerous other companies /entities). The lack of controls over this process is known to all of these companies AND their executives AND to the auditors of these companies. This practice is well accepted and regarded as the status quo.

- The actual security instrument itself has been lost, stolen, destroyed, misplaced or is counterfeit. All of the companies involved lack controls to keep this from happening. Pursuant to SEC in Rule 17f-1 — Requirements for Reporting and Inquiry with Respect to Missing, Lost, Counterfeit or Stolen Securities
- The companies involved in this scheme lacked the proper controls in the following areas:
  - o Prevent or detect that the originator of the loan, in agreement with others, failed to loan the borrower's the originators own capital (lawful money) of which the originator was at risk of loss.
  - o Prevent or detect any illegal or improper activities before assigning, selling and/or transferring a note or security instrument to another party
  - o Prevent or detect any illegal or improper activities before creating and/or issuing a security instrument to another party
  - o Prevent or detect that the loans in the pool of mortgages would lose their negotiability when conditions were attached to the notes. The conditions were attached by various documents including (but not limited to), the pooling and services agreement under which the borrowers mortgage falls under in the RASC Series 2005-EMX4 Trust.
  - o Prevent or detect any illegal or improper activities before assigning, selling, creating or transferring any certificates issued based on borrower's security instrument(s)
  - o Prevent or detect various other illegal activities that have occurred. The illegal and/or improper activities include (or may include) any or all of the following (not all inclusive):
    - *TILA violations
    - *RESPA violations
    - *HOESPA violations
    - *Usury
    - *Identity theft
      - Although borrower's initially gave First Priority Financial and Mortgage Lenders Network permission to use their identity in the issuance of a loan to borrowers (of the lenders actual capital, putting the lender at risk), these companies and the others involved, took borrower's identity and used it for numerous other crimes, including crimes for financial gain and numerous frauds (in fact most, if not all illegal activities specified in this document). Not only does this violate federal laws, it violates the California Penal Code Sections 528-539.
    - *Failure to perfect note and/or security instrument

Not Negotiable

- *Failure to record assignments (as required by Federal law and California state law)
- *Fraudulent inflated appraisal of borrower's property
- *Fraudulent inflated appraisals of certificates of mortgage backed securities issued from borrowers loan pool (RASC Series 2005-EMX4 Trust)
- *Fraud in the factum regarding borrower's loan and security instrument
- *Fraud in the inducement regarding borrower's loan and security instrument
- *Fraud in the execution regarding borrower's loan and security instrument
- *Fraudulent concealment by all parties regarding borrower's loan and security instrument
- *Complete and utter failure by ALL parties involved to fulfill fiduciary duties towards borrower's
- *Failure to acknowledge and respond to borrower's request for information
- *Market manipulation regarding borrower's security instrument(s) and/or certificates issued based on borrower's security instrument(s)
- *Unregulated, unlicensed and illegal financial institutions
- *Unfair and deceptive business practices
- *Breach of contract
- *Unfair and deceptive practices with regards to debt collection practices (Federal laws and California laws)
- *Unfair credit reporting practices
- *Unfair billing practices
- GAAP violations
- GAAS violations
- Irregular bookkeeping
- *Misapplication of funds
- *Misappropriation of funds
- *Commingling of funds
- *Concealing accountings and payments made by others including the sub-servicer, master servicer and/or successor master servicer (mortgage pooling Trustee)
- Auditing violations
- *Perjury
- Forgery
- *RICO violations
- *Conspiracy
- *Wire Fraud
- *Mail Fraud
- *Mail Fraud affecting a financial institution
- False statements

- *Money transactions involving more then $10,000.00 in criminal proceeds
- *Improper and illegal loan servicing practices
- *Failure to fulfill loss mitigation required by agreements and Federal/State laws and guidelines
- *All companies involved in this scheme have denied, and continue to deny, equal protection of the law as guaranteed to borrowers according to the 14th Amendment.

*Items with an asterisk: Borrower has determined that these illegal activities have taken place. In many cases the borrowers have direct evidence.*

Had borrowers been given the opportunity to know the true terms of the loan transaction in which they were entering, they never would have entered into the transaction. All parties at closing were aware of the true terms and all parties concealed material information.

### U.S. Securities and Exchange Commission

SEC tip or complaint regarding Rule 17F-1: Requirements for Reporting and Inquiry with Respect to Missing, Lost, Counterfeit or Stolen Securities.

- Reporting is to be made to the SEC and/or the FBI if securities are stolen, missing, lost, destroyed or counterfeit. This reporting needs to occur within one day (or under some circumstances, two days) from the discovery of the security being stolen, missing, lost, destroyed or counterfeit. It is unknown when this happened to borrower's security instrument (all information regarding borrower's security instruments has been hidden and concealed from borrowers). However, it is the regular pattern and practice of all companies involved in this scheme to pass the security instrument through various means except for the physical transfer of the security instrument. Therefore, all companies have knowledge that they have never received the physical security instrument and have passed on this security instrument to other parties in various means excluding physical transfer of the original.
- Because borrowers were tricked into issuing this security instrument and it was concealed that this security instrument had monetary value, borrowers hereby declare that this instrument has been stolen from them. This security instrument was created through FRAUD and no good title passes with fraud.
- Because this security instrument has been lost, intentionally misplaced, destroyed, is counterfeit and/or has been stolen, borrower's now declare that a report must be filed by any and all companies who have had access to this security instrument, actually have a copy of this security instrument, and/or who declare that they are the actual holder of this security instrument.
- Borrower's are not in possession of this security instrument and do not have the means to file a report on this security instrument. The transferring, assigning, selling and/or giving away of this security instrument has in fact been hidden and concealed from the borrowers.

- Because GMAC and/or Residential Funding Corporation and/or Residential Funding Company was the actual "original" lender and the party who decided to securitize borrowers loan, and who created the process for issuing certificates based on borrower's loan, the borrower's hereby declare that GMAC and/or Residential Funding Corporation and/or Residential Funding Company is fully responsible for determining at what point the borrower's security was lost, stolen, misplaced, destroyed and/or counterfeited.

SEC complaint regarding fraudulent or unregistered offer or sale of securities. These violations of the federal securities laws have been egregious and involved the highest degree of scienter. Borrowers have been irreparably harmed, have sustained financial losses, have suffered emotional stress and are on the verge of loosing their home to a party that is not the real party in interest (the party is not the holder in due course). The fraudulent foreclosure is a direct result of The Lenders fraudulent offer or sale of securities.

- All parties involved in this scheme directly, or indirectly, singly or in concert, have engaged and are engaging, in acts, practices, schemes and courses of business that may constitute violations of Sections 206(1) and 206(2) of the Advisors Act of 1940 ("Advisors Act") [15 U.S.C. §§ 80b-6(1),2()], may constitute violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a) and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17C.F.R. § 240.10b-5 (the "antifraud provisions"). Under the antifraud provisions, the borrower's must establish that, the offer or sale of a security, or in connection with the purchase or sale of a security, a party has acted with scienter in making a material misrepresentation or omission. SEC v. Hasho, 784 F. Supp. 1059, 1106 (S.D.N.Y. 1992) (citations omitted); see also Basic, Inc. v. Levinson, 485 U.S. 224, 235 n.13 (1988) (Section 10(b) of the Exchange Act and Rule 10b-5); United States v. Naftalin, 441 U.S. 768, 772, 778 (1979) (Section 17(a) of the Securities Act);
- The Lender made representations regarding the loans added to the loan pool, including borrower's loans. They misrepresented and/or omitted material facts about these loans. In addition, as will be shown below, The Lender made various other material misrepresentations and omissions.
- GMAC and/or GMAC subsidiary Residential Funding Corporation (AKA Residential Funding Company) provided the money to the originator who funded borrower's residential mortgage (refinance) for property located at 2690 Brown Bear Court Cool CA 95614 on or about 9/7/2005. The note borrower's signed was securitized, added into a pool and sold to investors. There were many companies involved in this scheme (we are still trying to figure out which ones). The companies involved in this scheme fraudulently concealed material facts that should have been disclosed to the borrowers as well as to the unwitting investors who purchased securities created from this pool. Numerous laws were broken including SEC violations, Sarbanes Oxley violations as well as other Federal and State laws. The lack of transparency throughout this entire scheme has resulted in the transfer in excess of $1,000,000.00 of criminal proceeds to various individuals and entities. Borrowers have sustained a loss of their money through overcharges, excessive fees, usury, etc. (this list is not all inclusive). Borrowers have requested information from some, if not all, of these

companies regarding the illegal and unauthorized transactions that have taken place using the borrower's identities – namely by the use of borrower's name, credit and/or security instrument. However, minimal information has been provided by the sub-servicer, who has not started any investigation and in fact, has declared that much of the information pertaining to the borrower's loan is "proprietary" and only available with a subpoena. That is about as far away from transparency as a company can get (the sub-servicer is ASC, which is really Wells Fargo Bank). The sub-servicer tactics and lack of fiduciary duty to borrower does not align with sworn testimony in SEC filings by the other companies (RFC and/or RASC) that the servicing companies abide by RFC and/or RASC's servicing standards. Borrower's make known to all that these companies are in no way transparent and they continue to hide and conceal material information in order to deceive borrowers. Borrower's have plenty of documentation that can be provided upon request to the SEC and any governmental or police entity.

- Fraudulent and/or unregistered offer and sale of securities has occurred by virtue of the fact that securitization of the borrowers loan introduced many new parties into the transaction, many of whom were not disclosed, each of whom received compensation that was not disclosed, each of whom violated Truth in lending laws, Unfair and Deceptive Trade Practices Acts, and Securities laws and rules.

- The fees paid to others are greater then the principal amount of the borrower's initial loan. The initial loan was for $500,000.00. This means the amount of money involved in the fraud and other illegal activities was in excess of $1,000,000.00. The companies involved are financial institutions. The borrowers have made known numerous times to the parties involved that extensive fraud was committed. The allegations of this fraud were never taken seriously and never fully investigated by the parties involved in this loan and securities transactions. Numerous government agencies should have been notified, including the SEC, the OCC, the Department of the Treasury, the Secret Service, the FBI, the Federal Trade Commission, the HUD – Office of the Inspector General and the Federal Deposit Insurance Corporation. This list is not all inclusive. In addition, a Suspicious Activity Reports (SAR reports) should have been filed by employees of any or all of the following companies (who were all notified of the illegal and/or irregular activities by the borrowers):
  - America's Servicing Company AKA Wells Fargo Bank National Association
  - GMAC, LLC
  - GMAC ResCap
  - Residential Funding Company AKA Residential Funding Corporation
  - Residential Asset Securities Corporation
  - Residential Funding Securities, LLC
  - U.S. Bank National Association

- The entire process was conceived and setup to offer those involved plausible deniability for the actions of others. However, this is a single transaction that lacks transparency, violates numerous laws, and is unjust, unethical and immoral. The transaction was financially engineered for one purpose; to unjustly enrich those people and companies "in the middle" between the closing where borrower's signature creates a security instrument, to the selling of fraudulent securities to the investors. Without obtaining the borrower's signature on the security instrument, the Certificates could not have been created from the loan pool

Not Negotiable

and issued to investors. Therefore, the entire securitization process consists of one single complex transaction born in fraud, deception and unjust enrichment.

- It is well established that the appraisals of the Certificates issued from the pool were fraudulently inflated and that there is no basis for the ratings given to the various tranches; especially the highest rated tranches.
- There are material misrepresentations or omissions made such as the following:
    - In the event a default is not cured, the servicer is required to "buyback" the mortgage from the pool. However, the pool is a Trust which by law cannot own assets. Therefore, the servicer cannot legally purchase a mortgage from the "pool".
    - The sub-servicer, master-servicer and successor master servicer (Trustee) are all required to cover payments from borrowers in the event borrowers do not make a payment. The sub-servicer is first required to advance this missing payment. In the event the sub-servicer cannot or does not make this payment the master servicer must advance this payment. In the event the master servicer does not receive this payment, the master servicer must advance this payment; and so on. What this materially misses is that in order to foreclose on the borrower's who fail to make their payments; the "holder(s) in due course" must have sustained a loss. Because all payments are being advanced by others (without the borrower's knowledge), no loss is sustained, and any foreclosure that would thus ensue, would be fraudulently based. This, in fact, is and has been standard operating procedure.
    - The servicers of these loans, and in fact all parties involved, have a fiduciary duty to borrower's that is routinely trampled. Anytime the borrower's dispute a payment, the servicer and/or The Lender is required to investigate this dispute. During the course of the investigation, The Lender cannot post derogatory remarks regarding the portion that is being disputed. Additionally, The Lender is required to report that the borrower is disputing the payment(s) and/or debt. It is standard operating procedure for The Lender to ignore all of this.
    - Any company that is part of this scheme (any part of The Lender), that maintains or has access to borrower's personally identifiable information, is required by law to send borrower's a privacy notice once a year. It is standard operating procedure that this law is ignored. Specifically, the borrower's have direct proof that U.S. Bank National Association and Residential Funding Company (FKA Residential Funding Corporation) have both violated these privacy laws. Borrowers have indirect proof that others have violated this law as well. These other companies were introduced through the securitization and pooling process, have access to borrower's personally identifiable information, and have never sent borrower's a privacy notice.
    - The Lender has failed to perfect title to borrower's security instrument. It is standard operating procedure that assignments are done electronically and that the actual documents are not transferred (the security instrument itself along with all assignments and allonges). The failure to pass the actual original security instrument and attach an assignment to the original security instrument when the security instrument is assigned, transferred and/or sold, VOIDS the security instrument and renders it unenforceable. This is standard operating procedure for

the companies involved in securitizing mortgages and adding them into pools of mortgages.

o Each party involved in this scheme who received the borrowers security instrument electronically but did not receive the actual physical original document (along with all prior assignments and allonges) had full knowledge that the original security instrument is/was lost, misplaced, stolen, destroyed or counterfeit. Many, if not all, then went on to assign, transfer and/or sell this security instrument in which they did not have possession of. As a result of the foregoing, each of these parties knowingly violated the following:

- SEC Rule 17F-1 (they knowingly failed to file a report within the required timeframe)
- Anti-fraud statutes (They knowingly represented that they received a security they purchased. They knowingly assigned, transferred and/or sold a security they did not legally have possession of or own)

o Pursuant to California Civil Code 2932, when a security instrument is assigned, the assignment must be recorded. Every assignment to date has violated California law. Because the security instrument was never perfected, the security instrument is null and void – and unenforceable.

o The Lender claims that making MERS the Beneficiary of the Security Instrument allows them to use a "secondary market" to "electronically" record assignments, bypassing conventional law. There is no law that authorizes or allows The Lender to by pass the recording of assignments in the county to which the property resides.

o The Lender may claim the security instrument has not been assigned, only the "obligation to pay" under the security instrument. Splitting the obligation to pay from the security instrument itself voids the security instrument and renders it unenforceable.

o Mortgage Lenders Network, as the original "lender" under the security instrument, has been paid in full plus a fee for "standing in" for the actual concealed lender. Because the security instrument has been paid in full, the note is not enforceable and future assignments are fraudulent and thus null and void.

o Mortgage Lenders Network declared bankruptcy and did not list the borrower's security instrument as an asset.

o MERS by their own admission, never retains borrowers security instruments. Thus MERS has no authority to make any assignment under the note. In addition, MERS is banned in California and does not have authority to do anything in regards to borrower's security instrument.

o The Lender maintains that they have possession of the security instrument while also maintaining that Mortgage Lenders Network (and/or MERS) has possession of the security instrument. These two are mutually exclusive. One or the other, but not both, can be in possession of the security instrument. In addition, no party is in possession of the borrower's security instrument because it has been lost, stolen, misplaced, destroyed or counterfeit.

o Concealing or omitting full disclosure of these activities from investors, The Lender made materially false statements in sworn SEC filings and disclosures.

- o All of the misrepresentations and omissions above are material. Information is considered material if there is a substantial likelihood that a reasonable investor would consider such information important in making an investment decision or if the information would significantly alter the total mix of available information. Basic, 485 U.S. at 231-32 (previously referenced above). Reasonable investors obviously would consider material the bogus nature of the transactions at issue, not to mention the elaborate fraudulent devices The Lender employed to create the appearance that these mortgages and pools of mortgages were secure and worth their over inflated rating. See SEC v. Research Automation Corp, 585 F.2d 31, 35-36 (2d Cir. 1978) (misleading statements and omissions concerning the use of money raised from investors were material as matter of law); see also United States v. Siegal, 717 F.2d 9, 14-15 (2d Cir. 1983) (holding that failure to disclose the misappropriation of more than $100,000 was a fact which would be important to a stockholder in his decision making).

- The Lender acted with scienter, which is a mental state embracing intent to deceive, manipulate, or fraud. Ernst & Ernst & Hochfelder, et all., 425 U.S. 185, 193 (1976). (A violation of Section 17(a)(1) of the Securities Act also requires a showing of scienter. However, the Supreme Court has held that scienter need not be shown in order to establish violations of Sections 17(a)(2) and (3) of the Securities Act. Aaron v. SEC, 446 U.S. 680, 696-97 (1980)). The Second Circuit has held that reckless conduct generally satisfies the scienter requirement. See e.g. SEC v. McNulty, 137 F.3d 732, 741 (2d Cir. 1998) (holding that scienter required for a Section 10(b) or Rule 10b-5 claim "may be established through a showing of a reckless disregard for the truth"), citing Rolf v. Blyth, Eastman, Dillon & Co., 570 F.2d 38, 46 (2d Cir. 1978); Sirota v. Solitron Devices, Inc., 673 F.2d 566, 573 (2d Cir. 1982).

- As noted above, The Lender has committed numerous frauds, misrepresentations and/or omissions, and the evidence establishes that The Lender is well aware of all other aspects of it.

- Borrowers also satisfy the "in connection with" and "offer or sale" requirement of a securities fraud violation. The Lender turned the borrower's note into a security instrument and also offered and/or sold Certificates (security instruments) created from the pool of mortgages to which the borrower's mortgage was but one. These are "securities" as defined by the federal securities laws, 15 U.S.C. § 78c(a)(10), and The Lenders fraudulent transactions plainly were "in connection with" the sale of those notes, and in their "offer and sale." If any of the securities were fictitious, lost, misplaced, stolen, destroyed or counterfeit is irrelevant. Fictitious, lost, misplaced, stolen, destroyed or counterfeit securities are subject to the antifraud provisions of the federal securities laws despite the fact that the securities do not or may not exist. SEC v. Gallard, 1997 WL 767570, at *3 (S.D.N.Y. Dec. 10, 1997) ("the antifraud provisions relied upon by the Commission are applicable even where, as here, the "security" at issue does not exist." (internal citations omitted); see also S.E. C. v. Lauer, 52 F.3d 667, 671 (7th Cir. 1995) ("An elementary form of [] misrepresentation is misrepresenting an interest as a security when it is nothing of the kind.") (internal citations omitted); and SEC v. Roor, 2004 WL 1933578, at *5 (S.D.N.Y. Aug.

Not Negotiable

30, 2004). Also, The Lender may have committed investment advisory fraud as this scheme may have been committed through the accounts of advisory clients.

- Residential Funding Company, LLC (FKA Residential Funding Corporation), U.S. Bank National Association, Residential Asset Securities Corporation, Residential Funding Securities Corporation and Credit Suisse First Boston, LLC as well as the SPE/SPV that issued the securities are likely to continue their illegal conduct. The Lender is likely to violate securities laws again. If this matter leads to litigation, borrowers will demand emergency relief in that unless enjoined, The Lender will violate securities laws again. SEC v. Cavanagh, 155 F.3d at 135. As the Second Circuit instructed in Management Dynamics, Inc. (515 F.2d at 807):
  - ○ Certainly, the commission of past illegal conduct is highly suggestive of the likelihood of future violations....[F]actors suggesting that the infraction might not have been an isolated occurrence are always relevant....Moreover, appellate courts have repeatedly cautioned that cessation of illegal activity does not ipso facto justify the denial of an injunction.
- In assessing likelihood of repetition, courts also look to such factors as the character of the violation, the degree of scienter involved, and the degree to which an alleged defendant's occupation or activities may present future opportunities to violate the law. E.g., Cavanagh, 155 F.3d at 135; SEC v. Commonwealth Chem. Secs. Inc., 574 F.2d 90, 100-01 (2d cir. 1978); SEC v. Musella, 578 F. Supp. 425, 444 (S.D.N.Y. 1984).
- As demonstrated above, The Lenders violations of the federal securities laws have been egregious and exhibited a high degree of scienter. Most significantly, as of late, The Lender fails to respond to legitimate disputes raised by the borrower, violates the law by reporting on disputed payments, continues to conceal material facts, continues to misrepresent themselves to borrower's and continues to allow borrowers to suffer unfair and deceptive debt collection through the use of a 3rd party debt collector. Given the nature of The Lender's violations, and The Lenders persistence in continuing their fraud, if litigation is brought by either party, the borrower's will seek a temporary restraining order which is warranted to prevent The Lender from any additional violations.

Once again, had borrowers been given the opportunity to know the true terms of the loan transaction in which they were entering, they never would have entered into the transaction. All parties at closing were aware of the true terms and all parties concealed material information.

**Internal Revenue Service**
Various crimes have been committed. This includes crimes described elsewhere in this document. Of specific interest to the IRS is the fact that these companies have sold and transferred all rights to the borrower's loan application numerous times (usually for 100% or more). The companies use various schemes to accomplish this including dual reporting such as the following:

- On one instance the assignment and sale of the mortgage is declared as full and without recourse for purposes of bankruptcy protection. For IRS and tax purposes, it is not considered a sale.



This may be well and good and unethical, but now companies are foreclosing on borrower's property under the authority of one or more companies that have already assigned and/or sold the mortgage without recourse. In addition, all fees paid to any party involved in this entire loan transaction were to be disclosed to the borrowers. However, most of the parties involved in the transaction, as well as the fees and kickbacks paid between and among them, were not disclosed.

Another special note is that a so called Trustee, US Bank National Association is the trustee for an SPE and/or SPV. The Trust for which US Bank National Association is an alleged Trustee, is not allowed by law to maintain any assets. However, US Bank National Association is declaring that this trust does in fact have an asset (borrower's loan and/or security instrument) and US Bank National Association is declaring that they have the authority to foreclose on borrower's property because the trust is in possession of this asset.

The crimes these companies are committing appear to be a normal part of their regular operating procedures. These companies and this loan transaction is an example of conspiracy and racketeering at its worst. Not to mention that these types of crimes are what is at the heart of the financial meltdown.

The companies who may be involved in this scheme are the following (not all inclusive):

- Mortgage Lenders Network
- GMAC
- Residential Funding Company and/or Residential Funding Corporation
- US Bank National Association
- Fidelity National Title Company of California
- America's Servicing Company
- NDEx West LLC
- Mortgage Electronic Registration Systems, Inc.
- Wells Fargo Home Mortgage
- Emax Financial Group, LLC
- Residential Asset Securities Corporation
- HomeWell Mortgage
- ShoreLine Capital Group
- The Mortgage Outlet
- Loans America, LLC
- Wells Fargo Financial BR
  - Deutsche Bank AG

Alleged violation of Tax Laws committed by some or all of these companies:

- Organized Crime
- Kickbacks
- False/Altered Documents
- Failure to Pay Tax
- Unreported Income

Not Negotiable

THIS LETTER SHALL NOT BE CONSTRUED AS A WAIVER OR ELECTION OF REMEDIES.

Govern yourselves accordingly!

Respectfully,



Daniel M. Edstrom and Teri A. Edstrom
2690 Brown Bear Court
Cool, CA 95614

Not Negotiable

Borrowers also HEREBY CERTIFY that a true and correct copy of the foregoing Request to Enjoin, Objection to Trustee, Duties of the Trustee, Loan Modification Offer, Notice Disputing the Validity of Debt, Adequate Assurance of Due Performance, Notice of Identity Theft and Notice of Other Violations, was sent to the alleged lender and/or debt collector and/or original Trustee and/or duly appointed Substituted Trustee and/or acting agent for the Trustee or Beneficiary and/or holder in due course at 15000 Surveyor Boulevard, Suite 500 Addison Texas 75001-9013 this 23rd day of January, 2009.

Daniel M. Edstrom and Teri A. Edstrom
2690 Brown Bear Court
Cool, CA 95614

# EXHIBIT 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF DANIEL EDSTROM

1    THOMAS K. AGAWA
     State Bar No. 175952
2    DARLENE P. HERNANDEZ
     State Bar No. 203050
3    BARRETT DAFFIN FRAPPIER
     TREDER & WEISS, LLP
4    20955 Pathfinder Road, Suite 300
     Diamond Bar, California 91765
5        Tel: (626) 371-7032
     Email: ThomasA@BDFGroup.com
6       Email: edcaecf@BDFGroup.com
     Attorneys for Defendant NDEX WEST, LLC
7

8

9                **UNITED STATES BANKRUPTCY COURT**

10      **EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION**

11   DANIEL MAJOR EDSTROM,                    CASE NO.:    12-29353-B-11

12              Debtor,                       CHAPTER:    11

13   _____         A.P. No.    12-02546-B

14   DANIEL MAJOR EDSTROM, an                  DC NO.:    EAT-001
     individual, and TERI ANNE
15   EDSTROM, an individual,                  **DEFENDANT NDeX WEST, LLC'S**
                                              **RESPONSES TO**
16              Plaintiffs,                   **DEBTOR/PLAINTIFF DANIEL**
           v.                                 **MAJOR EDSTROM'S & PLAINTIFF**
17                                            **TERI ANNE EDSTROM'S**
     NDEX WEST, LLC, a Delaware limited       **REQUESTS FOR ADMISSION (SET**
18   liability company; WELLS FARGO           **NO. 1) PURSUANT TO FED.**
     BANK, N.A.; AMERICA'S                    **BANKR. R. P. 7036, FED. R. CIV. P.**
19   SERVICING COMPANY, a division of         **36**
     Wells Fargo Home Mortgage; U.S.
20   BANK NATIONAL ASSOCIATION;
     RESIDENTIAL FUNDING COMPANY              Ctrm.: 32
21   LLC; GMAC RESCAP, a wholly owned         Hon. Thomas C. Holman
     subsidiary of GMAC Financial Services;   501 I Street, 6th Floor, Sacramento,
22   GMAC LLC; ALLY BANK fka GMAC             California 95814, Tel.: (916) 930-4473
     Bank; RESIDENTIAL ASSET
23   SECURITIES CORPORATION RASC
     SERIES 2006-EMX4 TRUST;
24   MORTGAGE ELECTRONIC
     REGISTRATION SYSTEMS (MERS);
25   FIRST PRIORITY FINANCIAL, INC. a
     California corporation and BRENT
26   STAGG, an Individual; and DOES 1-
     10,000,
27
                Defendants.
28   _____

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

1

2  PROPOUNDING PARTIES:    Debtor/Plaintiff DANIEL MAJOR EDSTROM & Plaintiff
                          TERI ANNE EDSTROM

3  RESPONDING PARTY:       Defendant NDeX WEST, LLC, A Delaware limited
                          liability company
4

5  SET NO.                 1

6

7                    **PRELIMINARY STATEMENT**

8          1.    This Responding Party's Responses are based upon its present
9  knowledge, information and belief.    This Responding Party has not completed its
10 investigation and discovery of the facts relating to this proceeding. Without acknowledging
11 any obligation to do so, except as required and allowed by applicable law, this Responding
12 Party reserves the right to amend or supplement these Responses and produce additional
13 documents when and if new or additional material or information becomes available, if
14 necessary, under the California Code of Civil Procedure and/or with leave of Court.

15         2.    Nothing contained in these Responses should be construed as an
16 admission as to the relevance or admissibility of any documents referenced unless made in
17 conjunction with a specific request to admit the genuiness of specific documents under Cal.
18 Civ. Proc. Code § 2033.010 et seq., Cal. Evid. Code § 351 et seq.

19         3.    The following Responses are submitted without prejudice to this
20 Responding Party's right to produce evidence of any subsequently discovered fact or facts
21 and/or documents which this Responding Party may later recall or discover pursuant to
22 applicable California law, California procedures and/or orders of this Court. The Responses
23 contained herein are made in a good faith effort to supply as much information as is
24 presently known and to provide good faith Responses (and/or objections) as expressly
25 allowed by Cal. Civ. Proc. Code §§ 2031.210 et seq. & 2033.210 et seq., but in no way
26 prejudices this Responding Party's ability to engage in further discovery, research or analysis

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

2

1  | pursuant to Court order and/or applicable law.

2  |          4.       This Responding Party objects to the extent this discovery seeks
3  | disclosure of attorney-client communications and attorney work product pursuant to Cal.
4  | Evid. Code § 950 et seq. & Cal. Civ. Proc. Code § 2018.010 et seq., respectively. Such
5  | documents are described as memoranda (legal and factual), notes, legal research and
6  | analyses and are in the possession of the attorney(s) of record.   These objections are
7  | incorporated into each.

8  |                                      **RESPONSES**

9  |                       REQUEST FOR ADMISSION NO. 1.

10 |          Admit that US BANK NATIONAL ASSOCIATION AS TRUSTEE [means
11 | the entity that was the grantor of the 1/26/2009 Substitution of Trustee in regards to Plaintiffs
12 | Subject Loan, and the grantee of the 7/7/2009 Assignment of Deed of Trust in regards to
13 | Plaintiffs Subject Loan] is NOT the assignee/beneficiary for the Subject Loan Deed of Trust.

14 |          RESPONSE: Deny.

15 |          REQUEST FOR ADMISSION NO. 2.

16 |          Admit that US BANK NATIONAL ASSOCIATION AS TRUSTEE BY
17 | RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING
18 | CORPORATION ATTORNEY IN FACT [means the entity that was the grantee of the
19 | 2/6/2009 Assignment of Deed of Trust in regards to Plaintiffs Subject Loan] is NOT the
20 | assignee/beneficiary for the Subject Loan Deed of Trust.

21 |          RESPONSE: Admit that US BANK NATIONAL ASSOCIATION AS
22 | TRUSTEE is the assignee/beneficiary for the Subject Loan Deed of Trust and denies all
23 | other unadmitted matters.

24 |          REQUEST FOR ADMISSION NO. 3.

25 |          Admit that there is no permission in writing for YOU to act as AGENT for the
26 | BENEFICIARY for the Subject Loan.

27 |
28 |          DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
   |          EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1)
   |          PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
   |          CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

                                        3

1    RESPONSE:  Deny.

2    REQUEST FOR ADMISSION NO. 4.

3    Admit that on or before 10/4/2005 the payee of the Plaintiffs 9/7/2005 note

4    (Mortgage Lenders Network USA, Inc.) sold the Subject Loan to EMAX Financial Group,

5    LLC.

6    RESPONSE:  This Responding Party asserts a lack of knowledge and/or

7    information as a basis to deny this Request although it has made a reasonable inquiry that the

8    information it knows or can readily obtain is insufficient to enable it to admit or deny this

9    Request.

10    REQUEST FOR ADMISSION NO. 5.

11    Admit that on or about 2/6/2009 MORTGAGE ELECTRONIC

12    REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS

13    NETWORK USA, INC. did NOT GRANT the Subject Loan to US BANK NATIONAL

14    ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA

15    RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT [means the entity that

16    was the grantee of the 2/6/2009 Assignment of Deed of Trust in regards to Plaintiffs Subject

17    Loan].

18    RESPONSE:  Deny.

19    REQUEST FOR ADMISSION NO. 6.

20    Admit that on or about 7/7/2009 MORTGAGE ELECTRONIC

21    REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS

22    NETWORK USA, INC. did NOT GRANT the Subject Loan to US BANK NATIONAL

23    ASSOCIATION AS TRUSTEE.

24    RESPONSE:  Deny.

25    REQUEST FOR ADMISSION NO. 7.

26

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

4

1    Admit that on or about 11/17/2005 the Subject Loan was NOT ENDORSED

2    and PHYSICALLY TRANSFERRED to US BANK, NATIONAL ASSOCIATION AS

3    TRUSTEE FOR RASC 2005-EMX4.

4    RESPONSE: Admit that this Responding Party relies, in good faith, upon the

5    loan servicer's information concerning the validity of the underlying transaction and denies

6    all other unadmitted matters.

7    REQUEST FOR ADMISSION NO. 8.

8    Admit that US BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR

9    RASC 2005- EMX4 ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST filed a Proof

10   of Claim for the Subject Loan in Daniel Major Edstrom's Chapter 11 bankruptcy in the

11   Eastern District of California Sacramento Division on 9/25/2012.

12   RESPONSE: This Responding Party asserts a lack of knowledge and/or

13   information as a basis to deny this Request although it has made a reasonable inquiry that the

14   information it knows or can readily obtain is insufficient to enable it to admit or deny this

15   Request.

16   REQUEST FOR ADMISSION NO. 9.

17   Admit that NDEX WEST, LLC has never entered into any contract with

18   Plaintiffs.

19   RESPONSE: Admit that the Propounding Parties executed a Deed of Trust

20   expressly allowing the nominee for the lender and/or beneficiary under said deed to

21   substitute this Responding Party as trustee under said deed to conduct a non-judicial

22   foreclosure sale as a substitute foreclosure trustee upon the Propounding Parties' default of

23   the loan secured by the property and denies all other unadmitted matters.

24   REQUEST FOR ADMISSION NO. 10.

25   Admit that NDEX WEST, LLC did NOT receive REFERRAL

26   INFORMATION from US BANK, NATIONAL ASSOCIATION AS TRUSTEE [means the

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. I)
PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

5

1   entity that was the grantor of the 1/26/2009 Substitution of Trustee in regards to Plaintiffs

2   Subject Loan, and the grantee of the 7/7/2009 Assignment of Deed of Trust in regards to

3   Plaintiffs Subject Loan].

4           RESPONSE:  Admit that this Responding Party received non-judicial

5   foreclosure referral information from the loan servicer authorized to act on behalf of US

6   BANK, NATIONAL ASSOCIATION AS TRUSTEE and denies all other unadmitted

7   matters.

8           REQUEST FOR ADMISSION NO. 11.

9           Admit that NDEX WEST, LLC did NOT receive REFERRAL

10  INFORMATION from US BANK, NATIONAL ASSOCIATION AS TRUSTEE BY

11  RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING

12  CORPORATION ATTORNEY IN FACT [means the entity that was the grantee of the

13  2/6/2009 Assignment of Deed of Trust in regards to Plaintiffs Subject Loan].

14          RESPONSE:  Admit that this Responding Party received non-judicial

15  foreclosure referral information from the loan servicer authorized to act on behalf of US

16  BANK, NATIONAL ASSOCIATION AS TRUSTEE and denies all other unadmitted

17  matters.

18          REQUEST FOR ADMISSION NO. 12.

19          Admit that NDEX WEST, LLC has no personal knowledge of any alleged

20  Plaintiff Default as stated in the Notice of Default dated 12/23/2008.

21          RESPONSE:  Admit that this Responding Party has personal knowledge of the

22  Propounding Parties' abject and unexcused default under the loan from the loan servicer

23  authorized to act on behalf of US BANK, NATIONAL ASSOCIATION AS TRUSTEE and

24  denies all other unadmitted matters.

25          REQUEST FOR ADMISSION NO. 13.

26

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

6

1    Admit that the grantor of the Assignment of Deed of Trust dated 7/7/2009 had

2  previously been a grantor of a previous Assignment of Deed of Trust dated 2/6/2009.

3    RESPONSE:    Admit only that US BANK, NATIONAL ASSOCIATION AS

4  TRUSTEE was formally assigned the recorded beneficial interest by the prior record

5  beneficiary and denies all other unadmitted matters.

6    REQUEST FOR ADMISSION NO. 14.

7    Admit You [include(s) NDEX and any and all subsidiaries and persons acting

8  for or in concert with you] were notified by Plaintiff in writing, on or about January 12,

9  2009, that Plaintiff disputed the validity of the purported debt.

10    RESPONSE:    Admit that this Responding Party received correspondence from

11  the Propounding Parties in or about 2009 purporting to dispute the amount due under the

12  loan and denies all other unadmitted matters.

13    REQUEST FOR ADMISSION NO. 15.

14    Admit You [include(s) NDEX and any and all subsidiaries and persons acting

15  for or in concert with you] were notified by Plaintiff in writing, on or about January 12,

16  2009, that you were to cease and desist from proceeding with the foreclosure and attempting

17  to collect a debt.

18    RESPONSE:    Admit that this Responding Party received correspondence from

19  the Propounding Parties in or about 2009 purporting to dispute the amount due under the

20  loan and denies all other unadmitted matters.

21    REQUEST FOR ADMISSION NO. 16.

22    Admit You [include(s) NDEX and any and all subsidiaries and persons acting

23  for or in concert with you] were notified by Plaintiff in writing, on or about March 18, 2009,

24  that Plaintiff objected to the Notice of Default by providing 54 objections.

25

26

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
CASE NO.: 12-29353-B-11/ADV. P. NO : 12-02546-B

7

1    RESPONSE:  Admit that this Responding Party received correspondence from

2  the Propounding Parties in or about 2009 purporting to dispute the amount due under the

3  loan and denies all other unadmitted matters.

4    REQUEST FOR ADMISSION NO. 17.

5    Admit You [include(s) NDEX and any and all subsidiaries and persons acting

6  for or in concert with you] never replied to Plaintiffs in regards to any of the 54 objections

7  referenced in Request for Admission No. 17.

8    RESPONSE:  Admit that this Responding Party forwarded any

9  correspondence from the Propounding Parties in or about 2009 purporting to dispute the

10  amount due under the loan to the loan servicer and denies all other unadmitted matters.

11    REQUEST FOR ADMISSION NO. 18.

12    Admit you had did not file an Action in Interpleader based on conflicting

13  information You [include(s) NDEX and any and all subsidiaries and persons acting for or in

14  concert with you] received from Plaintiff and from the party that provided your instructions

15  to foreclose on Plaintiffs loan.

16    RESPONSE:  Admit only that this Responding Party did not file an Action in

17  Interpleader and denies all other unadmitted matters.

18    REQUEST FOR ADMISSION NO. 19.

19    Admit You [include(s) NDEX and any and all subsidiaries and persons acting

20  for or in concert with you] have no evidence that Plaintiff did not receive notice pursuant to

21  section 22 of the Deed of Trust for Subject Loan "of the right to reinstate after acceleration

22  and the right to bring a court action to assert the non-existence of a default or any other

23  defense of Borrower to acceleration and sale."

24    RESPONSE: Deny.

25    REQUEST FOR ADMISSION NO. 20.

26

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

8

1       Admit that NDEX WEST, LLC did NOT receive referral information from US

2  BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR RASC 2005-EMX4 ITS

3  ASSIGNS AND/OR SUCCESSORS IN INTEREST.

4       RESPONSE:   Admit that this Responding Party received non-judicial

5  foreclosure referral information from the loan servicer authorized to act on behalf of US

6  BANK, NATIONAL ASSOCIATION AS TRUSTEE and denies all other unadmitted

7  matters.

8       REQUEST FOR ADMISSION NO. 21.

9       Admit that NDEX WEST, LLC did NOT receive referral information from

10  MORTGAGE LENDERS NETWORK USA, INC. AS NOMINEE FOR MORTGAGE

11  LENDERS NETWORK USA, INC.

12       RESPONSE:   Admit that this Responding Party received non-judicial

13  foreclosure referral information from the loan servicer authorized to act on behalf of US

14  BANK, NATIONAL ASSOCIATION AS TRUSTEE and denies all other unadmitted

15  matters.

16       REQUEST FOR ADMISSION NO. 22.

17       Admit that You [include(s) NDEX and any and all subsidiaries and persons

18  acting for or in concert with you] have no evidence that US BANK, NATIONAL

19  ASSOCIATION, AS TRUSTEE FOR RASC 2005-EMX4 ITS ASSIGNS AND/OR

20  SUCCESSORS IN INTEREST is not the creditor for the Plaintiffs Subject Loan.

21       RESPONSE:  Deny.

22       REQUEST FOR ADMISSION NO. 23.

23       Admit that You [include(s) NDEX and any and all subsidiaries and persons

24  acting for or in concert with you], by and through your attorneys, stated as an undisputed

25  material fact that "U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE became the

26  assignee/beneficiary of record on July 15, 2009, when the Assignment of Deed of Trust was

27

28

DEFENDANT NDeX WEST. LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
CASE NO.:  12-29353-B-11/ADV. P. NO.:  12-02546-B

9

1  recorded." (See DEFENDANT NDeX WEST, LLC'S SEPARATE STATEMENT OF

2  UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY

3  JUDGMENT/ADJUDICATION PURSUANT TO CAL. CIV. PROC. CODE 473c(b)(1) &

4  CAL. R. CT. 3.1350(h) filed in this case on or around 5/31/2012, UDF numbers 3, 26, 49,

5  72, 95, 118,141, 164, 187, 210, 233, 256, and 279).

6  <u>RESPONSE</u>: Admit.

7

8  Dated: February 19, 2013                    BARRETT DAFFIN FRAPPIER
                                               TREDER & WEISS, LLP
9

10

11                                     By:

12                                           DARLENE P. HERNANDEZ
                                             THOMAS K. AGAWA
13                                           Defendant NDEx WEST, LLC,
                                             A Delaware limited liability company
14

15

16

17

18

19

20

21

22

23

24

25

26

27
28  DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
     EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1)
         PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
            CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

10

**VERIFICATION**

I have read the foregoing document entitled DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36 ("Responses") and know its contents.

I am an officer of NDEx WEST, LLC, a Delaware limited liability company. With the exception of each objection set forth in the Responses, I have personal knowledge that the matters stated in the foregoing document are true, unless stated on the basis of information and belief, and as to those matters, I believe them in good faith to be true.

The objections set forth in the Responses are excluded from this verification. Otherwise, all other Responses are hereby verified by me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Verification was executed on February 19, 2013 in the City of Addison, State of Texas.

Chris Pummill

Declarant

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

11

1  **CERTIFICATE OF SERVICE**

2  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3       I, Thomas K. Agawa, hereby certify that on February 19, 2013, a true and
4  correct copy of **DEFENDANT NDeX WEST, LLC'S RESPONSES TO
   DEBTOR/PLAINTIFF DANIEL MAJOR EDSTROM'S & PLAINTIFF TERI ANNE
5  EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1) PURSUANT TO FED.
   BANKR. R. P. 7036, FED. R. CIV. P. 36** was served on the interested parties in this action
6  by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

7  Plaintiff, In Pro Se                        Plaintiff, In Pro Se
   Daniel Major Edstrom                        Teri Anne Edstrom
8  2690 Brown Bear Ct.                         935 Lincoln Way
   Cool, CA 95614                              Auburn, CA 95603

9

10  **VIA U.S. MAIL – PREPAID FIRST CLASS**

11  I served the parties below with the envelope for collection and mailing following ordinary
    practices. I am readily familiar with the firm's practice of collection and processing of
12  correspondence for mailing with the United States Postal Service. Under that practice it
    would be deposited with the United States Postal Service on that same day with postage fully
13  prepaid at Los Angeles, California in the ordinary course of business. I am aware that on
    motion of the party served, service is presumed invalid if postal cancellation date or postage
14  meter date is more than one day after date of deposit for mailing in this declaration.

15  Executed on February 19, 2013, at Diamond Bar, California.

16  I declare under penalty of perjury under the laws of the United States of America that the
    above is true and correct.

17

18

19

20                                                                    Anthony H. Jordan

21

22

23

24

25

26

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR ADMISSION (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7036, FED. R. CIV. P. 36
CASE NO.: 12-29355-B-11/ADV. P. NO.: 12-02546-B

1

# EXHIBIT 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   THOMAS K. AGAWA
    State Bar No. 175952
2   DARLENE P. HERNANDEZ
    State Bar No. 203050
3   BARRETT DAFFIN FRAPPIER
    TREDER & WEISS, LLP
4   20955 Pathfinder Road, Suite 300
    Diamond Bar, California 91765
5   Tel: (626) 371-7032
    Email: ThomasA@BDFGroup.com
6   Email: edcaecf@BDFGroup.com
    Attorneys for Defendant NDEX WEST, LLC
7

8

9                 UNITED STATES BANKRUPTCY COURT

10      EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

11  DANIEL MAJOR EDSTROM,              CASE NO.:   12-29353-B-11

12              Debtor,                CHAPTER:    11

13  ─────────────────────────────     A.P. No.    12-02546-B

14  DANIEL MAJOR EDSTROM, an           DC NO.:     EAT-001
    individual, and TERI ANNE
15  EDSTROM, an individual,            **DEFENDANT NDeX WEST, LLC'S**
                                       **RESPONSES TO**
16              Plaintiffs,            **DEBTOR/PLAINTIFF DANIEL**
            v.                         **MAJOR EDSTROM'S & PLAINTIFF**
17                                     **TERI ANNE EDSTROM'S**
    NDEX WEST, LLC, a Delaware limited **INTERROGATORIES (SET NO. 1)**
18  liability company; WELLS FARGO     **PURSUANT TO FED. BANKR. R. P.**
    BANK, N.A.; AMERICA'S              **7033, FED. R. CIV. P. 33**
19  SERVICING COMPANY, a division of
    Wells Fargo Home Mortgage; U.S.    Ctrm.: 32
20  BANK NATIONAL ASSOCIATION;         Hon. Thomas C. Holman
    RESIDENTIAL FUNDING COMPANY        501 I Street, 6th Floor, Sacramento,
21  LLC; GMAC RESCAP, a wholly owned   California 95814, Tel.: (916) 930-4473
    subsidiary of GMAC Financial Services;
22  GMAC LLC; ALLY BANK fka GMAC
    Bank; RESIDENTIAL ASSET
23  SECURITIES CORPORATION RASC
    SERIES 2006-EMX4 TRUST;
24  MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS (MERS);
25  FIRST PRIORITY FINANCIAL, INC. a
    California corporation and BRENT
26  STAGG, an Individual; and DOES 1-
    10,000,
27
                Defendants.
28  ─────────────────────────────
        DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
        EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
        PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
        CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

1

2  PROPOUNDING PARTIES:     Debtor/Plaintiff DANIEL MAJOR EDSTROM & Plaintiff
                            TERI ANNE EDSTROM

3  RESPONDING PARTY:        Defendant NDeX WEST, LLC, A Delaware limited
                            liability company

4

5  SET NO.                  1

6

7                         **PRELIMINARY STATEMENT**

8          1.    This Responding Party's Responses are based upon its present

9  knowledge, information and belief.    This Responding Party has not completed its

10 investigation and discovery of the facts relating to this proceeding. Without acknowledging

11 any obligation to do so, except as required and allowed by applicable law, this Responding

12 Party reserves the right to amend or supplement these Responses and produce additional

13 documents when and if new or additional material or information becomes available, if

14 necessary, under the California Code of Civil Procedure and/or with leave of Court.

15         2.    Nothing contained in these Responses should be construed as an

16 admission as to the relevance or admissibility of any documents referenced unless made in

17 conjunction with a specific request to admit the genuiness of specific documents under Cal.

18 Civ. Proc. Code § 2033.010 et seq., Cal. Evid. Code § 351 et seq.

19         3.    The following Responses are submitted without prejudice to this

20 Responding Party's right to produce evidence of any subsequently discovered fact or facts

21 and/or documents which this Responding Party may later recall or discover pursuant to

22 applicable California law, California procedures and/or orders of this Court. The Responses

23 contained herein are made in a good faith effort to supply as much information as is

24 presently known and to provide good faith Responses (and/or objections) as expressly

25 allowed by Cal. Civ. Proc. Code §§ 2031.210 et seq. & 2033.210 et seq., but in no way

26 prejudices this Responding Party's ability to engage in further discovery, research or analysis

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

2

1  pursuant to Court order and/or applicable law.

2       4.      This Responding Party objects to the extent this discovery seeks
3  disclosure of attorney-client communications and attorney work product pursuant to Cal.
4  Evid. Code § 950 et seq. & Cal. Civ. Proc. Code § 2018.010 et seq., respectively. Such
5  documents are described as memoranda (legal and factual), notes, legal research and
6  analyses and are in the possession of the attorney(s) of record. These objections are
7  incorporated into each.

8                                    **RESPONSES**

9                           SPECIAL INTERROGATORY NO. 1

10      Please set forth all facts in support of Your [include(s) NDEX and any and all
11  subsidiaries and persons acting for or in concert with you] contention that You [include(s)
12  NDEX and any and all subsidiaries and persons acting for or in concert with you] were "a
13  limited signing agent for the beneficiary" as claimed in the "Pummill Declaration" [means
14  the declaration of Chris Pummill submitted as part: of Defendant NDeX West, LLC's Motion
15  for Summary Judgment / Summary Adjudication filed with the El Dorado Superior Court for
16  the above captioned case (originally case # PC20100352) on or about 5/31/2012 (hereinafter
17  "Pummill Declaration"). The Pummill Declaration is captioned as "DECLARATION OF
18  CHRIS PUMMILL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
19  PURSUANT TO CAL. CIV. PROC. CODE § 437c" and the Pummill Declaration shows it
20  was executed on 5/21/2012 at Addison, Texas]. (Pummill Declaration; page 2,12).

21      RESPONSE: This Responding Party executed the Notice of Default recorded
22  12/23/2008 in the El Dorado County Clerk/Recorder's Office as Instrument No. 08 60612
23  recorded on December 23, 2008 as the agent for the beneficiary of the Deed of Trust
24  recorded 09/14/2005 in the El Dorado County Clerk/Recorder's Office as Instrument No.
25  2005 0077328 00.

26                          SPECIAL INTERROGATORY NO. 2

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

3

1    Please set forth all facts that support Your [include(s) NDEX and any and all
2    subsidiaries and persons acting for or in concert with you] contention that You [include(s)
3    NDEX and any and all subsidiaries and persons acting for or in concert with you] are the
4    "foreclosure trustee" as claimed in the "Pummill Declaration" [means the declaration of
5    Chris Pummill submitted as part: of Defendant NDeX West, LLC's Motion for Summary
6    Judgment / Summary Adjudication filed with the El Dorado Superior Court for the above
7    captioned case (originally case # PC20100352) on or about 5/31/2012 (hereinafter "Pummill
8    Declaration"). The Pummill Declaration is captioned as "DECLARATION OF CHRIS
9    PUMMILL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO
10   CAL. CIV. PROC. CODE § 437c" and the Pummill Declaration shows it was executed on
11   5/21/2012 at Addison, Texas]. (Pummill Declaration; page 2,12 and page 4, 116).

12       RESPONSE:   This Responding Party became the foreclosure trustee upon
13   recordation of the Substitution of Trustee recorded 02/05/2009 in the El Dorado County
14   Clerk/Recorder's Office as Instrument No. 4996 *after* it recorded the Notice of Default
15   recorded 12/23/2008 in the El Dorado County Clerk/Recorder's Office as Instrument No. 08
16   60612 and *before* the Notice of Trustee's Sale recorded 05/03/2010 in the El Dorado County
17   Clerk/Recorder's Office as Instrument No. 20100019081 was recorded.  A proper
18   conforming *affidavit* was attached.  There is *no* requirement that the original trustee make the
19   affidavit or consent to the substitution.

20       SPECIAL INTERROGATORY NO. 3

21       Please set forth all facts that support Your [include(s) NDEX and any and all
22   subsidiaries and persons acting for or in concert with you] contention that "NDeX received
23   Plaintiffs' foreclosure referral in December 2008" as claimed in the "Pummill Declaration"
24   [means the declaration of Chris Pummill submitted as part: of Defendant NDeX West, LLC's
25   Motion for Summary Judgment / Summary Adjudication filed with the El Dorado Superior
26   Court for the above captioned case (originally case # PC20100352) on or about 5/31/2012

27
28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

4

1  (hereinafter "Pummill Declaration"). The Pummill Declaration is captioned as

2  "DECLARATION OF CHRIS PUMMILL IN SUPPORT OF MOTION FOR SUMMARY

3  JUDGMENT PURSUANT TO CAL. CIV. PROC. CODE § 437c" and the Pummill

4  Declaration shows it was executed on 5/21/2012 at Addison, Texas]. (Pummill Declaration;

5  page 3,18).

6      RESPONSE:  This Responding Party received the foreclosure referral

7  concerning LOT 885 OF AUBURN LAKE TRAILS UNIT NO. 4, FILED MAY 8, 1970 IN

8  BOOK E OF MAPS, AT PAGE 61, EL DORADO COUNTY RECORDS, commonly

9  known as 2690 Brown Bear Court, Cool, California 95614 in December 2008 through a

10  secure proprietary communication interface program from the loan servicer.

11      SPECIAL INTERROGATORY NO. 4

12      Please set forth all facts that support Your [include(s) NDEX and any and all

13  subsidiaries and persons acting for or in concert with you] contention that "The referral

14  information included the deed of trust, reinstatement amount, Plaintiffs' addresses and

15  instructions" claimed in the "Pummill Declaration" [means the declaration of Chris Pummill

16  submitted as part of Defendant NDeX West, LLC's Motion for Summary Judgment /

17  Summary Adjudication filed with the El Dorado Superior Court for the above captioned case

18  (originally case # PC20100352) on or about 5/31/2012 (hereinafter "Pummill Declaration").

19  The Pummill Declaration is captioned as "DECLARATION OF CHRIS PUMMILL IN

20  SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO CAL. CIV.

21  PROC. CODE § 437c" and the Pummill Declaration shows it was executed on 5/21/2012 at

22  Addison, Texas]. (Pummill Declaration; page 3,18).

23      RESPONSE:  The information this Responding Party received concerning the

24  Propounding Parties' foreclosure referral for LOT 885 OF AUBURN LAKE TRAILS UNIT

25  NO. 4, FILED MAY 8, 1970 IN BOOK E OF MAPS, AT PAGE 61, EL DORADO

26  COUNTY RECORDS, commonly known as 2690 Brown Bear Court, Cool, California

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

5

1  95614 in December 2008 through a secure proprietary communication interface program
2  included the Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's
3  Office as Instrument No. 2005 0077328 00, reinstatement amount, date of default, exact
4  legal description of the property, exact name of the beneficiary, the Propounding Parties'
5  addresses and instructions.

6              SPECIAL INTERROGATORY NO. 5

7              Please set forth all facts in support of Your [include(s) NDEX and any and all
8  subsidiaries and persons acting for or in concert with you] contention that "With respect to
9  Plaintiffs' loan, this Responding Party acts only as a limited signatory agent to sign & record
10 the Notice of Default and as foreclosure trustee" as claimed in the "Pummill Declaration"
11 [means the declaration of Chris Pummill submitted as part: of Defendant NDcX West, LLC's
12 Motion for Summary Judgment / Summary Adjudication filed with the El Dorado Superior
13 Court for the above captioned case (originally case # PC20100352) on or about 5/31/2012
14 (hereinafter "Pummill Declaration"). The Pummill Declaration is captioned as
15 "DECLARATION OF CHRIS PUMMILL IN SUPPORT OF MOTION FOR SUMMARY
16 JUDGMENT PURSUANT TO CAL. CIV. PROC. CODE § 437c" and the Pummill
17 Declaration shows it was executed on 5/21/2012 at Addison, Texas]. (Pummill Declaration;
18 page 4, 16).

19             RESPONSE:  With respect to the Propounding Parties' $500,000.00 real
20 property loan evidenced by the ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As
21 Published in The Wall Street Journal – Rate Caps) dated September 7, 2005 in Folsom,
22 California for property located at 2690 Brown Bear Court, Cool, California 95614,
23 knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne Edstrom and
24 secured by the Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's
25 Office as Instrument No. 2005 0077328 00, this Responding Party acts only as a limited
26 signatory agent to sign & record the Notice of Default recorded 12/23/2008 in the El Dorado

27
28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

6

1  County Clerk/Recorder's Office as Instrument No. 08 60612 and as foreclosure trustee, it
2  does not act as a loan servicer, collection agent, loan originator, or as the Propounding
3  Parties' agent for purposes of their $500,000.00 real property loan evidenced by the
4  ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As Published in The Wall Street
5  Journal – Rate Caps) dated September 7, 2005 in Folsom, California for property located at
6  2690 Brown Bear Court, Cool, California 95614, knowingly and voluntarily executed by
7  Daniel Major Edstrom and Teri Anne Edstrom and secured by the Deed of Trust recorded
8  09/14/2005 in the El Dorado County Clerk/Recorder's Office as Instrument No. 2005
9  0077328 00.

10             SPECIAL INTERROGATORY NO. 6

11             Please set forth all facts in support of Your [include(s) NDEX and any and all
12  subsidiaries and persons acting for or in concert with you] contention that "As trustee, NDeX
13  receives its instructions directly from the loan servicer on whether and how to proceed with
14  foreclosure matters" as claimed in the "Pummill Declaration" [means the declaration of Chris
15  Pummill submitted as part of Defendant NDeX West, LLC's Motion for Summary Judgment
16  / Summary Adjudication filed with the El Dorado Superior Court for the above captioned
17  case (originally case # PC20100352) on or about 5/31/2012 (hereinafter "Pummill
18  Declaration"). The Pummill Declaration is captioned as "DECLARATION OF CHRIS
19  PUMMILL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO
20  CAL. CIV. PROC. CODE § 437c" and the Pummill Declaration shows it was executed on
21  5/21/2012 at Addison, Texas]. (Pummill Declaration: page 4,1 17).

22             RESPONSE:  As trustee, this Responding Party receives its instructions
23  directly from the loan servicer on whether and how to proceed with foreclosure matters and
24  cannot decide unilaterally whether to stay or proceed with the non-judicial foreclosure.

25             SPECIAL INTERROGATORY NO. 7

26
27
28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

7

1            Please set forth all facts in support of Your [include(s) NDEX and any and all

2    subsidiaries and persons acting for or in concert with you] contention that "NDeX cannot

3    decide by itself to foreclose" as claimed in the "Pummill Declaration" [means the declaration

4    of Chris Pummill submitted as part: of Defendant NDeX West, LLC's Motion for Summary

5    Judgment / Summary Adjudication filed with the El Dorado Superior Court for the above

6    captioned case (originally case # PC20100352) on or about 5/31/2012 (hereinafter "Pummill

7    Declaration"). The Pummill Declaration is captioned as "DECLARATION OF CHRIS

8    PUMMILL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO

9    CAL. CIV. PROC. CODE § 437c" and the Pummill Declaration shows it was executed on

10   5/21/2012 at Addison, Texas]. (Pummill Declaration; page 4, f 18).

11           RESPONSE: As trustee, this Responding Party receives its instructions

12   directly from the loan servicer on whether and how to proceed with foreclosure matters and

13   cannot decide unilaterally whether to stay or proceed with the non-judicial foreclosure.

14                            SPECIAL INTERROGATORY NO. 8

15           Please set forth all facts in support of Your [include(s) NDEX and any and all

16   subsidiaries and persons acting for or in concert with you] contention that "In conducting

17   Plaintiffs' non-judicial foreclosure, this Responding Party relies, on good faith, from

18   information provided by the loan servicer" as claimed in the "Pummill Declaration" [means

19   the declaration of Chris Pummill submitted as part: of Defendant NDeX West, LLC's Motion

20   for Summary Judgment / Summary Adjudication filed with the El Dorado Superior Court for

21   the above captioned case (originally case # PC20100352) on or about 5/31/2012 (hereinafter

22   "Pummill Declaration"). The Pummill Declaration is captioned as "DECLARATION OF

23   CHRIS PUMMILL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

24   PURSUANT TO CAL. CIV. PROC. CODE § 437c" and the Pummill Declaration shows it

25   was executed on 5/21/2012 at Addison, Texas]. (Pummill Declaration; page 4, 19).

26

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

8

1         RESPONSE: As trustee, this Responding Party receives its instructions

2 directly from the loan servicer, which it relies upon in good faith on whether and how to

3 proceed with foreclosure matters and cannot decide unilaterally whether to stay or proceed

4 with the non-judicial foreclosure.

5                       SPECIAL INTERROGATORY NO. 9

6         Please set forth all facts in support of Your [include(s) NDEX and any and all

7 subsidiaries and persons acting for or in concert with you] contention that "This amount is

8 $29,373.66 as of 12/19/2008" as claimed in the "Notice of Default". (Notice of Default; page

9 1, f 2).

10         RESPONSE: The information this Responding Party received concerning the

11 Propounding Parties' foreclosure referral for LOT 885 OF AUBURN LAKE TRAILS UNIT

12 NO. 4, FILED MAY 8, 1970 IN BOOK E OF MAPS, AT PAGE 61, EL DORADO

13 COUNTY RECORDS, commonly known as 2690 Brown Bear Court, Cool, California

14 95614 in December 2008 through a secure proprietary communication interface program

15 included the amount due of $29,373.66 as of 12/19/2008 in order to provide the information

16 in the requisite Deed of Trust recorded 09/14/2005 in the El Dorado County

17 Clerk/Recorder's Office as Instrument No. 2005 0077328 00.

18                     SPECIAL INTERROGATORY NO. 10

19         Please set forth all facts in support of Your [include(s) NDEX and any and all

20 subsidiaries and persons acting for or in concert with you] contention that "the present

21 beneficiary under such deed of trust, has executed and delivered to said agent, a written

22 Declaration of Default and Demand for same" as claimed in the "Notice of Default". (Notice

23 of Default; page 2, last paragraph).

24         RESPONSE: As set forth in the Deed of Trust recorded 09/14/2005 in the El

25 Dorado County Clerk/Recorder's Office as Instrument No. 2005 0077328 00 the present

26 beneficiary under such Deed of Trust recorded 09/14/2005 in the El Dorado County

27

28        

1  Clerk/Recorder's Office as Instrument No. 2005 0077328 00, has executed and delivered to
2  this Responding Party, a written Declaration of Default and Demand for payment of the
3  amount due as a predicate to conduct the non-judicial foreclosure sale of LOT 885 OF
4  AUBURN LAKE TRAILS UNIT NO. 4, FILED MAY 8, 1970 IN BOOK E OF MAPS, AT
5  PAGE 61, EL DORADO COUNTY RECORDS, commonly known as 2690 Brown Bear
6  Court, Cool, California 95614.

7  SPECIAL INTERROGATORY NO. 11

8  Please set forth all facts in support of Your [include(s) NDEX and any and all
9  subsidiaries and persons acting for or in concert with you] contention that "Plaintiffs could
10 have mitigated the amount of damages allegedly sustained by them, including, but not
11 limited to paying the amount of the loan when due and in a timely fashion and/or otherwise
12 not defaulting under the terms of the loan agreements and deed of trust" as claimed in the
13 "NDEX ANSWER"[means the answer to Plaintiffs complaint filed by NDeX West, LLC in
14 the above captioned case (originally El Dorado Superior Court case # PC20100352), dated
15 5/31/2011 and captioned as "DEFENDANT NDEX WEST, LLC's ANSWER TO
16 PLAINTIFFS' UNVERIFIED 2nd AMENDED COMPLAINT"]. (NDEX ANSWER; page 2,
17 2).

18 RESPONSE:  The Propounding Parties could have paid the (then) balance due
19 under the $500,000.00 real property loan evidenced by the ADJUSTABLE RATE NOTE
20 (LIBOR Six-Month Index (As Published in The Wall Street Journal – Rate Caps) dated
21 September 7, 2005 in Folsom, California for property located at 2690 Brown Bear Court,
22 Cool, California 95614, knowingly and voluntarily executed by Daniel Major Edstrom and
23 Teri Anne Edstrom and secured by the Deed of Trust recorded 09/14/2005 in the El Dorado
24 County Clerk/Recorder's Office as Instrument No. 2005 0077328 00 to prevent the
25 foreclosure instead of initiating at least 3 frivolous lawsuits in a forlorn and futile endeavor
26 to live on the property for free.

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

10

1

SPECIAL INTERROGATORY NO. 12

2      Please set forth all facts in support of Your [include(s) NDEX and any and all
3  subsidiaries and persons acting for or in concert with you] contention that "Plaintiffs are
4  stopped, by his/her/their word, conduct and/or written document [means and includes
5  without limitation all correspondence, memoranda, certificates, notes, books, manuals,
6  pamphlets, brochures, advertisements, books of account, balance sheets, financial statements,
7  profit and loss statements, working papers, schedules, diaries, calendars, logs, time records,
8  equipment records, microfilms, transcripts, recordings, tapes, telexes, telegrams, files,
9  proposals, bids, offers, contracts, agreements, change orders, worksheets, drawings, blue
10  prints, designs, specifications, time cards, compilations, graphs, charts, bills, statements,
11  invoices, receipts, bills of lading, shipping records, confirmations, applications, purchase
12  orders, checks, checkbooks and other checking records, photographs, formulae,
13  prescriptions, studies, projections, reports, computer programs, information contained in
14  computer banks, tapes, cards, printouts and drafts to the extent they differ from the originals,
15  and all other records and papers of any nature whatsoever], including but not limited to
16  Plaintiffs' tacit acquiescence in the conduct and/or omissions forming the crux of their claims
17  against Defendant, by, including, but not limited to, accepting the considerable benefits of
18  the loan made to Plaintiffs and/or by continuing to occupy the real property forming the
19  security for the loan without adequate payment therefore" as claimed in the "NDEX
20  ANSWER"[means the answer to Plaintiffs complaint filed by NDeX West, LLC in the above
21  captioned case (originally El Dorado Superior Court case # PC20100352), dated 5/31/2011
22  and captioned as "DEFENDANT NDEX WEST, LLC's ANSWER TO PLAINTIFFS'
23  UNVERIFIED 2nd AMENDED COMPLAINT"]. (NDEX ANSWER; page 3, 3).

24      RESPONSE: The Propounding Parties took out a $500,000.00 real property
25  loan evidenced by the ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As
26  Published in The Wall Street Journal – Rate Caps) dated September 7, 2005 in Folsom,

27
28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29553-B-11/ADV. P. NO.: 12-02546-B

11

1    California for property located at 2690 Brown Bear Court, Cool, California 95614,

2    knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne Edstrom and

3    secured by the Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's

4    Office as Instrument No. 2005 0077328 00 which they ultimately could not afford and then

5    maliciously prosecuted this Responding Party, the loan servicer and the beneficiary to

6    improperly delay foreclosure so that they could live on the LOT 885 OF AUBURN LAKE

7    TRAILS UNIT NO. 4, FILED MAY 8, 1970 IN BOOK E OF MAPS, AT PAGE 61, EL

8    DORADO COUNTY RECORDS, commonly known as 2690 Brown Bear Court, Cool,

9    California 95614 without making their monthly loan payments, real property insurance

10   premium payments and real property taxes.

11                      SPECIAL INTERROGATORY NO. 13

12                 Please set forth all facts in support of Your [include(s) NDEX and any and all

13   subsidiaries and persons acting for or in concert with you] contention that "The causes of

14   action alleged in the 2nd Amended Complaint are barred in whole, or in part, by the doctrine

15   of laches, particularly as Plaintiffs knew, or should have known, of the salient misconduct

16   constituting the foundation of his/her/their claims in or about 2005, yet, for reasons

17   unknown, Plaintiffs knowingly, deliberately and intentionally, without reason rooted in

18   conscience or logic, elected to take no action until years later, when many of the events,

19   percipient witnesses and evidence had dissipated like dust in the wind." as claimed in the

20   "NDEX ANSWER"[means the answer to Plaintiffs complaint filed by NDeX West, LLC in

21   the above captioned case (originally El Dorado Superior Court case # PC20100352), dated

22   5/31/2011 and captioned as "DEFENDANT NDEX WEST, LLC's ANSWER TO

23   PLAINTIFFS' UNVERIFIED 2nd AMENDED COMPLAINT"]. (NDEX ANSWER; page 3,

24   ¶ 4).

25                 RESPONSE:  At the time (or shortly after) that the Propounding Parties

26   executed the loan agreement, including the ADJUSTABLE RATE NOTE (LIBOR Six-

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

12

1   Month Index (As Published in The Wall Street Journal – Rate Caps) dated September 7,

2   2005 in Folsom, California for property located at 2690 Brown Bear Court, Cool, California

3   95614, knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne

4   Edstrom and Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's

5   Office as Instrument No. 2005 0077328 00, they could have discovered that their

6   $500,000.00 real property loan evidenced by the ADJUSTABLE RATE NOTE (LIBOR Six-

7   Month Index (As Published in The Wall Street Journal – Rate Caps) dated September 7,

8   2005 in Folsom, California for property located at 2690 Brown Bear Court, Cool, California

9   95614, knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne

10  Edstrom and secured by the Deed of Trust recorded 09/14/2005 in the El Dorado County

11  Clerk/Recorder's Office as Instrument No. 2005 0077328 00 was assigned or transferred,

12  but, for unknown reasons, waited until long after, when they defaulted, to concoct an after-

13  the-fact rationalization for their abject unexcused failure to pay the $500,000.00 real property

14  loan evidenced by the ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As

15  Published in The Wall Street Journal – Rate Caps) dated September 7, 2005 in Folsom,

16  California for property located at 2690 Brown Bear Court, Cool, California 95614,

17  knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne Edstrom and

18  secured by the Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's

19  Office as Instrument No. 2005 0077328 00 which inevitably resulted in the non-judicial

20  foreclosure.

21              SPECIAL INTERROGATORY NO. 14

22         Please set forth all facts in support of Your [include(s) NDEX and any and all

23  subsidiaries and persons acting for or in concert with you] contention that "The causes of

24  action alleged in the 2nd Amended Complaint are subject to an offset of the aggregate of the

25  outstanding amount due consisting of principal, interest and late charges, including, but not

26  limited to, all attorneys' fees incurred in this action by the Defendants" as claimed in the

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

13

1  "NDEX ANSWER" [means the answer to Plaintiffs complaint filed by NDeX West, LLC in

2  the above captioned case (originally El Dorado Superior Court case # PC20100352), dated

3  5/31/2011 and captioned as "DEFENDANT NDEX WEST, LLC's ANSWER TO

4  PLAINTIFFS' UNVERIFIED 2nd AMENDED COMPLAINT"]. (NDEX ANSWER; page 3,

5  % 5).

6         RESPONSE:  Any monetary damages and injunctive relief which Plaintiffs

7  seek under the 2nd Amended Complaint are subject to an offset of the aggregate of the

8  outstanding amount due consisting of principal, interest and late charges, including, but not

9  limited to, all attorneys' fees incurred in this lawsuit entitled DANIEL MAJOR EDSTROM,

10 an individual, and TERI ANNE EDSTROM, an individual, Plaintiffs, v. NDEX WEST,

11 LLC, a Delaware limited liability company; WELLS FARGO BANK, N.A.; AMERICA'S

12 SERVICING COMPANY, a division of Wells Fargo Home Mortgage; U.S. BANK

13 NATIONAL ASSOCIATION; RESIDENTIAL FUNDING COMPANY LLC; GMAC

14 RESCAP, a wholly owned subsidiary of GMAC Financial Services; GMAC LLC; ALLY

15 BANK fka GMAC Bank; RESIDENTIAL ASSET SECURITIES CORPORATION RASC

16 SERIES 2006-EMX4 TRUST; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS

17 (MERS); FIRST PRIORITY FINANCIAL, INC. a California corporation and BRENT

18 STAGG, an Individual; and DOES 1-10,000, Defendants filed June 10, 2010 in the

19 SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF EL

20 DORADO, located at 3321 Cameron Park Dr., Cameron Park, CA 95682, Tel.: (530) 621-

21 5867, Unlimited Jurisdiction, case number PC20100352 and the lawsuit entitled DANIEL

22 MAJOR EDSTROM, an individual, and TERI ANNE EDSTROM, an individual, Plaintiffs,

23 v. NDEX WEST, LLC, a Delaware limited liability company; AMERICA'S SERVICING

24 COMPANY, an entity form unknown; MORTGAGE ELECTRONIC REGISTRATION

25 SYSTEMS (MERS); and DOES 1-10,000, Defendants in the UNITED STATES DISTRICT

26 COURT FOR THE EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO, located at

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

14

1    501 "I" Street, Sacramento, CA 95814, T: (916) 930-4193, case number 2:10-cv-00105 KJM
2    CKD, by this Responding Party.

3                              SPECIAL INTERROGATORY NO. 15

4                Please set forth all facts in support of Your [include(s) NDEX and any and all
5    subsidiaries and persons acting for or in concert with you] contention that "Plaintiffs' claims
6    for equitable relief are barred in their entirety because Plaintiffs suffered no prejudice for any
7    minor procedural defect that may have occurred during the foreclosure process. Gross
8    inadequacy of the sale price absent some procedural regularity that contributed to such
9    inadequacy or that otherwise caused prejudicial injury to Plaintiffs is legally insufficient to
10   set aside a completed non-judicial foreclosure sale of real property. Knapp v. Doherty, 123
11   Cal.App.4th 76, 20 Cal.Rptr.3d (Cal. Ct. App. 2004)." as claimed in the "NDEX
12   ANSWER"[means the answer to Plaintiffs complaint filed by NDeX West, LLC in the above
13   captioned case (originally El Dorado Superior Court case # PC20100352), dated 5/31/2011
14   and captioned as "DEFENDANT NDEX WEST, LLC's ANSWER TO PLAINTIFFS'
15   UNVERIFIED 2nd AMENDED COMPLAINT"]. (NDEX ANSWER; page 4,16).

16               RESPONSE:  To the extent that Plaintiffs contend that there were procedural
17   irregularities in the non-judicial sale under the Deed of Trust recorded 09/14/2005 in the El
18   Dorado County Clerk/Recorder's Office as Instrument No. 2005 0077328 00 secured by the
19   ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As Published in The Wall Street
20   Journal – Rate Caps) dated September 7, 2005 in Folsom, California for property located at
21   2690 Brown Bear Court, Cool, California 95614, knowingly and voluntarily executed by
22   Daniel Major Edstrom and Teri Anne Edstrom, which, to date, none have been identified,
23   Plaintiffs suffered no prejudice for any minor procedural defect that may have occurred
24   because they had still not have paid the balance due under the $500,000.00 real property loan
25   evidenced by the ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As Published in
26   The Wall Street Journal – Rate Caps) dated September 7, 2005 in Folsom, California for

27
28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

15

1  property located at 2690 Brown Bear Court, Cool, California 95614, knowingly and

2  voluntarily executed by Daniel Major Edstrom and Teri Anne Edstrom and secured by the

3  Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's Office as

4  Instrument No. 2005 0077328 00 and the non-judicial sale under the Deed of Trust recorded

5  09/14/2005 in the El Dorado County Clerk/Recorder's Office as Instrument No. 2005

6  0077328 00 secured by the ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As

7  Published in The Wall Street Journal – Rate Caps) dated September 7, 2005 in Folsom,

8  California for property located at 2690 Brown Bear Court, Cool, California 95614,

9  knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne Edstrom would

10  have still occurred and Plaintiffs would still have been evicted from the LOT 885 OF

11  AUBURN LAKE TRAILS UNIT NO. 4, FILED MAY 8, 1970 IN BOOK E OF MAPS, AT

12  PAGE 61, EL DORADO COUNTY RECORDS, commonly known as 2690 Brown Bear

13  Court, Cool, California 95614.

14                    SPECIAL INTERROGATORY NO. 16

15           Please set forth all facts in support of Your [include(s) NDEX and any and all

16  subsidiaries and persons acting for or in concert with you] contention that "Plaintiffs failed to

17  exercise ordinary care in his/her/their own behalf with regard to the incident alleged in the

18  2nd Amended Complaint, in that, among other things, Plaintiffs knew or should have known

19  about the attendant risks associated with incurring debt which he/she/they could not repay"

20  as claimed in the "NDEX ANSWER" [means the answer to Plaintiffs complaint filed by

21  NDeX West, LLC in the above captioned case (originally El Dorado Superior Court case #

22  PC20100352), dated 5/31/2011 and captioned as "DEFENDANT NDEX WEST, LLC's

23  ANSWER TO PLAINTIFFS' UNVERIFIED 2nd AMENDED COMPLAINT"]. (NDEX

24  ANSWER; page 4, f 7).

25           RESPONSE: At the time (or shortly after) that the Propounding Parties

26  executed the loan agreement, including the ADJUSTABLE RATE NOTE (LIBOR Six-

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

16

1  Month Index (As Published in The Wall Street Journal – Rate Caps) dated September 7,

2  2005 in Folsom, California for property located at 2690 Brown Bear Court, Cool, California

3  95614, knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne

4  Edstrom and Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's

5  Office as Instrument No. 2005 0077328 00, they could have discovered that their

6  $500,000.00 real property loan evidenced by the ADJUSTABLE RATE NOTE (LIBOR Six-

7  Month Index (As Published in The Wall Street Journal – Rate Caps) dated September 7,

8  2005 in Folsom, California for property located at 2690 Brown Bear Court, Cool, California

9  95614, knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne

10 Edstrom and secured by the Deed of Trust recorded 09/14/2005 in the El Dorado County

11 Clerk/Recorder's Office as Instrument No. 2005 007732800 was assigned or transferred, but,

12 for unknown reasons, waited until long after, when they defaulted, to concoct an after-the-

13 fact rationalization for their abject unexcused failure

14                    SPECIAL INTERROGATORY NO. 17

15         Please set forth all facts in support of Your [include(s) NDEX and any and all

16 subsidiaries and persons acting for or in concert with you] contention that "Any injuries or

17 damages sustained by Plaintiffs as a result of the incidents referenced in the 2nd Amended

18 Complaint were proximately caused by Plaintiffs' own negligence. Plaintiffs' recovery, if

19 any, from this Defendant must be diminished in proportion to the amount of negligence

20 attributable to Plaintiffs." as claimed in the "NDEX ANSWER"[means the answer to

21 Plaintiffs complaint filed by NDeX West, LLC in the above captioned case (originally El

22 Dorado Superior Court case # PC20100352), dated 5/31/2011 and captioned as

23 "DEFENDANT NDEX WEST, LLC's ANSWER TO PLAINTIFFS' UNVERIFIED 2nd

24 AMENDED COMPLAINT"]. (NDEX ANSWER; page 4,1 8).

25         RESPONSE: At the time (or shortly after) that the Propounding Parties

26 executed the loan agreement, including the ADJUSTABLE RATE NOTE (LIBOR Six-

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

17

1 Month Index (As Published in The Wall Street Journal – Rate Caps) dated September 7,

2 2005 in Folsom, California for property located at 2690 Brown Bear Court, Cool, California

3 95614, knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne

4 Edstrom and Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's

5 Office as Instrument No. 2005 0077328 00, they could have discovered that their loan was

6 assigned or transferred, but, for unknown reasons, waited until long after, when they

7 defaulted, to concoct an after-the-fact rationalization for their abject unexcused failure

8                          SPECIAL INTERROGATORY NO. 18

9           Please set forth all facts in support of Your [include(s) NDEX and any and all

10 subsidiaries and persons acting for or in concert with you] contention that "Plaintiffs

11 consented to and approved all of the acts and omissions about which Plaintiffs now complain

12 by, inter alia, executing the ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As

13 Published in The Wall Street Journal – Rate Caps) dated September 7, 2005 in Folsom,

14 California for property located at 2690 Brown Bear Court, Cool, California 95614,

15 knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne Edstrom, loan

16 agreement, deed of trust and other documents [means and includes without limitation all

17 correspondence, memoranda, certificates, notes, books, manuals, pamphlets, brochures,

18 advertisements, books of account, balance sheets, financial statements, profit and loss

19 statements, working papers, schedules, diaries, calendars, logs, time records, equipment

20 records, microfilms, transcripts, recordings, tapes, telexes, telegrams, files, proposals, bids,

21 offers, contracts, agreements, change orders, worksheets, drawings, blue prints, designs,

22 specifications, time cards, compilations, graphs, charts, bills, statements, invoices, receipts,

23 bills of lading, shipping records, confirmations, applications, purchase orders, checks,

24 checkbooks and other checking records, photographs, formulae, prescriptions, studies,

25 projections, reports, computer programs, information contained in computer banks, tapes,

26 cards, printouts and drafts to the extent they differ from the originals, and all other records

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29355-B-11/ADV. P. NO.: 12-02546-B

18

1   and papers of any nature whatsoever] and agreements related to the loan and expressly

2   agreeing to adherence to each term and condition contained therein." as claimed in the

3   "NDEX ANSWER"[means the answer to Plaintiffs complaint filed by NDeX West, LLC in

4   the above captioned case (originally El Dorado Superior Court case # PC20100352), dated

5   5/31/2011 and captioned as "DEFENDANT NDEX WEST, LLC's ANSWER TO

6   PLAINTIFFS' UNVERIFIED 2nd AMENDED COMPLAINT"]. (NDEX ANSWER: page 4,

7   9).

8          RESPONSE: At the time (or shortly after) that the Propounding Parties

9   executed the loan agreement, including the ADJUSTABLE RATE NOTE (LIBOR Six-

10  Month Index (As Published in The Wall Street Journal – Rate Caps) dated September 7,

11  2005 in Folsom, California for property located at 2690 Brown Bear Court, Cool, California

12  95614, knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne

13  Edstrom  and Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's

14  Office as Instrument No. 2005 0077328 00, they could have discovered that their

15  $500,000.00 real property loan evidenced by the ADJUSTABLE RATE NOTE (LIBOR Six-

16  Month Index (As Published in The Wall Street Journal – Rate Caps) dated September 7,

17  2005 in Folsom, California for property located at 2690 Brown Bear Court, Cool, California

18  95614, knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne

19  Edstrom and secured by the Deed of Trust recorded 09/14/2005 in the El Dorado County

20  Clerk/Recorder's Office as Instrument No. 2005 0077328 00 was assigned or transferred,

21  but, for unknown reasons, waited until long after, when they defaulted, to concoct an after-

22  the-fact rationalization for their abject unexcused failure

23          SPECIAL INTERROGATORY NO. 19

24          Please set forth all facts in support of Your [include(s) NDEX and any and all

25  subsidiaries and persons acting for or in concert with you] contention that "All parties herein

26  (Defendant excluded), including the Plaintiffs, have unclean hands, invoking this Court's

27

28

19

1  equitable powers to dismiss this action and not aid the parties to an illegal transaction
2  because he/she/they are in pari delicto, and to leave the parties where the Court finds them,
3  to settle their differences without its aid" as claimed in the "NDEX ANSWER" [means the
4  answer to Plaintiffs complaint filed by NDeX West, LLC in the above captioned case
5  (originally El Dorado Superior Court case # PC20100352), dated 5/31/2011 and captioned as
6  "DEFENDANT NDEX WEST, LLC's ANSWER TO PLAINTIFFS' UNVERIFIED 2nd
7  AMENDED COMPLAINT"]. (NDEX ANSWER; page 5,110).

8        RESPONSE: At the time (or shortly after) that the Propounding Parties
9  executed the loan agreement, including the ADJUSTABLE RATE NOTE (LIBOR Six-
10  Month Index (As Published in The Wall Street Journal – Rate Caps) dated September 7,
11  2005 in Folsom, California for property located at 2690 Brown Bear Court, Cool, California
12  95614, knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne
13  Edstrom and Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's
14  Office as Instrument No. 2005 0077328 00, they could have discovered that their
15  $500,000.00 real property loan evidenced by the ADJUSTABLE RATE NOTE (LIBOR Six-
16  Month Index (As Published in The Wall Street Journal – Rate Caps) dated September 7,
17  2005 in Folsom, California for property located at 2690 Brown Bear Court, Cool, California
18  95614, knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne
19  Edstrom and secured by the Deed of Trust recorded 09/14/2005 in the El Dorado County
20  Clerk/Recorder's Office as Instrument No. 2005 0077328 00 was assigned or transferred,
21  but, for unknown reasons, waited until long after, when they defaulted, to concoct an after-
22  the-fact rationalization for their abject unexcused failure

23  SPECIAL INTERROGATORY NO. 20

24        Please set forth all facts in support of Your [include(s) NDEX and any and all
25  subsidiaries and persons acting for or in concert with you] contention that "Defendant's
26  actions in a non-judicial foreclosure (i.e., the mailing, publication, and delivery of statutory

27

28  
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

20

1  notices) and the execution of statutory non-judicial foreclosure procedures are privileged

2  under the qualified, common-interest privilege of Cal, Civ. Code § 47(c) (1)." as claimed in

3  the "NDEX ANSWER" [means the answer to Plaintiffs complaint filed by NDeX West, LLC

4  in the above captioned case (originally El Dorado Superior Court case # PC20100352), dated

5  5/31/2011 and captioned as "DEFENDANT NDEX WEST, LLC's ANSWER TO

6  PLAINTIFFS' UNVERIFIED 2nd AMENDED COMPLAINT"]. (NDEX ANSWER; page 5,

7  K 11).

8       RESPONSE:  This Responding Party's actions in this non-judicial foreclosure

9  including preparing, posting, publishing, recording and, where relevant, executing Deed of

10  Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's Office as Instrument

11  No. 2005 0077328 00. Notice of Default recorded 12/23/2008 in the El Dorado County

12  Clerk/Recorder's Office as Instrument No. 08 60612, Substitution of Trustee recorded

13  02/05/2009 in the El Dorado County Clerk/Recorder's Office as Instrument No. 4996,

14  Assignment of Deed of Trust recorded 02/12/2009 in the El Dorado County

15  Clerk/Recorder's Office as Instrument No. 2009 0006093, Assignment of Deed of Trust

16  recorded 07/15/2009 in the El Dorado County Clerk/Recorder's Office as Instrument No.

17  35006, Notice of Trustee's Sale recorded 05/03/2010 in the El Dorado County

18  Clerk/Recorder's Office as Instrument No. 20100019081, including conducting the non-

19  judicial foreclosure sale and the execution of statutory non-judicial foreclosure procedures

20  are privileged under the qualified, common-interest privilege of Cal, Civ. Code § 47(c) (1).

21             SPECIAL INTERROGATORY NO. 21

22       Please set forth all facts in support of Your [include(s) NDEX and any and all

23  subsidiaries and persons acting for or in concert with you] contention that "All claims are

24  barred because Plaintiffs have failed to plead that he/she/they tendered the undisputed

25  amount. Since this relief is equitable in nature [Raedeke vs. Gibraltar Savings & Loan

26  Assoc., 10 Cal. 3d 665, 671 (Cal. 1974)], Plaintiffs must plead that he/she/they either paid, or

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

21

1  offered to pay, all undisputed sums due and owing as a condition precedent to each claim or

2  cause of action arising from or related to the foreclosure sale. Karlsen vs. American Savings

3  & Loan Assoc., 15 Cal. App.3d 112, 117 (Cal. Ct. App. 1971). "Equity will not interpose its

4  remedial power in the accomplishment of what... would be nothing but an idly and

5  expensively futile act." Leonard vs. Bank of America National Trust & Savings Assoc., 16

6  Cal. App. 2d 341, 344 (Cal. Ct. App. 1936)." as claimed in the "NDEX ANSWER" [means

7  the answer to Plaintiffs complaint filed by NDeX West, LLC in the above captioned case

8  (originally El Dorado Superior Court case # PC20100352), dated 5/31/2011 and captioned as

9  "DEFENDANT NDEX WEST, LLC's ANSWER TO PLAINTIFFS' UNVERIFIED 2nd

10  AMENDED COMPLAINT"]. (NDEX ANSWER; page 5,112).

11          RESPONSE: The Propounding Parties took out a $500,000.00 real property

12  loan evidenced by the ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As

13  Published in The Wall Street Journal – Rate Caps) dated September 7, 2005 in Folsom,

14  California for property located at 2690 Brown Bear Court, Cool, California 95614,

15  knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne Edstrom and

16  secured by the Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's

17  Office as Instrument No. 2005 0077328 00 which they ultimately could not afford and then

18  maliciously prosecuted this Responding Party, the loan servicer and the beneficiary to

19  improperly delay foreclosure so that they could live on the LOT 885 OF AUBURN LAKE

20  TRAILS UNIT NO. 4, FILED MAY 8, 1970 IN BOOK E OF MAPS, AT PAGE 61, EL

21  DORADO COUNTY RECORDS, commonly known as 2690 Brown Bear Court, Cool,

22  California 95614 without making their monthly loan payments, real property insurance

23  premium payments and real property taxes.

24                  SPECIAL INTERROGATORY NO. 22

25          Please set forth all facts in support of Your [include(s) NDEX and any and all

26  subsidiaries and persons acting for or in concert with you] contention that "Plaintiffs' claims

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

22

1   for equitable relief are barred in their entirety because Plaintiffs statutory right to reinstate

2   the delinquent mortgage loan and/or to redeem his/her/their property have been foreclosed

3   and extinguished under Cal. Civ. Code §§ 2903-2906; Moeller vs. Lien, 25 Cal. App. 4th

4   822, 830 (Cal. Ct. App. 1994). There is no equitable right of redemption after completion of

5   a non-judicial foreclosure sale." as claimed in the "NDEX ANSWER" [means the answer to

6   Plaintiffs complaint filed by NDeX West, LLC in the above captioned case (originally El

7   Dorado Superior Court case # PC20100352), dated 5/31/2011 and captioned as

8   "DEFENDANT NDEX WEST, LLC's ANSWER TO PLAINTIFFS' UNVERIFIED 2nd

9   AMENDED COMPLAINT"]. (NDEX ANSWER; page 6, f 13).

10          RESPONSE:  The non-judicial sale under the Deed of Trust recorded

11  09/14/2005 in the El Dorado County Clerk/Recorder's Office as Instrument No. 2005

12  0077328 00 secured by the ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As

13  Published in The Wall Street Journal – Rate Caps) dated September 7, 2005 in Folsom,

14  California for property located at 2690 Brown Bear Court, Cool, California 95614,

15  knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne Edstrom

16  terminated any right that Plaintiffs had to redeem the LOT 885 OF AUBURN LAKE

17  TRAILS UNIT NO. 4, FILED MAY 8, 1970 IN BOOK E OF MAPS, AT PAGE 61, EL

18  DORADO COUNTY RECORDS, commonly known as 2690 Brown Bear Court, Cool,

19  California 95614.

20          SPECIAL INTERROGATORY NO. 23

21          Please set forth all facts in support of Your [include(s) NDEX and any and all

22  subsidiaries and persons acting for or in concert with you] contention that "Plaintiffs' claims

23  against this answering Defendant are barred in their entirety because the foreclosure

24  proceedings were handled in accordance with the statutory procedures and requirements

25  prescribed by California Civil Code Section 2924 et seq " as claimed in the "NDEX

26  ANSWER" [means the answer to Plaintiffs complaint filed by NDeX West, LLC in the

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

23

1  above captioned case (originally El Dorado Superior Court case # PC20100352), dated

2  5/31/2011 and captioned as "DEFENDANT NDEX WEST, LLC's ANSWER TO

3  PLAINTIFFS' UNVERIFIED 2nd AMENDED COMPLAINT"]. (NDEX ANSWER; page 6,

4  ¶ 14).

5        RESPONSE: This Responding Party's actions in this non-judicial foreclosure

6  including preparing, posting, publishing, recording and, where relevant, executing Deed of

7  Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's Office as Instrument

8  No. 2005 0077328 00, Notice of Default recorded 12/23/2008 in the El Dorado County

9  Clerk/Recorder's Office as Instrument No. 08 60612, Substitution of Trustee recorded

10  02/05/2009 in the El Dorado County Clerk/Recorder's Office as Instrument No. 4996,

11  Assignment of Deed of Trust recorded 02/12/2009 in the El Dorado County

12  Clerk/Recorder's Office as Instrument No. 2009 0006093, Assignment of Deed of Trust

13  recorded 07/15/2009 in the El Dorado County Clerk/Recorder's Office as Instrument No.

14  35006, Notice of Trustee's Sale recorded 05/03/2010 in the El Dorado County

15  Clerk/Recorder's Office as Instrument No. 20100019081, including conducting the non-

16  judicial foreclosure sale and the execution of statutory non-judicial foreclosure procedures

17  are privileged under the qualified, common-interest privilege of Cal, Civ. Code § 47(c) (1).

18        SPECIAL INTERROGATORY NO. 24

19        Please set forth all facts in support of Your [include(s) NDEX and any and all

20  subsidiaries and persons acting for or in concert with you] contention that "Plaintiffs' claims

21  against this answering Defendant are barred by the applicable statutes of limitation,

22  including, but not limited to Cal. Civ. Proc. Code §§ 338, 339, 343 and/or 15 U.S.C. §

23  1640(e); Pacific Shore Funding v. Lozo, 138 Cal. App. 4th 1342, 1355, 42 Cal. Rptr. 3d 283,

24  292 (CaL Ct. App. 2006) (Truth-in-Lending Act) and/or other applicable laws." as claimed

25  in the "NDEX ANSWER" [means the answer to Plaintiffs complaint filed by NDeX West,

26  LLC in the above captioned case (originally El Dorado Superior Court case # PC20100352),

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29355-B-11/ADV. P. NO.: 12-02546-B

24

1    dated 5/31/2011 and captioned as "DEFENDANT NDEX WEST, LLC's ANSWER TO

2    PLAINTIFFS' UNVERIFIED 2nd AMENDED COMPLAINT"]. (NDEX ANSWER; page 6,

3    15).

4            <u>RESPONSE</u>:  The Propounding Parties took out their $500,000.00 real

5    property loan evidenced by the ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As

6    Published in The Wall Street Journal – Rate Caps) dated September 7, 2005 in Folsom,

7    California for property located at 2690 Brown Bear Court, Cool, California 95614,

8    knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne Edstrom and

9    secured by the Deed of Trust recorded 09/14/2005 in the El Dorado County Clerk/Recorder's

10   Office as Instrument No. 2005 0077328 00 in September 2005 and commenced the instant

11   lawsuit entitled DANIEL MAJOR EDSTROM, an individual, and TERI ANNE EDSTROM,

12   an individual, Plaintiffs, v. NDEX WEST, LLC, a Delaware limited liability company;

13   WELLS FARGO BANK, N.A.; AMERICA'S SERVICING COMPANY, a division of

14   Wells Fargo Home Mortgage; U.S. BANK NATIONAL ASSOCIATION; RESIDENTIAL

15   FUNDING COMPANY LLC; GMAC RESCAP, a wholly owned subsidiary of GMAC

16   Financial Services; GMAC LLC; ALLY BANK fka GMAC Bank; RESIDENTIAL ASSET

17   SECURITIES CORPORATION RASC SERIES 2006-EMX4 TRUST; MORTGAGE

18   ELECTRONIC REGISTRATION SYSTEMS (MERS); FIRST PRIORITY FINANCIAL,

19   INC. a California corporation and BRENT STAGG, an Individual; and DOES 1-10,000,

20   Defendants filed June 10, 2010 in the SUPERIOR COURT OF THE STATE OF

21   CALIFORNIA FOR THE COUNTY OF EL DORADO, located at 3321 Cameron Park Dr.,

22   Cameron Park, CA  95682, Tel.: (530) 621-5867, Unlimited Jurisdiction, case number

23   PC20100352 and the lawsuit entitled DANIEL MAJOR EDSTROM, an individual, and

24   TERI ANNE EDSTROM, an individual, Plaintiffs, v. NDEX WEST, LLC, a Delaware

25   limited liability company; AMERICA'S SERVICING COMPANY, an entity form

26   unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS); and DOES

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

25

1  1-10,000, Defendants in the UNITED STATES DISTRICT COURT FOR THE EASTERN

2  DISTRICT OF CALIFORNIA – SACRAMENTO, located at 501 "I" Street, Sacramento,

3  CA 95814, T: (916) 930-4193, case number 2:10-cv-00105 KJM CKD.

4          SPECIAL INTERROGATORY NO. 25

5          Please set forth all facts in support of Your [include(s) NDEX and any and all

6  subsidiaries and persons acting for or in concert with you] contention that "Pursuant to Cal.

7  Civ. Code § 29241, defendant NDEx WEST, LLC ("NDEx"), a Delaware corporation,

8  served and filed its declaration of non-monetary status. No objection was timely served

9  within the 15-day objection period thereafter. Plaintiff alleges that Defendant is an agent of

10  NDEx. On that basis although NDEx is subject to the jurisdiction of this Court, absent

11  further court order, Defendant and NDEx are not subject to damage claims or required to

12  make further appearances including having to respond as a party to discovery" as claimed in

13  the "NDEX ANSWER" [means the answer to Plaintiffs complaint filed by NDeX West, LLC

14  in the above captioned case (originally El Dorado Superior Court case # PC20100352), dated

15  5/31/2011 and captioned as "DEFENDANT NDEX WEST, LLC's ANSWER TO

16  PLAINTIFFS' UNVERIFIED 2nd AMENDED COMPLAINT"]. (NDEX ANSWER; page

17  6,16).

18          RESPONSE: This Responding Party filed and served a declaration of non-

19  monetary status under Cal. Civ. Code § 29241 and received a purported objection from the

20  Responding Parties which failed to contain any specific factual allegations of this

21  Responding Party's wrongdoing rendering the putative objection void and emasculated under

22  California law.

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

26

1    Dated: February 19, 2013                     BARRETT DAFFIN FRAPPIER
                                                  TREDER & WEISS, LLP
2

3

4                                                 By: _____

5                                                    DARLENE P. HERNANDEZ

6                                                    THOMAS K. AGAWA
                                                     Defendant NDEx WEST, LLC,
7                                                    A Delaware limited liability company

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NDEx WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

27

1

## VERIFICATION

2    I have read the foregoing document entitled DEFENDANT NDeX WEST,

3  LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR EDSTROM'S &

4  PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1) PURSUANT

5  TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33 ("Responses") and know its contents.

6    I am an officer of NDEx WEST, LLC, a Delaware limited liability company.

7  With the exception of each objection set forth in the Responses, I have personal knowledge

8  that the matters stated in the foregoing document are true, unless stated on the basis of

9  information and belief, and as to those matters, I believe them in good faith to be true.

10    The objections set forth in the Responses are excluded from this verification.

11  Otherwise, all other Responses are hereby verified by me.

12    I declare under penalty of perjury under the laws of the State of California that

13  the foregoing is true and correct and that this Verification was executed on February 19,

14  2013 in the City of Addison, State of Texas.

15

16

17                                          Chris Pummill

18                                          Declarant

19

20

21

22

23

24

25

26

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
PURSUANT TO FED BANKR. R. P. 7033, FED. R. CIV. P. 33
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

28

1    **CERTIFICATE OF SERVICE**

2    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3         I, Thomas K. Agawa, hereby certify that on February 19, 2013, a true and
4    correct copy of **DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR EDSTROM'S & PLAINTIFF TERI ANNE**
5    **EDSTROM'S INTERROGATORIES (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33** was served on the interested parties in this action by placing a
6    true copy thereof enclosed in a sealed envelope addressed as follows:

7    Plaintiff, In Pro Se                    Plaintiff, In Pro Se
     Daniel Major Edstrom                    Teri Anne Edstrom
8    2690 Brown Bear Ct.                     935 Lincoln Way
     Cool, CA 95614                          Auburn, CA 95603

9

10   **VIA U.S. MAIL – PREPAID FIRST CLASS**

11   I served the parties below with the envelope for collection and mailing following ordinary
     practices. I am readily familiar with the firm's practice of collection and processing of
12   correspondence for mailing with the United States Postal Service. Under that practice it
     would be deposited with the United States Postal Service on that same day with postage fully
13   prepaid at Los Angeles, California in the ordinary course of business. I am aware that on
     motion of the party served, service is presumed invalid if postal cancellation date or postage
14   meter date is more than one day after date of deposit for mailing in this declaration.

15   Executed on February 19, 2013, at Diamond Bar, California.

16   I declare under penalty of perjury under the laws of the United States of America that the
     above is true and correct.

17

18

19

20                                                  Anthony F. Jordan

21

22

23

24

25

26

27

28   DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
     EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S INTERROGATORIES (SET NO. 1)
     PURSUANT TO FED. BANKR. R. P. 7033, FED. R. CIV. P. 33
     CASE NO.: 12-29352-B-11/ADV. P. NO.. 12-02546-B

                                    1

# EXHIBIT 10

DECLARATION OF DANIEL EDSTROM

1   THOMAS K. AGAWA
    State Bar No. 175952
2   DARLENE P. HERNANDEZ
    State Bar No. 203050
3   BARRETT DAFFIN FRAPPIER
    TREDER & WEISS, LLP
4   20955 Pathfinder Road, Suite 300
    Diamond Bar, California 91765
5   Tel: (626) 371-7032
    Email: ThomasA@BDFGroup.com
6   Email: cdcaecf@BDFGroup.com
    Attorneys for Defendant NDEX WEST, LLC
7

8

9           UNITED STATES BANKRUPTCY COURT

10    EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

11  | DANIEL MAJOR EDSTROM,          | CASE NO.:  12-29353-B-11 |
    |                                |                          |
12  |             Debtor,            | CHAPTER:   11            |
    |                                |                          |
13  |                                | A.P. No.   12-02546-B    |
14  | DANIEL MAJOR EDSTROM, an       | DC NO.:    EAT-001       |
    | individual, and TERI ANNE      |                          |
15  | EDSTROM, an individual,        |                          |

16             Plaintiffs,

    v.
17
    NDEX WEST, LLC, a Delaware limited
18  liability company; WELLS FARGO
    BANK, N.A.; AMERICA'S
19  SERVICING COMPANY, a division of
    Wells Fargo Home Mortgage; U.S.
20  BANK NATIONAL ASSOCIATION;
    RESIDENTIAL FUNDING COMPANY
21  LLC; GMAC RESCAP, a wholly owned
    subsidiary of GMAC Financial Services;
22  GMAC LLC; ALLY BANK fka GMAC
    Bank; RESIDENTIAL ASSET
23  SECURITIES CORPORATION RASC
    SERIES 2006-EMX4 TRUST;
24  MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS (MERS);
25  FIRST PRIORITY FINANCIAL, INC. a
    California corporation and BRENT
26  STAGG, an Individual; and DOES 1-
    10,000,
27
                Defendants.
28

**DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34**

Ctrm.: 32
Hon. Thomas C. Holman
501 I Street, 6th Floor, Sacramento,
California 95814, Tel.: (916) 930-4473

PROPOUNDING PARTIES:    Debtor/Plaintiff DANIEL MAJOR EDSTROM & Plaintiff
                        TERI ANNE EDSTROM

RESPONDING PARTY:       Defendant NDeX WEST, LLC, A Delaware limited
                        liability company

SET NO.                 1

## PRELIMINARY STATEMENT

1.     This Responding Party's Responses are based upon its present knowledge, information and belief.   This Responding Party has not completed its investigation and discovery of the facts relating to this proceeding.  Without acknowledging any obligation to do so, except as required and allowed by applicable law, this Responding Party reserves the right to amend or supplement these Responses and produce additional documents when and if new or additional material or information becomes available, if necessary, under the California Code of Civil Procedure and/or with leave of Court.

2.     Nothing contained in these Responses should be construed as an admission as to the relevance or admissibility of any documents referenced unless made in conjunction with a specific request to admit the genuiness of specific documents under Cal. Civ. Proc. Code § 2033.010 et seq., Cal. Evid. Code § 351 et seq.

3.     The following Responses are submitted without prejudice to this Responding Party's right to produce evidence of any subsequently discovered fact or facts and/or documents which this Responding Party may later recall or discover pursuant to applicable California law, California procedures and/or orders of this Court. The Responses contained herein are made in a good faith effort to supply as much information as is presently known and to provide good faith Responses (and/or objections) as expressly allowed by Cal. Civ. Proc. Code §§ 2031.210 et seq. & 2033.210 et seq., but in no way prejudices this Responding Party's ability to engage in further discovery, research or analysis

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

2

1    pursuant to Court order and/or applicable law.

2          4.    This Responding Party objects to the extent this discovery seeks
3    disclosure of attorney-client communications and attorney work product pursuant to Cal.
4    Evid. Code § 950 et seq. & Cal. Civ. Proc. Code § 2018.010 et seq., respectively.    Such
5    documents are described as memoranda (legal and factual), notes, legal research and
6    analyses and are in the possession of the attorney(s) of record.    These objections are
7    incorporated into each.

8                              **RESPONSES**

9          INSTRUCTIONS/DEFINITIONS:

10          Please produce electronic information in written form, the preference being
11    Adobe PDF files. Please produce the requested documents, writings and/or electronically
12    stored information within 30 days of receipt of this Request and mail to Plaintiff Daniel
13    Major Edstrom located at 2690 Brown Bear Court, Cool, CA 95614 and mail to Plaintiff Teri
14    Anne Edstrom located at 935 Lincoln Way #213, Auburn, CA 95603.

15          Specially Defined Terms Unless otherwise indicated, the following definitions
16    shall be applicable to this Notice for Production of Documents and the Instructions contained
17    herein: Specifically, the terms thus defined which are, or may be relevant to these requests
18    for production of documents are (among others): "YOU OR ANYONE ACTING ON YOUR
19    BEHALF," "PERSON," "DOCUMENT," and "ADDRESS," as follows:

20          (a)    YOU OR ANYONE ACTING ON YOUR BEHALF includes you, your
21    agents, your employees, your insurance companies, their agents, your servicing company,
22    their employees, your attorneys, your accountants, your investigators, and anyone else acting
23    on your behalf.

24          (b)    PERSON includes a natural person, firm, association, organization,
25    partnership, business, trust, corporation, or public entity.

26

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

3

1    (c)    DOCUMENT. As used herein, the word "DOCUMENT" shall mean the
2  original or any copy of any book, pamphlet, periodical, letter, memorandum, telegram,
3  report, record, study, handwritten note, map, drawing, working paper, bill, receipt, personal
4  diary, calendar, chart, paper, computer program, disk, printout, mag card, graph, index, tape,
5  data sheet or data processing card, or any other written, recorded, transcribed, punched,
6  taped, filmed, photograph or graphic matter, however produced or reproduced, to which you
7  know have or at any time have had access. Document also means a writing as defined in
8  [California] Evidence Code section 250, and includes the original or a copy of handwriting,
9  typewriting, printing, photostating, photographing, and every other means of recording upon
10  any tangible thing and form of communicating or representation, including letters, words,
11  pictures, sounds, or symbols, or combinations of them."

12    (d)    ADDRESS means the street address, including the city, state, and zip
13  code."

14    B)

15    In addition to the foregoing definitions adopted and incorporated by reference,
16  the following terms are specially defined for the purposes of these requests for production:

17    1) The pronoun YOU, and all normal English variants thereof, shall be taken to
18  refer to the Responding Party hereinabove identified, and shall be further taken to include

19    YOU AND ANYONE ACTING ON YOUR BEHALF, and further taken to
20  specifically include, without limitation, each of the following PERSON;

21    NDeX West, LLC: together with their respective agents, brokers, employees,
22  principals, officers, directors, representatives, accountants, escrow agents, successors-in-
23  interest, and predecessors- in-interest.

24    2)    The term "PROPOUNDING PARTY" or "REQUESTING PARTY"
25  means the Plaintiffs Daniel Major Edstrom and Teri Anne Edstrom, in their capacity as
26  individuals.

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

4

1    3)    The terms "CONCERNS" and "CONCERNING" include referring to,

2  alluding to, responding to, connected with, commenting on, in respect of, about, supporting,

3  regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting,

4  evidencing or pertaining to.

5    4)    The term "CLAIM" or "ACCOUNT" means Daniel Major Edstrom and

6  Teri Anne Edstrom's alleged Obligation as allegedly entered into on September 7, 2005,

7  including any subsequent document or writing purported to be related to the Obligation, such

8  as the NOTICE OF DEFAULT AND ELECTION TO SELL claim recorded by Defendants

9  in the County of El Dorado on or about December 23, 2008, SUBSTITUTION OF

10  TRUSTEE claim recorded in the County of El Dorado on or about February 5, 2009,

11  ASSIGNMENT OF DEED OF TRUST #1 claim recorded in the County of El Dorado on or

12  about February 12, 2009, NOTICE OF TRUSTEE'S sale under the Deed of Trust recorded

13  09/14/2005 in the El Dorado County Clerk/Recorder's Office as Instrument No. 2005

14  0077328 00 secured by the ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As

15  Published in The Wall Street Journal – Rate Caps) dated September 7, 2005 in Folsom,

16  California for property located at 2690 Brown Bear Court, Cool, California 95614,

17  knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne Edstrom claim

18  recorded by Defendants in the County of El Dorado on or about March 30, 2009,

19  ASSIGNMENT OF DEED OF TRUST #2 claim recorded in the County of El Dorado on or

20  about July 15, 2009, NOTICE OF TRUSTEE'S sale under the Deed of Trust recorded

21  09/14/2005 in the El Dorado County Clerk/Recorder's Office as Instrument No. 2005

22  0077328 00 secured by the ADJUSTABLE RATE NOTE (LIBOR Six-Month Index (As

23  Published in The Wall Street Journal – Rate Caps) dated September 7, 2005 in Folsom,

24  California for property located at 2690 Brown Bear Court, Cool, California 95614,

25  knowingly and voluntarily executed by Daniel Major Edstrom and Teri Anne Edstrom

26  recorded by Defendants in the County of El Dorado on or about December 1, 2009, NOTICE

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29352-B-11/ADV. P. NO.: 12-02546-B

5

1  OF TRUSTEE'S sale under the Deed of Trust recorded 09/14/2005 in the El Dorado County
2  Clerk/Recorder's Office as Instrument No. 2005 0077328 00 secured by the ADJUSTABLE
3  RATE NOTE (LIBOR Six-Month Index (As Published in The Wall Street Journal – Rate
4  Caps) dated September 7, 2005 in Folsom, California for property located at 2690 Brown
5  Bear Court, Cool, California 95614, knowingly and voluntarily executed by Daniel Major
6  Edstrom and Teri Anne Edstrom recorded by Defendants in the County of El Dorado on or
7  about May 3, 2010.

8       5)    The terms "WRITING" and "DOCUMENT" are used interchangeably,
9  and are defined as "WRITING" is defined by Section 250 of the Evidence Code. As used in
10  this Request, the terms "WRITING" and "DOCUMENT" each include, without limitation,
11  any and all originals, copies, or drafts of any and all of the following: records, notes,
12  summaries, or schedules; contracts or agreements; drawings or sketches; invoices, orders, or
13  acknowledgments; diaries or reports; forecasts or appraisals; memoranda of telephonic or in-
14  person communications by or with any person; other memoranda, letters, telegrams, telexes
15  or cables which were prepared, drafted, received, or sent; tapes, transcripts, or recordings;
16  photographs, pictures, or films; computer programs, computer data, or computer printout; or
17  other graphic, symbolic, recorded, or written materials of any nature whatsoever. Moreover,
18  any WRITING which contains any comment, notation, addition, insertion, or marking of any
19  kind which is not part of another WRITING, or any WRITING which does not contain any
20  comment, notation, addition, insertion, or marking of any kind which is part of another
21  WRITING, is to be considered a separate and distinct WRITING.

22       6.    The term "act" as used herein includes acts of every kind and
23  description.

24       7.    The term "identify" or "describe" when used in reference to a
25  "document" means to state:

26
27
28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

6

1        a.    The type of document (e.g., letter, memorandum, report, electronic mail

2  records, notes, etc.);

3        b.    The date of the document;

4        c.    The name of the parties or parties who originated the document, their

5  past or present position with the defendants, their general duties and responsibilities, their

6  current physical location with the company, and their e-mail, telephone number and

7  telephone extension;

8        d.    The name and address of the current custodian of the document;

9        e.    The name and current address of each signatory thereon;

10       f.    The reason, in detail, for the preparation of the document;

11       g.    The subject or subjects covered by the document;

12       h.    The names, business addresses and titles of the persons to whom the

13  document writing was directed; and

14       i.    The name and address and title of each person who originated, read or

15  received the document.

16       8.    The term "identify" or "describe" when used in reference to a

17  "document" means to state:

18       a.    The type of document (e.g., letter, memorandum, report, electronic mail

19  records, notes, etc.);

20       b.    The date of the document;

21       c.    The name of the parties or parties who originated the document, their

22  past or present position with the defendants, their general duties and responsibilities, their

23  current physical location with the company, and their e-mail, telephone number and

24  telephone extension;

25       d.    The name and address of the current custodian of the document;

26       e.    The name and current address of each signatory thereon;

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

7

1      f.   The reason, in detail, for the preparation of the document;

2      g.   The subject or subjects covered by the document;

3      h.   The names, business addresses and titles of the persons to whom the

4    document writing was directed; and

5      i.   The name and address and title of each person who originated, read or

6    received the document.

7      9.   The term "identify" as used herein in connection with a "person" or

8      "persons" means to state the names, titles, the present employer of such

9    "person" or "persons," the relationship of such person or persons to any of the defendants,

10   and such person's current business address and business telephone number.

11     10.   The term "identify" as used herein with respect to or in connection with

12   an "act" means to:

13     a.   Furnish the date and place of the act;

14     b.   Identify the person acting, the person for whom the act was performed,

15   and the person

16     against whom the act was directed; and c. Describe in detail the act.

17     11.   The terms "describe" or "state" as used herein means:

18     a.   Describe or state fully by reference to underlying facts rather than by

19   ultimate facts or conclusions of law.

20     b.   Particularize as to the: Time; Date; Manner; and Place

21     12.   The term oral communication as used herein means and include any

22   face-to-face conversation, meeting, conference, telephone conversation, cell-phone

23   conversation, computer conversation with voice mail, or any one for more of these or related

24   devices.

25     13.   The term "person" or "persons" as used herein means and includes all

26   natural persons, public and private corporations, associates, wholly owned affiliates or

27

28   DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34 CASE NO.: 12-29553-B-11/ADV. P. NO.: 12-02546-B

8

subsidiary corporations or any other form of a business association, and any other type of entity and the agents, employees, officers, deputies and representatives thereof.

14.    The terms "you" or "your" as used herein shall refer to any one or all of the named defendants and any related or affiliated companies associated in any way therewith.

15.    All requests shall be deemed to include any documents made by, held by, or maintained in the files of any predecessor, successor, employee, agent or assignee of either one or all of the Plaintiffs.

16.    The term "the transaction" or "the transactions" or "account" or "accounts" when used herein without qualification means the transactions and accounts between or the term "oral communication" as used herein means and includes any face among the Plaintiff and the named defendants and all related activities and agents or assigns of either party.

17.    Each of the following requests for production of documents and interrogatories is intended to be a continuing request to produce and answer. As a result, the Plaintiff hereby demands that, in the event that at any later date you obtain any additional facts, or form any conclusions, opinions or contentions different from those set forth in your responses herein, then you shall amend your answers to such responses and document production promptly and sufficiently in advance of any trial date, to fully set forth such differences and to produce and documents in connection therewith.

18.    In accordance with the Rules of Civil Procedure any and all objections and/or Claims of Privilege must be specifically stated, the requested item must be identified coupled with its location and the nature of the objection or claim of privilege must be clearly articulated so a ruling may be made on the item by the court. Failure to do so may result in waiver of said objections.

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

9

1       9. You are requested to serve on the undersigned, a statement of: the names
2    and addresses of witnesses (OTHER THAN A PARTY WHO IS AN INDIVIDUAL) you
3    intend to call at trial; a description of physical evidence you intend to offer; and a description
4    and copies of documentary evidence you intend to offer or, if the documents are not
5    available to you, a description of them. Witnesses and evidence that will be used only for
6    impeachment need not be included. YOU WILL NOT BE PERMITTED TO CALL ANY
7    WITNESS, OR INTRODUCE ANY EVIDENCE, NOT INCLUDED IN THE
8    STATEMENT SERVED IN RESPONSE TO THIS REQUEST, EXCEPT AS OTHERWISE
9    PROVIDED BY LAW.

10       Please label each document produced with the specific document request
11    number

12       ITEMS TO PRODUCE

13       EXPLANATION ONE: mortgagee, beneficiary or authorized agent

14       The NOTICE OF DEFAULT DECLARATION attached to the NOTICE OF
15    DEFAULT AND ELECTION TO SELL references the "mortgagee, beneficiary or
16    authorized agent" as listed in the CLAIM.

17       EXPLANATION TWO: present beneficiary

18       The NOTICE OF DEFAULT AND ELECTION TO SELL references "the
19    present beneficiary" as listed in the CLAIM.

20       RESPONSE: This Responding Party objects to the aforesaid instructions and
21    "EXPLANATION[s]" (sic) to the extent that they putatively impose duties outside the scope
22    of the Fed. R. Civ. P. and this Responding Party's Responses will consequently disregard
23    them, as meaningless ephemera & detritus, to the extent that said instructions fail to
24    harmonize with the duties and protocol specified in the Fed. R. Civ. P.

25       REQUEST FOR PRODUCTION NO. 1:

26

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29253-B-11/ADV. P. NO.: 12-02546-B

10

1          1.     Please produce any and all WRITINGS or DOCUMENTS

2 CONCERNING any communications YOU have received from or sent to the "mortgagee,

3 beneficiary or their authorized agent", who are referenced in the "NOTICE OF DEFAULT

4 DECLARATION" attached to the "NOTICE OF DEFAULT AND ELECTION TO SELL"

5 concerning the alleged accounts referenced in the CLAIM.

6         RESPONSE:   Subject to the foregoing objections, this Responding Party will

7 produce all responsive documents within its physical custody, control and possession.

8         REQUEST FOR PRODUCTION NO. 2:

9          2.     Please produce any and all WRITINGS or DOCUMENTS

10 CONCERNING any communications YOU have received from or sent to the "present

11 beneficiary", who is referenced in the "NOTICE OF DEFAULT AND ELECTION TO

12 SELL" concerning the alleged accounts referenced in the CLAIM.

13         RESPONSE:   Subject to the foregoing objections, this Responding Party will

14 produce all responsive documents within its physical custody, control and possession.

15         REQUEST FOR PRODUCTION NO. 3:

16          3.     Please produce any and all WRITINGS or DOCUMENTS

17 CONCERNING any communications YOU have received from or sent to the "AMERICA'S

18 SERVICING COMPANY", who is referenced in the "NOTICE OF DEFAULT AND

19 ELECTION TO SELL" concerning the alleged accounts referenced in the CLAIM.

20         RESPONSE:   Subject to the foregoing objections, this Responding Party will

21 produce all responsive documents within its physical custody, control and possession.

22         REQUEST FOR PRODUCTION NO. 4:

23          4.     Please produce any and all WRITINGS or DOCUMENTS

24 CONCERNING any communications YOU have received from or sent to the "Wells Fargo

25 Bank NA", who is referenced in the "SUBSTITUTION OF TRUSTEE" concerning the

26 alleged account referenced in the CLAIM.

27

28

1    RESPONSE: Subject to the foregoing objections, this Responding Party will
2    produce all responsive documents within its physical custody, control and possession.

3    REQUEST FOR PRODUCTION NO. 5:

4    5.    Please produce any and all WRITINGS or DOCUMENTS
5    CONCERNING any communications YOU have received from or sent to the "MORTGAGE
6    ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE
7    LENDERS NETWORK USA, INC.", who is referenced in the "ASSIGNMENT OF DEED
8    OF TRUST #1" concerning the alleged accounts referenced in the CLAIM.

9    RESPONSE: Such documents have never been in the custody, control or
10   possession of this Responding Party as such documents do not exist.

11   REQUEST FOR PRODUCTION NO. 6:

12   6.    Please produce any and all WRITINGS or DOCUMENTS
13   CONCERNING any communications YOU have received from or sent to the "US BANK
14   NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY,
15   LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT" [means
16   the entity that was the grantee of the 2/6/2009 Assignment of Deed of Trust in regards to
17   Plaintiffs Subject Loan], who is referenced in the "ASSIGNMENT OF DEED OF TRUST
18   #1" concerning the alleged accounts referenced in the CLAIM.

19   RESPONSE: Subject to the foregoing objections, this Responding Party will
20   produce all responsive documents within its physical custody, control and possession.

21   REQUEST FOR PRODUCTION NO. 7:

22   7.    Please produce any and all WRITINGS or DOCUMENTS
23   CONCERNING any communications YOU have received from or sent to the "MORTGAGE
24   ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE
25   LENDERS NETWORK USA, INC." as stated in the "ASSIGNMENT OF DEED OF

26

27

28   DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
     EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
     DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
     CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

12

TRUST #2", who is referenced in the "ASSIGNMENT OF DEED OF TRUST #2" concerning the alleged accounts referenced in the CLAIM.

RESPONSE:   Such documents have never been in the custody, control or possession of this Responding Party as such documents do not exist.

REQUEST FOR PRODUCTION NO. 8:

8.   Please produce any and all WRITINGS or DOCUMENTS CONCERNING any communications YOU have received from or sent to the "U S BANK NATIONAL ASSOCIATION, AS TRUSTEE", who is referenced in the "ASSIGNMENT OF DEED OF TRUST #2" concerning the alleged accounts referenced in the CLAIM.

RESPONSE:   Subject to the foregoing objections, this Responding Party will produce all responsive documents within its physical custody, control and possession.

REQUEST FOR PRODUCTION NO. 9:

9.   Please produce any and all WRITINGS or DOCUMENTS CONCERNING any communications YOU have received from or sent to the "PLAINTIFF'S" concerning the alleged accounts referenced in the CLAIM.

EXPLANATION THREE: California Civil Code 2309

California Civil Code 2309 states: "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing."

RESPONSE:   This Responding Party objects to the aforesaid "EXPLANATION THREE" (sic) as it renders this Request incapable of describing any category of documents with reasonable particularity as proscribed by Fed. R. Civ. P.(b) (1) (A); SEC v. American Beryllium & Oil Corp., 47 F.R.D. 66, 68 (S.D.N.Y. 1968) and this Responding Party disregards it for purposes of responding.  Subject to the foregoing objection this Responding Party will produce all responsive documents within its physical custody, control and possession.

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

13

1    REQUEST FOR PRODUCTION NO. 10:

2    10.    Please produce any and all WRITINGS or DOCUMENTS allowing

3    YOU to act on behalf of the servicer.

4    RESPONSE:    This Responding Party objects to this Request to the extent that

5    it seeks proprietary agreements between it and the loan servicing entity and will not produce

6    any such documents on the grounds of trade secrets, privacy, and that the request is not

7    relevant to the issues in the action nor is it reasonably calculated to lead to the discovery of

8    admissible evidence.    Subject to the foregoing objections, this Responding Party will

9    produce all responsive documents within its physical custody, control and possession.

10    REQUEST FOR PRODUCTION NO. 11:

11    11.    Please produce any and all WRITINGS or DOCUMENTS allowing

12    YOU to act on behalf of the beneficiary.

13    EXPLANATION FOUR: Declaration of Chris Pummill

14    The Declaration of Chris Pummill was submitted to Plaintiffs and the El

15    Dorado County Superior Court on or around 5/29/2012 as part of Defendant NDeX West,

16    LLC's Motion for Summary Judgment in the El Dorado County Superior Court Case #

17    PC20100352. The declaration is attached to this document as Exhibit A.

18    EXPLANATION FIVE: Declaration of Ric Juarez

19    The Declaration of Ric Juarez was submitted to Plaintiffs and the United States

20    District Court by the Eastern District of California Sacramento Division on or around

21    5/30/2012 as part of Defendant NDeX West, LLC's Motion for Summary Judgment in the

22    United States District

23    Court Case # 2:10-cv-00105 KJM CKi). The declaration is attached to this

24    document as Exhibit B.

25    EXPLANATION SIX: 2008 Foreclosure Referral

26

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

14

1         The foreclosure referral as specified in EXPLANATION FOUR: Declaration

2   of Chris Pummill (page 3,18) and EXPLANATION FIVE: Declaration of Ric Juarez (page

3   3,18).

4         EXPLANATION SEVEN: Edstrom Foreclosure File

5         "NDeX's file with respect to this non-judicial foreclosure involving plaintiffs

6   DANIEL MAJOR EDSTROM and TERI ANNE EDSTROM" as referenced in

7   EXPLANATION FOUR: Declaration of Chris Pummill (page 2, 2) and as referenced in

8   EXPLANATION FIVE; Declaration of Ric Juarez (page 2, f 2).

9         <u>RESPONSE:</u>    This   Responding   Party   objects   to   the   aforesaid

10  "EXPLANATION FOUR" (sic), "EXPLANATION FIVE" (sic), "EXPLANATION SIX"

11  (sic), "EXPLANATION SEVEN" (sic) as it renders this Request incapable of describing any

12  category of documents with reasonable particularity as proscribed by Fed. R. Civ. P.(b) (1)

13  (A); <u>SEC v. American Beryllium & Oil Corp.</u>, 47 F.R.D. 66, 68 (S.D.N.Y. 1968) and this

14  Responding Party disregards it for purposes of responding.   This Responding Party

15  FURTHER objects to this Request to the extent that it seeks proprietary agreements between

16  it and the loan servicing entity and will not produce any such documents on the grounds of

17  trade secrets, privacy, and that the request is not relevant to the issues in the action nor is it

18  reasonably calculated to lead to the discovery of admissible evidence.   Subject to the

19  foregoing objections, this Responding Party will produce all responsive documents within its

20  physical custody, control and possession.

21        REQUEST FOR PRODUCTION NO. 12:

22        12.   Please produce the entire Edstrom Foreclosure File as explained in

23  EXPLANATION SIX: Edstrom Foreclosure File or any and all other such documents related

24  in any way to the subject matter of this action.

25        <u>RESPONSE:</u>   This Responding Party objects to the aforesaid

26  "EXPLANATION SIX" (sic) as it renders this Request incapable of describing any category

27

28
DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

15

of documents with reasonable particularity as proscribed by Fed. R. Civ. P.(b) (1) (A); <u>SEC v. American Beryllium & Oil Corp.</u>, 47 F.R.D. 66, 68 (S.D.N.Y. 1968) and this Responding Party disregards it for purposes of responding. Subject to the foregoing objections, this Responding Party will produce all responsive documents within its physical custody, control and possession.

REQUEST FOR PRODUCTION NO. 13:

13.    Please produce the entire "foreclosure referral" as explained in EXPLANATION FIVE: 2008 Foreclosure Referral or any and all other such documents related in any way to the subject matter of this action.

<u>RESPONSE:</u> Subject to the foregoing objections, this Responding Party will produce all responsive documents within its physical custody, control and possession.

REQUEST FOR PRODUCTION NO. 14:

14.    Please produce "a written Declaration of Default and Demand for same" referenced in the "NOTICE OF DEFAULT AND ELECTION TO SELL" (page 2) concerning the alleged accounts referenced in the CLAIM.

<u>RESPONSE:</u> Subject to the foregoing objections, this Responding Party will produce all responsive documents within its physical custody, control and possession.

REQUEST FOR PRODUCTION NO. 15:

15.    Please produce an itemized statement of all NDeX West, LLC attorney's fees related to this case and incurred at any time since the inception of this lawsuit and describe the date and nature of all such services, attaching copies of all bills and invoices, and all canceled checks in payment thereof also, please attach all emails or electronic messages regarding such fees and charges.

<u>RESPONSE:</u> Subject to the foregoing objections, this Responding Party will produce all responsive documents within its physical custody, control and possession.

REQUEST FOR PRODUCTION NO. 16:

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34 CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

16

1    16.    Please produce an itemized statement of all NDeX West, LLC fees

2  billed, invoiced and/or paid to any servicer, beneficiary or other 3rd party related to this case

3  and incurred at any time since the "2008 Foreclosure Referral".

4    RESPONSE:  This Responding Party objects to this Request to the extent that

5  it seeks proprietary information between it and the loan servicing entity and will not produce

6  any such documents on the grounds of trade secrets, privacy, and that the request is not

7  relevant to the issues in the action nor is it reasonably calculated to lead to the discovery of

8  admissible evidence.

9

10  Dated: February 19, 2013                    BARRETT DAFFIN FRAPPIER
                                              TREDER & WEISS, LLP

11

12

13                                        By:

14                                            DARLENE P. HERNANDEZ
                                            THOMAS K. AGAWA
15                                            Defendant NDEx WEST, LLC,
                                            A Delaware limited liability company
16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29353-D-11/ADV. P. NO.: 12-02546-B

17

1    **VERIFICATION**

2    I have read the foregoing document entitled DEFENDANT NDeX WEST,

3    LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR EDSTROM'S &

4    PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF

5    DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P.

6    34 ("Responses") and know its contents.

7    I am an officer of NDEx WEST, LLC, a Delaware limited liability company.

8    With the exception of each objection set forth in the Responses, I have personal knowledge

9    that the matters stated in the foregoing document are true, unless stated on the basis of

10    information and belief, and as to those matters, I believe them in good faith to be true.

11    The objections set forth in the Responses are excluded from this verification.

12    Otherwise, all other Responses are hereby verified by me.

13    I declare under penalty of perjury under the laws of the State of California that

14    the foregoing is true and correct and that this Verification was executed on February 19,

15    2013 in the City of Addison, State of Texas.

16

17

18    Chris Pummill

19    Declarant

20

21

22

23

24

25

26

27

28    DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
      EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
      DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
      CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

18

1

## CERTIFICATE OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

5

6

      I, Thomas K. Agawa, hereby certify that on February 19, 2013, a true and correct copy of **DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34** was served on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

7

8

9

Plaintiff, In Pro Se
Daniel Major Edstrom
2690 Brown Bear Ct.
Cool, CA 95614

Plaintiff, In Pro Se
Teri Anne Edstrom
935 Lincoln Way
Auburn, CA 95603

10

## VIA U.S. MAIL – PREPAID FIRST CLASS

11

12

13

14

I served the parties below with the envelope for collection and mailing following ordinary practices. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service. Under that practice it would be deposited with the United States Postal Service on that same day with postage fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in this declaration.

15

Executed on February 19, 2013, at Diamond Bar, California.

16

17

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

18

19

20

21

Anthony F. Jordan

22

23

24

25

26

27

28

DEFENDANT NDeX WEST, LLC'S RESPONSES TO DEBTOR/PLAINTIFF DANIEL MAJOR
EDSTROM'S & PLAINTIFF TERI ANNE EDSTROM'S REQUESTS FOR PRODUCTION OF
DOCUMENTS (SET NO. 1) PURSUANT TO FED. BANKR. R. P. 7034, FED. R. CIV. P. 34
CASE NO.: 12-29353-B-11/ADV. P. NO.: 12-02546-B

1

# EXHIBIT 11

DECLARATION OF DANIEL EDSTROM

1115033372
DANIEL EDSTROM
TERI EDSTROM
2690 BROWN BEAR CT COOL, CA 95614

1.    You are instructed to initiate a foreclosure against the parties named
in this referral.  If the title search indicates different or additional
parties, please contact the processor assigned to this case. Wells Fargo Bank
N.A. has elected to participate in both the Fannie Mae and Freddie Mac
designated programs.  In the event your office is FNMA/FHLMC designated,
consider this loan "IN PROGRAM" and treat it as such.

2.    At times you may receive a referral that you are handling another
foreclosure action relating to the same property on behalf of us or another
entity.  If    any of the liens are owned by Freddie Mac you must reject
this referral using a close reason of "Freddie Mac Conflict – Dual Referral".

3.    Foreclose in the name of: Contact Processor. Do not initiate Foreclosure
in the name of MERS, Fannie Mae or Freddie Mac. If title comes up in Fannie
Mae or Freddie Mac please prepare an assignment to Wells Fargo Bank N.A. dba
Americas Servicing Company. If title comes up in the name of MERS and you have
Power of Attorney to sign on behalf of MERS, please prepare, execute and
record the assignment from MERS to Wells Fargo Bank, N.A. dba Americas
Servicing Company and forward a copy of the executed assignment via
VendorScape to the "Assignment Issues" processor. Upon receipt of the recorded
assignment, please forward the original recorded assignment to: Default Doc
Department MAC X7801-02R 3476 Stateview Boulevard Fort Mill, SC 29715. If you
do not have Power of Attorney to sign on behalf of MERS, please prepare and
send the assignment via VendorScape to the "Assignment Issues" processor for
execution.

4.    Vesting of the foreclosure deed should be taken in the name of: Contact
Processor.

5.    If the title search reveals a 2nd lien held by any Wells Fargo Bank N.A,
or ASC entity, a notice of the first liens foreclosure must be sent via email
to eadefaultnotice@wellsfargo.com and Foreclosurenotices@Wellsfargo.com.

6.    America's Servicing Company requires the foreclosure to be completed by:

RFC/GMAC SUB RFC S/S #BI1
Conventional-No PMI
Allowable Fee: $600.00

7.    Only approved fees in accordance with FHA, VA, Fannie Mae, and Freddie
Mac current schedules will be paid. The allowable fee for this action is noted
above and any charges for more than this fee must be substantiated and
approved by America's Servicing Company before their occurrence. If such
approval is not obtained in writing, America's Servicing Company will not be
liable for the additional charges. This includes, but is not limited to,
contested and litigation fees associated with the foreclosure action.
Initiating this legal process will be your commitment to complete the
foreclosure and send the title conveyance package to HUD/VA, if applicable,
for the fee set forth by the appropriate government agency. In addition, your
firm agrees to comply with all provisions of the "Fair Debt Collection
Practices Act" while representing America's Servicing Company in this matter.

1001

This action must be completed according to the following standards.

A.    Accepting the referral via VendorScape CMS is an acknowledgement that your office agrees to abide by the terms, conditions and procedures outlined in these instructions. It further indicates your firm's ability to comply with the noted standard and the willingness to reimburse America's Servicing Company for any curtailments, penalties or damages resulting from your firms' non-compliance or lack of diligence in meeting investor foreclosure timeframes. If you are unwilling to accept these terms as stated, please contact the processor assigned to this case immediately

B.    Foreclosure action is not to exceed the "Investor Compliance" timeline. If this deadline is exceeded, a chronology is required at the time of sale. In addition, for FHA loans a monthly compliance report will be forwarded to your office requesting chronologies on the appropriate loans.

C.    America's Servicing Company, requires all events to be reported within 24 hours of its completion via VendorScape CMS.

D.    If your state requires the original loan documents in order to complete the foreclosure action, they will be sent to your firm within 3 days of this referral. If they are not received, please inform the processor assigned to this case via VendorScape CMS.

E.    For FHA loans your office is required to send the HUD Occupancy letter, otherwise known as the HUD regulatory letter 24 CFR 203.381 (notice to occupant of pending acquisition). This includes submitting a copy of said notice to the appropriate HUD field office. In addition, you are required to resend the notice following delays in the foreclosure process (Bankruptcy, Loss Mitigation, RPP etc.) in accordance with regulatory compliance.

F.    You should preserve the rights to pursue a deficiency in those cases where preserving the rights does not add additional time or expense to the foreclosure action.  In those cases where preserving the rights to pursue a deficiency results in additional time or expense, you should not preserve the rights unless you receive specific instructions to do so.

G.    Sales results must be provided to our office within 24 hours of the foreclosure sale via VendorScape CMS. Late notification received by your firm can result in you reimbursing America's Servicing Company. for any penalties enforced by the Investor/Insurer.

H.    All requests for reinstatement and payoff figures should be sent through VendorScape CMS.

***After Sale Packages*** must be sent to the address listed below based on loan type.

FHA and VA Post Sale Document Packages:
America's Servicing Company
1 Home Campus X2505-028
Des Moines, IA 50328

Conventional and Private Post Sale Document Packages:
America's Servicing Company
7485 New Horizon Way
Frederick, MD
21703-8388
2nd Floor

# Individual Message

Case # - 2975666
Case Type - Foreclosure (Non-Judicial)
Loan # - 1115033372
Reference # - 20080134014711
Borrower - DANIEL EDSTROM
Property State - CALIFORNIA

## LeeAnne Edmunds

| | |
|---|---|
| **From:** | Marilyn J Whipple (America's Servicing Co.) |
| **To:** | LeeAnne Edmunds (NDEx West, LLC) |
| **Sent:** | 12/18/2008 9:51 AM | **Required Reply:** No |
| **Read By:** | Amanda Stone | **Read:** 12/18/2008 9:59 AM |
| **Subject:** | RE: FC Entity |

Per Master Consolidated List, name to foreclose in:

US Bank National Association as Trustee By Residential Funding Company, LLC FKA
Residential Funding Corporation Attorney in Fact

-----Original Message-----
From: LeeAnne Edmunds
To: ndex processor
Sent: 12/17/2008 1:18 PM
Subject: RE: FC Entity

Please be advised that we are in receipt of your referral. However, we require the name in
which foreclosure should be completed.

**Foreclosure Document Proofing Checklist**

File No.: 20080134014711

File Location: T*

Proofer: Print your 1st Initial & Last Name

Ext.: _____

Date: December 17, 2008

# DEED OF TRUST

| | | |
|---|---|---|
| 1. Do we have the DOT? | No | Yes |
| 2. Has the beneficiary check returned?<br>(Title Company: _____ ) | No | Yes |
| 3. Has Loan Matured? 10/1/2035 | No | Yes<br>(If yes, process Matured Letters) |
| 4. Is Deed of Trust a standard FNMA/FHLMC/VA/FHA Form? | No | Yes |
| 5. Is this a mobile home, if so has the R99 been completed? | No | Yes |
| 6. Is Property Located in 2 Counties?<br>(Check legal description) | No | Yes<br>(If yes, add additional verbiage to legal description) |

| 7. DOT Execution Date:<br>September 07, 2005 | 8. Original Borrowers:<br>DANIEL MAJOR EDSTROM<br>TERI ANNE EDSTROM | Deed matches referral? [Yes] [No]<br>Loan Mod Done? [Yes] [No] |
|---|---|---|

**9. Original Trustee(s):**
MITCHELL L. HEFFERNAN

**10. Original Noteholder:**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)

| 11. Original Principal<br>$500,000.00 | 12. Property County:<br>EL DORADO | Matches Legal Description? [Yes] [No] |
|---|---|---|

**13. Legal Description:**

(Check MTP also for possible descrepancies)

**14. Property Address (if not on DOT or Note, check referral):**
2690 BROWN BEAR COURT
COOL, CA 95614

| 15. Recording Information:<br>Recorded on 09/14/2005 as Instrument No. 2005-0077328-00 | 17. Substitue Trustee:<br>NDEx West, LLC |
|---|---|

| 16. Foreclosure Status:<br>Active | 18. Breach Type:<br>PRINCIPAL AND INTEREST |
|---|---|

FCUS_Proc_Chklist.rpt - 09/10/2007 - Ver-04

**1039**

Created on 12/17/2008 3:49:01PM

## Foreclosure Document Proofing Checklist Page 2

File No.: 20080134014711    Proofer: _Print your 1st Initial & Last Name_  Ext.: _____    Date: _December 17, 2008_

### REFERRAL INFORMATION

| 1. Client:<br><br>AMERICA'S SERVICING COMPANY | 2. Client Loan No.:<br><br>1115033372 | 3. Loan Type:<br>Conventional |
|---|---|---|
| 4. Investor Code:<br>None | 5. Investor Loan No.:<br>0010019116 | 6. PMI Carrier Key: |

| 7. Unpaid Principal Balance: $485,631.10 | As Of: 07/01/2008 |
|---|---|
| 8. Per Diem Per Client (Event C80): $121.41  12/17/2008 | |
|    Total Debt Per Client (Event C81): $512,322.39  12/17/2008<br>   (Compare to Payoff Statement) | |
| 9. Current Note Holder:<br>LAST NOTEHOLDER NEEDED | |
| 10. Sold To:<br>LAST NOTEHOLDER NEEDED | |
| 11. Servicer:<br>AMERICA'S SERVICING COMPANY | |
| 12. Is Debtor Deceased?          YES  or  NO<br>(If YES, update event on NDTS)     *(CIRCLE ONE)* | Title Events Completed<br>Post-Event:  No      Pre-Sale:  No |

File No.: 20080134014711

Created on 12/17/2008 3:49:01PM

| Original/Present Borrower | DANIEL MAJOR EDSTROM | SSN: 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 |
|---|---|---|

Rel: AND
2690 BROWN BEAR COURT
COOL, CA 95614

| Original/Present Borrower | TERI ANNE EDSTROM | SSN: 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 |
|---|---|---|

2690 BROWN BEAR COURT
COOL, CA 95614

1040

**TitleStar Mortgagee Services, L.L.C.**
15000 Surveyor Blvd., Suite 210
Addison, Texas 75001-4417
Telephone: (972) 386-5040
Telecopier: (972) 341-0526

# TRUSTEE'S SALE GUARANTEE ORDER

**12/19/2008**

LandAmerica United Title Company- CA
1400 EAST COOLEY DRIVE
COLTON, CA  92324

| | |
|---|---|
| TS #: | **20080134014711** |
| LOAN TYPE: | **Conventional** |
| INVESTOR: | **None** |
| BORROWER(S): | **DANIEL MAJOR EDSTROM** |
| | **TERI ANNE EDSTROM** |
| PROPERTY ADDRESS: | **2690 BROWN BEAR COURT** |
| | **COOL, CALIFORNIA  95614** |
| PROPERTY COUNTY: | **EL DORADO** |
| DEED OF TRUST DATED: | **09/07/2005** |
| UNPAID PRINCIPAL BALANCE: | **$485,631.10** |
| RECORDING INFO: | **Recorded on 09/14/2005 as Instrument No. 2005-0077328-00** |

As Agent for the Trustee, you are instructed to execute the enclosed Notice of Default and record immediately.  Advise us within a 24 hour period of the recording date of the Notice of Default and of any Request for Notice

Please furnish us with a Trustee's Sale Guarantee using the unpaid principal balance above for the liability amount.  The Guarantee should include the name of the Judicial Township in which the property is situated and also the name of the newspaper qualified to make publication of our Notice of Sale, together with the days of the week such newspaper is published.  Include in the Guarantee a map of the property in question so that it may be used for posting purposes

<u>IF THIS IS A FNMA OR **FHLMC** ORDER PLEASE ISSUE A **LIMITED TSG PRODUCT**.</u>

<u>***START OVER INSTRUCTIONS***</u>
If we are starting over and sending you a new Notice of Default and a TSG has previously been issued:
Please send us a Start Over Endorsement instead of a new TSG.

Do not hesitate to contact our office if you have any questions.

## ATTORNEY REVIEW AND APPROVAL TO PROCEED

December 24, 2008

Client: AMERICA'S SERVICING COMPANY

File Location: T*

NDEx File Number: 20080134014711     Client Loan Number: 1115033372

Loan Type: Conventional

Original principal balance: $500,000.00
Unpaid principal balance 485,631.10 as of 07/01/2008(Past Due)

FHA/VA/PMI Number:

Property Address:     2690 BROWN BEAR COURT
                      COOL, CA 95614

Mobile Home Unit     Yes          No

Property County: EL DORADO

Servicer's Name: AMERICA'S SERVICING COMPANY

Current Noteholder: US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT

Strike To: US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT

Investor ID, Name and Number: 00000 - None

Program Loan: No               Scheduled Posting Date:          Scheduled Sale Date:

FFD Per Diem Amount -   Scheduled Date: $121.41 - 12/17/2008              Demand/FFD:          $ 0.00
FFD Total Debt Amount -  Scheduled Date: $512,322.39 - 12/17/2008
FFD interest calculated to - Completed Date:

Names appearing in client's records as borrower(s):
Mailing Category: 10-Day Mailing
     DANIEL MAJOR EDSTROM - Person Type: Original/Present
     2690 BROWN BEAR COURT
     COOL, CA 95614

Mailing Category: 10-Day Mailing
     TERI ANNE EDSTROM - Person Type: Original/Present
     2690 BROWN BEAR COURT
     COOL, CA 95614

### Review Findings

Reviewed on 12/24/2008          by  Erica          Result  Approved for Any Amount
9:15:00AM                           Jones

     Issue  N/A
     Comment  No issues found

ALL INFORMATION CONTAINED HEREIN IS OBTAINED FROM THE CLIENT'S RECORDS

**NDEx West, L.L.C.**
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telephone: (866) 795-1852
Telecopier: (972) 661-7800

**December 24, 2008**

**DANIEL MAJOR EDSTROM**
**2690 BROWN BEAR COURT**
**COOL, CA 95614**

Re:  Loan No.:        1115033372
     TS No.:          20080134014711

NDEx West, L.L.C. ("NDEx") has been authorized by the Servicer/Creditor to collect a debt associated with a Deed of Trust associated with a real property loan. The current creditor to whom the Debt is owed is **US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT.** The loan is being serviced by **AMERICA'S SERVICING COMPANY.**

We have been advised by our client that the amount of the debt as of the date of this Notice according to the records of our client is **$513,172.26.** Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which case we will inform you before depositing the check for collection. For further information, write the undersigned or call 866-795-1852.
**PLEASE BE ADVISED THAT NDEX MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT THE ABOVE REFERENCED DEBT. ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.**

Unless, within thirty days after you receive this letter you dispute the validity of the Debt or any part of it, NDEx will assume that the debt is valid. If you notify NDEx in writing within that same thirty-day period that the debt, or any portion thereof, is disputed NDEx will obtain verification of the Debt or a copy of a judgment, if any, and a copy of such verification or judgment will be mailed to you. Upon your written request within that same thirty-day period NDEx will furnish you with the name and address of the original creditor, if the original creditor is different from the current creditor.

The law does not require NDEx to wait until the end of the thirty-day period before taking action to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within thirty days of receipt of this letter, the law requires NDEx to suspend its efforts (through litigation or otherwise) to collect the debt, even if we have already initiated foreclosure proceedings, until we mail you the information validating the debt and/or until we provide you with the name and address of the original creditor.

The California Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**If you are not obligated on the Debt, or if the Debt has been discharged in a bankruptcy proceeding, this letter is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only. You are being given this notice as a courtesy because your interest in the property loan may be affected.**
Sincerely,

NDEx West, L.L.C.

FCUS_FFD_Ltr rpt-1st - (01/07/08) / Ver-17

**NDEx West, L.L.C.**
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telephone: (866) 795-1852
Telecopier: (972) 661-7800

December 24, 2008

**TERI ANNE EDSTROM**
**2690 BROWN BEAR COURT**
**COOL, CA 95614**

Re: Loan No.:        1115033372
TS No.:        20080134014711

NDEx West, L.L.C. ("NDEx") has been authorized by the Servicer/Creditor to collect a debt associated with a Deed of Trust associated with a real property loan. The current creditor to whom the Debt is owed is **US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT.** The loan is being serviced by **AMERICA'S SERVICING COMPANY.**

We have been advised by our client that the amount of the debt as of the date of this Notice according to the records of our client is **$513,172.26.** Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which case we will inform you before depositing the check for collection. For further information, write the undersigned or call 866-795-1852.
**PLEASE BE ADVISED THAT NDEX MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT THE ABOVE REFERENCED DEBT. ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.**

Unless, within thirty days after you receive this letter you dispute the validity of the Debt or any part of it, NDEx will assume that the debt is valid. If you notify NDEx in writing within that same thirty-day period that the debt, or any portion thereof, is disputed NDEx will obtain verification of the Debt or a copy of a judgment, if any, and a copy of such verification or judgment will be mailed to you. Upon your written request within that same thirty-day period NDEx will furnish you with the name and address of the original creditor, if the original creditor is different from the current creditor.

The law does not require NDEx to wait until the end of the thirty-day period before taking action to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within thirty days of receipt of this letter, the law requires NDEx to suspend its efforts (through litigation or otherwise) to collect the debt, even if we have already initiated foreclosure proceedings, until we mail you the information validating the debt and/or until we provide you with the name and address of the original creditor.

The California Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**If you are not obligated on the Debt, or if the Debt has been discharged in a bankruptcy proceeding, this letter is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only. You are being given this notice as a courtesy because your interest in the property loan may be affected.**
Sincerely,

NDEx West, L.L.C.

**NDEx West, L.L.C.**

15000 SURVEYOR BOULEVARD
SUITE 500
ADDISON, TEXAS 75001-9013
TELEPHONE: (866) 795-1852
TELECOPIER: (972) 661-7800

December 29, 2008

DANIEL MAJOR EDSTROM
TERI ANNE EDSTROM
2690 BROWN BEAR COURT
COOL, CA 95614

| Re: | Loan No.: | 1115033372 |
|-----|-----------|------------|
|     | Mortgage Servicer: | AMERICA'S SERVICING COMPANY |
|     | TS No.: | 20080134014711 |
|     | Property Address: | 2690 BROWN BEAR COURT |
|     | | COOL, CA 95614 |

NDEx West, L.L.C has been employed by AMERICA'S SERVICING COMPANY to represent its interest relating to the above-referenced loan. In that regard, on , our firm sent you a first class letter informing you that your loan is in default and that foreclosure proceedings have been initiated.

Although we have not been provided with settlement authority, AMERICA'S SERVICING COMPANY would like for us to inform you that **you may qualify for certain loan workout options** that it has made available to assist its borrowers in avoiding foreclosure. A brief description of several of the available loan workout options are listed below:

- **Reinstatement of your loan** - You would bring your loan current by paying the total amount past due along with any related costs.

- **Repayment plan** - If you qualify, AMERICA'S SERVICING COMPANY may be able to consider one or more types of payment plans to fit your budget.

- **Loan Modification** - This program would change certain terms of your loan. For example, if you qualify, AMERICA'S SERVICING COMPANY may be able to extend the repayment of the past due amounts over the remaining term of your loan.

- **Pre-foreclosure sale** - If you qualify, this program allows you to sell your home to avoid foreclosure.

- **Deed-in-lieu of foreclosure** - If you qualify, you would transfer ownership of the property to the mortgage servicer or one of their designated parties.

- **Partial claim** - On certain types of loans, if you qualify, you may be able to bring your account current by creating a second lien on your property for the amount that is delinquent on your loan.

If you are interested in seeing **if you qualify** for one of the available loan workout options, you are urged to please contact the firm's CALIFORNIA Homeowner's Assistance Department at **(866) 795-1852 Monday through Friday, 7:30 A.M. - 4:30 P.M. PACIFIC TIME.** When calling please be prepared to discuss your ability to pay, your current contact information, the condition of the property and the occupancy status of the property. Additional information and/or requirements may be necessary. In some instances, we may also direct you to a representative of AMERICA'S SERVICING COMPANY who will assist you in determining if you qualify for one of the loan workout options that it makes available to its customers.

If you need this letter translated into Spanish, Chinese, Korean, Vietnamese or Tagalong, please call us at (866) 795-1852.

**Your eligibility for the foregoing alternatives, or any other available loan workout options, must be qualified and approved by AMERICA'S SERVICING COMPANY.**

Your receipt of this letter should not be considered as an approval of any available program. Please be advised that until such time as you have received written confirmation that AMERICA'S SERVICING COMPANY has approved your loan workout, **our firm will continue with the foreclosure sale as scheduled.**

**Our company does not represent you in this matter and therefore, if you are uncertain of the legal issues involved, you are urged to have an attorney of your choice advise you. If you are currently represented by an attorney, please notify your attorney of this letter.**

Sincerely,

NDEx West, L.L.C.

## NOTICE

**The Fair Debt Collection Practices Act requires us to notify you that NDEx West, L.L.C. is a debt collector and this firm is attempting to collect a debt and any information obtained may be used for that purpose.**

**If you have received a discharge in a bankruptcy proceeding, and your loan was not reaffirmed in the bankruptcy case, this firm will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.**

Recording requested by:
LandAmerica United Title Company- CA

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

**CONFORMED COPY**
COPY of Document Recorded

on *12/23/08* as No. *08-60612*

Has not been compared with the original



DFF20080134014711

*Space above this line for Recorder's use only*

Trustee Sale No. : 20080134014711        Title Order No.: 20863960

### IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $29,373.66 as of 12/19/2008 and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

FCUS_NoticeOfDefault.rpt(09/05/2008)Ver-24

Page 1 of 2

1065

**IMPORTANT NOTICE**
NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

Trustee Sale No. : 20080134014711          Title Order No.: 20863960

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**AMERICA'S SERVICING COMPANY**
c/o NDEx West, LLC
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

### REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** NDEx West, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated **09/07/2005**, executed by DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, as Trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), as Beneficiary. Recorded on 09/14/2005 as Instrument No. 2005-0077328-00 of official records in the Office of the Recorder of EL DORADO County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $500,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 7/1/2008 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: **12/19/2008**

**NDEx West, LLC as Agent for Beneficiary**

By: _Aaron W. Brown_

FCUS_NoticeOfDefault.rpt(09/05/2008)Ver-24

## NOTICE OF DEFAULT DECLARATION
PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

America's Servicing Company
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: DANIEL M EDSTROM
Property Address: 2690 BROWN BEAR COU
          COOL       CA  95614

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the
"Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been
met. This Declaration is required for any residential owner occupied property in which the loan
was originated between January 1, 2003 and December 31, 2007. Non-owner occupied and
vacant properties are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

⚹     The Beneficiary has made contact with the borrower pursuant to CA Civil Code
      2923(a)(2). Contact with the borrower was made in person or by telephone to assess the
      borrower's financial situation and explore options for the borrower to avoid foreclosure.

⚹     Due Diligence to contact the borrower was exercised pursuant to CA Civil Code
      2923.5(g)(2) by the Beneficiary.

⚹     The borrower has surrendered the property as evidenced by either a letter confirming the
      surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or
      authorized agent pursuant to CA Civil Code 2923.5(h)(1).

⚹     The borrower has contracted with an organization, person, or entity whose primary
      business is advising people who have decided to leave their homes on how to extend the
      foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries
      pursuant to CA Civil Code 2923.5(h)(2).

⚹     The borrower has filed for bankruptcy and the proceedings have not been finalized
      pursuant to CA Civil Code 2923.5(h)(3).

Dated:  12/18/2008

America's Servicing Company

**John Kennerly**

# LIMITED TRUSTEE'S SALE GUARANTEE

### Issued by United Capital Title Insurance Company

 **LandAmerica United Capital**

*United Capital Title Insurance Company is a member of the LandAmerica family of title insurance underwriters.*

**GUARANTEE NUMBER**

20863960

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE LIMITS OF LIABILITY AND THE OTHER PROVISIONS OF THE CONDITIONS AND STIPULATIONS HERETO ANNEXED AND MADE A PART OF THIS GUARANTEE,

**United Capital Title Insurance Company**
a California corporation, herein called the Company

**GUARANTEES**

the Assured named in Schedule A of this Guarantee

against loss not exceeding the liability amount stated in Schedule A which the Assured shall sustain by reason of any incorrectness in the assurance which the Company hereby gives that, according to the public records, as of the Date of Guarantee shown in Schedule A:

1. The title to the herein described estate or interest was vested in the vestee named in Schedule A, subject to the matters shown as Exceptions in Schedule B, which Exceptions are not necessarily shown in the order of their priority;

2. The names and addresses of persons who have recorded requests, as provided by Section 2924b (a) and (d) of the California Civil Code, for a copy of Notice of Default and for a copy of Notice of Sale are as shown in Schedule C;

3. The names and addresses of additional persons who, as provided by Section 2924b (c) (1) and (2) of the California Civil Code, are entitled to receive a copy of Notice of Default and a copy of Notice of Sale are as shown in Schedule C;

4. The names and addresses of state taxing agencies which, as provided by Section 2924b (c) (3) of the California Civil Code, are entitled to receive a copy of Notice of Sale, are as shown in Schedule C;

5. The addresses of the Internal Revenue Service which, as provided by Section 2924b (c) (4) of the California Civil Code, are entitled to receive a copy of Notice of Sale, are as shown in Schedule C; and

6. The land described in Schedule A is located in the city or judicial district stated in Schedule C and, if designated, the newspaper or newspapers listed in Schedule C qualify for publication of notice pursuant to Section 2924f of the California Civil Code.

**UNITED CAPITAL TITLE INSURANCE COMPANY**

Dated: JANUARY 9, 2009

Countersigned:

By: _____
Authorized Officer or Agent

By: _____
President

Attest: _____
Secretary

Limited Trustee's Sale Guarantee

1

**UNITED CAPITAL TITLE INSURANCE COMPANY**
**LIMITED TRUSTEE'S SALE GUARANTEE**

**SCHEDULE A**

|  |  |
|---|---|
| **CUSTOMER NO.:** | 20080134014711 |
| **ORDER NO.:** | 20863960-30 |
| **GUARANTEE NO.:** | 20863960 |
| **LIABILITY:** | $485,631.10 |
| **FEE:** | $420.00 |
| **DATED:** | DECEMBER 23, 2008 AT 10:24 A.M. |

1.  **NAME OF ASSURED:**

    MITCHELL L. HEFFERNAN, AS TRUSTEE, AND

    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS A NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC., A CORPORATION OR ASSOCIATION, AND NDEX WEST, LLC AS AGENT FOR BENEFICIARY, AS BENEFICIARY

2.  **THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS GUARANTEE IS:**

    A FEE

3.  **TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:**

    DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, HUSBAND AND WIFE AS JOINT TENANTS

4.  **THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF EL DORADO, AND IS DESCRIBED AS FOLLOWS:**

    SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

2

1083

GUARANTEE NO.: 20863960
ORDER NO.:     20863960-30
CUSTOMER NO.:  20080134014711

## EXHIBIT "A"

**LOT 885 OF AUBURN LAKE TRAILS UNIT NO. 4, FILED MAY 8, 1970 IN
BOOK E OF MAPS, AT PAGE 61, EL DORADO COUNTY RECORDS.**

3

GUARANTEE NO.: 20863960
ORDER NO.:      20863960-30
CUSTOMER NO.:   20080134014711

**SCHEDULE B**

**EXCEPTIONS:**

1.  PLEASE NOTE THAT THIS GUARANTEE DOES NOT REPRESENT THE TRUE
    STATUS OF TITLE TO THE SUBJECT PROPERTY, BUT IS INTENDED SOLELY
    FOR THE PURPOSE OF PROCESSING A STATUTORY FORECLOSURE.

2.  ESTATES OR INTERESTS IN OR ENCUMBRANCES OR LIENS ON THE LAND
    SHOWN BY THE PUBLIC RECORDS (INCLUDING BUT NOT LIMITED TO
    EASEMENTS, LEASES, MINERAL INTERESTS, CONTRACTS OF SALE,
    COVENANTS, CONDITIONS AND RESTRICTIONS) RECORDED PRIOR TO:
    SEPTEMBER 14, 2005 WHICH ARE NOT SUBORDINATE TO THE LIEN OF THE
    FORECLOSING MORTGAGE.

    SPECIAL ASSESSMENTS, IF ANY, WHICH ARE NOT BILLED AND COLLECTED
    BY THE COUNTY TAX COLLECTOR.

    LIENS, IF ANY, SUBORDINATE TO THE LIEN OF THE FORECLOSING
    MORTGAGE, WHICH SECURE A MONETARY DEBT IN FAVOR OF PERSONS AND/OR
    ENTITIES WHO ARE NOT, UNDER THE LAWS OF THE STATE OF CALIFORNIA
    PERTAINING TO  NON-JUDICIAL FORECLOSURES, ENTITLED TO BE SENT A
    COPY OF THE NOTICE OF DEFAULT AND A COPY OF THE NOTICE OF SALE.

3.  PROPERTY TAXES, INCLUDING ANY PERSONAL PROPERTY TAXES AND ANY
    ASSESSMENTS COLLECTED WITH TAXES, FOR THE FISCAL YEAR 2008 –
    2009.

    1ST INSTALLMENT:     $2,234.63 (PAID)
    2ND INSTALLMENT:     $2,234.63 (OPEN)
    EXEMPTION:           $7,000.00
    CODE AREA:           083-048
    ASSESSMENT NO.:      073-141-03-100

4.  THE LIEN OF SUPPLEMENTAL TAXES, IF ANY, ASSESSED PURSUANT TO THE
    PROVISIONS OF CHAPTER 3.5 (COMMENCING WITH SECTION 75) OF THE
    REVENUE AND TAXATION CODE OF THE STATE OF CALIFORNIA.

    ASSESSMENTS, IF ANY, FOR COMMUNITY FACILITY DISTRICT AFFECTING
    SAID LAND WHICH MAY EXIST BY VIRTUE OF ASSESSMENT MAPS OR NOTICES
    FILED BY SAID DISTRICTS.

4

GUARANTEE NO.: 20863960
ORDER NO.:     20863960-30
CUSTOMER NO.:  20080134014711

**EXCEPTIONS:   (CONTINUED)**

5.  A DEED OF TRUST TO SECURE AN INDEBTEDNESS IN THE ORIGINAL AMOUNT
    SHOWN BELOW

    AMOUNT:           $500,000.00
    DATED:            SEPTEMBER 7, 2005
    TRUSTOR:          DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM,
                      HUSBAND AND WIFE
    TRUSTEE:          MITCHELL L. HEFFERNAN
    BENEFICIARY:      MORTGAGE   ELECTRONIC   REGISTRATION   SYSTEMS,
                      INC., ACTING SOLELY AS A NOMINEE FOR MORTGAGE
                      LENDERS NETWORK USA, INC., A CORPORATION OR
                      ASSOCIATION
    RECORDED:         SEPTEMBER 14, 2005 AS INSTRUMENT NO. 2005-
                      0077328-00 OF OFFICIAL RECORDS.

    A NOTICE OF DEFAULT UNDER THE TERMS OF SAID DEED OF TRUST

    EXECUTED BY:      NDEX WEST, LLC AS AGENT FOR BENEFICIARY
    RECORDED:         DECEMBER 23, 2008 AS INSTRUMENT NO. 2008-
                      0060612-00 OF OFFICIAL RECORDS.

6.  ANY LIENS OR OTHER MATTERS (OTHER THAN BANKRUPTCY PROCEEDINGS,
    FEDERAL TAX LIENS AND STATE TAX LIENS) WHICH MAY AFFECT THE TITLE
    TO SAID LAND BY REASON OF THE ACQUISITION OR OWNERSHIP THEREOF BY
    THE VESTEE SHOWN HEREIN. THE EXISTENCE OF ANY SUCH LIENS OR OTHER
    MATTERS CANNOT BE DETERMINED WITHOUT A SATISFACTORY STATEMENT OF
    INFORMATION CONCERNING SUCH PARTIES.

7.  ANY BANKRUPTCY PROCEEDING THAT IS NOT DISCLOSED BY THE ACTS THAT
    WOULD AFFORD NOTICE AS TO SAID LAND, PURSUANT TO TITLE 11 U.S.C.
    549 (C) OF THE BANKRUPTCY REFORM ACT OF 1978, AS AMENDED.

8.  THE LATEST TAX BILL FROM THE EL DORADO COUNTY TAX COLLECTOR SHOWS
    THE SITUS ADDRESS OF SAID LAND AS 2690 BROWN BEAR COURT - COOL
    AND THE PARCEL NO. 73-141-3.

1086

GUARANTEE NO.: 20863960
ORDER NO.:    20863960-30
CUSTOMER NO.: 20080134014711

**SCHEDULE C**
**INFORMATION FOR TRUSTEE**

**RELATIVE TO THE DEED OF TRUST SHOWN AS ITEM 5 OF THIS GUARANTEE:**

1.   TRUSTEE MUST OBSERVE THE REQUIREMENTS OF SECTION 2924B OF THE
     CIVIL CODE AS TO THE NOTICES TO BE SENT TO THE TRUSTORS.   IF
     ADDRESSES OF THE TRUSTORS ARE NOT SHOWN IN THE TRUST DEED THIS
     CODE SECTION STATES THE PROCEDURE TO BE FOLLOWED AS TO NOTICE IN
     SUCH CASES.   NAMES OF TRUSTORS AND ADDRESSES (IF ANY) SHOWN IN
     SAID DEED OF TRUST:

     DANIEL MAJOR EDSTROM
     2690 BROWN BEAR COURT
     COOL, CALIFORNIA 95614

     TERI ANNE EDSTROM
     2690 BROWN BEAR COURT
     COOL, CALIFORNIA 95614

2.   THE NAMES AND ADDRESSES OF PERSONS WHO HAVE RECORDED REQUESTS, AS
     PROVIDED BY SECTION 2924B(A) AND (D) OF THE CIVIL CODE, FOR A
     COPY OF NOTICE OF DEFAULT AND FOR A COPY OF NOTICE OF SALE ARE:

     NONE

3.   THE NAMES AND ADDRESSES OF ADDITIONAL PERSONS WHO, AS PROVIDED BY
     SECTION 2924B(C)(1) AND (2) OF THE CIVIL CODE, ARE ENTITLED TO
     RECEIVE A COPY OF NOTICE OF DEFAULT AND A COPY OF NOTICE OF SALE
     ARE:

     NONE

4.   THE NAMES AND ADDRESSES OF STATE TAXING AGENCIES WHICH, AS
     PROVIDED BY SECTION 2924B(C)(3) OF THE CIVIL CODE, ARE ENTITLED
     TO RECEIVE A COPY OF NOTICE OF SALE ARE:

     NONE

5.   THE ADDRESSES OF THE INTERNAL REVENUE SERVICE WHICH, AS PROVIDED
     BY SECTION 2924B (C)(4) OF THE CIVIL CODE, IS ENTITLED TO RECEIVE
     A COPY OF NOTICE OF SALE ARE:

     NONE

6.   THE NAMES OF PERSONS AND ADDRESSES DISCLOSED BY THE RECORDS
     EXAMINED, OTHER THAN THOSE TO WHOM NOTICE IS REQUIRED BY SECTION
     2924B OF THE CIVIL CODE TO BE DIRECTED, WHO MIGHT BE INTERESTED
     IN RECEIVING A COPY OF NOTICE OF DEFAULT AND A COPY OF NOTICE OF
     SALE ARE:

     NONE

6

GUARANTEE NO.: 20863960
ORDER NO.:    20863960-30
CUSTOMER NO.: 20080134014711

**SCHEDULE C**
**INFORMATION FOR TRUSTEE**

**(CONTINUED)**

7.   CITY IN WHICH SAID LAND IS LOCATED:  COOL

     IF NOT IN A CITY, JUDICIAL DISTRICT IN WHICH SAID LAND IS
     LOCATED: GEORGETOWN

8.   LEGAL PUBLICATION:

     **GEORGETOWN GAZETTE**          **PUBLISHED (THURS)**

9.   ATTENTION IS CALLED TO SB 1137 (CALIFORNIA CIVIL CODE SECTION
     2923.5) AND ANY AMENDMENTS THERETO, WHICH, AMONG OTHER THINGS
     REQUIRES THE MORTGAGEE, TRUSTEE, BENEFICIARY OR AUTHORIZED AGENT,
     TO CONTACT HOMEOWNERS TO EXPLORE RESTRUCTURING OPTIONS BEFORE
     INITIATING THE NONJUDICIAL FORECLOSURE PROCESS. THE STATUTE
     BECAME OPERATIVE ON SEPTEMBER 6, 2008 AND APPLIES TO LOANS MADE
     FROM JANUARY 1, 2003 TO DECEMBER 31, 2007, SECURED BY DEEDS OF
     TRUST ON OWNER-OCCUPIED RESIDENTIAL PROPERTY. A SPECIAL
     DECLARATION MUST BE ATTACHED TO OR MADE A PART OF A NOTICE OF
     DEFAULT RECORDED ON OR AFTER SEPTEMBER 8, 2008. IF A NOTICE OF
     DEFAULT WAS RECORDED PRIOR TO SEPTEMBER 8, 2008, A NOTICE OF SALE
     MUST ALSO INCLUDE THE SPECIAL DECLARATION WHICH CONFIRMS THAT THE
     MORTGAGEE, TRUSTEE, BENEFICIARY, OR AUTHORIZED AGENT, HAS
     COMPLIED WITH THE DUE DILIGENCE REQUIREMENTS IN CONTACTING THE
     BORROWER OR THAT THE BORROWER HAS SURRENDERED THE PROPERTY.

1088

GUARANTEE NO.: 20863960
ORDER NO.:     20863960-30
CUSTOMER NO.:  20080134014711

## SCHEDULE C
## INFORMATION FOR TRUSTEE

### (CONTINUED)

ATTENTION IS CALLED TO THE FEDERAL TAX LIEN ACT OF 1966 (PUBLIC LAW 89-719) WHICH, AMONG OTHER THINGS, PROVIDES FOR THE GIVING OF WRITTEN NOTICE OF SALE IN A SPECIFIED MANNER TO THE SECRETARY OF TREASURY OR HIS OR HER DELEGATE AS A REQUIREMENT FOR THE DISCHARGE OR DIVESTMENT OF A FEDERAL TAX LIEN IN A NON-JUDICIAL SALE, AND ESTABLISHES WITH RESPECT TO SUCH LIEN A RIGHT IN THE UNITED STATES TO REDEEM THE PROPERTY WITHIN A PERIOD OF 120 DAYS FROM THE DATE OF ANY SUCH SALE.

ATTENTION IS CALLED TO THE SOLDIERS' AND SAILORS' CIVIL RELIEF ACT OF 1940 AND AMENDMENTS THERETO WHICH CONTAIN INHIBITIONS AGAINST THE SALE OF LAND UNDER A DEED OF TRUST IF THE OWNER IS ENTITLED TO THE BENEFITS OF SAID ACT.

ATTENTION IS CALLED TO THE CALIFORNIA MILITARY RESERVIST RELIEF ACT OF 1991 (SEC.800 TO 810, MILITARY AND VETERANS CODE) WHICH CONTAIN INHIBITIONS AGAINST THE SALE OF LAND UNDER A DEED OF TRUST IF THE OWNER IS ENTITLED TO THE BENEFITS OF SAID ACT.

ATTENTION IS CALLED TO THE POSSIBLE INVALIDITY OF ANY TRUSTEE'S SALE IF CONSENT HAS NOT BEEN OBTAINED FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, IN THEIR CAPACITY AS RECEIVER AND/OR CONSERVATOR OF A FEDERALLY INSURED LENDER IF IT IS THE RECORD OWNER OF THE REAL PROPERTY, OR HOLDS AN INTEREST JUNIOR IN PRIORITY TO THE DEED OF TRUST THAT IS THE SUBJECT OF THIS GUARANTEE.

UNITED CAPITAL TITLE INSURANCE COMPANY as authorized agent for United Capital Title Insurance Company

By _JM Smoller_____
   Authorized signatory

8

1089

Not Negotiable                                        2008013401471l

## Notice of Dispute

```
RECEIVED
JAN 16 2009
By
```

Daniel M. Edstrom (***-**-1674)
Teri A. Edstrom (***-**-3629)
2690 Brown Bear Court
Cool, CA 95614

NDEx West, LLC
15000 Surveryor Boulevard, Suite 500
Addison, Texas 75001-9013
Fax: 972-661-7800

January 8, 2009

Certified Mail #: 7008  1140  0001  5983  9914
~~Faxed on January 8, 2009~~
Mailed on January 8, 2009
Subject Property: 2690 Brown Bear Court, Cool, CA 95614
APN #: 073-141-03-100
Servicer Loan #: 1115033372
Loan #: 4040021649

**Notice to Agent is Notice to Servicer. Notice to Servicer is Notice to Agent.**

**Notice to Principle is Notice to Agent. Notice to Agent is Notice to Principle.**

**Notice to Agent is Notice to Lender. Notice to Lender is Notice to Agent.**

**Notice to Agent is Notice to Master Servicer. Notice to Master Servicer is Notice to Agent.**

**Notice to Agent is Notice to Holder(s) in Due Course. Notice to Holder(s) in Due Course is Notice to Agent.**

- This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).
- This letter is a request under the Truth in Lending Act 15 U.S.C. section 1601
- This letter is a "written demand" in compliance with California Civil Code Section 2943
- This letter is a dispute letter under the Fair Debt Collection Practices Act (15 U.S.C. § 1691-1692 et seq.)
- This letter is a dispute letter under the Rosenthal Fair Debt Collection Practices Act (California Civil Code § 1788 et seq.)

---

**1093**

Not Negotiable

To whom it may concern,

While this letter is written in part for purposes of settlement and compromise it is already a demand letter which can and will be used as necessary. It is therefore not a confidential communication protected under the rules of settlement disclosures and correspondence.

### Notice Disputing the Validity of Debt

Because it is obvious you are not a holder in due course and you are not authorized by the actual holder(s) in due course (the real parties in interest), you are therefore an unauthorized debt collector.

### Verification

- (law) an **affidavit** attached to a statement **confirming** the truth of that statement
- The act of verifying; the state of being verified; **confirmation; authentication; Confirmation** by evidence;
- verified - **proved** to be true; "a verified claim"

Verification is the same as the following:

- Confirmation
  - o additional **proof** that something that was believed is correct
- Proof
  - o any **factual** evidence that helps to establish the truth of something
- Validation
  - o the act of validating; finding or testing the **truth** of something
- Substantiation
  - o **evidence, proof**
- Authentication
  - o **attested**: established as genuine
- Attest
  - o The act of **witnessing** the execution of an instrument.
  - o the action of bearing **witness**
- Witness
  - o someone who sees an event and reports what happened
  - o (law) a person who **attests** to the genuineness of a document or signature by adding their own signature
  - o (law) a person who testifies under oath in a court of law
- Certification
  - o documentation: confirmation that some fact or statement is true through the use of documentary evidence

Daniel and Teri Edstrom | Notice of Dispute    2

**1094**

Not Negotiable

Borrowers are disputing the validity of this debt including the principal, interest, late fees, attorney's fees, foreclosing fees and any and all other fees that have been imposed. Borrowers expect not to hear from you again until you provide a true and complete verification:

- Verification of debt
    - Including a copy of the original note (all pages front and back)
    - Including ALL attachments thereto (all assignments, allonges etc)
    - An affidavit under oath from a competent witness with first hand knowledge that the debt is valid. This includes:
        - A witness of the original note itself that contains the borrowers actual original signature
        - A witness of each and every assigment
        - A witness of all payments alleged to be due and owing.

Note that the servicer (ASC) turned into a debt collector when it initiated foreclosure. Borrowers have no business relationship with ASC. ASC is NOT the holder in due course and has no authority to verify anything. The Trustee represented in foreclosure documents is not the original Trustee and without providing proof of assignments and proof of the most current assignment, any documents or evidence provided is hearsay. Additionally, the only parties that can provide evidence of the validity of debt of the payments due are the real parties in interest – the holder(s) in due course. Borrowers dispute that the real parties in interest have not received all payments due

If NDEx West, LLC provides verification to borrowers, borrowers demand that NDEx West, LLC setup a meeting in the Northern California areas of Sacramento and/or the San Francisco Bay Area, at the time and place of your choosing (between 9 AM and 3 PM Pacific Standard Time), in order for borrowers and/or borrower's attorneys and/or borrower's agents to inspect the ORIGINAL documents used for verification. This meeting will be set for 15 to 30 days after NDEx West, LLC provides verification of debt to borrowers. Borrowers will require a minimum of 2 hours for this inspection.

If the debt collectors and/or the holder(s) in due course and/or any other party fails to provide full, authenticated verification and the collection of this debt resumes, borrowers will exercise all legal remedies at their disposal.

This mortgage was rescinded on 12/29/2008 and is null and void. You are hereby notified that this mortgage is deficient and fraudulent and no good title passes with fraud.

Not Negotiable

**Cease and Desist**

The borrowers do not have a business relationship with NDEx West, LLC. The borrowers do not have a business relationship with America's Servicing Company (hereinafter "ASC"). Borrowers do not wish to have a business relationship with NDEx West, LLC. Borrowers do not wish to have a business relationship with ASC – especially in light of the actions recently undertaken by ASC. ASC was hired by others to "service" the borrower's loan payments. ASC failed in their duties to the borrowers in their accounting and handling of borrower's financial information. ASC has failed in their communications with the borrowers as to the true accounting of borrower's transactions. Apparently, ASC has now decided to invade borrower's privacy and attempt to take borrowers personal property without authorization, under the color of authority. On top of that ASC has slandered borrowers name and credit. ASC is apparently trying to extort borrower's personal property. Take note that borrower's will not allow this to happen. These are serious crimes to which NDEx West, LLC is now on notice of. You should also be aware that on 12/29/2008 borrowers notified ASC of the rescission of borrower's loan. NDEx West, LLC therefore has lost any authority it may have had. Borrower's demand therefore the following of NDEx West, LLC:

- Cease and desist from proceeding with the foreclosure
- Cease and desist from attempting to collect a debt
- Cease and desist from substituting, assigning, transferring or giving our credit, note, mortgage, debt, deed of trust, trust deed, personal information or any other information, document or accounting to any other party
- Cease and desist from reporting anything to any credit reporting bureau
- Cease and desist from retaining any of borrower's personal information, financial information, credit information or anything else that pertains to borrower's
- Cease and desist your unauthorized relationship with ASC or any other party in regards to borrower's loan, mortgage, account, payments or in any other capacity
- Cease and desist all communications with anyone in regards to borrower, borrowers personal information or anything else that pertains to borrowers

Not Negotiable

**Loan Modification Offer**

As previously stated by the borrowers, borrowers are willing, able and ready to execute a loan modification with the following terms:

- Loan Amount: $275,000.00
- New Interest Rate: 7.2% fixed
- New Loan Length: 30 years
- New Payment: $1,866.67

Because this offer exceeds the anticipated recovery through foreclosure on a net present value basis (appraisal for $275,000.00 already sent to servicer), the lender is required to accept this offer pursuant to California Civil Code 2823.6.  Failure to accept this loan modification allows the borrower to sue for specific performance or wrongful foreclosure in State Court.

Govern yourselves accordingly!

Respectfully,

*Daniel Edstrom*
*Teri Edstrom*

Daniel and Teri Edstrom
2690 Brown Bear Court
Cool, CA 95614

Daniel and Teri Edstrom | Notice of Dispute



15000 Surveyor Blvd., Suite 500
Addison, TX 75001
Phone: 866-795-1852
Fax: 972-661-7800

January 19, 2009

Daniel M. Edstrom
Teri A. Edstrom
2690 Brown Bear Court
Cool, CA 95614

|  |  |  |
|---|---|---|
| Re: | Mortgagor: | Daniel and Teri Edstrom |
|  | Loan Number: | 1115033372 |
|  | Trustee Sale Number: | 20080134014711 |
|  | Property Address: | 2690 Brown Bear Court |
|  |  | Cool, CA 95614 |

Dear Mr. and Mrs. Edstrom:

We have received your letter dated January 8, 2009. We have forwarded your letter to the servicer for the lender, America's Servicing Co. ("ASC") for review and response. If you desire, you may contact ASC's Loss Mitigation department at (866) 248-5719.

I can be contacted at the address on the letterhead or by email at stephag@bbwcdf.com.

Sincerely,

Stephanie N. Goble
Associate Counsel

SNG/bm

The Fair Debt Collection Act requires that we advise you that NDEx West, LLC, MAY BE ACTING AS A DEBT COLLECTOR, ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

1098

Not Negotiable

## WRITTEN DEMAND FOR LAWFUL VERIFICATION OF DEBT / CLAIM

CERTIFIED MAIL #:

NDEx West, LLC
15000 Surveyor Blvd Suite 500
Addison, TX 75001-9013

RECEIVED
MAR 27 2009
By _____

Daniel and Teri Edstrom
2690 Brown Bear Court
Cool, CA 95614

March 16, 2009

Loan No:  1115033372
Mortgage Servicer:  America's Servicing Company
TS No:  20080134014711
Subject Property:  2690 Brown Bear Court, Cool, CA 95614

Notice to Debt Collector is Notice to Holder(s) in Due Course. Notice to Holder(s) in Due Course is Notice to Debt Collector.

- This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).
- This letter is a request under the Truth in Lending Act 15 U.S.C. section 1601
- This letter is a "written demand" in compliance with California Civil Code Section 2943
- This letter is a dispute letter under the Fair Debt Collection Practices Act (15 U.S.C. § 1691-1692 et seq.)
- This letter is a dispute letter under the Rosenthal Fair Debt Collection Practices Act (California Civil Code § 1788 et seq.)

Not Negotiable

This Offer of performance is tendered in good faith as full satisfaction of claim with the intent of extinguishing any alleged debt, duty, obligation, liability, accusation, etc. as obligating Daniel and Teri Edstrom (hereinafter "Alleged Borrowers") in this presentment. Validation of Debt Collector's Right or authority (hereinafter "Collector") to foreclose on this accusation is hereby demanded. Alleged Borrowers have previously asked for validation of debt including an affidavit under oath as a dispute of Collector's right to debt collection a debt from the Alleged Borrowers. Borrowers are now demanding more information about your attempts to collect a debt.

Demand is hereby made for a commercial agreement or positive law that assigns, negotiates, or transfers rights to collector custody, by the real parties in interest, with evidence of Alleged Borrower's consent to any such contract. Alleged Borrowers are held harmless and indemnified against all orders, judgments, liabilities, etc. without the Commercial Agreement, revealing the Nature and Cause of Collector's Claim. Collector is not a Holder in Due Course, nor does Collector represent the Holder In Due Course. Thus Collector waives all claims, charges, costs, fines and liability against the Alleged Borrowers. Therein Alleged Borrowers are exempt from lien and levy (42 USC 1994).

All Collector documents are therefore TAKEN FOR VALUE pursuant to UCC-3-303 and all related endorsements front and back pursuant to UCC-3-419. An obligation, debt, liability, accusation, etc. is extinguished by an unanswered Demand For Validation of Debt. Collector's Disclosure Statement must be received by Alleged Borrowers within 14 days that specifically describes the authority of Collector to issue a public currency collectable against Alleged Borrower's assets, pursuant to Truth In Lending (Regulation Z) 12 CFR 226, or, Collector thereby commits a Slander of Credit in that it has presented no bona fide, lawful, or verifiable claim to cause Specific Performance. As part of the Validation of Debt, the Collector will execute, notarize and return to Alleged Borrowers the enclosed LAWFUL * VERIFICATION OF FULL ACCOUNTING (hereinafter "Affidavit"). The Affidavit will be returned to the Alleged Borrowers along with the Collector's Disclosure Statement within 14 days. Please note, under 15 U.S.C. §1641 (f)(2), you are required to give the name of the "owner of the obligation or the master servicer of the obligation", the master servicer is the master servicer and securities administrator of a "Pooling and Servicing Agreement" or similar document. For purposes of rescission, pursuant to the Official Staff Commentary to Regulation Z 226.23, notice to the servicer shall be deemed notice on the assignee/creditor in absence of the assignee/creditor providing the consumer an address for rescission. This alleged mortgage was rescinded on 12/29/2008. In case any party missed our original rescission, **We Hereby Rescind**. We were never given any notice of rescission by the true lender; therefore our right of rescission has been extended indefinitely. The Collector must provide the name of the "owner of the obligation or the master servicer of the obligation" within 14 days.

Collector possesses no original Promissory Note to base a mortgage foreclosure upon and may not legally request any court to create a new one. Failure to timely respond to this demand constitutes a Confession Judgment against the Collector's Bond or the Collector's Attorney's Bond.

Not Negotiable

Collector's documents places it in violation of Title 18 USC 1589. The alleged debt Collector is also in violation of the Privacy Act of 1974, amended, 12 USC 3401, the Right to Financial Privacy Act of 1978, amended, 5 USC 552 (a) and the Third Party Summers Act (26 USC 7609).

You are hereby advised that your "client" has no legal rights or interest in the Alleged Borrowers Subject Property.

Therefore Cease and Desist all Collection Activities prior to Validation of Debt.

Failure to provide the Collector's Disclosure Statement and the Affidavit within 14 days gives the Alleged Borrowers and/or the Alleged Borrowers attorney and/or the Alleged Borrowers agent the right to take any power of attorney of any company, person or entity that purports to have an interest in borrowers property, in order to record a reconveyance, quiet title, quit claim, notice of intent to preserve interest, or any other recordable document necessary in order to preserve borrowers interest in the property.

This Demand is sworn upon Collectors Commercial Liability

_____        3-16-09
Alleged Borrower's Signature      Date

_____        3-16-09
Alleged Borrower's Signature      Date

**1163**

Not Negotiable

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY that copy of the foregoing was mailed this _____ day of _____, 2009, by Certified U.S. Mail to: NDEx West, LLC,

NDEx West, LLC
15000 Surveyor Blvd Suite 500
Addison, TX 75001-9013

Daniel and Teri Edstrom
2690 Brown Bear Court
Cool, CA 95614

Tel. [530-887-8450]

By:

*Teri Edstrom*

**1164**

## LAWFUL* VERIFICATION OF FULL ACCOUNTING

This affidavit is required to be mailed to: Daniel and Teri Edstrom 2690 Brown Bear Court, Cool, CA 95614, within 21 days in compliance of the WRITTEN DEMAND for lawful verification on account number
_____

*Notice: All information MUST follow in accordance with Blacks Law Dictionary, 6th edition, page 1661

I, _____, who reside at the address of _____
_____, being of sound mind and of legal age and while under oath, hereby state the following to be true:
I am an authorized officer or agent for the creditor, NDEX WEST, LLC. I, the undersigned affiant, being duly sworn under oath (and before God), depose and state that I have full authority and have personal knowledge of the full accounting in order to sign this affidavit. I am giving adequate assurance of due performance as requested for full accounting on NDEX WEST, LLC' account number _____ to BORROWERS NAME HERE, that this account is exactly as I state in this affidavit and in the attached accounting records. The credit/loan was issued by _____, on the date of _____ and fully followed Federal Law 12 USCA, Section 1831n (a) regarding Generally Accepted Accounting Principles (GAAP) with regards to all bookkeeping entries associated with the loan. The credited or loaned funds came from account number of _____, at the bank name of _____, with the address of _____. The person or entity that funded the above loan was _____. The Contract/Promissory Note for the above loan that was signed by _____ was deposited into account number _____, on the date of _____, at the bank name of _____, at the address of _____. As of the date of _____, the full amount of the pay off of the loan is exactly _____, in lawful Money (of lawful dollars) of the Account of the State of California and/or lawful Money of the United States of America. I have personal knowledge that the original promissory note signed by _____ and/or _____, has not been altered or forged. I also have personal knowledge that all facts involved in the loan process have been fully disclosed in the written agreement. I, in a clear and conscious mind, understand that I have signed my name on this document, thereby accepting full liability, both personally and for the entity that I represent, both civil and criminally, and that I accept all penalties of perjury if it is found that this statement is false in any way.

State of _____ )
                                                            } ss:
County of _____ )

_____            _____
Signature of authorized officer or agent for NDEX WEST, LLC        Date of Birth

On _____, before me, _____, Personally appeared,
       Date                                                    Name of Notary
_____ who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under the PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Seal            _____
                                   Signature of Notary Public

**1165**

NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telephone:   (866) 795-1852
Telecopier:   (972) 661-7800

# REQUEST TO RECORD
# SUBSTITUTION OF TRUSTEE

February 03, 2009

**Title Company**

   LAWYERS TITLE

**Title Order Number**

   20863960

**NDEx File Number**

   20080134014711

**County**

   EL DORADO

**Trustor Name**

   DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM

**Property Address:**   2690 BROWN BEAR COURT
                    COOL, CALIFORNIA 95614

**Attached is an original executed Substitution of Trustee to be recorded in the appropriate county.**

**Please record this document as soon as possible.**

**After you have recorded this document please send a recorded copy along with your invoice to the following e-mail box :**

## MiscRec@ndexwest.com

**If you have any questions, please feel free to contact our office immediately.**

1124

Recording requested by:
**LAWYERS TITLE COMPANY**

When Recorded Mail To:
**NDEx West, L.L.C.**
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

**CONFORMED COPY**

**COPY** of Document Recorded

FEB 0 5 2009
on _____ as No. _4996_
Has not been compared with original

**\*SUB200801340**
SUB20080134014711

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711  Title Order No.: 20863960

## SUBSTITUTION OF TRUSTEE

WHEREAS, **DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM** was the original Trustor, **MITCHELL L. HEFFERNAN** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)** was the original Beneficiary Recorded on 09/14/2005 as Instrument No. 2005-0077328-00 of official records in the Office of the Recorder of **EL DORADO County, California**, as more fully described on said Deed of Trust.; and WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said prior Trustee.

NOW, THEREFORE, the undersigned hereby substitutes, **NDEx West, L.L.C.**, WHOSE ADDRESS IS:  15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:

**01/26/2009**

Wells Fargo Bank NA, attorney in fact for  U S BANK NATIONAL ASSOCIATION, AS TRUSTEE

_Karan Abernethy_

Karan Abernethy  Assistant Secretary

State of     South Carolina }
County of   York }

**Carmen Y. Pickett**

On  01/26/2009  before me, _____, Notary Public, personally appeared Karan Abernethy who proved to me on the basis of satisfactory  evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that  he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

(If signed and notarized in South Carolina ):                    **SEE ATTACHED AFFIDAVIT**

I certify under PENALTY OF PERJURY under the laws of the State of South Carolina  that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _Carmen Y Pickett_ (Seal)

My commission expires: _____

**OFFICIAL SEAL**
Notary Public
State of South Carolina
CARMEN Y PICKETT
My Commission Expires Jan. 14, 2018

FCUS_SubstituteOfTrustee.rpt - 12/28/2007 - Ver-24                                                      Page 1 of 1

NDEx West, L.L.C
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telephone:  (866) 795-1852
Telecopier:  (972) 661-7800

## AFFIDAVIT

**TRUSTEE'S SALE NUMBER:**    20080134014711

I, Jeremy Briggs, the undersigned, a United States Citizen declare that:

I am an employee, over the age of eighteen years, of

NDEx West, L.L.C., and/or NDEX,

whose business address is:

15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013

In compliance with Section 2934a(b) of the Civil Code of the State of California, Notice has been given to the prior trustee then of record, that NDEx West, L.L.C. has been substituted as trustee under the Deed of Trust described in the attached copy of Substitution of Trustee and a copy of said Substitution of Trustee has been mailed prior to the recording thereof, in the manner provided in Section 2924(b) of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

NDEx West, L.L.C., and/or NDEX

_____                    _____January 29, 2009_____
Jeremy Briggs                                DATED
(Declarant)

State of    TEXAS      }
County of  DALLAS    }

On January 29, 2009 before me, Sandra Pitka Notary Public, personally appeared Jeremy Briggs personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____    (Seal)

My commission expires: _____

SANDRA PITKA
Notary Public
State of Texas
My Comm. Exp. 04-11-2012

SBC20080134014711

NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
Telephone:     (866) 795-1852
Telecopier:    (972) 661-7800

# REQUEST TO RECORD
## ASSIGNMENT

February 10, 2009

**Title Company**

    LAWYERS TITLE

**Title Order Number**

    20863960

**NDEx File Number**

    20080134014711

**County**

    EL DORADO

**Trustor Name**

    DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM

**Property Address:**    **2690 BROWN BEAR COURT
COOL, CALIFORNIA 95614**

**Attached is an original executed Assignment to be recorded as soon as possible in the appropriate county.**

**After you have recorded this document please send a recorded copy along with your invoice to the following e-mail box :**

        **MiscRec@ndexwest.com**

**If you have any questions, please feel free to contact our office immediately.**

Name and Address of Sender

NDEX West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

Check type of mail or service:
☐ Certified
☐ COD
☐ Delivery Confirmation
☐ Express Mail
☐ Priority

☐ Recorded Delivery (International)
☐ Registered
☐ Return Receipt for Merchandise
☐ Signature Confirmation

Affix Stamp Here
(if issued as a certificate of mailing, or additional copies of this bill)
Postmark and Date of Receipt

| | Article Number | Addressee's Name, Street, City, State, & ZIP Code | | Postage | Fee | |
|---|---|---|---|---|---|---|
| 1 | 7160 9465 9670 3351 4760 | DANIEL NOAH EDELMAN 3148 BRYANT LAKE CIRCLE LODI CA 95242 | | $0.42 | $2.80 | |
| 2 | 7160 9468 9670 3354 4779 | MELVIN TOWNE 3148 BRYANT LAKE CIRCLE LODI CA 95242 | | $0.42 | $2.80 | |
| 3 | 7160 9465 9670 3354 4761 | ERIC WILLERTSON 3148 BRYANT LAKE CIRCLE LODI CA 95242 | | $0.42 | $2.80 | |

2/20/2009

20090130014711NSHC

20090130014711NSHC

20090130014711NSHC

Total Number of Pieces
Listed by Sender

3

Total Number of Pieces
Received at Post Office

Postmaster, (By the name of receiving employee)



PS Form 3877, October 2008 (formerly)
(Instead of USPS Form 3877, February 2005)

Recording requested by:
**LAWYERS TITLE COMPANY**

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

**CONFORMED COPY**
COPY
FEB 1 2 2009    of Document Recorded
on _____ as No. 2009-0006093
Has not been compared with original.

ASSG20080134014711

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711    Title Order No.: 20863960

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to **US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT** all beneficial interest under that certain Deed of Trust dated 09/07/2005, executed by **DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM**, as Trustor to **MITCHELL L. HEFFERNAN**, Trustee, and **Recorded on 09/14/2005 as Instrument No. 2005-0077328-00** of Official Records in the County Recorder's office of **EL DORADO** County, California. Describing land therein: **AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.**

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated      FEB 0 6 2009

State of      Texas}
County of    Dallas}

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR MORTGAGE LENDERS
NETWORK USA, INC.

Stephen C. Porter, Assistant Secretary

Before me _Leanna Kimball_, the undersigned Notary Public, on this day personally appeared Stephen C. Porter, who is the Assistant Secretary of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC.**, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of      FEB 0 6 2009      , 2009.

My Commission Expires:
3-22-12

Notary Public Signature

_Leanna Kimball_
Printed Name of Notary Public

LEANNA KIMBALL
Notary Public
State of Texas
My Comm. Exp. 03-22-2012

CAASGNDOT.rpt - (01/25/08) / Ver-12                    Page 1 of 1

1129

PUBLICATION ENDORSEMENT

YOUR REF. NO.:    20080134014711
OUR REF. NO.:     20863960-30
GUARANTEE NO.:    20863960

## UNITED CAPITAL TITLE INSURANCE COMPANY
### A CORPORATION
HEREIN CALLED THE COMPANY,

THE COMPANY HEREBY ASSURES THE ASSURED THAT, SUBSEQUENT TO THE DATE OF THE GUARANTEE ISSUED UNDER THE ABOVE NUMBER, OR THE DATE OF ANY PREVIOUSLY ISSUED ENDORSEMENTS THERETO, WHICHEVER DATE IS THE LATEST, NO MATTERS ARE SHOWN BY THE PUBLIC RECORDS WHICH WOULD AFFECT THE ASSURANCES IN SAID GUARANTEE OTHER THAN THE FOLLOWING:

ANY TAXES (CURRENT OR DELINQUENT), TAX SALES, STREET ASSESSMENTS, BONDS, SPECIAL ASSESSMENTS, ASSESSMENT DISTRICTS, TAX DEEDS, TREASURER'S DEEDS, AND CERTIFICATES OF SALE WHICH MAY HAVE BECOME LIENS, CHARGES, OR ENCUMBRANCES AGAINST SAID LAND SINCE THE DATE OF SAID GUARANTEE; NO FURTHER EXAMINATION OF THE RECORDS PERTAINING TO SAID MATTERS HAS BEEN MADE.

PLEASE ADD THE FOLLOWING TO ITEM NO. 5 OF YOUR TRUSTEE'S SALE GUARANTEE.

A SUBSTITUTION OF TRUSTEE UNDER SAID DEED OF TRUST WHICH NAMES AS THE SUBSTITUTED TRUSTEE, THE FOLLOWING:

TRUSTEE:        NDEX WEST, L.L.C.
RECORDED:       FEBRUARY 5, 2009 AS INSTRUMENT NO. 2009-0004996-00
                OF OFFICIAL RECORDS.

THE BENEFICIAL INTEREST UNDER SAID DEED OF TRUST WAS ASSIGNED TO US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT FROM MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC. BY ASSIGNMENT RECORDED FEBRUARY 12, 2009, AS INSTRUMENT NO. 2009-0006093-00, OF OFFICIAL RECORDS.

THE TOTAL LIABILITY OF THE COMPANY UNDER SAID GUARANTEE AND UNDER THIS ENDORSEMENT THERETO SHALL NOT EXCEED, IN THE AGGREGATE, THE AMOUNT STATED IN SAID GUARANTEE.

Mstr 585 Date Down for web client
CLTA Guarantee Form 19-06 / 7-01-98

THIS ENDORSEMENT IS MADE A PART OF SAID GUARANTEE AND IS SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE LIMITS OF LIABILITY AND THE OTHER PROVISIONS OF THE CONDITIONS AND STIPULATIONS THEREIN, EXCEPT AS MODIFIED BY THE PROVISIONS HEREOF.

DATED:   MARCH 16, 2009 @ 7:30 A.M.

UNITED CAPITAL TITLE INSURANCE COMPANY

BY _JM Smolar_____
   AUTHORIZED SIGNATORY

Not Negotiable

## Objection to Notice of Default

Request to Enjoin, Objection to Trustee, Duties of the Trustee, Loan Modification Offer, Notice Disputing the Validity of Debt, Adequate Assurance of Due Performance, Notice of Identity Theft and Notice of Other Violations

Daniel M. Edstrom (***-**-1674)
Teri A. Edstrom (***-**-3629)
2690 Brown Bear Court
Cool, CA 95614

NDEx West, LLC
15000 Surveryor Boulevard, Suite 500
Addison, Texas 75001-9013

ASC
P.O. Box 10388
Des Moines, IA 50306-0388
Fax: 866-453-6315

March 16, 2009

Certified Mail #: 7008 1140 0001 8483 9945
Mailed on March 16, 2009
Subject Property: 2690 Brown Bear Court, Cool, CA 95614
APN #: 073-141-03-100
Loan #: 4040021649
Servicer Loan #: 1115033372
Escrow #: 05-4008203-LC
Locate No.: CAFNT0909-0934-0002-0000321335
Escrow Officer: LaVette Cozzitorto
This document contains 41 pages

**Notice to Agent is Notice to Servicer. Notice to Servicer is Notice to Agent.**

**Notice to Principle is Notice to Agent. Notice to Agent is Notice to Principle.**

**Notice to Agent is Notice to Lender. Notice to Lender is Notice to Agent.**

**Notice to Agent is Notice to Master Servicer. Notice to Master Servicer is Notice to Agent.**

**Notice to Agent is Notice to Holder(s) in Due Course. Notice to Holder(s) in Due Course is Notice to Agent.**

Daniel and Teri Edstrom | Objection to Notice of Default    1

Not Negotiable

- This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).
- This letter is a request under the Truth in Lending Act 15 U.S.C. section 1601
- This letter is a "written demand" in compliance with California Civil Code Section 2943
- This letter is a notice of rescission
- This letter disputes all of the debt, payments owed on the debt, billing on the debt and credit reporting on the debt

Dear Original Trustee and/or duly appointed Substituted Trustee and/or acting as Agent for the Trustee or Beneficiary and/or debt collector and/or Lender and/or servicer (hereinafter "The Lender"):

While this letter is written in part for purposes of settlement and compromise it is already a demand letter which can and will be used as necessary. It is therefore not a confidential communication protected under the rules of settlement disclosures and correspondence.

Borrowers demand that you send a copy of this letter to the following:

- Your compliance officer and/or compliance department
- Your ethics officer and/or ethics department
- Your legal department
- Your insurance carrier(s)
- The real parties in interest

This document by no means details all aspects of the full transaction entered into by the borrower's on or around September 7, 2005. Borrower's thought they were entering into a simple loan transaction whereby Mortgage Lenders Network would loan borrowers Mortgage Lenders Network capital (lawful money) at which Mortgage Lenders Network capital (lawful money) would be at risk. Instead of this fairly simple type of loan transaction, the actual transaction was a huge, convoluted, complex transaction for the purposes of making it nearly impossible for the borrowers to determine what actually happened and where their security instrument (and borrowers identity) would go. The borrowers have only recently learned of the "financial engineering" involved with borrower's loan. Borrowers will spend the next few years attempting to reverse engineer this transaction in order to determine what actually transpired. However, borrowers have just been presented with a notice of default (the start of non-judicial foreclosure) and now have less then 30 days to act before the presumed sale of their property.

Borrowers are extremely disconcerted at the callous disregard of the borrower's rights by all parties involved in this loan transaction. The flagrant and numerous violations of law, lack of response and utter failure to take any action at all (with the exception of attempting to extort borrowers property through a foreclosure under the color of authority) leave borrowers no choice but to eventually file a lawsuit or declare bankruptcy (in an attempt to halt what can only be described as a monstrous, unstoppable machine).

Not Negotiable

**Request to Enjoin the Sale of the Subject Property**
COMES NOW Daniel M. Edstrom and Teri A. Edstrom (hereinafter "borrowers") and moves the Trustee of this non-judicial proceeding to enjoin the sale of the subject property on the grounds that this non-judicial proceeding lacks subject Matter and in personnam jurisdiction, to wit: the alleged lender is not the owner of the mortgage note and security agreement, has not alleged or attached documentation supporting said fact and thus lacks standing to pursue foreclosure and/or sale of the subject property.

The borrowers move the Trustee of this non-judicial proceeding to enjoin the sale of the subject property pursuant to California Code of Civil Procedure Sections 389-389.5 to wit: this non-judicial proceeding lacks joinder because of the known presence of necessary and indispensable parties to any dispute that the true holders in due course might have against borrowers, only a judicial proceeding in which all parties are included will provide a fair determination of the rights, obligation and title to the property, mortgage and note. Pursuant to California Civil Procedure Section 389(b), if a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include:
1. to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties;
2. the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;
3. whether a judgment rendered in the person's absence will be adequate;
4. whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder.

In the event the Trustee does not or cannot add the "necessary and indispensable parties", the real holder(s) in due course, to the non-judicial foreclosure, the Trustee is obligated to enjoin the sale of the subject property.

The borrowers move the Trustee of this non-judicial proceeding to enjoin the sale of the subject property on the grounds that the parties have all been notified that borrowers are ready, willing, and able to accept a loan modification that exceeds the net present recovery value basis. Pursuant to California Civil Code §2823.6, the lender/servicer/trustee/holder(s) in due course/agent is/are contractually bound to accept the borrowers loan modification.

The borrowers move the Trustee of this non-judicial proceeding to enjoin the sale of the subject property on the grounds that the parties involved have committed numerous SEC violations and have violated Sarbanes-Oxley legislation. These acts have been egregious and involved the highest degree of scienter.

The borrowers move the Trustee of this non-judicial proceeding to enjoin the sale of the subject property on the grounds that the parties involved have committed common law negligence,

**1168**

Not Negotiable

breach of contract, and negligence per se, and a failure of all parties involved in this scheme to adhere to the customer records privacy and data security safeguards rule of the Gramm-Leach-Bliley Act ("GLBA").

The borrowers move the Trustee of this non-judicial proceeding to enjoin the sale of the subject property on the following grounds:

NDEx West, LLC has apparently been assigned this loan, however this assignment is defective and unenforceable (null and void). NDEx West did not take possession of the note without defect or prior claims:

> Holder In Due Course
> an innocent party who purchases a negotiable instrument for value without any apparent defect in the instrument nor any notice of dishonor. (Black's Law Dictionary 2nd Pocket ed. 2001 pg. 322).

Not only did NDEx West, LLC receive prior notice of defects (see prior certified mailings of alleged borrowers), the instrument has obvious defects on its face (see the alleged borrowers audit of the loan documents), the instrument has been obviously dishonored before NDEx West, LLC took possession (NDEx West, LLC was hired to foreclose based on alleged borrowers alleged non-payment), and the alleged borrowers have real defenses – including fraud in the factum (among many other defenses). In addition, NDEx West, LLC is NOT holding the actual original instrument, and thus is not a holder of anything of substance. No party that has authorized NDEx West, LLC or worked with NDEx West, LLC in any capacity is in possession of the original instrument and thus they are not a holder of anything either. In addition, as of this date, NDEx West, LLC has not provided the requested validation of debt and has taken the assignment of this alleged debt without providing validation as requested by the alleged borrowers. This validation includes an affidavit under oath from a competent witness with first hand knowledge that this alleged debt is valid as well as first hand knowledge that Mortgage Lenders Network loaned Mortgage Lenders Network own capital putting Mortgage Lenders own capital at risk of loss.

The borrowers move the Trustee of this non-judicial proceeding to dismiss the foreclosure with prejudice based upon one or more of the objections set forth below, as borrower's are entitled to a release and satisfaction of the note and mortgage.

**Objection to Trustee**

We are in receipt of the recorded **Notice of Default** which was recorded December 23, 2008 and a letter specifying a Notice of Default dated on December 24, 2008 and received on December 29, 2008. We hereby **object to the Notice of Default.** Borrowers demand that you send a copy of this letter from borrowers, certified, return receipt requested, to any parties undisclosed in the closing papers. Borrowers also demand that you send a copy of this letter sent from borrowers to your own errors and omissions carrier and to the carrier for the title

---

Not Negotiable

insurance, since there was a cloud on title created AT CLOSING by the knowledge of the parties that the loan was "sold forward" or already committed to third parties who were undisclosed real parties in interest and who collectively constitute the real lender. We are objecting for the following reasons – numbered 1 through 54. Each of these objections shall be considered on its own merits as well as considered along with the merits of each of the other objections.

1. All facts in this case are in dispute and can only be heard at a full judicial trial.
2. Borrowers deny payment was not made, as any missed payments were made by a third party. If any money is owed after all of borrowers set-offs, defenses, affirmative defenses and counterclaims are heard, it isn't to the party(ies) seeking to foreclose, who have no money on the table, who have no loss and who have no authority to represent the real people who put up the money for the loan.
3. There is no delinquency or default.
4. There is a conflict of interest. Specifically, the sub-Servicer (ASC) is owned by Wells Fargo Bank. Wells Fargo Bank is the Custodian. (This is according to pooling and servicing agreements in sworn SEC filings).
5. There is a conflict of interest. The foreclosing party is ASC (Wells Fargo Bank). Wells Fargo Bank is also the sub-servicer. Wells Fargo Bank is also the Custodian. (This is according to pooling and servicing agreements in sworn SEC filings).
6. There is a conflict of interest. ASC is the sub-servicer. The sub-servicer is required to advance principal and interest payments missed by the borrowers. The sub-servicer is also the Custodian. (This is according to pooling and servicing agreements in sworn SEC filings).
7. Upon information and belief, the sub-servicer failed to report delinquencies that began starting on July 2008. This is a clear violation of servicing agreements and is being used by the servicer and/or lender and/or Trustee to block borrower's attempts at an honest and open negotiation. The Trust (RASC Series 2005-EMX4 Trust) enforces a 60 day servicing repurchase trigger. The servicer is required to repurchase the loan should the borrower fall 60 days behind. The servicer is playing games with the borrowers and forcing them into foreclosure.
8. The sub-servicer notified borrowers that they "may" do a loan modification if the borrowers agree to a forbearance that the sub-servicer knows is virtually impossible for the borrowers to keep the terms of.
9. The Lender has been paid in full plus an undisclosed fee for standing in for an undisclosed third party lender that was not properly registered or regulated as a financial institution or lender at the time the transaction took place.
10. The Lender has failed to state the name or address of the holder(s) in due course, John Does 1-1000, being the holders of certificates of asset backed securities, which are backed by the security instrument (mortgage) on the subject residential property.
11. Because of the known presence of necessary and indispensable parties to any dispute that the true holders in due course might have against us, only a judicial proceeding in which all parties are included will provide a fair determination of the rights, obligation and title to the property, mortgage and note.

Not Negotiable

- The title for borrower's property was intentionally clouded at closing by the loan securitization process (unbeknownst to borrowers).
- The Trustee lacks joinder to foreclose:
  - o The proper parties have not come together to authorize you to foreclose.
12. The Lender does not own, possess or control the note or the mortgage, which has been satisfied in full. Demand is herewith made for satisfaction of mortgage to be filed in the appropriate county records.
    - The Trustee has no standing to foreclose
    - The Trustee has no jurisdiction to foreclose
13. Upon information and belief, the original note was lost, stolen destroyed, misplaced, counterfeit, or was transferred to a structured investment vehicle which may be located offshore, which also has no interest in the note or mortgage or revenue thereunder
14. Your authority as Trustee has also been transferred to the Trustee of the pooled mortgages and/or notes on various properties, real and personal, that were included in an asset pool that was eventually securitized and sold to investors, who along with others in the chain of securitization acquired rights and obligations to the note, mortgage, and stream of revenue eventually due to the investor.
15. You are not the Trustee because there is no "Trust Instrument." If you claim there is a "Trust Instrument", the beneficiaries under the Deed of Trust are
    - not the originating lender
    - not the mortgage wholesaler/aggregator
    - not the owners of the securities that were issued
    - not Mortgage Electronic Registration Systems, Inc (MERS)
16. The Deed of Trust has been assigned, transferred and/or sold and thus the original Beneficiary, Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS"), is no longer the Beneficiary (if in fact, they were ever the Beneficiary).
17. NDEx West, LLC is claiming the debt is owed to US Bank National Association as Trustee by Residential Funding Company LLC FKA Residential Funding Corporation Attorney in Fact. In addition, NDEx West, LLC is claiming MERS is the current Beneficiary. The Trustee and the Beneficiary as stated by NDEx West, LLC are mutually exclusive. Either the entire note was assigned, transferred and/or sold or it was not assigned, transferred and/or sold. If the note was not sold then the Beneficiary could possibly be MERS and the Trustee is Mitchell L. Heffernan. If the note was sold, the Trustee may be US Bank National Association (depending on what the latest assignment states) and the Beneficiary is an unknown party (depending on what the latest assignment states). Because the original note and ALL VALID ASSIGNMENTS were not sent to the borrowers, borrowers do not know who has been assigned as the actual Trustee and the actual Beneficiary.
18. MERS cannot be the Beneficiary because the original note was satisfied in full.
19. Residential Funding Company LLC FKA Residential Funding Corporation is claiming to be the lender and/or the attorney in fact for the lender. Proof of any power of attorney has not been provided and is hearsay. If Residential Funding Corporation was the original lender, this was never disclosed to borrowers. Borrowers would be able to

---

Daniel and Teri Edstrom | Objection to Notice of Default     6

Not Negotiable

rescind (borrowers have in fact rescinded). If Residential Funding Corporation has the power of attorney for another lender, this would mean that the note has been assigned, transferred and/or sold. Thus the original Beneficiary, MERS, no longer has authority and NDEx West, LLC cannot use MERS as a basis for foreclosure.

20. Numerous SEC violations and Sarbanes-Oxley violations have occurred. The lack of transparency and accountability into the borrower's entire loan securitization process reeks of fraud and other illegal activities. No good title passes with fraud. The loan has been extinguished and is null and void. See the sections later in this document regarding the SEC and Sarbanes-Oxley.

21. Borrower's appraisal showed the property is now worth $275,000.00. Borrowers offered lender and/or servicer a loan modification for a principal balance of $275,000.00 (see appraisal for $275,000.00 sent to servicer) and a payment at the going interest rate. Although this offer exceeded the anticipated recovery through foreclosure on a net present value basis, the servicer rejected this offer. Pursuant to California Civil Code 2823.6, the lender was and is contractually bound to accept the loan modification borrowers are willing, able and ready to execute.

22. There is a separation between the alleged security instrument and provisions, the Trustee's authority and the note, all of which end up being different people who were all "real parties in interest" receiving fees and value not disclosed in the GFE or settlement statement. In the closing we were subjected to a series of documents that hide the true nature of the transaction, the true source of funds, the true lender, and the application of funds contrary to the terms of the note.

23. The "loan closing" was in fact a scheme to trick the borrowers into issuing a negotiable instrument that was pre-sold to investors as an unregulated security. The parties and their fees were not revealed nor was the true APR disclosed, as it was inflated considerably by the intentional overstatement of the appraisal on the property.

24. The title agent, which might well be the same as the Trustee also has insurance for errors and omissions and the title insurance company that issued the policy will have total liability for this fraudulent transaction to the extent they had knowledge through its agents of the fraudulent scheme.

25. The Trustee (successor master-servicer) is a fiduciary of both the borrower and lender. Thus far Trustee has failed to exercise proper due diligence on the status of the ownership of the mortgage and note and whether payments or refunds were due.

26. The sub-servicer is a fiduciary of both the borrower and the lender. Thus far the sub-servicer has failed in its responsibilities to borrowers.

27. The master-servicer is a fiduciary of both the borrowers and the lender. Thus far the sub-servicer has failed in its responsibilities to borrowers.

28. The Custodian (Wells Fargo Bank, and, because of conflicts of interest, ASC) is a fiduciary of both the borrowers and the lender. Thus far the Custodian has failed in its responsibilities to borrowers.

29. NDEx West, LLC is a fiduciary of both the borrowers and the lender(s) and ASC. Thus far the Custodian has failed in its responsibilities to borrowers.

30. Residential Funding Company AKA Residential Funding Corporation (hereinafter "RFC") is required to purchase the borrowers loan back in the event there is ANY law broken in

Daniel and Teri Edstrom | Objection to Notice of Default    7

**1172**

Not Negotiable

the origination of borrowers loan OR if the servicer breaks any law. RFC is aware of violations that have occurred but has as yet not performed as required (they have not purchased borrowers loan back as required).

31. Upon information and belief, the Custodian and/or Trustee have stopped making ALL payments from the funds collected from all borrowers in the pool of mortgages of the RASC Series 2005-EMX4 Trust. Even though the Custodian and/or Trustee have been receiving some amount of payments from borrowers, they are withholding these payments from the investors. They are keeping this money for themselves.

- Borrowers demand a full accounting of all payments made to the investors – including the amounts that cover borrower's obligation. This includes payments, payment advances, insurance, credit default swaps, cross collateralization, over collateralization, Federal bailout money and any other contrivance used to pay, on behalf of borrowers and/or all pooled borrowers, any amounts at all in connection with the pool to which borrowers mortgage is a part of (allegedly RASC Series 2005-EMX4 Trust).

32. The Trustee does not have personal knowledge that any event of default has occurred. The Trustees are relying on hearsay.

33. This loan was rescinded on December 29, 2008. Therefore any authority any of the Trustee's may have had or may have acquired is now extinguished as the note is null and void.

- The statute and regulation specify that the security interest, promissory note or lien arising by operation of law on the property becomes automatically void upon rescission. (15 U.S.C. § 1635(b); Reg. Z §§ 226.15(d)(1), 226.23(d)(1).
- Also, the security interest is void and of no legal effect irrespective *of whether the creditor makes any affirmative response to the notice of rescission*. Also, strict construction of Regulation Z would dictate that the voiding be considered absolute and not subject to judicial modification.
- The real lender, who lent their own capital (lawful money), put at risk of loss, never delivered any notice of rescission to the borrowers. As such, the 3-day rescission, 3-year rescission and general rescission time limits have not run out.

34. Judicial proceedings are now required because the foreclosure process has changed from simple to complex litigation by virtue of the fact that securitization of loans introduced many new parties into the transaction, many of whom were not disclosed, each of whom received compensation that was not disclosed, each of whom violated Truth in lending laws, Unfair and Deceptive Trade Practices Acts, and Securities laws and rules, with multiple rights of rescission accruing to the borrower from a variety of applicable laws.

35. Even though the note has been assigned, transferred and/or sold numerous times, no assignments have been recorded with El Dorado County, as required by Federal and state laws.

36. The original mortgage company is under a duty to notify borrowers of the transfer to EMAX Financial Group, LLC. Mortgage Lenders Network failed to give proper notice to the borrowers, and that failure provides a defense against foreclosure. (See, e.g., Winger v EMC Mortgage Corporation, 103 Cal. App. 4th 1125; 127 Cal. Rptr. 2d 685

(2002)), in which a mortgagor neglected to provide notice required by the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. 2601 et seq. The estate of the borrower was able to present the failure to provide proper notice to the borrower as a defense against foreclosure.

37. The security instrument cannot be assigned, transferred or sold because at this point the assignment cannot be taken without notice of fraud, statutory violations or other irregularities at the loan closing. At this point the assignment can only be done with fraudulent concealment.

38. That Deed of Trust contained a false representation on its face when it represented that MERS was a beneficiary under the Deed of Trust. Paragraph (E) States that "MERS is a separate corporation that is acting solely as a Nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." MERS is NOT the beneficiary under the Deed of Trust, it never had ownership or possession of the Promissory Note which is the obligation which is secured by the Deed of Trust, and MERS has never been entitled to receive one cent of remuneration from the Borrower's loan proceeds. The statement that MERS is the nominee is nonsensical language which means nothing in a real estate transaction and most certainly, MERS has never been nor is it now the beneficiary under the Deed of Trust. The language is a sham.

39. The note is null and void due to the fact that the security interest was separated from the obligation to pay, adding obligors who had liability for payment, and adding receivers of income:

- The original note has been recorded with the El Dorado County recorders office. Even though the note has been assigned, transferred and/or sold numerous times, no assignments have been recorded with El Dorado County, as required by law.

- The significance of this is that the party alleging non-payment by the borrower is NOT and CANNOT allege non-payment to the entity or person (investor) who is entitled to that payment. The person entering the foreclosure process is the trustee or the originating lender filing foreclosure. But they do not know if the investment bank, an insurer or some other third party, including another borrower or even the loan servicers was contributing to the flow of payments that the investor received, nor do they know the allocation of those funds which the investor received.

- The default alleged is non-payment – and the entity or person making the allegation must prove the non-payment AND that proving that the borrower did not make one or more payments does NOT prove that the party (investor) entitled to payment did not get paid in whole or in part. Thus no default has been alleged without alleging that no payment was received by the holder of the original note and mortgage and the party to whom payment was to be received as a result of the income stream from this mortgage combined with thousands of other mortgages.

40. Based on 10k and 8k filings from GMAC and Residential Funding Company FKA Residential Funding Corporation and Residential Asset Security Corporation, it would appear that there are multiple investors who own shares in borrower's mortgage or

Not Negotiable

note, all of whom have a clear claim as holders in due course. Thus any direction or instruction the Trustee has received from the "lender" is not from a party with an interest in the mortgage or note and is void or meaningless.

41. NDEx West, LLC is using Unfair and deceptive practices in the collection of a debt.

42. NDEx West, LLC is making false representation of the true nature of the business or services being rendered by the debt collector.

43. NDEx West, LLC sent a letter to borrower's demanding money when the claim was not actually assigned to the collection agency.

44. The sub-servicer is fraudulently concealing from borrowers material information - the payments sub-servicer has made to the lender and/or master servicer and/or holders in due course. Borrowers demand to have an accounting specifically of what payments the sub-servicer has sent to the lender and/or master servicer and/or holders in due course. This specifically includes principal and interest advances (hereinafter "payment advances"). If the sub-servicer has stopped making payments and payment advances to the lender and/or master servicer and/or holders in due course, the sub-servicer will provide borrowers an accounting of all payments and payment advances made and the dates on which sub-servicer failed to make payments and payment advances.

- This information is not proprietary or confidential. This information is crucial for borrowers to be able to determine the actual amount due to the holder(s) in due course. Not the amounts allegedly due to the sub-servicer. Borrowers have no contract with the sub-servicer; borrowers have a contract with the holder(s) in due course. The sub-servicer is specifically and intentionally interfering with the borrower's ability to negotiate a settlement and payoff, to negotiate a loan modification and/or to negotiate anything with the holder(s) in due course. The sub-servicer has intentionally and continuously violated the terms of the pooling and services agreement to which the sub-servicer has specifically agreed with when it took over servicing of loans from Mortgage Lenders Network and/or EMAX.

45. The master-servicer is fraudulently concealing from borrowers material information - the payments master-servicer has made to the lender and/or Trustee and/or holders in due course. Borrowers demand to have an accounting specifically of what payments the master-servicer has sent to the lender and/or Trustee and/or holders in due course. This specifically includes principal and interest advances (hereinafter "payment advances"). If the master-servicer has stopped making payments and payment advances to the lender and/or Trustee and/or holders in due course, the master-servicer will provide borrowers an accounting of all payments and payment advances made and the dates on which master-servicer failed to make payments and payment advances.

- This information is not proprietary or confidential. This information is crucial for borrowers to be able to determine the actual amount due to the holder(s) in due course. Not the amounts allegedly due to the master-servicer. Borrowers have no contract with the master-servicer; borrowers have a contract with the holder(s) in due course. The master-servicer is specifically and intentionally interfering with the borrower's ability to negotiate a settlement and payoff, to

Not Negotiable

negotiate a loan modification and/or to negotiate anything with the holder(s) in due course. The master-servicer has intentionally and continuously violated the terms of the pooling and services agreement to which the master-servicer has specifically agreed to in Sworn SEC filings.

46. The Trustee (successor master-servicer) is fraudulently concealing from borrowers material information - the payments Trustee has made to the lender and/or holders in due course. Borrowers demand to have an accounting specifically of what payments the Trustee has sent to the lender and/or holders in due course. This specifically includes principal and interest advances (hereinafter "payment advances"). If the Trustee has stopped making payments and payment advances to the lender and/or holders in due course, the Trustee will provide borrowers an accounting of all payments and payment advances made and the dates on which Trustee failed to make payments and payment advances.

- This information is not proprietary or confidential. This information is crucial for borrowers to be able to determine the actual amount due to the holder(s) in due course. Not the amounts allegedly due to the Trustee. Borrowers have no contract with the Trustee; borrowers have a contract with the holder(s) in due course. The Trustee is specifically and intentionally interfering with the borrower's ability to negotiate a settlement and payoff, to negotiate a loan modification and/or to negotiate anything with the holder(s) in due course. The Trustee has intentionally and continuously violated the terms of the pooling and services agreement to which the Trustee has specifically agreed to in Sworn SEC filings.

47. Based upon SEC filings, and borrowers consultation with experts in mortgage backed securities, Mortgage Lenders Network and/or GMAC and/or Residential Funding Company FKA Residential Funding Corporation entered into agreements wherein borrowers loan payments could be allocated to payments due on notes from OTHER borrowers in whole or in part – as a consequence of the cross guarantee agreements between tranches in the SPV and between SPV entities. Borrowers demand to know whether this has in fact occurred.

48. Under Article 3 of the Uniform Commercial Code, an instrument is negotiable if it is: (1) a written instrument signed by the endorser or maker; (2) an unconditional promise to pay a certain amount of money, either on demand or at a future date; and (3) payable to the holder or bearer. A person who becomes a Holder in Due Course of a negotiable instrument by delivery, or by delivery and endorsement, has an unrestricted claim to the instrument, and can sue other people in his or her own name. The Borrowers signed the original note (negotiable instrument) giving an unconditional promise to pay. When this negotiable instrument was added to the RASC Series 2005-EMX4 Trust (a pool of mortgage loans), various conditions were attached to the note with the result that this note is no longer a negotiable instrument. The obligation, if it is not extinguished (null and void), is no longer secured by real property (unsecured).

49. Further, borrowers are informed that in addition to cross guarantee agreements there was overcollateralization of borrowers loan as part of the overall scheme of lenders issuance of the note and insurance purchased with the proceeds of sale of the loan to

Not Negotiable

borrowers and investors in which reserve pools and guarantees of payment were created through payments to third parties, none of which was disclosed to borrowers.

- And lastly, and perhaps most importantly, the appraisal value was shown by subsequent events to be over market. This was an undisclosed cost of the loan obtained, in addition to damages suffered by the fraud committed on borrowers, and that neither the Good Faith Estimate nor any other effort was made to disclose that this was the case.
- The inflated appraisal when added to the other costs of the loan, created a usurious transaction in which the real lender was in fact a private, undisclosed, unregistered, unchartered, unregulated entity that had failed to pay taxes and fees to the State of California, in addition to failing to report its activities within the State.
- The real lender entered into an illegal agreement in which the nominal lender in fact agreed to "lend its license" to the real lender and was paid a fee of approximately 2.5% as a fee to do it, in addition to points and all other costs and fees of closing the "loan", and interest paid from inception of the "loan."
- Since the transaction constituted usury, borrowers hereby declare the obligation on the note null and void and demand treble damages for the original face value of the note.

50. Upon information and belief, the revenue stream deriving from the note and mortgage was eviscerated upon one or more assignments of the note and mortgage to third parties and parsing of obligations as part of the securitization process, some of whom were joined as co-obligors and co-obligees in connection with the closing.

51. To the extent that the lender has been paid on the underlying obligation or has no legal interest therein or in the note or mortgage, or does not have lawful possession of the note or mortgage, the Agent and/or Trustees and/or Lenders and/or Beneficiaries allegations of possession and capacity to institute foreclosure constitute a fraud.

52. Borrowers have requested, but have never received the production of the documents that assigned, sold or otherwise transferred the security interest, the income from the note or the risk of non-payment to one or more parties.

53. Identity theft

- The borrower's identities have been stolen and used for unlawful means including unlawful financial gain.
- Although borrower's initially gave First Priority Financial and Mortgage Lenders Network permission to use their identity in the issuance of a loan to borrowers (of the lenders actual capital, putting the lender at risk), these companies and the others involved, took borrower's identities and used them for numerous other crimes, including (but not limited to) crimes for financial gain and numerous frauds (in fact most, if not all illegal activities specified in this document).

54. Borrowers have been denied equal protection under the law

- Payments and credits have been given to the holder(s) in due course resulting in the holder(s) in due course sustaining no loss under borrower's security

**1177**

Not Negotiable

instrument. However, the parties involved in foreclosing on the borrower have not applied these payments and credits to borrower's account. In fact, the parties involved in foreclosing on borrower's refuse to tell borrower's anything, refuse to investigate borrower's disputes and are trying to conceal information from borrowers.

**Objection Summary**

The lack of transparency and in fact, the totality of the transaction violates numerous state and federal laws including SEC laws, Sarbanes-Oxley legislation, IRS statutes, usury, Truth in Lending, deceptive business practices, administrative standards for the practice of professions as well as many other laws and regulations.

Please tell borrowers who the real holder in due course of our note is. The borrowers demand a copy of the "Trust Instrument" under which The Lender is claiming to have authority. The borrowers believe that The Lender does not have authority in this matter. The parties involved in this non-judicial foreclosure are attempting theft, theft by deception, larceny and/or grand larceny.

Therefore, please confirm the filing and recording of the satisfaction of mortgage, send the original note back to me (or tell me where it is), and confirm the retraction of the attempt to collect a debt which is incorrectly stated, improperly computed, improperly obtained, and fraudulently produced and transmitted.

The borrowers demand that the Trustee provide the following documents:

- The following that the Trustee has in its possession or has ever had in its possession:
  - Resolutions
  - Certificates
  - Statements
  - Opinions
  - Reports
  - Documents
  - Orders
  - Other Instruments, if any
  - Officer's Certificate
  - Certificate of Auditors
  - Notices
  - Requests
  - Consents
  - Appraisals
  - Bonds
  - Any other paper or document the Trustee has received
  - Consultations with counsel, if any
  - Consultations with financial advisors, if any

**1178**

Not Negotiable

- o   Consultation with accountants, if any
- o   Names of counsel, financial advisors and accountants used
- o   Advice from counsel, financial advisors or accountants
- o   Opinions from counsel, financial advisors or accountants
- o   Investigation results
- o   Certificates owned by Trustee
- o   Agreement, if any, between Trustee and Securities Administrator for fees and expenses

### Duties of the Trustee

Upon information and belief, the Trustee of borrower's security instrument would be the one to foreclose.  Upon information and belief, none of the foreclosing parties are actual Trustees of borrower's security instrument, none of the foreclosing parties are the holder(s) in due course and none of the foreclosing parties are authorized by the holder(s) in due course.  Upon information and belief, the following are the duties of the Trustee based on the pooling and services agreement authorized by the RASC Series 2005-EMX4 Trust, to which the borrowers loan has been added (not all inclusive):

1.  The Trustee is not responsible for the accuracy or content of any resolution, certificate, statement, opinion, report, document, order or other instrument.
    a.  Thus, the Trustee cannot vouch for any allegation or fact or instruction issued with regard to delinquency, default or foreclosure.
2.  The Trustee is not relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct.
    a.  Thus the borrower's name all Trustees as potential defendants and, should a judicial proceeding be brought up by either party, borrowers will name all Trustees as defendants.
3.  The Trustee receives its authority to act from the certificate holders, who are the real holders in due course.
4.  The Trustee has no authority to sign a sworn affidavit or give sworn testimony in a non-judicial or judicial proceeding because:
    a.  They need know nothing in their own personal knowledge
    b.  They can rely on the statements of others
    c.  They are not bound by the truth or falsity of any fact.
5.  The Trustee and Custodians will not and cannot vouch for the authenticity of the alleged default if there is any break in the chain of title, any defect in the securities, negotiability of the instruments, or any payment received that occurred between any party on behalf of the borrower to any party on behalf of the investor.
    a.  Thus, the Trustee and Custodian can provide a letter or document stating what they believe, but they cannot offer a sworn document or sworn testimony.
6.  The Trustee is not required to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing

Not Negotiable

to do so by the Holders of Certificates evidencing not less than 25% of the Voting Rights allocated to each Class of Certificates.

    a. Thus, the borrowers want to know if the Trustee made any investigation.  If yes, what did they find out?  If yes, why did they do so despite the clear wording that says they didn't have any obligation to investigate and obviously were not expected to perform one?  If no, then the Trustee is admitting they do not know the status of the loan, ownership of the note, enforceability of the mortgage or existence of the obligation.

7. Trustee may execute any of the trusts or powers under the pooling and servicing agreement or perform any duties either directly or by or through agents, accountants or attorneys.

    a. If the Trustee used the resources of any agents, accountants or attorneys, borrowers would like to know who they are and who is responsible for the negligence, fraud or malpractice of the agents, accountants or attorneys?  If there was such an appointment by this Trustee, how was it done?  Where is the document that shows what they did and how there were to do it?  How do borrowers know NDEx West, LLC is actually representing the Trustee, the Investors, the Sub-Servicer, the Master Servicer or someone else?

8. The Trustee shall not be required to risk or expend its own funds or otherwise incur any financial liability in the performance of any of its duties or in the exercise of any of its rights or powers hereunder if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not assured to it

    a. Borrowers would like to know how Trustee got its authority to initiate this foreclosure action against borrowers.  Who gave the Trustee the authority?  Who is paying the Trustee, its agents, accountants and attorneys?  Where are they getting the money for these payments?  Is there any undisclosed third party involved?  Has the Trustee allowed Champerty, maintenance and conspiracy?

9. The Trustee shall not be deemed to have knowledge of an event of default until a responsible officer of the Trustee shall have received written notice thereof, unless a responsible officer of the Trustee has actual knowledge of the occurrence of an event of default.

    a. The Trustee shall be under no obligation to exercise any of the trusts, rights or powers vested in it by the pooling and services agreement or to institute conduct or defend any litigation hereunder or in relation hereto at the request, order or direction of any of the Certificate Holders, pursuant to the pooling and services agreement, unless such Certificate Holders shall have offered to the Trustee reasonable security or indemnity satisfactory to the Trustee against the costs, expenses and liabilities which ay be incurred therein or thereby.

        i. Thus since the Trustee is NEVER deemed to have actual knowledge because the Trustee is required ONLY to rely up on the representations of others without doing any investigation on its own, it may never, in its own name bring a foreclosure action or order the foreclosure sale of any property.  The certificate holders, unless they have received information

Not Negotiable

           from a source other than the Trustee (which is hearsay), are getting their information from the Trustee. Thus they are in no better position than the Trustee to know anything.

10. The Trustee is not liable for Certificates or Mortgage Loans. *The recitals contained in the pooling and services agreement and in the Certificates shall be taken as the statements of the Depositor and the Trustee assumes no responsibility for their correctness. The Trustee makes no representations as to the validity or sufficiency of the pooling and services agreement or of the Certificates or of any Mortgage Loan or related document. The Trustee shall not be accountable for the use or application by the Depositor, the Securities Administrator or a Servicer of any funds paid to the Depositor, the Securities Administrator or a Servicer in respect of the Mortgage Loans or deposited in or withdrawn from any Collection Account or the Distribution Account by the Depositor, the Securities Administrator or a Servicer.*

    a. This gives borrowers the authority to request a judicial proceeding to account for the money that was paid by the borrower and third parties and to account for the alleged assignments or negotiation of notes, whose terms were changed by the very act of pooling and then collateralizing within the Special Purpose Vehicle.

11. The Trustee may own Certificates.

The borrowers would like to know if the Trustee owns any Certificates. If so, where are the Certificates now?

**Written Demand**

Please take notice that by this document, the Trustor and/or Borrower of this loan and trust deed hereby requests a beneficiary statement as described in California Civil Code §2943. Such statement must be furnished to the trustor within 21 days of the beneficiary's or trustee's receipt of this request.

1. A true, correct, and complete copy of the note or other evidence of indebtedness with any modification thereto;
   a. The borrowers demand a copy of the actual note along with all attachments, allonges, etc.
2. A Beneficiary statement reflecting:
   a. The amount of the unpaid balance of the obligation secured by the mortgage or deed of trust and the interest rate, together with the total amounts, if any, of all overdue installments of either principal or interest, or both, and their itemization.
   b. The amounts of periodic payments, if any.
   c. The date on which the obligation is due in whole or in part.
   d. The date to which real estate taxes and special assessments have been paid to the extent the information is known to the beneficiary.
   e. The amount of hazard insurance in effect and the term and premium of that insurance to the extent the information is known to the beneficiary.

Daniel and Teri Edstrom | Objection to Notice of Default    16

Not Negotiable

f. The amount in an account, if any, maintained for the accumulation of funds with which to pay taxes and insurance premiums.
g. The nature and the amount, *and a detailed itemization*, of any additional charges, costs, or expenses paid or incurred by the beneficiary which have or will become a lien on the real property involved and a detailed description, itemization and accounting of these charges, costs or expenses.
h. Whether the obligation secured by the mortgage or deed of trust can or may be transferred to a new borrower.

Please also take notice that by this document, the Trustor and/or Borrower of this loan and trust deed hereby requests a **Payoff Demand Statement as described in California Civil Code §2943**. Such statement must be furnished to the trustor within 21 days of the beneficiary's or trustee's receipt of this request.

By this request, the trustor requests the following information and statement:

A detailed written statement, including breakdown and itemization, setting forth the amounts required, as of the date of preparation by the beneficiary, to fully satisfy all obligations secured by the loan that is the subject of this payoff demand statement. The written statement is to include information reasonably necessary to calculate the payoff amount on a per diem basis for the period of time, not to exceed 30 days, during which the per diem amount is not changed by the terms of the note.

By this request, the trustor requests the following information:

Please provide the name(s) of the current holder(s) in due course to which the trustor may negotiate a settlement and payoff with.

The Borrowers demand that the following information be furnished:

- Provide the borrowers with all loan documents given to the borrowers before closing, at closing and after closing which make up the entire loan closing documents. Federal law

Daniel and Teri Edstrom | Objection to Notice of Default    17

Not Negotiable

requires that these documents be held by all parties (including the original lender and all who have been assigned the note) for a period of 5 years.

- Provide the name(s) of the individual(s) and/ entities that actually provided the capital (lawful money) used to fund the borrowers loan
- Provide the name(s) of all beneficiaries of borrower's loan – past and present
- Provide the name(s) of all Trustee's of borrower's loan – past and present
- Provide proof of all assignments and the name(s) of all parties to which borrower's loan has been assigned
  - o This will include one or more affidavit(s) under oath from one or more competent witnesses with first hand knowledge of these assignments
- Please provide all accountings and proof of ALL payments made to the holder(s) in due course on the borrower's behalf.  This includes actual payments made by the borrowers themselves, other borrowers in the loan pool, insurance carriers, servicers, credit default swaps, Federal bailouts, etc. that were made to the holder(s) in due course in regards to the borrower's loan.
  - o This will include one or more affidavit(s) under oath from one or more competent witnesses with first hand knowledge of these payments and/or accountings.

**Loan Modification Offer**

As previously stated by the borrowers, borrowers are willing, able and ready to execute a loan modification with the following terms:

- Loan Amount: $275,000.00
- New Interest Rate: 7.2% fixed
- New Loan Length: 30 years
- New Payment: $1,866.67

Because this offer exceeds the anticipated recovery through foreclosure on a net present value basis (appraisal for $275,000.00 already sent to servicer), the lender is required to accept this offer pursuant to California Civil Code 2823.6.  Failure to accept this loan modification allows the borrower to sue for specific performance or wrongful foreclosure in State Court.

California Legislature Findings

1. Recently, the California Legislature found and declared the following in enacting California Civil Code 2923.6 on July 8, 2008:
   a. California is facing an unprecedented threat to its state economy because of skyrocketing residential property foreclosure rates in California. Residential property foreclosures increased sevenfold from 2006 to 2007, in 2007, more

**1183**

Not Negotiable

than 84,375 properties were lost to foreclosure in California, and 254,824 loans went into default, the first step in the foreclosure process.

b.  High foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise. According to statistics released by the HOPE NOW Alliance the number of completed California foreclosure sales in 2007 increased almost threefold from 2002 in the first quarter to 5574 in the fourth quarter of that year. Those same statistics report that 10,556 foreclosure sales, almost double the number for the prior quarter, were completed just in the month of January 2008. More foreclosures mean less money for schools, public safety, and other key services.

c.  Under specified circumstances, mortgage lenders and servicers are authorized under their pooling and servicing agreements to modify mortgage loans when the modification is in the best interest of investors. Generally, that modification may be deemed to be in the best interest of investors when the net present value of the income stream of the modified loan is greater than the amount that would be recovered through the disposition of the real property security through a foreclosure sale.

d.  It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure. These Changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided. Those additional foreclosures will further destabilize the housing market with significant, corresponding deleterious effects on the local and state economy.

e.  According to a survey released by the Federal Home Loan Mortgage Corporation (Freddie Mac) on January 31, 2008, 57 percent of the nation's late-paying borrowers do not know their lenders may offer alternative to help them avoid foreclosure.

f.  As reflected in recent government and industry-led efforts to help troubled borrowers, the mortgage foreclosure crisis impacts borrowers not only in nontraditional loans, but also many borrowers in conventional loans.

g.  This act is necessary to avoid unnecessary foreclosures of residential properties and thereby provide stability to California's statewide and regional economies and housing market by requiring early contact and communications between mortgagees, beneficiaries, or authorized agents and specified borrowers to explore options that could avoid foreclosure and by facilitating the modification or restructuring of loans in appropriate circumstances.

**1184**

Not Negotiable

2. "Operation Malicious Mortgage' is a nationwide operation coordinated by the U.S. Department of Justice and the FBI to identify, arrest, and prosecute mortgage fraud violators." San Diego Union Tribune, June 19, 2008. As shown has been shown, borrowers were victims of such mortgage fraud.

3. "Home ownership is the foundation of the American Dream. Dangerous mortgages have put millions of families in jeopardy of losing their homes." CNN Money, December 24, 2007. The Loan which is the subject of this non-judicial proceeding is of such character.

4. "Finding ways to avoid preventable foreclosures is a legitimate and important concern of public policy. High rates of delinquency and foreclosure can have substantial spillover effects on the housing market, the financial markets and the broader economy. Therefore, doing what we, can to avoid preventable foreclosures is not just in the interest of the lenders and borrowers. It's in everybody's best interest." Ben Bernanke, Federal Reserve Chairman, May 9, 2008. Borrower alleges that the lender, the servicer, investor and/or the foreclosing agent all had the duty to prevent such foreclosure, but thus far have failed to so act.

5. "Most of these homeowners could avoid foreclosure if present loan holders would modify the existing loans by lowering the interest rate and making it fixed, capitalizing the arrearages, and forgiving a portion of the loan. The result would benefit lenders, homeowners, and their communities." CNN Money, id.

6. "Fewer than I%" of homeowners have experienced any help "from the Bush-Paulson plan." San Diego Union Tribune, id. Borrowers' are not of that sliver that have obtained help.

7. The Gravamen of borrower's complaint is that the lender, the servicer and other companies have joined together and violated State and Federal laws which were specifically enacted to protect such abusive, deceptive, and unfair conduct by them, and that they cannot legally enforce a non-judicial foreclosure. VIOLATION OF CALIFORNIA CIVIL CODE 2923.6

8. Borrowers reallege and incorporate by reference the above paragraphs as though set forth fully herein.

9. The lenders' Pooling and Servicing Agreement (hereinafter "PSA") contains a duty to maximize net present value to its investors and related parties.

10. California Civil Code 2823.6 broadens and extends this PSA duty by requiring servicers to accept loan modifications with borrowers.

11. Pursuant to California Civil Code 2823.6(a), a servicer acts in the best interest of all parties if it agrees to or implements a loan modification where the (1) loan is in payment default, and (2) anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

12. California Civil Code 2823.6(b) now provides that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

13. Borrowers' loan is presently in default.

Not Negotiable

14. Borrowers are willing, able, and ready to execute a modification of their loan on the following terms:
    a. New Loan Amount: $275,000.00
    b. New Interest Rate: 7.2%
    c. New Loan Length: 30 years
    d. New Payment: $1,866.67
15. The present fair market value of the property is $275,000.00.
16. The Joint Economic Committee of Congress estimated in June, 2007, that the average foreclosure results in $77,935.00 in costs to the homeowner, lender, local government, and neighbors.
17. Of the $77,935.00 in foreclosure costs, the Joint Economic Committee of Congress estimates that the lender will suffer $50,000.00 in costs in conducting a non-judicial foreclosure on the property, maintaining, rehabilitating, insuring, and reselling the property to a third party. Freddie Mac places this loss higher at $58,759.00.
18. The anticipated recovery through foreclosure on a net present value basis is $225,000.00 or less.
19. The recovery under the proposed loan modification at $275,000.00 exceeds the net present recovery through foreclosure of $225,000.00 by $50,000.00.
20. Pursuant to California Civil Code §2823.6, Defendants are now contractually bound to accept the loan modification as provided above.

## Previous Qualified Written Requests and Written Demands

Borrowers have sent notice previously to The Lender that borrowers are disputing all aspects of this mortgage, debt and payments and have not received an adequate response, nor any indication the lender has started a serious investigation. In fact, the lender has continued to report borrowers account delinquent to credit reporting agencies despite multiple dispute requests. These are flagrant violations of Federal and State laws. Take note that you are hereby notified that you are not authorized by law to record the Notice of Default.

## Notice Disputing the Validity of Debt

All parties, with the exception of the holder(s) in due course, are considered debt collectors.

Due to the confusion lenders, servicers and debt collectors have about the definition of validation and verification, the following defines these terms:

Verification

- (law) an affidavit attached to a statement confirming the truth of that statement
- The act of verifying; the state of being verified; confirmation; authentication; Confirmation by evidence;
- verified - proved to be true; "a verified claim"

Not Negotiable

Verification is considered all of the following:

- Confirmation
  - additional **proof** that something that was believed is correct
- Proof
  - any **factual evidence** that helps to establish the truth of something
- Validation
  - the act of validating; finding or testing the truth of something
- Substantiation
  - **evidence, proof**
- Authentication
  - attested: established as genuine
- Attest
  - The act of witnessing the execution of an instrument.
  - the action of bearing **witness**
- Witness
  - someone who sees an event and reports what happened
  - (law) a person who **attests** to the genuineness of a document or signature by adding their own signature
  - (law) a person who testifies under oath in a court of law
- Certification
  - documentation: confirmation that some fact or statement is true through the use of documentary evidence

Borrowers are disputing the validity of this debt including the principal, interest, late fees, attorney's fees, foreclosing fees and any and all other fees that have been imposed. Borrowers dispute that the lender provided the lenders own capital (lawful money). Borrowers dispute that the lender was at risk of losing their own capital (lawful money) at such time as the lender allegedly loaned this capital (lawful money) to borrowers. Borrowers expect not to hear from you again until you provide a true and complete verification:

- Verification of debt
  - Include a copy of the **original note** (all pages front and back)
  - Include ALL attachments thereto (all assignments, allonges etc)
  - An affidavit under oath from a competent witness with first hand knowledge that the debt is valid. This includes:
    - A competent witness with first hand knowledge of the original note itself and the amount of lawful money that was loaned, including various aspects of the contract/promissory note, the check issued, and the accounts used – including the account the check was drawn from and the account the check was deposited into.
    - Execute an affidavit from a witness with first hand knowledge of the alleged debt and return it to the alleged borrowers within 14 days.

Daniel and Teri Edstrom | Objection to Notice of Default

...gh for a loan modification and/or to negotiate anything with the holder(s) in due course. You have intentionally and continuously violated the terms of the pooling and services agreement to which you have specifically agreed with when you took over servicing of loans from Mortgage Lenders Network and/or EMAX.

**Demand for the Truth**

Alleged Borrowers demand to know who the true holder in due course is. Alleged Borrowers demand to know where all payments to the holder in due course have come from and where they went under this loan. This includes any and all payments made by the alleged borrowers, any and all payments made by any servicer, any and all payments made by any trustee and any and all payments made by any other 3rd party including the following (not all inclusive):

- Other loans in the loan pool that were setup to guarantee the alleged borrowers payments to the holder in due course
- Credit default swaps that were used to guarantee the alleged borrowers payments to the holder in due course
- Other cross collateralizations that were used to guarantee the alleged borrowers payments to the holder in due course
- Reserve pools that were used to guarantee the alleged borrowers payments to the holder in due course
- Treasure department bailouts and/or Federal bailouts that were used to guarantee, payoff or otherwise change the amount due for the alleged borrowers loan
- Any other method or contrivance of financial engineering used to make payments to the holder in due course for the alleged borrowers loan

**ADEQUATE ASSURANCE OF DUE PERFORMANCE**

Daniel and Teri Edstrom | Objection to Notice of Default

Not Negotiable

Before Borrowers pay, Borrowers want to know the details of what the entire agreement is, and if you and/or all parties performed according to the agreement.

It has come to the attention of the alleged Borrower, after consulting with Borrower's CPA and researching the United States Code, the corresponding Code of Federal Regulations, the Uniform Commercial Code, certain Federal Reserve Bank Publications, California Civil Code, and sworn SEC filings of some of the companies involved, that there is reason to believe that the alleged Lender is not the Holder in Due Course of the Borrower's promissory note and/or may have breached the agreement concerning the above-referenced, alleged loan or loan of credit.

Since the Borrower paid money in the form of a promissory note to the Lender to perform according to a loan agreement, the Borrower is now hereby requesting Adequate Assurance of Due Performance pursuant to UCC 2-609 that the Lender has performed according to the loan agreement and that the original lender used their own money to purchase the Borrower's promissory note and that the lender did not do any of the following:

- Accept the Borrower's promissory note as money or like money to fund the check or similar instrument that the Lender then lent to the Borrower – which would have an economic effect similar to stealing, counterfeiting and swindling
- Accept capital (lawful money) from an unknown, undisclosed third party and pass this on to Borrowers as if the Lender were loaning Borrower's the Lenders own capital (lawful money), putting the Lenders own capital (lawful money) at risk

The Borrowers are demanding to know that the Lender has also followed the Federal Laws 12 USC Sec. 1831n(a)(2)(A) and/or 12 CFR 741.6(b) regarding Generally Accepted Accounting Principles and Generally Accepted Auditing Standards concerning this loan.

The Borrower is hereby requesting that an authorized officer or agent of the Lender sign and return the attached affidavit (LAWFUL * VERIFICATION OF FULL ACCOUNTING) within 21 days of the date of this notice. Also attached are affidavits signed by each of the Borrowers stating the Borrower's personal knowledge of the terms of the agreement. This is the Borrower's good faith attempt to settle this matter and clear up any confusion about the terms of the loan agreement prior to an Administrative Hearing on the matter. Failure to respond will be deemed a dishonor of this Notice. The affidavits are evidence that may be used according to the Federal Rules of Evidence to prosecute or enforce any default by you in this matter.

Not Negotiable

Warning

You are now being given 14 days to provide borrowers with the requested affidavits and to notify the borrowers that you have stopped the foreclosure process. If borrower is not notified that this process has been stopped, borrower will retain expert witness and legal assistance (of which the borrower has already consulted) and will use every legal means available to stop the foreclosure, return clear title to the borrowers, clear borrowers credit of derogatory remarks and seek full justice against all people and entities involved in the borrowers loan, securitization and foreclosure. The borrowers will seek full treble, compensatory, punitive and exemplary damages from all parties. You are hereby notified these violations include violations of the following laws, legislation, statutes and/or regulations (not all inclusive): SEC, Sarbanes-Oxley, IRS, RICO, conspiracy, wire fraud, mail fraud, monetary transactions involving more then $10,000 in crime proceeds (in fact the total value of money involved in this scheme exceeds $1,000,000.00), fraud in the factum, fraud in the execution, fraud in the inducement, Predatory Lending, FDCPA/RFDCPA, Fair Credit Reporting, Fair Credit Billing, Gramm-Leach-Bliley Act, RESPA, TILA, HOEPA, etc. (including numerous other Federal and State laws). The borrowers have been driven to the end of their rope and will not stop until justice is served. This is your last chance to stop foreclosure, avoid extensive litigation and to return clear title to the borrowers.

**Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.)**

1. The Lender must provide complete and accurate information to the credit reporting agencies.
2. The Lender has the duty to investigate disputed information from consumers, and The Lender must correct an error, or explain why the credit report is correct within 90 days of receipt of notice of a dispute.
3. The Lender must inform consumers about negative information which has been or is about to be placed on a consumer's credit report within 30 days.

Under § 616 of the Act, (15 U.S.C. § 1681n), borrowers may recover either actual damages or a minimum of $100 and a maximum of $1000 plus punitive damages and reasonable attorney's fees and costs for willful noncompliance with the Act. Under § 617 of the Act, (15 U.S.C. § 1681o), recovery for a negligent violation is of actual damages, plus attorney's fees. Under § 618, a consumer may file suit in state or federal court to enforce the Act, and the statute of limitations is the earlier of 2 years from discovery and 5 years from the violation. (15 U.S.C. § 1681p.)

The lender has not provided complete and accurate information to the credit reporting agencies. The Lender failed in their duty to investigate the disputed information from consumers within 90 days of receipt of a notice of dispute. The Lender failed to correct the error and/or failed to explain why the credit report is correct within 90 days of receipt of notice

Not Negotiable

of a dispute.  The Lender failed to inform consumers that negative information which has been placed on borrower's credit report within 30 days.

Not Negotiable

**Fair Debt Collection Practices Act (15 U.S.C. § 1691-1692 et seq.)**

**Rosenthal Fair Debt Collection Practices Act (California Civil Code § 1788 et seq.)**

Once again, we dispute the validity of the entire debt. We maintain that the full balance you claim as being owed is incorrect. We are not being billed the correct monthly amount. We believe payments have been posted to our account for our benefit that we have not been notified of. We believe that our payments have been commingled.

You are concealing from borrowers the payments you have made to the lender and/or master servicer and/or holders in due course. Borrowers demand to have an accounting specifically of what payments have been sent to the lender and/or master servicer and/or holders in due course. This specifically includes principal and interest advances (hereinafter "payment advances"). If you have stopped making payments and payment advances to the lender and/or master servicer and/or holders in due course, provide an accounting of all payments and payment advances made and the dates on which you did not make payments and payment advances.

This information is not proprietary. This information is critical for borrowers to be able to determine the actual amount due to the holder(s) in due course. Not the amounts due to you (the servicer). Borrowers have no contract with you (the servicer), borrowers have a contract with the holder(s) in due course. You are specifically and intentionally interfering with the borrower's ability to negotiate a settlement and payoff, to negotiate a loan modification and/or to negotiate anything. You have intentionally and continuously violated the terms of the pooling and services agreement to which you have specifically agreed with when you took over servicing of loans from Mortgage Lenders Network and/or EMAX.

**Title 26, Title V of Gramm-Leach-Bliley Act (15 U.S.C. § 6801 et seq)**

In regards to the Gramm-Leach-Bliley Act, please answer the following questions:

1. Have you transferred our personally identifiable, nonpublic financial information to non-affiliated 3rd parties?
2. Have we received written or electronic notices required under this law (or any Federal or State privacy law) from all parties who have been given our personally identifiable, nonpublic financial information before, during and after the origination of our loan?

Please answer the following questions in regards to the borrower's privacy:

1. Have all parties involved in our loan taken adequate procedures to protect our privacy and/or our personally identifiable information?

Not Negotiable

2. Have all parties notified the borrower's that they have our personal information and/or our personally identifiable information?
3. For each 3rd party that, because of our loan, is in possession of our personal information and/or personally identifiable information, please provide the law or authorization that allowed them to acquire and maintain this information.
4. Has the original lender and/or any assigns and/or any servicers and/or any other party involved in our loan process disclosed our financial records to a 3rd party without legal process or consent?

Complaint regarding privacy:

- Borrowers have never received a privacy notice from any of the companies involved in this scheme. These companies have retained the borrower's personally identifiable information, financial information, note and/or security instrument, etc. They are attempting to hide the fact that they have this information and that they have never disclosed anything to borrower's (regarding privacy or otherwise). Even though borrowers have notified many of these companies of borrowers dispute, they have failed to respond to any of borrower's requests. The companies that are involved (that are known for sure) are the following companies:
  - o GMAC and/or Residential Funding Company (AKA Residential Funding Corporation)
  - o U.S. Bank National Association
  - o Mortgage Lenders Network
  - o First Priority Financial
  - o Fidelity National Title Company of California
  - o Fidelity National Title Insurance Company
  - o America's Servicing Company
  - o Richard L. Wessing, Appraiser
  - o Credit Reporting Agencies:
    - ▪ Experian
    - ▪ TransUnion
    - ▪ Equifax
  - o NDEx West, LLC
  - o Mortgage Electronic Registration Systems, Inc.
  - o Wells Fargo Home Mortgage
  - o Emax Financial Group, LLC
  - o Residential Asset Securities Corporation
  - o RASC Series 2005-EMX4 Trust
- Companies that may be involved are as follows:
  - o HomeWell Mortgage
  - o ShoreLine Capital Group
  - o The Mortgage Outlet
  - o Loans America, LLC
  - o Wells Fargo Financial BR
  - o Deutsche Bank AG
- Other companies and/or entities that are unknown are also involved:

Not Negotiable

- o RASC Series 2005-EMX4 Trust. Upon information and belief, this trust is not allowed to own assets, yet the borrower's note is part of a pool belonging to this Trust. This Trust also is the issuer of Certificates (Residential Asset Securities Corporation Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX4)
- o Residential Funding Securities Corporation (bookrunner and underwriter)
- o Barclays Capital (bookrunner and underwriter)
- o Cede & Co. (Depository and/or Clearing Corporation and/or clearing agency)
- o And others

## Identity Theft

The borrower's identities have been stolen and their personal information has been misused. Identity theft is a catch-all term for crimes involving illegal usage of another individual's identity and/or personal information. The Borrower's originally authorized the use of their personal information for the obtaining of a loan from Mortgage Lender's Network (hereinafter "MLN"). This loan was to be the lending of MLN's own capital (money), put at risk. The loan given was a predatory loan with an inflated appraisal in which the true terms of the loan were concealed from the borrowers, excess fees were paid outside of closing (or without borrowers knowledge) and all parties involved were aware of the true terms with the exception of the borrowers. In actuality, another "lender" provided the money to MLN and this "lender" used financial engineering to create a complex transaction in which the borrower's security instrument was pooled with other borrowers to fraudulently issue illegal and unregistered securities to investors. It is well established that these securities were fraudulently appraised at a high value. Numerous other crimes were committed, as described elsewhere in this document. Besides federal law violations, these actions violate California Penal Code Sections 528-539.

## Other Violations
### Sarbanes-Oxley Violations
Numerous Sarbanes-Oxley violations have occurred. Here are just a few instances in regards to borrower's loan/securitization transaction. Note that without these companies enticing borrower to sign the loan application, the borrower's security instrument could never have been created and certificates could never have been created and sold to investors. The money trail goes fully from the investors to the borrowers and from the borrowers back to the investors. This money trail for the borrower's loan and securitization is well in excess of $1,000,000.00.
### Sarbanes-Oxley sections 302(a)(4) and 404
- The companies involved in this scheme have assigned and transferred borrowers note (and/or security instrument) numerous times. In fact, borrower's actual note (and/or security instrument) has not been transferred as REQUIRED to any of these companies (the companies include, but are not limited to Mortgage Lenders Network, Mortgage Electronic Registration Systems, EMAX Financial Group, GMAC and/or Residential

Not Negotiable

Funding Company and/or Residential Funding Corporation, Residential Asset Security Corporation, and numerous other companies /entities). The lack of controls over this process is known to all of these companies AND their executives AND to the auditors of these companies. This practice is well accepted and regarded as the status quo.

- The actual security instrument itself has been lost, stolen, destroyed, misplaced or is counterfeit. All of the companies involved lack controls to keep this from happening. Pursuant to SEC in Rule 17f-1 — Requirements for Reporting and Inquiry with Respect to Missing, Lost, Counterfeit or Stolen Securities
- The companies involved in this scheme lacked the proper controls in the following areas:
  - o Prevent or detect that the originator of the loan, in agreement with others, failed to loan the borrower's the originators own capital (lawful money) of which the originator was at risk of loss.
  - o Prevent or detect any illegal or improper activities before assigning, selling and/or transferring a note or security instrument to another party
  - o Prevent or detect any illegal or improper activities before creating and/or issuing a security instrument to another party
  - o Prevent or detect that the loans in the pool of mortgages would lose their negotiability when conditions were attached to the notes. The conditions were attached by various documents including (but not limited to), the pooling and services agreement under which the borrowers mortgage falls under in the RASC Series 2005-EMX4 Trust.
  - o Prevent or detect any illegal or improper activities before assigning, selling, creating or transferring any certificates issued based on borrower's security instrument(s)
  - o Prevent or detect various other illegal activities that have occurred. The illegal and/or improper activities include (or may include) any or all of the following (not all inclusive):
    - *TILA violations
    - *RESPA violations
    - *HOESPA violations
    - *Usury
    - *Identity theft
      - Although borrower's initially gave First Priority Financial and Mortgage Lenders Network permission to use their identity in the issuance of a loan to borrowers (of the lenders actual capital, putting the lender at risk), these companies and the others involved, took borrower's identity and used it for numerous other crimes, including crimes for financial gain and numerous frauds (in fact most, if not all illegal activities specified in this document). Not only does this violate federal laws, it violates the California Penal Code Sections 528-539.
    - *Failure to perfect note and/or security instrument

**1195**

Not Negotiable

- *Failure to record assignments (as required by Federal law and California state law)
- *Fraudulent inflated appraisal of borrower's property
- *Fraudulent inflated appraisals of certificates of mortgage backed securities issued from borrowers loan pool (RASC Series 2005-EMX4 Trust)
- *Fraud in the factum regarding borrower's loan and security instrument
- *Fraud in the inducement regarding borrower's loan and security instrument
- *Fraud in the execution regarding borrower's loan and security instrument
- *Fraudulent concealment by all parties regarding borrower's loan and security instrument
- *Complete and utter failure by ALL parties involved to fulfill fiduciary duties towards borrower's
- *Failure to acknowledge and respond to borrower's request for information
- *Market manipulation regarding borrower's security instrument(s) and/or certificates issued based on borrower's security instrument(s)
- *Unregulated, unlicensed and illegal financial institutions
- *Unfair and deceptive business practices
- *Breach of contract
- *Unfair and deceptive practices with regards to debt collection practices (Federal laws and California laws)
- *Unfair credit reporting practices
- *Unfair billing practices
- GAAP violations
- GAAS violations
- Irregular bookkeeping
- *Misapplication of funds
- *Misappropriation of funds
- *Commingling of funds
- *Concealing accountings and payments made by others including the sub-servicer, master servicer and/or successor master servicer (mortgage pooling Trustee)
- Auditing violations
- *Perjury
- Forgery
- *RICO violations
- *Conspiracy
- *Wire Fraud
- *Mail Fraud
- *Mail Fraud affecting a financial institution
- False statements

Not Negotiable

- *Money transactions involving more then $10,000.00 in criminal proceeds
- *Improper and illegal loan servicing practices
- *Failure to fulfill loss mitigation required by agreements and Federal/State laws and guidelines
- *All companies involved in this scheme have denied, and continue to deny, equal protection of the law as guaranteed to borrowers according to the 14th Amendment.

*Items with an asterisk: Borrower has determined that these illegal activities have taken place. In many cases the borrowers have direct evidence.*

Had borrowers been given the opportunity to know the true terms of the loan transaction in which they were entering, they never would have entered into the transaction. All parties at closing were aware of the true terms and all parties concealed material information.

**U.S. Securities and Exchange Commission**
SEC tip or complaint regarding Rule 17F-1: Requirements for Reporting and Inquiry with Respect to Missing, Lost, Counterfeit or Stolen Securities.

- Reporting is to be made to the SEC and/or the FBI if securities are stolen, missing, lost, destroyed or counterfeit. This reporting needs to occur within one day (or under some circumstances, two days) from the discovery of the security being stolen, missing, lost, destroyed or counterfeit. It is unknown when this happened to borrower's security instrument (all information regarding borrower's security instruments has been hidden and concealed from borrowers). However, it is the regular pattern and practice of all companies involved in this scheme to pass the security instrument through various means except for the physical transfer of the security instrument. Therefore, all companies have knowledge that they have never received the physical security instrument and have passed on this security instrument to other parties in various means excluding physical transfer of the original.
- Because borrowers were tricked into issuing this security instrument and it was concealed that this security instrument had monetary value, borrowers hereby declare that this instrument has been stolen from them. This security instrument was created through FRAUD and no good title passes with fraud.
- Because this security instrument has been lost, intentionally misplaced, destroyed, is counterfeit and/or has been stolen, borrower's now declare that a report must be filed by any and all companies who have had access to this security instrument, actually have a copy of this security instrument, and/or who declare that they are the actual holder of this security instrument.
- Borrower's are not in possession of this security instrument and do not have the means to file a report on this security instrument. The transferring, assigning, selling and/or giving away of this security instrument has in fact been hidden and concealed from the borrowers.

Not Negotiable

- Because GMAC and/or Residential Funding Corporation and/or Residential Funding Company was the actual "original" lender and the party who decided to securitize borrowers loan, and who created the process for issuing certificates based on borrower's loan, the borrower's hereby declare that GMAC and/or Residential Funding Corporation and/or Residential Funding Company is fully responsible for determining at what point the borrower's security was lost, stolen, misplaced, destroyed and/or counterfeited.

SEC complaint regarding fraudulent or unregistered offer or sale of securities. These violations of the federal securities laws have been egregious and involved the highest degree of scienter. Borrowers have been irreparably harmed, have sustained financial losses, have suffered emotional stress and are on the verge of loosing their home to a party that is not the real party in interest (the party is not the holder in due course). The fraudulent foreclosure is a direct result of The Lenders fraudulent offer or sale of securities.

- All parties involved in this scheme directly, or indirectly, singly or in concert, have engaged and are engaging, in acts, practices, schemes and courses of business that may constitute violations of Sections 206(1) and 206(2) of the Advisors Act of 1940 ("Advisors Act") [15 U.S.C. §§ 80b-6(1),2()], may constitute violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a) and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17C.F.R. § 240.10b-5 (the "antifraud provisions"). Under the antifraud provisions, the borrower's must establish that, the offer or sale of a security, or in connection with the purchase or sale of a security, a party has acted with scienter in making a material misrepresentation or omission. SEC v. Hasho, 784 F. Supp. 1059, 1106 (S.D.N.Y. 1992) (citations omitted); see also Basic, Inc. v. Levinson, 485 U.S. 224, 235 n.13 (1988) (Section 10(b) of the Exchange Act and Rule 10b-5); United States v. Naftalin, 441 U.S. 768, 772, 778 (1979) (Section 17(a) of the Securities Act);
- The Lender made representations regarding the loans added to the loan pool, including borrower's loans. They misrepresented and/or omitted material facts about these loans. In addition, as will be shown below, The Lender made various other material misrepresentations and omissions.
- GMAC and/or GMAC subsidiary Residential Funding Corporation (AKA Residential Funding Company) provided the money to the originator who funded borrower's residential mortgage (refinance) for property located at 2690 Brown Bear Court Cool CA 95614 on or about 9/7/2005. The note borrower's signed was securitized, added into a pool and sold to investors. There were many companies involved in this scheme (we are still trying to figure out which ones). The companies involved in this scheme fraudulently concealed material facts that should have been disclosed to the borrowers as well as to the unwitting investors who purchased securities created from this pool. Numerous laws were broken including SEC violations, Sarbanes Oxley violations as well as other Federal and State laws. The lack of transparency throughout this entire scheme has resulted in the transfer in excess of $1,000,000.00 of criminal proceeds to various individuals and entities. Borrowers have sustained a loss of their money through overcharges, excessive fees, usury, etc. (this list is not all inclusive). Borrowers have requested information from some, if not all, of these

Not Negotiable

companies regarding the illegal and unauthorized transactions that have taken place using the borrower's identities – namely by the use of borrower's name, credit and/or security instrument. However, minimal information has been provided by the sub-servicer, who has not started any investigation and in fact, has declared that much of the information pertaining to the borrower's loan is "proprietary" and only available with a subpoena. That is about as far away from transparency as a company can get (the sub-servicer is ASC, which is really Wells Fargo Bank). The sub-servicer tactics and lack of fiduciary duty to borrower does not align with sworn testimony in SEC filings by the other companies (RFC and/or RASC) that the servicing companies abide by RFC and/or RASC's servicing standards. Borrower's make known to all that these companies are in no way transparent and they continue to hide and conceal material information in order to deceive borrowers. Borrower's have plenty of documentation that can be provided upon request to the SEC and any governmental or police entity.

- Fraudulent and/or unregistered offer and sale of securities has occurred by virtue of the fact that securitization of the borrowers loan introduced many new parties into the transaction, many of whom were not disclosed, each of whom received compensation that was not disclosed, each of whom violated Truth in lending laws, Unfair and Deceptive Trade Practices Acts, and Securities laws and rules.

- The fees paid to others are greater then the principal amount of the borrower's initial loan. The initial loan was for $500,000.00. This means the amount of money involved in the fraud and other illegal activities was in excess of $1,000,000.00. The companies involved are financial institutions. The borrowers have made known numerous times to the parties involved that extensive fraud was committed. The allegations of this fraud were never taken seriously and never fully investigated by the parties involved in this loan and securities transactions. Numerous government agencies should have been notified, including the SEC, the OCC, the Department of the Treasury, the Secret Service, the FBI, the Federal Trade Commission, the HUD – Office of the Inspector General and the Federal Deposit Insurance Corporation. This list is not all inclusive. In addition, a Suspicious Activity Reports (SAR reports) should have been filed by employees of any or all of the following companies (who were all notified of the illegal and/or irregular activities by the borrowers):
  - o America's Servicing Company AKA Wells Fargo Bank National Association
  - o GMAC, LLC
  - o GMAC ResCap
  - o Residential Funding Company AKA Residential Funding Corporation
  - o Residential Asset Securities Corporation
  - o Residential Funding Securities, LLC
  - o U.S. Bank National Association

- The entire process was conceived and setup to offer those involved plausible deniability for the actions of others. However, this is a single transaction that lacks transparency, violates numerous laws, and is unjust, unethical and immoral. The transaction was financially engineered for one purpose; to unjustly enrich those people and companies "in the middle" between the closing where borrower's signature creates a security instrument, to the selling of fraudulent securities to the investors. Without obtaining the borrower's signature on the security instrument, the Certificates could not have been created from the loan pool

Not Negotiable

and issued to investors. Therefore, the entire securitization process consists of one single complex transaction born in fraud, deception and unjust enrichment.

- It is well established that the appraisals of the Certificates issued from the pool were fraudulently inflated and that there is no basis for the ratings given to the various tranches; especially the highest rated tranches.

- There are material misrepresentations or omissions made such as the following:
  o In the event a default is not cured, the servicer is required to "buyback" the mortgage from the pool. However, the pool is a Trust which by law cannot own assets. Therefore, the servicer cannot legally purchase a mortgage from the "pool".
  o The sub-servicer, master-servicer and successor master servicer (Trustee) are all required to cover payments from borrowers in the event borrowers do not make a payment. The sub-servicer is first required to advance this missing payment. In the event the sub-servicer cannot or does not make this payment the master servicer must advance this payment. In the event the master servicer does not receive this payment, the master servicer must advance this payment; and so on. What this materially misses is that in order to foreclose on the borrower's who fail to make their payments; the "holder(s) in due course" must have sustained a loss. Because all payments are being advanced by others (without the borrower's knowledge), no loss is sustained, and any foreclosure that would thus ensue, would be fraudulently based. This, in fact, is and has been standard operating procedure.
  o The servicers of these loans, and in fact all parties involved, have a fiduciary duty to borrower's that is routinely trampled. Anytime the borrower's dispute a payment, the servicer and/or The Lender is required to investigate this dispute. During the course of the investigation, The Lender cannot post derogatory remarks regarding the portion that is being disputed. Additionally, The Lender is required to report that the borrower is disputing the payment(s) and/or debt. It is standard operating procedure for The Lender to ignore all of this.
  o Any company that is part of this scheme (any part of The Lender), that maintains or has access to borrower's personally identifiable information, is required by law to send borrower's a privacy notice once a year. It is standard operating procedure that this law is ignored. Specifically, the borrower's have direct proof that U.S. Bank National Association and Residential Funding Company (FKA Residential Funding Corporation) have both violated these privacy laws. Borrowers have indirect proof that others have violated this law as well. These other companies were introduced through the securitization and pooling process, have access to borrower's personally identifiable information, and have never sent borrower's a privacy notice.
  o The Lender has failed to perfect title to borrower's security instrument. It is standard operating procedure that assignments are done electronically and that the actual documents are not transferred (the security instrument itself along with all assignments and allonges). The failure to pass the actual original security instrument and attach an assignment to the original security instrument when the security instrument is assigned, transferred and/or sold, VOIDS the security instrument and renders it unenforceable. This is standard operating procedure for

Not Negotiable

the companies involved in securitizing mortgages and adding them into pools of
mortgages.

o Each party involved in this scheme who received the borrowers security instrument
electronically but did not receive the actual physical original document (along with
all prior assignments and allonges) had full knowledge that the original security
instrument is/was lost, misplaced, stolen, destroyed or counterfeit. Many, if not all,
then went on to assign, transfer and/or sell this security instrument in which they
did not have possession of. As a result of the foregoing, each of these parties
knowingly violated the following:
   ▪ SEC Rule 17F-1 (they knowingly failed to file a report within the required
     timeframe)
   ▪ Anti-fraud statutes (They knowingly represented that they received a
     security they purchased. They knowingly assigned, transferred and/or sold a
     security they did not legally have possession of or own)

o Pursuant to California Civil Code 2932, when a security instrument is assigned, the
assignment must be recorded. Every assignment to date has violated California law.
Because the security instrument was never perfected, the security instrument is null
and void – and unenforceable.

o The Lender claims that making MERS the Beneficiary of the Security Instrument
allows them to use a "secondary market" to "electronically" record assignments,
bypassing conventional law. There is no law that authorizes or allows The Lender to
by pass the recording of assignments in the county to which the property resides.

o The Lender may claim the security instrument has not been assigned, only the
"obligation to pay" under the security instrument. Splitting the obligation to pay
from the security instrument itself voids the security instrument and renders it
unenforceable.

o Mortgage Lenders Network, as the original "lender" under the security instrument,
has been paid in full plus a fee for "standing in" for the actual concealed lender.
Because the security instrument has been paid in full, the note is not enforceable
and future assignments are fraudulent and thus null and void.

o Mortgage Lenders Network declared bankruptcy and did not list the borrower's
security instrument as an asset.

o MERS by their own admission, never retains borrowers security instruments. Thus
MERS has no authority to make any assignment under the note. In addition, MERS is
banned in California and does not have authority to do anything in regards to
borrower's security instrument.

o The Lender maintains that they have possession of the security instrument while
also maintaining that Mortgage Lenders Network (and/or MERS) has possession of
the security instrument. These two are mutually exclusive. One or the other, but
not both, can be in possession of the security instrument. In addition, no party is in
possession of the borrower's security instrument because it has been lost, stolen,
misplaced, destroyed or counterfeit.

o Concealing or omitting full disclosure of these activities from investors, The Lender
made materially false statements in sworn SEC filings and disclosures.

Not Negotiable

    o  All of the misrepresentations and omissions above are material. Information is considered material if there is a substantial likelihood that a reasonable investor would consider such information important in making an investment decision or if the information would significantly alter the total mix of available information. Basic, 485 U.S. at 231-32 (previously referenced above). Reasonable investors obviously would consider material the bogus nature of the transactions at issue, not to mention the elaborate fraudulent devices The Lender employed to create the appearance that these mortgages and pools of mortgages were secure and worth their over inflated rating. See SEC v. Research Automation Corp, 585 F.2d 31, 35-36 (2d Cir. 1978) (misleading statements and omissions concerning the use of money raised from investors were material as matter of law); see also United States v. Siegal, 717 F.2d 9, 14-15 (2d Cir. 1983) (holding that failure to disclose the misappropriation of more than $100,000 was a fact which would be important to a stockholder in his decision making).

- The Lender acted with scienter, which is a mental state embracing intent to deceive, manipulate, or fraud. Ernst & Ernst & Hochfelder, et all., 425 U.S. 185, 193 (1976). (A violation of Section 17(a)(1) of the Securities Act also requires a showing of scienter. However, the Supreme Court has held that scienter need not be shown in order to establish violations of Sections 17(a)(2) and (3) of the Securities Act. Aaron v. SEC, 446 U.S. 680, 696-97 (1980)). The Second Circuit has held that reckless conduct generally satisfies the scienter requirement. See e.g. SEC v. McNulty, 137 F.3d 732, 741 (2d Cir. 1998) (holding that scienter required for a Section 10(b) or Rule 10b-5 claim "may be established through a showing of a reckless disregard for the truth"), citing Rolf v. Blyth, Eastman, Dillon & Co., 570 F.2d 38, 46 (2d Cir. 1978); Sirota v. Solitron Devices, Inc., 673 F.2d 566, 573 (2d Cir. 1982).

- As noted above, The Lender has committed numerous frauds, misrepresentations and/or omissions, and the evidence establishes that The Lender is well aware of all other aspects of it.

- Borrowers also satisfy the "in connection with" and "offer or sale" requirement of a securities fraud violation. The Lender turned the borrower's note into a security instrument and also offered and/or sold Certificates (security instruments) created from the pool of mortgages to which the borrower's mortgage was but one. These are "securities" as defined by the federal securities laws, 15 U.S.C. § 78c(a)(10), and The Lenders fraudulent transactions plainly were "in connection with" the sale of those notes, and in their "offer and sale." If any of the securities were fictitious, lost, misplaced, stolen, destroyed or counterfeit is irrelevant. Fictitious, lost, misplaced, stolen, destroyed or counterfeit securities are subject to the antifraud provisions of the federal securities laws despite the fact that the securities do not or may not exist. SEC v. Gallard, 1997 WL 767570, at *3 (S.D.N.Y. Dec. 10, 1997) ("the antifraud provisions relied upon by the Commission are applicable even where, as here, the "security" at issue does not exist." (internal citations omitted); see also S.E. C. v. Lauer, 52 F.3d 667, 671 (7th Cir. 1995) ("An elementary form of [] misrepresentation is misrepresenting an interest as a security when it is nothing of the kind.") (internal citations omitted); and SEC v. Roor, 2004 WL 1933578, at *5 (S.D.N.Y. Aug.

Not Negotiable

30, 2004).  Also, The Lender may have committed investment advisory fraud as this scheme may have been committed through the accounts of advisory clients.

- Residential Funding Company, LLC (FKA Residential Funding Corporation), U.S. Bank National Association, Residential Asset Securities Corporation, Residential Funding Securities Corporation and Credit Suisse First Boston, LLC as well as the SPE/SPV that issued the securities are likely to continue their illegal conduct.  The Lender is likely to violate securities laws again.  If this matter leads to litigation, borrowers will demand emergency relief in that unless enjoined, The Lender will violate securities laws again.  SEC v. Cavanagh, 155 F.3d at 135.  As the Second Circuit instructed in Management Dynamics, Inc. (515 F.2d at 807):
    - o  Certainly, the commission of past illegal conduct is highly suggestive of the likelihood of future violations....[F]actors suggesting that the infraction might not have been an isolated occurrence are always relevant....Moreover, appellate courts have repeatedly cautioned that cessation of illegal activity does not ipso facto justify the denial of an injunction.
- In assessing likelihood of repetition, courts also look to such factors as the character of the violation, the degree of scienter involved, and the degree to which an alleged defendant's occupation or activities may present future opportunities to violate the law.  E.g., Cavanagh, 155 F.3d at 135; SEC v. Commonwealth Chem. Secs. Inc., 574 F.2d 90, 100-01 (2d cir. 1978); SEC v. Musella, 578 F. Supp. 425, 444 (S.D.N.Y. 1984).
- As demonstrated above, The Lenders violations of the federal securities laws have been egregious and exhibited a high degree of scienter.  Most significantly, as of late, The Lender fails to respond to legitimate disputes raised by the borrower, violates the law by reporting on disputed payments, continues to conceal material facts, continues to misrepresent themselves to borrower's and continues to allow borrowers to suffer unfair and deceptive debt collection through the use of a 3rd party debt collector.  Given the nature of The Lender's violations, and The Lenders persistence in continuing their fraud, if litigation is brought by either party, the borrower's will seek a temporary restraining order which is warranted to prevent The Lender from any additional violations.

Once again, had borrowers been given the opportunity to know the true terms of the loan transaction in which they were entering, they never would have entered into the transaction.  All parties at closing were aware of the true terms and all parties concealed material information.

**Internal Revenue Service**
Various crimes have been committed.  This includes crimes described elsewhere in this document.  Of specific interest to the IRS is the fact that these companies have sold and transferred all rights to the borrower's loan application numerous times (usually for 100% or more).  The companies use various schemes to accomplish this including dual reporting such as the following:

- On one instance the assignment and sale of the mortgage is declared as full and without recourse for purposes of bankruptcy protection.  For IRS and tax purposes, it is not considered a sale.

Not Negotiable

THIS LETTER SHALL NOT BE CONSTRUED AS A WAIVER OR ELECTION OF REMEDIES.

Govern yourselves accordingly!

Respectfully,

Daniel M. Edstrom and Teri A. Edstrom
2690 Brown Bear Court
Cool, CA 95614

Not Negotiable

Borrowers also HEREBY CERTIFY that a true and correct copy of the foregoing Request to Enjoin, Objection to Trustee, Duties of the Trustee, Loan Modification Offer, Notice Disputing the Validity of Debt, Adequate Assurance of Due Performance, Notice of Identity Theft and Notice of Other Violations, was sent to the alleged lender and/or debt collector and/or original Trustee and/or duly appointed Substituted Trustee and/or acting agent for the Trustee or Beneficiary and/or holder in due course at 15000 Surveyor Boulevard, Suite 500 Addison Texas 75001-9013 this ~~23rd day of January, 2009.~~
16th day of March, 2009.  *DE*

*Daniel Edstrom*

*Teri Edstrom*
Daniel M. Edstrom and Teri A. Edstrom
2690 Brown Bear Court
Cool, CA 95614



15000 Surveyor Blvd., Suite 500
Addison, TX 75001
Phone: 866-795-1852
Fax: 972-661-7800

April 14, 2009

Daniel and Teri Edstrom
2690 Brown Bear Court
Cool, CA 95614

> Re:   Mortgagor:            Daniel and Teri Edstrom
> Loan Number:          1115033372
> Trustee Sale Number:  20080134014711
> Property Address:     2690 Brown Bear Court
>                       Cool, CA 95614

Dear Mr. and Mrs. Edstrom:

We have received your letter dated; however, we are not authorized to accept service on behalf of America's Servicing Company. Please send your letter to America's Servicing Company, P.O. Box 10328, Des Moines, IA 50306. If you need anything further, I can be contacted at the address on the letterhead, by phone at 972-341-5220 or by email at stephag@bbwcdf.com.

Sincerely,

Stephanie N. Goble
Associate Counsel

SNG/brn

The Fair Debt Collection Act requires that we advise you that NDEx West, LLC, **MAY BE ACTING AS A DEBT COLLECTOR, ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

April 14, 2009

NDX West, LLC
15000 Surveyor Blvd.
Suite 500
Addison, TX 75001-9013

Re: Daniel and Teri Edstrom
Account No: 40400216649

To whom it may concern:

For the past three months, I have received several "Notice of Default" letters from you concerning an overdue loan payment. I have filed Chapter 13 Bankruptcy; my attorneys name is Steven K. Kop.

This is my formal notice to you under 15 U.S.C. § 1692c(c) to cease all further communications with me except for the reason specifically set forth in the federal law.

This letter is not meant in any way to be acknowledgement that I owe this money.

Very truly yours,

*[signature]*

Daniel Edstrom

# Individual Message

Case # - 2975666
Case Type - Foreclosure (Non-Judicial)
Loan # - 1115033372
Reference # - 20080134014711
Borrower - DANIEL EDSTROM
Property State - CALIFORNIA

## Noteholder Changes

| | |
|---|---|
| **From:** | Stephanie M Norris (America's Servicing Co.) |
| **To:** | Noteholder Changes (NDEx West, LLC) |

| | | | |
|---|---|---|---|
| **Sent:** | 04/07/2009 6:47 AM | **Required Reply:** | No |
| **Read By:** | Pam Sanderson | **Read:** | 04/08/2009 2:28 PM |
| **Subject:** | TX: Validate Vesting Information | | |

-- Transfered From Stephanie Creech On 04/08/2009 --

US Bank National Association as Trustee

-----Original Message-----
From: Shoragim Amir
To: ndex processor
Sent: 04/03/2009 7:34 PM
Subject: RE: Validate Vesting Information

Please advise Correct Entity name to Foreclose in. Thank you.

-----Original Message-----
From: ndex processor
To: Client Services
Sent: 04/03/2009 12:52 PM
Subject: RE: Validate Vesting Information

It is the responsibility of your firm to validate and confirm that the vesting for this property prior to sale is:  Contact Processor .If vesting information is used outside of the information provided herein, justification will be required in your response back to the primary processor.

1209

**Sophia Knowlton**

| | |
|---|---|
| **From:** | Princess Carew |
| **Sent:** | Thursday, June 04, 2009 10:59 AM |
| **To:** | Postponements |
| **Subject:** | CA sale review for 6/5/09 |
| **Importance:** | High |

Fidelity suspended for active bankruptcy please postpone for 30 days.

08-1340-8300

08-1340-14711

09-1340-312

Fidelity is suspended for loss mit/repay plan. Please postpone for 30 days.

08-1340-14802

09-1340-506

Please postpone sale for 2 weeks due to assignment issue.

07-1340-9703

08-1340-10608

Thank you,

Princess Carew
Direct Source Specialist*
Barrett Daffin Frappier Turner & Engle L. L.P.
15000 Surveyor Blvd, Suite 100
Addison, Texas 75001
972-341-0770
972-341-0830(Fax)
*Not licensed to practice law

6/4/2009

Recording requested by:
**LAWYERS TITLE**

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

**CONFORMED COPY**
**COPY** of Document Recorded
on JUL 1 5 2009   35006
as No.

Has not been compared with the original

ASSG20080134014711

/2

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711     Title Order No.: 20863960

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to U S BANK NATIONAL ASSOCIATION, AS TRUSTEE all beneficial interest under that certain Deed of Trust dated 09/07/2005, executed by DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, as Trust or to MITCHELL L. HEFFERNAN, Trustee, and Recorded on 09/14/2005 as Instrument No. 2005-0077328-00 of Official Records in the County Recorder's office of EL DORADO County, California. Describing land therein: AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated

JUL 0 7 2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC.

David Seybold, Assistant Secretary

State of    Texas}
County of   Dallas}

Before me _____, the undersigned Notary Public, on this day personally appeared David Seybold, who is the Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC., a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of JUL 0 7 2009, 2009

My Commission Expires:

SONIA CARDONA
Notary Public
State of Texas
My Comm. Exp. 06-20-2011

Notary Public Signature

_____
Printed Name of Notary Public

CAASGNDOT.rpt - (01/25/08) / Ver-12

Page 1 of 1

1243

**UNITED CAPITAL TITLE INSURANCE COMPANY**
3480 VINE ST., SUITE 100
RIVERSIDE, CA 92507
(800) 370-8777              Fax: (951) 782-0865

**Original Invoice**

| | |
|---|---|
| **BILL TO** | File No.: 20863960 - 30 |
| | Invoice No.: 20863960 - 005 |
| Ndex West, LLC | Invoice Date: 07/15/2009 |
| Ndex West, LLC | Customer Code: 98558 |
| 15000 Surveyor Blvd., Suite 500 | Sales Rep: Jonathan Bonwit |
| Addison TX 75001 | Terms: |
| Phone: (972) 386-5040          Fax: (972) 341-0526 | |
| Reference: 20080134014711 | |

Comments:

| DESCRIPTION | LIABILITY | AMOUNT |
|---|---|---|
| Recording - Assignment | | 12.00 |

| | | |
|---|---|---|
| File No.: 20863960 - 30     Terms: | | |
| Invoice No.: 20863960 - 005 | | |
| Invoice Date: 07/15/2009 | **AMOUNT DUE** | 12.00 |
| Property Address: 2690 BROWN BEAR COURT COOL, CA 95614 | | |

**SALE ENDORSEMENT**

| | |
|---|---|
| **YOUR REF. NO.:** | **20080134014711** |
| **OUR REF. NO.:** | **20863960-30** |
| **GUARANTEE NO.:** | **20863960** |

## UNITED CAPITAL TITLE INSURANCE COMPANY
### A CORPORATION
HEREIN CALLED THE COMPANY,

THE COMPANY HEREBY ASSURES THE ASSURED THAT, SUBSEQUENT TO THE DATE OF THE GUARANTEE ISSUED UNDER THE ABOVE NUMBER, OR THE DATE OF ANY PREVIOUSLY ISSUED ENDORSEMENTS THERETO, WHICHEVER DATE IS THE LATEST, NO MATTERS ARE SHOWN BY THE PUBLIC RECORDS WHICH WOULD AFFECT THE ASSURANCES IN SAID GUARANTEE OTHER THAN THE FOLLOWING:

ANY TAXES (CURRENT OR DELINQUENT), TAX SALES, STREET ASSESSMENTS, BONDS, SPECIAL ASSESSMENTS, ASSESSMENT DISTRICTS, TAX DEEDS, TREASURER'S DEEDS, AND CERTIFICATES OF SALE WHICH MAY HAVE BECOME LIENS, CHARGES, OR ENCUMBRANCES AGAINST SAID LAND SINCE THE DATE OF SAID GUARANTEE; NO FURTHER EXAMINATION OF THE RECORDS PERTAINING TO SAID MATTERS HAS BEEN MADE.

**PLEASE ADD THE FOLLOWING TO ITEM NO. 5 OF YOUR TRUSTEE'S SALE GUARANTEE:**

**THE BENEFICIAL INTEREST UNDER SAID DEED OF TRUST WAS ASSIGNED TO U S BANK NATIONAL ASSOCIATION, AS TRUSTEE FROM MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC. BY ASSIGNMENT RECORDED JULY 15, 2009, AS INSTRUMENT NO. 2009-0035006-00, OF OFFICIAL RECORDS.**

THE TOTAL LIABILITY OF THE COMPANY UNDER SAID GUARANTEE AND UNDER THIS ENDORSEMENT THERETO SHALL NOT EXCEED, IN THE AGGREGATE, THE AMOUNT STATED IN SAID GUARANTEE.

THIS ENDORSEMENT IS MADE A PART OF SAID GUARANTEE AND IS SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE LIMITS OF LIABILITY AND THE OTHER PROVISIONS OF THE CONDITIONS AND STIPULATIONS THEREIN, EXCEPT AS MODIFIED BY THE PROVISIONS HEREOF.

**DATED: AUGUST 5, 2009 @ 7:30 A.M.**

UNITED CAPITAL TITLE INSURANCE COMPANY

BY  *JM Smoler*
AUTHORIZED SIGNATORY

Mstr586
Sale Endorsement CLTA Guarantee Form 19 (Rev. 9-24-70)

# BOTTOMLINE LAWYERS

December 13, 2009

Stephanie N. Goble                                                        Facsimile (972) 661-7800
Associate Counsel                                                  and email stephag@bbwcdf.com
NDEx
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001

Re: Mortgagor: Daniel and Teri Edstrom
Loan Number: 1115033372
Trustee Sale Number: 20080134014711
Property Address: 2690 Brown Bear Court, Cool, California 95614

Dear Ms. Goble:

The borrowers, Daniel and Teri Edstrom, will be seeking ex parte relief, on Tuesday, December 15, 2009, at 8:15 a.m., in department 9, of the El Dorado County Superior Court, located at 3321 Cameron Park Drive, Cameron Park, California 95682. Specifically, the borrowers will be seeking an order enjoining sale of the captioned property, scheduled for December 16, 2009, at 10 a.m., and a concurrent order to show cause, setting a future hearing, why a preliminary injunction should not issue.

I am required, by the California Rules of Court, rule 3.1204(a) to notify you of the date, time and place of the ex parte application, by no later than 10 a.m. the court day before the ex parte appearance (rule 3.1204(c).) I am also required to attempt to determine whether NDEx will appear to oppose the application. Please feel free to telephone our office, at the telephone number below, or by email, at dn@bottomlinelawyers.com, to advise whether you will be appearing to oppose the application.

We will serve the ex parte application and all supporting documents as soon as they are ready for filing. Thank you.

Very truly yours,

**BOTTOMLINE LAWYERS**

*Carol J. Sidhu*

Carol J. Sidhu, J.D.
Legal Assistant

985 Lincoln Way, Suite 206
Auburn, California 95603
Telephone: (530) 888-7100 • Facsimile: (866) 305-1238

**1310**

12/15/2009 13:40 FAX  3165691618        S--Q-Q-PJacobs Law Group                    ⓩ001/006

# BOTTOMLINE LAWYERS

## Facsimile Transmittal Letter

| | |
|---|---|
| **DATE:** | December 15, 2009 |
| **TO:** | NDEx West |
| **FAX NO.:** | (972) 661-7800 |
| **RE:** | *Edstrom v. NDEx West* |

| | |
|---|---|
| **FROM:** | Carol J. Sidhu |
| **DOCUMENTS:** | Temporary Restraining Order and Order To Show Cause |
| **# PGS (incl cvr):** | 6 |
| **MESSAGE:** | |

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND MAY ALSO CONTAIN PRIVILEGED ATTORNEY-CLIENT INFORMATION OR WORK PRODUCT. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY TO THE INTENDED RECIPIENT, KNOW THAT ANY USE, DISSEMINATION, DISTRIBUTION, OR COPYING BY YOU OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO THIS OFFICE AT THE ABOVE ADDRESS VIA THE UNITED STATES POSTAL SERVICE. THANK YOU.

1356

RICHARD A. HALL (SBN 135483)
**BOTTOMLINE LAWYERS**
985 Lincoln Way, Suite 206
Auburn, California 95603
Telephone: (530) 888-7100
Facsimile: (866) 905-2248

Attorney for Plaintiffs
DANIEL MAJOR EDSTROM, an individual,
and TERI ANNE EDSTROM, an individual

J. Dawes

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF EL DORADO**

| | |
|---|---|
| DANIEL MAJOR EDSTROM, an individual; and TERI ANNE EDSTROM, an individual, | CASE NO.  PC 20090779 |
| | TEMPORARY RESTRAINING ORDER |
| Plaintiffs, | DATE: December 15, 2009 |
| v. | TIME: 8:15 |
| INDEX WEST, LLC, a Delaware limited liability company; MORTGAGE ELECTRONIC NETWORK USA, INC., a Delaware corporation; AMERICA'S SERVICING COMPANY, an entity form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, (MERS) and DOES 1 to 100, | DEPT: 9 |
| Defendants | |

Plaintiffs, Daniel Major Edstrom and Teri Anne Edstrom, have filed a complaint seeking

injunctive, declaratory and other relief, and also filed an ex parte application for a temporary

restraining order (TRO), pursuant to Code of Civil Procedure section 527 and 528. This Court has

considered the submissions filed in support of the TRO, including the application for TRO, the

declarations, memoranda, and declarations, and now being advised in the premises, finds that:

    There is good cause to believe that defendants have engaged, and are likely to

    continue to engage, in acts or practices that violate the Civil Code of California;

    and that plaintiffs are, therefore, likely to prevail on the merits of this action

TEMPORARY RESTRAINING ORDER                                    -1-

1357

2. There is good cause to believe that plaintiffs will suffer immediate and continuing harm unless defendants are immediately restrained by an order of this Court.

3. Plaintiffs' memorandum in support of their TRO application and the accompanying declarations and exhibits demonstrate that it is likely that defendants have engaged in a concerted course of illegal activity in initiating foreclosure proceedings against plaintiffs' home, including scheduling a trustee sale at which plaintiffs' home will be put on the auction block, on December 16, 2009, at 10 a.m.

4. In compliance with the California Rules of Court, counsel for plaintiff has submitted a certification evidencing the efforts to provide notice to defendant of the submission of plaintiff's TRO motion and copies of all pleadings and papers filed in the action to date.

5. Notice to all parties herein by this TRO has been given, pursuant to the certification provided by plaintiff.

6. The court finds, under its discretionary authority, that plaintiff does not have to give any security at this time to postpone the foreclosure sale.

7. This temporary restraining order is in the public interest.

**THEREFORE, THE COURT HEREBY ORDERS** as follows:

(1) All defendants and their agents, assigns, employees, officers, attorneys, and representatives are enjoined and restrained from engaging in or performing any act to deprive plaintiff of ownership or possession of the real property located at 2690 Brown Bear Court, Cool, California 95614 (hereafter, "the property"), including but not limited to instituting, prosecuting or maintaining foreclosure or sale proceedings on the property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps whatsoever to deprive plaintiff of ownership in the property, and in particular from proceeding with the sale of the property scheduled for December 16, 2009, at 10 a.m.

(2) This temporary restraining order shall be binding upon the parties to this action

TEMPORARY RESTRAINING ORDER                                            -2-

1358



1
2   and all other persons or entities who receive actual notice of this order by personal
    service or other acceptable means of service.

3   (3)   Plaintiff shall forthwith serve a copy of this order upon all defendants, together
4         with all other documentation filed with the court in this action.

5   (4)   This temporary restraining order is entered this 15th day of December 2009 at
6         *1-7-10 9:00 A.m.*, Pacific Standard Time.

7   (5)   Because all defendants were informed prior to this TRO that a TRO was being
8         sought, this Court, under *Hewlett v. Squaw Valley Ski Corp.* (1997) 54
9         Cal.App.4th 499, 534, has discretion to extend the duration of this TRO beyond
10        the statutorily required 15-22 day period (Code Civ. Proc. Section 527(d)(1), and
11        hereby orders, therefore, this temporary restraining order will be in full force and
12        effect until ___*1-7-10*_____.

13
14  DATED: ___**DEC 15 2009**_____

15
16                                  **NELSON KEITH BROOKS**
17                                  JUDGE OF THE SUPERIOR COURT
                                    COUNTY OF EL DORADO
18
19
20
21
22
23
24
25
26
27
28

                          TEMPORARY RESTRAINING ORDER                        -3-

**1359**

RICHARD A. HALL (SBN 135483)
**BOTTOMLINE LAWYERS**
985 Lincoln Way, Suite 206
Auburn, California 95601
Telephone (530) 888-7100
Facsimile (866) 305-1258

Attorneys for Plaintiffs
DANIEL MAJOR EDSTROM, an individual
and TERI ANNE EDSTROM, an individual

FILED

09 DEC 15 AM 8:26

BY: _____
**J. Dawes**

SUPERIOR COURT OF CALIFORNIA

COUNTY OF EL DORADO

| | |
|---|---|
| DANIEL MAJOR EDSTROM, an individual; and TERI ANNE EDSTROM, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> NDEX WEST, LLC, a Delaware limited liability company; MORTGAGE LENDERS NETWORK USA, INC., a Delaware corporation; AMERICA'S SERVICING COMPANY, an entity form unknown; MORTGAGE ELECTRONIC REGISTRATION SERVICES (MERS); and DOES 1-10,000, <br><br> Defendants. | CASE NO. **PC 20090773** <br><br> ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION <br><br> DATE: 12-15-09 <br> TIME: 8:15 a.m <br> DEPT: 9 |

IT IS HEREBY ORDERED, pursuant to Code of Civil Procedure section 527 and 528, that defendants shall appear on ~~12/15/09~~ 1/7/10 at 8:15 A .M., in department 9 , of the El Dorado County Superior Court, located at 3321 Cameron Park Drive, in Cameron Park, California, to show cause, if any there be, why this Court should not enter a preliminary injunction, pending final ruling on the claims in the complaint, enjoining defendants from further violations of the California Civil Code, continuing the terms of this order, and, imposing such additional relief as may be appropriate.

IT IS FURTHER ORDERED that the moving party shall serve on the Court and on all

ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION                    -1-

1  other parties all memoranda, affidavits, and other evidence on which plaintiffs intend to rely, at

2  the preliminary injunction, by no later than _12/16/09_____. Any

3  opposition to the motion papers must be filed and served by no later than

4  _12/29/09_____. Any reply must be filed and served by no

5  later than _1/4/10_____. Service of all papers shall be in a manner that

6  guarantees receipt of the documents by no later than forty-eight hours after they have been filed.

7        IT IS FURTHER ORDERED THAT this order be served upon all defendants forthwith.

8

9  DATED: _12/15/09_____

10         DEC 15 2009

11

12         _____
           JUDGE OF THE SUPERIOR COURT
13         COUNTY OF EL DORADO
           **NELSON KEITH BROOKS**
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION                    -2-

1361

**Ivan Dominguez**

| | |
|---|---|
| **From:** | Michelle Gomez [michelleg@priorityposting.com] |
| **Sent:** | Wednesday, December 16, 2009 12:19 PM |
| **To:** | Ivan Dominguez; Pub Post |
| **Subject:** | Sale Results for TS# 20080134014711 |

NDex West, L.L.C.
Re: Sale Results
Priority No.: 639836

## Attn: Foreclosure Department

Your T.S. number 20080134014711 reverted back to the beneficiary on 12/16/2009
in the county of El Dorado at 10:00AM

for the amount of $ 220,000.00.

Should you have any questions, please feel free to contact our Sales Department at (800)570-3500

The information contained in this e-mail message is intended for the confidential use of the designated recipients. If the reader of this message is not an intended recipient, you are hereby notified that any review, use, dissemination, forwarding or copying of this message is strictly prohibited. Please notify Priority Posting & Publishing ("Company") immediately by reply e-mail or telephone, and delete the original message and all attachments from your system. You are further advised that this e-mail and any response thereto is the property of the Company and can be accessed and reviewed by the company at any time. Thank You.

12/16/2009



**PRIORITY POSTING AND PUBLISHING**
*17501 Irvine Blvd., Suite 1*
*Tustin, CA 92780*
*(714)573-7777 FAX (714)573-9547*

TS Number:      20080134014711
Priority Number:639836

### CERTIFICATE OF SALE

On 12/16/2009 at 10:00AM, the undersigned appeared at the location
described in the Notice of Trustee Sale and conducted a Trustee's Sale as agent for
NDex West, L.L.C.

At said sale, the property described in the Notice of Trustee Sale was sold to:  Beneficiary for the sum
of $220,000.00.

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

By:————————— *John Thorson*—————————

        (John Thorson)

Dated this 16th  day of December, 2009

CUSTOMER        NDex West, L.L.C.
ADDRESS          15000 Surveyor Blvd., Ste 500
                      Addison, TX 75001

**Brenda R. Bermudez**

| | |
|---|---|
| **From:** | Tanna Salazar |
| **Sent:** | Tuesday, December 22, 2009 8:18 AM |
| **To:** | Brenda R. Bermudez |
| **Subject:** | FW: 106-1115033372 / 20080134014711 - (CA ) Debtor - Edstrom --- Rescission of Sale Needed for Court Ordered TRO |

**Importance:** High

Thank You,

Tanna Salazar*
NDeX West
Foreclosure Specialist
Direct: 972-341-5211
tannas@ndexteamwest.com

*Not Licensed to Practice Law

PURSUANT TO THE FEDERAL DEBT COLLECTION PRACTICES ACT, BE ADVISED WE MAY BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

---

**From:** Erica Jones
**Sent:** Tuesday, December 22, 2009 7:47 AM
**To:** Mary Turner; Randy Middleton; Tanna Salazar
**Cc:** Ric Juarez; Jesus Angulo
**Subject:** FW: 106-1115033372 / 20080134014711 - (CA ) Debtor - Edstrom --- Rescission of Sale Needed for Court Ordered TRO
**Importance:** High

Sale is being rescinded.

Has the TDUS been sent to record on this file? The sale is being rescinded. Rescission approved by client and Joyce C (see comments 12/18/09).

Erica D. Jones*
General Counsel
NDEx West, LLC
15000 Surveyor Blvd.
Addison, TX 75001
(972) 341-5239 Voice
(972) 661-7800 Fax
ericaj@bbwcdf.com

**\*PLEASE BE ADVISED THAT WE MAY BE A DEBT COLLECTOR, ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

12/22/2009

**From:** Priscilla Gonzales
**Sent:** Monday, December 21, 2009 1:47 PM
**To:** Ric Juarez; Jesus Angulo; CA Wells Legal; Kim Marsac; Melissa McQuillen
**Cc:** Stephanie Goble; Erica Jones; Shirley Walker
**Subject:** 106-1115033372 / 20080134014711 - (CA ) Debtor - Edstrom --- Rescission of Sale Needed for Court Ordered TRO
**Importance:** High

Please see rescission approval below from client.

Thank you,
Priscilla Gonzales

**From:** RescissionRequests@wellsfargo.com [mailto:RescissionRequests@wellsfargo.com]
**Sent:** Saturday, December 19, 2009 11:38 AM
**To:** Priscilla Gonzales; RescissionRequests@wellsfargo.com; ConventionalSetUps@wellsfargo.com; NonEscrowTaxResearch@wellsfargo.com; CBR.ExecutiveDisputes@wellsfargo.com; TaxSale@wellsfargo.com; raquel.rosales@gmacrfc.com; REOInvestorRelations@gmacrescap.com
**Subject:** RE: 106-1115033372 / 20080134014711 - (CA ) Debtor - Edstrom --- Rescission of Sale Needed for Court Ordered TRO

Please be advised that the 12/16/09 sale has been submitted to counsel for the rescission.

Thanks
Shay Burwell

**From:** Priscilla Gonzales [mailto:PrisciGo@bbwcdf.com]
**Sent:** Friday, December 18, 2009 3:39 PM
**To:** Rescission Requests
**Subject:** FW: 106-1115033372 / 20080134014711 - (CA ) Debtor - Edstrom --- Rescission of Sale Needed for Court Ordered TRO
**Importance:** High

Please rescind the 12/16/09 sale. The debtor obtained a temporary restraining order on 12/15/09. There will be no fee as this is an attorney error.

Thank you,
Priscilla Gonzales*
Direct Source Specialist
Barrett Daffin Frappier Turner & Engle, LLP
15000 Surveyor Boulevard
Addison, TX 75001
972-341-0696 (direct)
972-341-0830 (fax)
priscigo@bbwcdf.com (email)
*Not Licensed to Practice Law
Notice of Confidentiality

This e-mail message and attachments, if any, are intended solely for the use of the

12/22/2009

**1378**

**Sale Audit Sheet - LITE**          12/14/2009

## 20080134014711

**COUNTY**   **EL DORADO**    **SALE DATE** 12/16/2009   **TIME**   10:00 am

**Client:** 01340 - AMERICA'S SERVICING COMPANY    **Borrower:** EDSTROM

**NoteHolder:** (USBKNATR) U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE

**Property Address:** 2690 BROWN BEAR COURT
COOL, CA 95614

**Client Loan Number:** 1115033372

**Orig. Loan Amount:** $ 500,000.00

**APN:**

**GF #:** 20863960          LANDAMU

**CA Pre-Sale Audit Completed:** **NOT COMPLETED**

| | |
|---|---|
| ☐ Review Dashboard | ☐ BK |
| ☐ Comments Reviewed | ☐ Assignment 07/15/2009 (1) |
| ☐ Legal Description Inserted | ☐ Prior Lien Not Resolved |
| ☐ NTS Recorded 12/1/09   ☐ SOT Recorded 2/5/09 | ☐ Junior Lien NOT Notified |
| ☐ Posting Affidavit | ☐ Junior Lien BK |
| ☐ Bid Received is for Current Sale  ☐ No MultiBid Present | ☐ IRS |
| ☐ Pub Datedown | ☐ Other Title Issues |
| ☐ Review Mailings  ☐ 10 Day  ☐ 30 Day  ☐ NTS | ☐ Courtesy Notification Sent RTP Notes/Jr Lien:  NO JR  RTP Amount  $ 0.00 |
| ☐ Client System Reviewed | |

**Title Problems:**
No ACTIVE/GCG Title Problems Present

**SALE AUDIT COMPLETED BY:**                 **DATE:** 12/15

☐ Sale Date Down Reviewed

☐ Bid & Fees Reviewed (bid is for current sale) Firm Fees  $  465.38
(S)                230,000.00

**LEGLR Scheduled Date:** 01/16/2009
**LEGLR Scheduled Date:** 04/14/2009

Sale

**OK To Proceed with Sale:**   **YES**   ☐ Manager          **NO**  ☐

**REQUEST TO POSTPONE SALE TO**

**REASON:**

Priority Posting & Publication

H:\INDEx\West\kelliebo\CA_SalAu revA NEW.rpt



1383

1  RICHARD A. HALL (SBN 135483)
   BOTTOMLINE LAWYERS
2  985 Lincoln Way, Suite 206
   Auburn, California 95603
3  Telephone: (530) 888-7100
   Facsimile: (866) 305-1238
4

5  Attorneys for Plaintiffs
   DANIEL MAJOR EDSTROM, an individual;
6  and TERI ANNE EDSTROM, an individual

**FILED**

10 JUN 11 AM 9: 06

ELDORADO COUNTY
SUPERIOR COURT

BY _____ DEPUTY

7              SUPERIOR COURT OF CALIFORNIA

8                 COUNTY OF EL DORADO

9

10  DANIEL MAJOR EDSTROM, an          )   CASE NO. PC 2010 0353
    individual; and TERI ANNE         )
11  EDSTROM, an individual,           )   TEMPORARY RESTRAINING ORDER
                                      )
12       Plaintiffs,                  )   DATE: June 11, 2010
                                      )   TIME: 8:15 a.m.
13  v.                                )   DEPT: 9
                                      )
14  NDEX WEST, LLC, a Delaware limited)
    liability company;                )
15                                    )            **BY FAX**
         Defendants.                  )
16  _____ )

17

18      Plaintiffs, Daniel Major Edstrom and Teri Anne Edstrom, have filed a complaint seeking

19  injunctive, declaratory and other relief, and also filed an ex parte application for a temporary

20  restraining order (TRO), pursuant to Code of Civil Procedure section 527 and 528. This Court has

21  considered the submissions filed in support of the TRO, including the application for TRO, the

22  exhibits, memoranda, and declarations, and now being advised in the premises, finds that:

23      1.   There is good cause to believe that defendants have engaged, and are likely to

24           continue to engage, in acts or practices that violate the Civil Code of California;

25           and that plaintiffs are, therefore, likely to prevail on the merits of this action.

26      2.   There is good cause to believe that plaintiffs will suffer immediate and continuing

27           harm unless defendants are immediately restrained by an order of this Court.

28      3.   Plaintiffs' memorandum in support of their TRO application and the

                    TEMPORARY RESTRAINING ORDER                              -1-

1460

Case 12-02546    Filed 03/13/13    Doc 65

1   accompanying declarations and exhibits demonstrate that it is likely that

2   defendants have engaged in a concerted course of illegal activity in initiating

3   foreclosure proceedings against plaintiffs' home, including scheduling a trustee

4   sale at which plaintiffs' home will be put on the auction block, on June 14, 2010,

5   at 10 a.m.

6   4.   In compliance with the California Rules of Court, counsel for plaintiff has

7        submitted a certification evidencing the efforts to provide notice to defendant of

8        the submission of plaintiff's TRO motion and copies of all pleadings and papers

9        filed in the action to date.

10  5.   Notice to all parties herein by this TRO has been given, pursuant to the

11       certification provided by plaintiff.

12  6.   The court finds, under its discretionary authority, that plaintiff does not have to

13       give any security at this time to postpone the foreclosure sale.

14  7.   This temporary restraining order is in the public interest.

15  **THEREFORE, THE COURT HEREBY ORDERS as follows:**

16  (1)  All defendants and their agents, assigns, employees, officers, attorneys, and

17       representatives are enjoined and restrained from engaging in or performing any act

18       to deprive plaintiff of ownership or possession of the real property located at 2690

19       Brown Bear Court, Cool, California 95614 (hereafter, "the property"), including

20       but not limited to instituting, prosecuting or maintaining foreclosure or sale

21       proceedings on the property, from recording any deeds or mortgages regarding the

22       property or from otherwise taking any steps whatsoever to deprive plaintiff of

23       ownership in the property, and in particular from proceeding with the sale of the

24       property scheduled for June 14, 2010, at 10 a.m.

25  (2)  This temporary restraining order shall be binding upon the parties to this action

26       and all other persons or entities who receive actual notice of this order by personal

27       service or other acceptable means of service.

28  (3)  Plaintiff shall forthwith serve a copy of this order upon all defendants, together

TEMPORARY RESTRAINING ORDER                                               -2-

1461

1        with all other documentation filed with the court in this action.

2     (4)   This temporary restraining order is entered this 11th day of June 2010, at

3        _8:15_ _a_.m., Pacific Standard Time.

4     (5)   Because all defendants were informed prior to this TRO that a TRO was being

5        sought, this Court, under *Hewlett v. Squaw Valley Ski Corp.* (1997) 54

6        Cal.App.4th 499, 534, has discretion to extend the duration of this TRO beyond

7        the statutorily required 15-22 day period (Code Civ. Proc. Section 527(d)(1), and

8        hereby orders, therefore, this temporary restraining order will be in full force and

9        effect until _Aug 5, 2010 @ 10:00_

10

11   DATED: _6/11/10_

12

13

14                   JUDGE OF THE SUPERIOR COURT

15                   COUNTY OF EL DORADO.
                             NELSON KEITH BROOKS

16

17

18

19

20

21

22

23

24

25

26

27

28

TEMPORARY RESTRAINING ORDER       -3-

## BottomLine Lawyers

**Phone:** 530.888-7100
**Fax:** 866.305.1238

# FAX

**To:** 9726617800                **From:** Richard Hall
**Re:**                           **Date:** 06/11/2010


Mercedita G. Schwarzkopf
*Legal Assistant*
BottomLine Lawyers
Box 237
Auburn, CA 95603
T (530) 888-7100
F (866) 305-1238
mschwarzkopf@bottomlinelawyers.com

NOTICE – CONFIDENTIAL

The information contained in this email is confidential and may contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to which it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the email in error, please immediately notify me by telephone, and return the original message to me at the address above via the U.S. postal service. Thank you.

NOTICE – NO PRIVACY:

(1) email communication is not a secure method of communication,
(2) any email that is sent to you or by you may be copied and held by various computers it passes through as it goes from us to you or vice versa,
(3) persons not participating in our communication may intercept our communications by improperly accessing your computer or our computers or even some computer unconnected to either of us which the email passed through.

We are communicating to you via email because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let us know AT ONCE.


Box 237, Auburn, CA 95604


**1463**

1 | RICHARD A. HALL (SBN 135483)
**BOTTOMLINE LAWYERS**
2 | 985 Lincoln Way, Suite 206
Auburn, California 95603
3 | Telephone: (530) 888-7100
Facsimile: (866) 305-1238
4

FILED

10 JUN 11  AM 9: 06

ELDORADO COUNTY
SUPERIOR COURT

BY_____ DEPUTY

5 | Attorneys for Plaintiffs
DANIEL MAJOR EDSTROM, an individual;
6 | and TERI ANNE EDSTROM, an individual

7 |                     SUPERIOR COURT OF CALIFORNIA

8 |                       COUNTY OF EL DORADO

9 |

10 | DANIEL MAJOR EDSTROM, an          )   CASE NO. PC 2010 0352
individual; and TERI ANNE         )
11 | EDSTROM, an individual,           )   TEMPORARY RESTRAINING ORDER
                                      )
12 |      Plaintiffs,                  )   DATE: June 11, 2010
                                      )   TIME: 8:15 a.m.
13 | v.                                )   DEPT: 9
                                      )
14 | NDEX WEST, LLC, a Delaware limited)
liability company;                )
15 |                                   )            **BY FAX**
       Defendants.                    )
16 | _____)

17 |

18 |      Plaintiffs, Daniel Major Edstrom and Teri Anne Edstrom, have filed a complaint seeking

19 | injunctive, declaratory and other relief, and also filed an ex parte application for a temporary

20 | restraining order (TRO), pursuant to Code of Civil Procedure section 527 and 528. This Court has

21 | considered the submissions filed in support of the TRO, including the application for TRO, the

22 | exhibits, memoranda, and declarations, and now being advised in the premises, finds that:

23 |      1.     There is good cause to believe that defendants have engaged, and are likely to

24 |             continue to engage, in acts or practices that violate the Civil Code of California;

25 |             and that plaintiffs are, therefore, likely to prevail on the merits of this action.

26 |      2.     There is good cause to believe that plaintiffs will suffer immediate and continuing

27 |             harm unless defendants are immediately restrained by an order of this Court.

28 |      3.     Plaintiffs' memorandum in support of their TRO application and the

                              TEMPORARY RESTRAINING ORDER                            -1-

1     accompanying declarations and exhibits demonstrate that it is likely that

2     defendants have engaged in a concerted course of illegal activity in initiating

3     foreclosure proceedings against plaintiffs' home, including scheduling a trustee

4     sale at which plaintiffs' home will be put on the auction block, on June 14, 2010,

5     at 10 a.m.

6    4.  In compliance with the California Rules of Court, counsel for plaintiff has

7     submitted a certification evidencing the efforts to provide notice to defendant of

8     the submission of plaintiff's TRO motion and copies of all pleadings and papers

9     filed in the action to date.

10   5.  Notice to all parties herein by this TRO has been given, pursuant to the

11    certification provided by plaintiff.

12   6.  The court finds, under its discretionary authority, that plaintiff does not have to

13    give any security at this time to postpone the foreclosure sale.

14   7.  This temporary restraining order is in the public interest.

15  **THEREFORE, THE COURT HEREBY ORDERS** as follows:

16  (1)  All defendants and their agents, assigns, employees, officers, attorneys, and

17    representatives are enjoined and restrained from engaging in or performing any act

18    to deprive plaintiff of ownership or possession of the real property located at 2690

19    Brown Bear Court, Cool, California 95614 (hereafter, "the property"), including

20    but not limited to instituting, prosecuting or maintaining foreclosure or sale

21    proceedings on the property, from recording any deeds or mortgages regarding the

22    property or from otherwise taking any steps whatsoever to deprive plaintiff of

23    ownership in the property, and in particular from proceeding with the sale of the

24    property scheduled for June 14, 2010, at 10 a.m.

25  (2)  This temporary restraining order shall be binding upon the parties to this action

26    and all other persons or entities who receive actual notice of this order by personal

27    service or other acceptable means of service.

28  (3)  Plaintiff shall forthwith serve a copy of this order upon all defendants, together

TEMPORARY RESTRAINING ORDER       -2-

**1465**

1     with all other documentation filed with the court in this action.

2   (4)  This temporary restraining order is entered this 11th day of June 2010, at

3      8:15  a.m., Pacific Standard Time.

4   (5)  Because all defendants were informed prior to this TRO that a TRO was being

5     sought, this Court, under *Hewlett v. Squaw Valley Ski Corp.* (1997) 54

6     Cal.App.4th 499, 534, has discretion to extend the duration of this TRO beyond

7     the statutorily required 15-22 day period (Code Civ. Proc. Section 527(d)(1), and

8     hereby orders, therefore, this temporary restraining order will be in full force and

9     effect until  Aug 5, 2010 @ 10:00

10

11  DATED:  6/11/10

12

13

14        JUDGE OF THE SUPERIOR COURT
           COUNTY OF EL DORADO

15                               NELSON KEITH BROOKS

16

17

18

19

20

21

22

23

24

25

26

27

28

TEMPORARY RESTRAINING ORDER          -3-

1466