1
2
3
4

DANIEL MAJOR EDSTROM
2690 BROWN BEAR COURT
COOL, CA 95614
TEL: 916/207-6706 | FAX: 888/552-2503
Plaintiff and Debtor-in-Possession

FILED

MAR 1 3 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

5
6
7

TERI ANNE EDSTROM
935 LINCOLN WAY #213
AUBURN CA, 95603
TEL: 916/207-4412
Plaintiff

8

# UNITED STATES BANKRUPTCY COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

### SACRAMENTO DIVISION

11

12

In re DANIEL MAJOR EDSTROM,

13

  Debtor-in-possession.

14

15

DANIEL MAJOR EDSTROM, an individual,
and TERI ANNE EDSTROM, an invididual,
Plaintiffs,

16

17

v.

18

19

NDEX WEST, LLC, a Delaware limited
liability company, et al

20

  Defendants.

21
22
23
24
25
26
27
28

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 12-29353
CHAPTER 11
DC NO. DME-1
A.P. NO. 12-02546-B

**PLAINTIFFS REQUEST FOR
JUDICIAL NOTICE IN SUPPORT OF
ITS OPPOSITION TO DEFENDANTS
MOTION FOR SUMMARY
JUDGMENT**

Hearing:
Date: March 19, 2013
Time: 9:32 a.m.
Ctrm.: 32
Hon. Thomas C. Holman
501 I Street, 6th Floor, Sacramento,
California 95814, Tel.: (916) 930-4473

1

2  TO THE PRESIDING JUDGE FOR THE CALIFORNIA SUPERIOR COURT FOR THE

3  COUNTY OF EL DORADO AND TO ALL INTERESTED PARTIES HEREIN AND TO

4  THEIR ATTORNEYS OF RECORD:

5        Pursuant to Fed. R. Evid. 201 as well as California Evidence Code 452(c), (g) 453,

6  Plaintiffs Daniel Major Edstrom and Teri Anne Edstrom ("Edstrom" or "Plaintiff") hereby

7  respectfully requests that this Court take judicial notice of the following exhibits, true and correct

8  copies of which are in the Appendix of Exhibits attached hereto and fully incorporated herein by

9  this notice.

10        The grounds are that: (i) such documents have been duly recorded in the office of the

11  County Recorder's office and therefore constitute "official acts" of an executive department[1]

12  within the meaning of Cal. Evid. Code § 452(c), and/or (ii) such documents were duly recorded

13  with in the territorial jurisdiction of this court but the legal sufficiency of each document was not

14  determined by the recorder within the meaning of Cal. Government Code § 27201; and (ii)

15  pursuant to Fed. R. Evid. 201(b), (d), this Court may take judicial notice of the following

16  exhibits, true and correct copies of which are in the Appendix of Exhibits attached hereto and

17  fully incorporated herein by this notice.  See In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir.

18  1995) (a court may take judicial notice of any adjudicative fact not subject to dispute.)

19        While recorded instruments are presumed valid, the mere act of recordation does not

20  authenticate its validity, rather, evidence to support such instrument is required. See: Cal. Evid.

21  Code § 1271, requiring a Declaration establishing the sources of information and the manner and

22  time of preparation were such as to indicate trustworthiness; Code of Civ. Procedure § 437c,

23  subd. (d) where a supporting Declaration must be made on personal knowledge and "show

24  affirmatively that the affiant is competent to testify to the matters stated therein". The

25  instrument(s) are also required to be acknowledged. Cal. Gov't Code §§§§§ 27201, 27282,

26  27285, 27286, 27287, 27288, 27289. Also see: Tomczak v. Ortega 50 Cal. Rptr. 20, 240 Cal.

27

28

App. 2d 902, "no substantial evidence to support such recital" was found and the notice of default and subsequent trustee's deed upon sale were determined as void and of no legal effect for lack of evidence." See: Wolfe v. Lipsy (App. 2 Dist. 1985) 209 Cal.Rptr. 801, 163 Cal.App.3d 633. Quieting Title 34(5); Angell v. Superior Court (Verdugo Trustee Service Corp.) (1999) 73 Cal. App. 4th 691 [86 Cal Rptr. 2d 657]; City of Los Angeles v. Morgan, 105 Cal. App. 2d 726 (1951) the court stated: "the purpose of the recording statutes is to provide notice…whether valid or invalid…if invalid instruments are recorded, no notice is given." The recorded documents were recorded. The legal sufficiency of the recorded documents has yet to be determined.

| Ex.No. | Description |
|--------|-------------|
| 1. | Deed of Trust dated 8/10/2004 and recorded in the Official Records of the El Dorado County Recorder's Office as document number 2004-0066954-00 |
| 2. | Assignment of Deed of Trust dated 8/31/2004 and recorded in the Official Records of the El Dorado County Recorder's Office as document number 2005-0020961-00 |
| 3. | Deed of Trust dated 9/7/2005 and recorded in the Official Records of the El Dorado County Recorder's Office as document number 2005-0077328-00 |
| 4. | Substitution of Trustee and Full Reconveyance dated 9/19/2005 and recorded in the Official Records of the El Dorado County Recorder's Office as document number 2005—0087063-00 |
| 5. | Notice of Default dated 12/19/2008 and recorded in the Official Records of the El Dorado County Recorder's Office as document number 2008-0060612-00 |
| 6. | Substitution of Trustee dated 1/26/2009 and recorded in the Official Records of the El Dorado County Recorder's Office as document number 2009-0004996-00 |
| 7. | Assignment of Deed of Trust dated 2/6/2009 and recorded in the Official Records of the El Dorado County Recorder's Office as document number 2009-0006093-00 |

| 8. | Proof of Claim 1-1 filed in Plaintiff Edstrom's Chapter 13 Bankruptcy filed in the United States Bankruptcy Court, Eastern District of California, Sacramento Division April 2009 as case number 09-26891 |
|---|---|
| 9. | Assignment of Deed of Trust dated 7/7/2009 and recorded in the Official Records of the El Dorado County Recorder's Office as document number 2009-0035006-00 |
| 10. | Motion for Request for Relief from Stay filed in Plaintiff Edstrom's Chapter 7 Bankruptcy filed in the United States Bankruptcy Court, Eastern District of California, Sacramento Division on August 2009 as case number 09-36647 |
| 11. | Notice of Appearance and Request for Duplicate Notice Combined with Request for all copies pursuant to Bankruptcy Rule 2002(a), (b) and Pleadings Pursuant to Bankruptcy Rules 3017(a) and 9007 filed in Plaintiff Daniel Major Edstrom's Chapter 11 Bankruptcy filed in the United States Bankruptcy Court, Eastern District of California, Sacramento Division on July 31, 2012. |
| 12. | Proof of Claim 6-1 filed in Plaintiff Daniel Major Edstrom's Chapter 11 Bankruptcy filed in the United States Bankruptcy Court, Eastern District of California, Sacramento Division on September 25, 2012 as case number 12-29353-B-11 |
| 13. | Isabel Santos et al vs. Reverse Mortgage Solutions, Inc.; NDeX West, LLC filed in the United States District Court for the Northern District of California as Case No. 12-3296-SC – Order denying defendants' motions (1) for Judgment on the Pleadings and (2) to dissolve or modify Preliminary Injunction dated 10/12/2012 |

Dated this 11th day of March, 2013          Respectfully submitted,


_/s/ Daniel Edstrom_____
DANIEL EDSTROM,
Plaintiff and Debtor-in-possession


_/s/ Teri Edstrom_____
TERI EDSTROM,
Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

PLAINTIFFS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS
OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Recording Requested By:
CENTRAL PACIFIC MORTGAGE

El Dorado, County Recorder
William Schultz Co Recorder Office
DOC- 2004-0066954-00
Acct 1-CHICAGO TITLE CO
Friday, AUG 20, 2004 14:30:00
Ttl Pd  $57.00        Nbr-0000619381
                        CLC/C1/1-17

And After Recording Return To:
CENTRAL PACIFIC MORTGAGE
950 IRON POINT ROAD, SUITE 200
FOLSOM, CALIFORNIA 95630
Loan Number: 1120365

1150506 mc [Space Above This Line For Recording Data]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated     AUGUST 10, 2004     , together with all Riders to this document.
(B) "Borrower" is DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.
(C) "Lender" is CENTRAL PACIFIC MORTGAGE

Lender is a CALIFORNIA CORPORATION                                        organized
and existing under the laws of CALIFORNIA
Lender's address is 950 IRON POINT ROAD, SUITE 200, FOLSOM, CALIFORNIA 95630
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is CHICAGO TITLE CO
105 LAKE FOREST WY STE A1, FOLSOM, CALIFORNIA 95630

(E) "Note" means the promissory note signed by Borrower and dated     AUGUST 10, 2004     .
The Note states that Borrower owes Lender THREE HUNDRED TWENTY-EIGHT THOUSAND AND
00/100                                      Dollars (U.S. $ 328,000.00          )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than SEPTEMBER 1, 2034     .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                    Page 1 of 13

DocMagic EXForms 800-849-1362
www.docmagic.com

CA3005.dst

066954

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | [X] Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider PREPAYMENT RIDER | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                          of  EL DORADO                          :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

LOT 885, AS SHOWN ON THE 'MAP OF AUBURN LAKE TRAILS UNIT 4', FILED
MAY 8, 1970, IN BOOK E OF MAPS, PAGE 61, EL DORADO COUNTY RECORDS.
A.P.N. #: 073-141-03-100

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                          Page 2 of 13

DocMagic℮Reruns 800-649-1362
www.docmagic.com

CA30052.doc

066954

which currently has the address of **2690 BROWN BEAR COURT**

[Street]

**COOL** , California **95614** ("Property Address"):

[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

DocMagic €Ferms 800-649-1362
www.docmagic.com



066954

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   Funds for Escrow Items.  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only



Order: Non-Order Search  Doc: CAELDO:2004 00066954          IMPORTANT          Page 4 of 17

066954

so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds



CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01
Page 5 of 13

DocMagic eForms 800-649-1362
www.docmagic.com

066954

shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be



# 066954

payable, with such interest, upon notice from Lender to Borrower requesting payment. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable



066954



Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                    Page 8 of 13                          DocMagic eForms 800-649-1362
                                                                                        www.docmagic.com

066954

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Ca3005.dot

066954

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01
Page 10 of 13

DocMagic eForms 800-649-1362
www.docmagic.com

Ca3005 10.dat

066954

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law.  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order:  (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance.  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it.  Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under

## 066954

Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
DANIEL MAJOR EDSTROM          -Borrower

_____ (Seal)
TERI ANNE EDSTROM          -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness:

Witness:

_____

_____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                          Page 12 of 13

DocMagic €Fσrms 800-649-1362
www.docmagic.com

Ca3005I2.dat

066954

——————— [Space Below This Line For Acknowledgment] ———————

State of California )
                   ) ss.
County of ~~EL DORADO~~ Placer )

On   8/13/04   before me, Marianne Bagwell

personally appeared  DANIEL MAJOR EDSTROM, TERI ANNE EDSTROM

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s). or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

> MARIANNE BAGWELL
> Comm. # 1317927
> NOTARY PUBLIC CALIFORNIA
> Placer County
> My Comm. Expires Sept. 13, 2005

_____
NOTARY SIGNATURE

Marianne Bagwell
(Typed Name of Notary)

NOTARY SEAL

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                          Page 13 of 13

DocMagic eForms 800-649-1362
www.docmagic.com

Ca30013.doc

IMPORTANT
Page 13 of 17

Order: Non-Order Search  Doc: CAELDO:2004 00066954          Created By: ranchocbf  Printed: 5/10/2011 9:35:01 AM PST

066954

Loan Number: 1120365

# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 10th day of AUGUST, 2004 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to CENTRAL PACIFIC MORTGAGE, A CALIFORNIA CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument and located at:

2690 BROWN BEAR COURT, COOL, CALIFORNIA 95614
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of    9.125 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A)   Change Dates

The interest rate I will pay may change on the 1st   day of SEPTEMBER, 2006 , and on that day every 6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B)   The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                Page 1 of 3

DocMagic €Ʒᴏᴍ 800-649-1362
www.docmagic.com

Us3138.rid.1.mee

# 066954

### (C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX AND 000/1000                    percentage points (          6.000 %) to the Current
Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be
my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to
repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my
new interest rate in substantially equal payments. The result of this calculation will be the new amount of
my monthly payment.

### (D)   Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than
10.625 % or less than          9.125 %. Thereafter, my interest rate will never be increased
or decreased on any single Change Date by more than ONE AND 500/1000

percentage points (          1.500 %) from the rate of interest
I have been paying for the preceding   6       months. My interest rate will never be greater than
16.125 %. My interest rate will never be less than     9.125 %.

### (E)   Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new
monthly payment beginning on the first monthly payment date after the Change Date until the amount of my
monthly payment changes again.

### (F)   Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount
of my monthly payment before the effective date of any change. The notice will include information required
by law to be given to me and also the title and telephone number of a person who will answer any question
I may have regarding the notice.

## B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section
18, "Interest in the Property" means any legal or beneficial interest in the Property, including,
but not limited to, those beneficial interests transferred in a bond for deed, contract for deed,
installment sales contract or escrow agreement, the intent of which is the transfer of title by
Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or
if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)
without Lender's prior written consent, Lender may require immediate payment in full of all
sums secured by this Security Instrument. However, this option shall not be exercised by
Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this
option if: (a) Borrower causes to be submitted to Lender information required by Lender to
evaluate the intended transferee as if a new loan were being made to the transferee; and (b)
Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER  LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 2 of 3

DocMagic ℰℛ∞∞∋ 800-448-1362
www.docmagic.com

U3138,rid.2.um

066954

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
DANIEL MAJOR EDSTROM    -Borrower

_____ (Seal)
TERI ANNE EDSTROM    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                     Page 3 of 3

*DocMagic eForms* 800-649-1362
www.docmagic.com

Us3138.rid.3.xem

066954

Loan Number:  1120365

# PREPAYMENT RIDER
# ADJUSTABLE RATE LOAN

This Prepayment Rider is made this 10th day of AUGUST 2004              and is
incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure repayment of Borrower's Note to CENTRAL PACIFIC
MORTGAGE                                                                    (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note
and/or Security Instrument, the provisions of this rider shall prevail over and shall supersede any such
inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and
Lender further covenant and agree as follows:

## 5.    BORROWERS RIGHT TO PREPAY

I have the right to make prepayments of principal any time before they are due. A payment of
principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder
in writing I am doing so. The Note Holder will use all of my prepayments to reduce the amount of
principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the
due dates of my monthly payments unless: the Note Holder agrees in writing to those changes. My
partial prepayment may reduce the amount of my monthly payments after the first Change Date
following my partial prepayment.

If within  1       year(s) from the date of execution of the Security Instrument, I make a full
prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12-
month period exceeds TWENTY PERCENT (20%) of the original principal amount of this loan, I will
pay a prepayment charge in an amount equal to the payment of 6 months advance interest on the
amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY
PERCENT (20%) of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Prepayment Rider.

DANIEL MAJOR EDSTROM

TERI ANNE EDSTROM

NCMC GENERIC PREPAYMENT RIDER
RE 103 REVISED (020800)

DocMagic *Forms* 800-649-1362
www.docmagic.com


05/20/2004,20040066954

Re103.rem

# EXHIBIT 2

When Recorded Mail To:
New Century Mortgage Corp.
210 Commerce
Irvine, CA 92602
Attn: Cristina Salas

Loan No.: 1120365

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2005-0020961-00**
Check Number  47724
Wednesday, MAR 16, 2005 09:26:54
Ttl Pd    $12.00        Nbr-0000700962
                                    CLC/C1/1-2

For Recorders Use

**NCM LN#: 1727447**     ## ASSIGNMENT OF DEED OF TRUST

CENTRAL PACIFIC MORTGAGE COMPANY, a California Corporation, Beneficiary under that certain
Deed of Trust dated _____ AUGUST 10, 2004 _____, executed by
DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, HUSBAND AND WIFE _____ ,
and recorded ___ **08/20/2004** ___ as Instrument Number _ **2004-0066954-00** __ Book _____ ,
Page _____ Official Records of ___ EL DORADO _____ County, ___ CALIFORNIA _____ ,
given to secure payment of the Promissory Note therein described or referred to and the money due
thereon with interest, has ENDORSED said Note and does hereby ASSIGN, SELL, CONVEY and
DELIVER TO NEW CENTURY MORTGAGE CORPORATION, 18400 VON KARMAN, SUITE 1000,
IRVINE, CALIFORNIA 92612 .    **AS DESCRIBED IN THE DEED OF TRUST.**
All right, title and interest in said Note and all rights accrued or to accrue under said Deed of Trust.

        IN WITNESS WHEREOF, said corporation has executed these presents by its officer thereunto
duly authorized.

Dated: AUGUST 31, 2004              **CENTRAL PACIFIC MORTGAGE COMPANY**

                    By: _____
                        LISA HEFLEY, AUTHORIZED SIGNER

STATE OF CALIFORNIA      )
                         ) SS
COUNTY OF SACRAMENTO     )

On __ AUGUST 31, 2004 _, before me, __ L. HALL _____ notary public, personally
appeared __ LISA HEFLEY, AUTHORIZED SIGNER __ , personally known to me (or proved on the basis
of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and
acknowledged to me that they executed the same in their authorized capacities, and that by their
signatures on the instrument the persons, or entity upon behalf of which the persons acted, executed the
instrument.

WITNESS my hand and official seal

[Notary seal: L. HALL
Commission # 1294227
Notary Public — California
Sacramento County
My Comm. Expires Nov 16, 2004]

_____
                              Notary Public

020961

## GOVERNMENT CODE 27361.7

I certify under penalty of perjury that the "Notary Seal" on the document to which this statement is attached reads as follows:

Name of Notary: _____ **L. HALL** _____

Date Commission Expires: _____ **NOVEMBER 16, 2004** _____

Notary Commission Number: _____ **1284227** _____

Manufacturer or Vendor Number: _____ **NNA1** _____

County and State Where Bond is Filed: ____ **SACRAMENTO COUNTY, CALIFORNIA** ___

Place of Execution:_____ **IRVINE, CA** _____

Signature: _____        Date: 02/15/2005
                    *David Pham*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NCM LN# 1727447

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

**4040021649**
*FNT 321335*
Recording Requested By:
**MORTGAGE LENDERS NETWORK USA, INC.**

Return To:
**MORTGAGE LENDERS NETWORK USA, INC.**
**213 COURT ST. MIDDLETOWN, CT 06457**

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2005-0077328-00**
Acct 2-FIDELITY NATL TITLE CO
Wednesday, SEP 14, 2005 14:30:00
Ttl Pd    $72.00        Nbr-0000775348
                        LJP/C1/1-22

Prepared By:
**MORTGAGE LENDERS NETWORK USA, INC.**
**213 Court St. Middletown CT 06457**

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

MIN **1002610-4040021649-3**

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **September 7, 2005** ,
together with all Riders to this document.
(B) "Borrower" is
**DANIEL MAJOR EDSTROM AND**
**TERI ANNE EDSTROM , HUSBAND AND WIFE**

Borrower's address is **2690 BROWN BEAR COURT   , COOL, CA 95614**
                                        . Borrower is the trustor under this Security Instrument.
(C) "Lender" is **MORTGAGE LENDERS NETWORK USA, INC.**

Lender is a **corporation or association**
organized and existing under the laws of **Delaware**

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01**

**-6A(CA)** (0207)
Page 1 of 15        Initials:
VMP MORTGAGE FORMS - (800)521-7291

077328
4040021649

Lender's address is **213 Court St. Middletown CT 06457**

(D) **"Trustee"** is **Mitchell L. Heffernan**

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated **September 7, 2005**
The Note states that Borrower owes Lender **Five Hundred Thousand and No/100 -------**

------------------------------------------------------- Dollars
(U.S. $      **500,000.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2035**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | [X] Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(CA) (0207)                           Page 2 of 15                    Initials: _____    **Form 3005  1/01**

4040021649

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **EL DORADO** :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

**SEE ATTACHED SCHEDULE A**

Parcel ID Number:                                                    which currently has the address of
**2690 BROWN BEAR COURT**                                                          [Street]
**COOL**                                                    [City], California **95614**          [Zip Code]
("Property Address"):

 TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

 BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: _PKIE_

**-6A(CA)** (0207)                          Page 3 of 15                          **Form 3005  1/01**

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be



4040021649

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10



**-6A(CA)** (0207)                    Page 5 of 15                    **Form 3005 1/01**

**4040021649**

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

**-6A(CA)** (0207)                    Page 6 of 15                    Initials: _____          **Form 3005   1/01**

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

 

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

077328

4040021649

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: 

-6A(CA) (0207)                    Page 13 of 16                    Form 3005  1/01

**4040021649**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

*Daniel Major Edstrom* _____ (Seal)

**DANIEL MAJOR EDSTROM**                -Borrower

_____

*Teri Anne Edstrom* _____ (Seal)

**TERI ANNE EDSTROM**                -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                              -Borrower

077328

4040021649

State of California
County of Sacramento  } ss.

On **September 7, 2005**    before me, Laura Capparelli
**DANIEL MAJOR EDSTROM**                              personally appeared
**TERI ANNE EDSTROM**

, ~~personally known to me~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Laura Capparelli _____ (Seal)

LAURA CAPPARELLI
Commission # 1477976
Notary Public - California
Placer County
My Comm. Expires Mar 21, 2008

Initials: PE JE

4040021649

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In** *The Wall Street Journal*) **- Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this **7th**    day of **September**    **2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **MORTGAGE LENDERS NETWORK USA, INC.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:
**2690 BROWN BEAR COURT   , COOL, CA 95614**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of    **7.200**0%. The Note provides for changes in the interest rate and the monthly payments, as follows:
## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **October 1, 2007**    , and on that day every **6th**    month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six**    percentage points ( **6.00000**    %) to the Current Index. The Note Holder will then round the result of

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)** - Single Family - **Fannie Mae Uniform Instrument**

-838R (0402)   **Form 3138 1/01**
Page 1 of 3       Initials: ___
VMP Mortgage Solutions, Inc.
(800)521-7291



,   •

,·          ,·

4040021649

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than
**10.2000** % or less than          **7.2000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
**One**                                                                                    percentage points
(          **1.0000**       %) from the rate of interest I have been paying for the preceding
**6**           months. My interest rate will never be greater than          **13.2000** * %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

**\*My interest rate will never be less than 7.2%**

Initials: $\mathcal{P} \mathcal{E} \mathcal{J} \mathcal{E}$

4040021649

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
DANIEL MAJOR EDSTROM        -Borrower          TERI ANNE EDSTROM          -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                    -Borrower


-838R (0402)                    Page 3 of 3                    Form 3138 1/01

**4040021649**

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **7th**                day of
**September**       **2005**                         , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to
**MORTGAGE LENDERS NETWORK USA, INC.**

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:
**2690 BROWN BEAR COURT   , COOL, CA 95614**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in
**the covenants, conditions**
**and restrictions in the declarations of AUBURN LAKE TRAILS**

(the "Declaration"). The Property is a part of a planned unit development known as
**AUBURN LAKE TRAILS**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association
or equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii)
articles of incorporation, trust instrument or any equivalent document which creates the
Owners Association; and (iii) any by-laws or other rules or regulations of the Owners
Association. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM**
**INSTRUMENT**
**Form 3150 1/01**                **MIN- 1002610-4040021649-3**
                              Page 1 of 3            Initials: $\mathcal{PEJC}$
**VMP-7R** (0411)            VMP Mortgage Solutions, Inc. (800)521-7291



4040021649

077328

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _PEJJ_

VMP-7R (0411)                    Page 2 of 3                    Form 3150 1/01

4040021649

077328

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_Daniel Major Edstrom_ _____ (Seal)    _Teri' anne Edstrom_ (Seal)
**DANIEL MAJOR EDSTROM**        -Borrower    **TERI ANNE EDSTROM**        -Borrower

_____ (Seal)    _____ (Seal)
                             -Borrower                                 -Borrower

_____ (Seal)    _____ (Seal)
                             -Borrower                                 -Borrower

_____ (Seal)    _____ (Seal)
                             -Borrower                                 -Borrower

VMP-7R (0411)                     Page 3 of 3                     Form 3150 1/01

077328

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA, COUNTY OF EL DORADO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 885, of Auburn Lake Trails Unit No. 4, filed May 8, 1970, in Book E, of Maps, at page 61, El Dorado County Records.

APN: 073-141-03-100

# EXHIBIT 4

PLAINTIFFS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS
OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2005-0087063-00**
Check Number 120764
Monday, OCT 17, 2005 08:36:08
Ttl Pd   $19.00        Nbr-0000788132
                                    JLR/C1/2-2

When Recorded Mail To:
Financial Dimensions, Inc.
1400 Lebanon Church Road
Pittsburgh, PA 15236    328081

Prepared by: TRUPTI VARTAK
OCWEN LOAN SERVICING, LLC
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409
Loan No. 33827338 0926  S
Investor # 2383

## CALIFORNIA
### SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE

**OCWEN LOAN SERVICING, LLC,** the undersigned beneficiary, under the Deed of Trust described below, hereby substitutes or appoints Paul Neff, whose address is 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409, as successor Trustee under that certain Deed of Trust.

Original Beneficiary:      CENTRAL PACIFIC MORTGAGE
Original Trustor:          DANIEL MAJOR EDSTROM AND TERI ANN EDSTROM
Recorded in                EL DORADO County, California on  08-20-2004
Instrument                 2004- 0066959-00
Date of deed of trust      AUGUST 10, 2004   Amount of deed of trust $ 328,000.00
Trustee:                   CHICAGO TITLE CO.
PROPERTY ADDRESS           2690 BROWN BEAR COURT, COOL, CA
AP#                        073-141-03-100

NOW THEREFORE, the undersigned, who is the Substitute Trustee of the above described instrument, in consideration of full payment and satisfaction of the debt secured thereunder, hereby reconveys, releases, and discharges the deed of trust and authorizes and instructs the clerk or recorder to enter satisfaction of and cancel of record the deed of trust.

Dated:  SEPTEMBER 19, 2005

I

087063

OCWEN LOAN SERVICING, LLC

By: _____
    Scott W. Anderson
    Senior Vice President

**SUBSTITUTE TRUSTEE:**

_____
Paul Neff
Substitute Trustee

State of Florida, County of Palm Beach  )

On SEPTEMBER 19, 2005 , before me, the undersigned Notary, personally appeared Scott W. Anderson, Senior Vice President of **OCWEN LOAN SERVICING, LLC**  and Paul Neff, Substitute Trustee, and both being personally known to me to be the person(s) whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their respective capacities as Senior Vice President  and Substitute Trustee, and that by their signatures and the instrument, the entity upon behalf of which the persons acted, executed the instrument.  WITNESS my hand and official seal.

Notary: _____

Name of Notary: Johnna Miller
Date Commission Expires: DECEMBER 9, 2007
County Where Bond is Filed: PALM BEACH
State Where Bond is Filed: FLORIDA
Notary Commission Number: DD273765
Place of Execution: PALM BEACH, FL


Johnna Miller
My Commission DD273765
Expires December 09, 2007



2

Order: Non-Order Search  Doc: CAELDO:2005 00087063                    IMPORTANT                    Created By: ranchocpr  Printed: 5/10/2011 9:55:01 AM PST
Page 2 of 2

# EXHIBIT 5

PLAINTIFFS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS
OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Recording requested by:
LandAmerica United Title Company- CA

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

El Dorado, County Recorder
William Schultz Co Recorder Office
DOC- 2008-0060612-00
Check Number  51603
Tuesday, DEC 23, 2008 10:24:32
Ttl Pd    $17.00        Nbr-0001139015
                                    JLB/C1/1-3

DFF20080134014711

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711        Title Order No.: 20863960

IMPORTANT NOTICE

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is $29,373.66 as of 12/19/2008 and will increase until your account becomes current.    While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.    If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.    In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.    You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.    However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

FCUS_NoticeOfDefault.rpt(09/05/2008)Ver-24

Page 1 of 2

060612

**IMPORTANT NOTICE**

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : 20080134014711          Title Order No.: 20863960

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**AMERICA'S SERVICING COMPANY**
**c/o NDEx West, LLC**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** NDEx West, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 09/07/2005, executed by DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, as Trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), as Beneficiary Recorded on 09/14/2005 as Instrument No. 2005-0077328-00 of official records in the Office of the Recorder of EL DORADO County, California, as more fully described on said Deed of Trust . Including a Note(s)/ Unconditional Guaranty which had a principal amount of $500,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 7/1/2008 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: 12/19/2008

NDEx West, LLC as Agent for Beneficiary

By: _Aaron W. Brown_, Agent

060612

# NOTICE OF DEFAULT DECLARATION
## PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

America's Servicing Company
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: DANIEL M EDSTROM
Property Address: 2690 BROWN BEAR COU
          COOL          CA  95614

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met. This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007. Non-owner occupied and vacant properties are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

*    The Beneficiary has made contact with the borrower pursuant to CA Civil Code 2923(a)(2). Contact with the borrower was made in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

*    Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the Beneficiary.

*    The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or authorized agent pursuant to CA Civil Code 2923.5(h)(1).

*    The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil Code 2923.5(h)(2).

*    The borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to CA Civil Code 2923.5(h)(3).

Dated:   12/18/2008

America's Servicing Company

John Kennerty

12/23/2008,20080060612

# EXHIBIT 6

Recording requested by:
**LAWYERS TITLE COMPANY**

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013



El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2009-0004996-00**

Check Number  55232
Thursday, FEB 05, 2009 13:51:51
Ttl Pd   $14.00        Nbr-0001147839
                               JLR/C1/1-2

**\*SUB200801340**
SUB20080134014711

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711  Title Order No.: 20863960

# SUBSTITUTION OF TRUSTEE

WHEREAS, **DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM** was the original Trustor, **MITCHELL L. HEFFERNAN** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)** was the original Beneficiary **Recorded on 09/14/2005 as Instrument No. 2005-0077328-00** of official records in the Office of the Recorder of **EL DORADO** County, California, as more fully described on said Deed of Trust.; and WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said prior Trustee.

NOW, THEREFORE, the undersigned hereby substitutes, **NDEx West, L.L.C., WHOSE ADDRESS IS:  15000 Surveyor Boulevard, Suite 500, Addison, Texas  75001-9013**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:

**01/26/2009**

Wells Fargo Bank NA, attorney in fact for U S BANK NATIONAL
ASSOCIATION, AS TRUSTEE

Karan Abernethy  Assistant Secretary

State of    South Carolina  }
County of   York  }

Carmen Y. Pickett

On  01/26/2009    before me, _____ , Notary Public, personally appeared Karan Abernethy who proved to me on the basis of satisfactory  evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that  he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on  the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

(If signed and notarized in South Carolina ):

## SEE ATTACHED AFFIDAVIT

I certify under PENALTY OF PERJURY under the laws of the State of South Carolina  that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____ (Seal)

My commission expires: _____

OFFICIAL SEAL
Notary Public
State of South Carolina
CARMEN Y PICKETT
My Commission Expires Jan. 14, 2018

FCUS_SubstituteOfTrustee.rpt - 12/28/2007 - Ver-24                                                                Page 1 of 1

NDEx West, L.L.C
15000 Surveyor Boulevard, Suite 500 **004996**
Addison, Texas 75001-9013                          *r . *
Telephone:   (866) 795-1852
Telecopier:  (972) 661-7800

## AFFIDAVIT

**TRUSTEE'S SALE NUMBER:**   20080134014711

**I, Jeremy Briggs, the undersigned, a United States Citizen declare that:**

**I am an employee, over the age of eighteen years, of**

NDEx West, L.L.C., and/or NDEX,

**whose business address is:**

15000 Surveyor Boulevard, Suite 500, Addison, Texas 75001-9013

**In compliance with Section 2934a(b) of the Civil Code of the State of California, Notice has been given to the prior trustee then of record, that NDEx West, L.L.C. has been substituted as trustee under the Deed of Trust described in the attached copy of Substitution of Trustee and a copy of said Substitution of Trustee has been mailed prior to the recording thereof, in the manner provided in Section 2924(b) of the Civil Code of the State of California to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.**

**NDEx West, L.L.C., and/or NDEX**

_____                      ____January 29, 2009_____
Jeremy Briggs                                                   DATED
**(Declarant)**

State of      TEXAS       }
County of   DALLAS     }

On January 29, 2009 before me, Sandra Pitka Notary Public, personally appeared Jeremy Briggs personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to within  instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____ (Seal)

My commission expires: _____

SANDRA  PITKA
Notary Public
State of Texas
My Comm. Exp. 04-11-2012



SBC20080134014711

02/05/2009,20090004996

# EXHIBIT 7

PLAINTIFFS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS
OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

2

Recording requested by:
**LAWYERS TITLE COMPANY**

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013



El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2009-0006093-00**

Check Number 1994124259
Thursday, FEB 12, 2009 14:07:02
Ttl Pd    $11.00        Nbr-0001149389
                                    LJP/C1/1-1

ASSG20080134014711

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711       Title Order No.: 20863960

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to **US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT** all beneficial interest under that certain Deed of Trust dated **09/07/2005**, executed by **DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM**, as Trustor to **MITCHELL L. HEFFERNAN**, Trustee, and Recorded on 09/14/2005 as Instrument No. 2005-0077328-00 of Official Records in the County Recorder's office of **EL DORADO** County, California. Describing land therein: **AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.**

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated

**FEB 0 6 2009**

State of         Texas}
County of      Dallas}

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR MORTGAGE LENDERS
NETWORK USA, INC.

Stephen C. Porter, Assistant Secretary

Before me   , the undersigned Notary Public, on this day personally appeared Stephen C. Porter, who is the Assistant Secretary of  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC.**, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ____ day of  **FEB 0 6 2009** , 2009.

My Commission Expires:

3-22-12

Notary Public Signature

Printed Name of Notary Public

CAASGNDOT.rpt - (01/25/08) / Ver-12

LEANNA KIMBALL
Notary Public
State of Texas
My Comm. Exp. 03-22-2012

Page 1 of 1

EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 8

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT  Eastern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor:  Daniel Major Edstrom and Teri Anne Edstrom | Case Number:  09-26891-A-13L |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):  **America's Servicing Company** | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:  4375 Jutland Drive, Suite 200; P.O. Box 17933  San Diego, CA 92177-0933  Telephone number: | **Court Claim Number:**_____  *(if known)*  Filed on:_____ __ __ __ |
| Name and address where payment should be sent (if different from above):  **America's Servicing Company**  Bankruptcy Department MAC # X2501-01D One Home Campus Des Moines, IA 50328  Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.  ☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:  $  **532,584.90** | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. |  |
| If all or part of your claim is entitled to priority, complete item 5. |  |
| ☑Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | Specify the priority of the claim |
| **2. Basis for Claim:  MONEY LOANED**  (See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 3. Last four digits of any number by which creditor identifies debtor:  ******3372 | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy |
| **3a. Debtor may have scheduled account as:**  _____  (See instruction #3a on reverse side.) | petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 4. Secured Claim (See instruction #4 on reverse side.)  Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). |
| Nature of property or right of setoff:  ☑Real Estate  ☐ Motor Vehicle  ☐ Other  Describe:  2690 Brown Bear Ct Cool, CA 95614 | ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or |
| Value of Property:$_____  Annual Interest Rate  7.20 % | household use – 11 U.S.C. §507 (a)(7). |
| Amount of arrearage and other charges as of time case filed included in secured claim,  if any: $  48,828.83  Basis for perfection:_____ | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| Amount of Secured Claim: $  532,584.90  Amount Unsecured: $_____ | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:**  $_____ |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)* |  |
| DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| If the documents are not available, please explain: |  |

| Date:  04/30/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  /s/ Ana Velazquez | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

FILED
April 30, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0001804428

## PROOF OF CLAIM BREAKDOWN SHEET

### IN RE: **EDSTROM, DANIEL MAJOR AND TERI ANNE**
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

CASE NO. 09-26891-A-13L
CREDITOR: AMERICA'S SERVICING COMPANY, as servicing agents for US BANK
NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING
COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION
ATTORNEY IN FACT, its successors and/or assigns

| Payments | |
|---|---|
| 07/08 – 10/08 @ $4,544.70 x 4 | $18,178.80 |
| 11/08 – 04/09 @ $4,518.89 x 6 | $27,113.34 |
| Atty Expense FC/C | $907.32 |
| Attorney Fees | $585.00 |
| Misc Fc Bk & Reo | $95.00 |
| Coll Property Insp | $75.00 |
| Accrued Late Charges | $1,818.12 |
| Property Pres | $56.25 |
| Total Arrears | $48,828.83[1] |

### Outstanding Balance as of April 28, 2009          $532,584.90

---

[1] Please be on notice that $350.00 in attorneys' fees and costs have been incurred for the post-petition preparation and filing of this Proof of Claim; obtaining and reviewing the Chapter 13 Plan; and the preparation, filing and service of a Request for Courtesy Notice to monitor this bankruptcy, but are not included in the Proof of Claim. If the Debtor(s) want these fees and costs included in the Proof of Claim so that the subject loan is current upon completion of the Plan, please contact Steven Pite at (800) 500-8757.

2

Recording requested by:
**LAWYERS TITLE COMPANY**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**

El Dorado, County Recorder
William Schultz Co Recorder Office
DOC- **2009-0006093-00**
Check Number  1994124259
Thursday, FEB 12, 2009 14:07:02
Ttl Pd    $11.00                  Nbr-0001149389
                                  LJP/C1/1-1

ASSO200801340147I1

Space above this line for Recorder's use only

Trustee Sale No. : **20080134014711**    Title Order No.: **20863960**

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to **US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT** all beneficial interest under that certain Deed of Trust dated 09/07/2005, executed by **DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM**, as Trustor to MITCHELL L. HEFFERNAN, Trustee, and Recorded on 09/14/2005 as Instrument No. 2005-0077328-00 of Official Records in the County Recorder's office of EL DORADO County, California. Describing land therein: **AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.**

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated          **FEB 0 6 2009**                      MORTGAGE ELECTRONIC
                                                     REGISTRATION SYSTEMS, INC. AS
                                                     NOMINEE FOR MORTGAGE LENDERS
State of        Texas}                                NETWORK USA, INC.
County of       Dallas}

                                                     Stephen C. Porter, Assistant Secretary

Before me _____ Leanna Kimball _____, the undersigned Notary Public, on this day personally appeared Stephen C. Porter, who is the Assistant Secretary of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC.**, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of **FEB 0 6 2009** , 2009.

My Commission Expires:
3-22-12                                              Notary Public Signature

                                                     Leanna Kimball
                                                     Printed Name of Notary Public

CAASGNDOT.rpt - (01/25/08) / Ver-12

                        LEANNA KIMBALL
                        Notary Public
                        State of Texas            Page 1 of 1
                        My Comm. Exp. 03-22-2012

Recording Requested By:
**MORTGAGE LENDERS NETWORK USA, INC.**

Return To:
**MORTGAGE LENDERS NETWORK USA, INC.**
**213 COURT ST. MIDDLETOWN, CT 06457**

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2005-0077328-00**
Acct 2-FIDELITY NATL TITLE CO
Wednesday, SEP 14, 2005 14:30:00
Ttl Pd    $72.00          Nbr-0000775348
                                    LJP/C1/1-22

Prepared By:
**MORTGAGE LENDERS NETWORK USA, INC.**
**213 Court St. Middletown CT 06457**

————————————— [Space Above This Line For Recording Data] —————————————

# DEED OF TRUST

MIN **1002610-4040021649-3**

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) **"Security Instrument"** means this document, which is dated **September 7, 2005**
together with all Riders to this document.
(B) **"Borrower"** is
**DANIEL MAJOR EDSTROM AND**
**TERI ANNE EDSTROM , HUSBAND AND WIFE**

Borrower's address is **2690 BROWN BEAR COURT  , COOL, CA 95614**
. Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is **MORTGAGE LENDERS NETWORK USA, INC.**

Lender is a **corporation or association**
organized and existing under the laws of **Delaware**

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01**

-6A(CA) (0207)
Page 1 of 15              initials: _PE JE_

VMP MORTGAGE FORMS - (800)521-7291

077328

Lender's address is **213 Court St. Middletown CT 06457**

**(D) "Trustee"** is **Mitchell L. Heffernan**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS **is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **September 7, 2005**
The Note states that Borrower owes Lender **Five Hundred Thousand and No/100 -------**
------------------------------------------------------------ Dollars
(U.S. $        **500,000.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2035** .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(CA) (0207)                     Page 2 of 15                     Initials: _____                     Form 3005  1/01

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its *implementing regulation*, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **EL DORADO** :

[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]
**SEE ATTACHED SCHEDULE A**

Parcel ID Number:                                        which currently has the address of
**2690 BROWN BEAR COURT**                                                        [Street]
**COOL**                                                  [City], California **95614**        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(CA) (0207)                         Page 3 of 15                    Initials: PKJE                 Form 3005 1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10



days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207)                    Page 7 of 15                    Initials: ___                    Form 3005 1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

-6A(CA) (0207)                    Page 8 of 15                    Form 3005 1/01

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

-6A(CA) (0207)

Page 9 of 15

Initials: _JF JG_

Form 3005  1/01

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



077328

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: PEJL

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



077328

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _Daniel Major Edstrom_____ (Seal)
                                     **DANIEL MAJOR EDSTROM**          -Borrower


_____    _Teri Anne Edstrom_____ (Seal)
                                     **TERI ANNE EDSTROM**          -Borrower


_____ (Seal)    _____ (Seal)
                         -Borrower                                   -Borrower


_____ (Seal)    _____ (Seal)
                         -Borrower                                   -Borrower


_____ (Seal)    _____ (Seal)
                         -Borrower                                   -Borrower

State of California
County of Sacramento

} ss.

On September 7, 2005    before me, Laur Copparelli
DANIEL MAJOR EDSTROM                                    personally appeared
TERI ANNE EDSTROM

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Laur Capparelli (Seal)

LAURA CAPPARELLI
Commission # 1477976
Notary Public - California
Placer County
My Comm. Expires Mar 21, 2008

-6A(CA) (0207)                    Page 15 of 15        Initials: PEJE        Form 3005  1/01

# ADJUSTABLE RATE NOTE

**(LIBOR Six-Month Index (As Published In** *The Wall Street Journal*) **- Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**September 7, 2005**          **Folsom**                    **California**
    [Date]                          [City]                        [State]

**2690 BROWN BEAR COURT  , COOL, CA 95614**
                            [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    **500,000.00**    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  **MORTGAGE LENDERS NETWORK USA, INC.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     **7.2000**     %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **November 1, 2005** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  **October 1, 2035**     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  **10 RESEARCH PARKWAY, WALLINGFORD, CT   06492**

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $     **3,393.95**     . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN** *THE WALL STREET JOURNAL*) **- Single Family - Fannie Mae UNIFORM INSTRUMENT**

-838N (0005).01          **Form 3520 1/01**

VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4          Initials: _P.S.K._    MIN- 1002810-4040021648-3



## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **October 1, 2007**     , and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six** percentage points ( **6.00000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.2000** % or less than **7.2000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.0000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **13.2000** %. **My interest rate will never be less than 7.2%**

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.         *

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

### * Except as set forth in the attached Prepayment Penalty Addendum.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Form 3520 1/01
Initials: _____

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Ten**
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
**8.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but
only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a
certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the
interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or
delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to
be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those
expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note
Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will
be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address
if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in
this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is
also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety
or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights
under this Note against each person individually or against all of us together. This means that any one of us may be required to
pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the
right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the
Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as
this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.
That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all
amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Daniel Major Edstrom_ _____ (Seal)     _Teri Anne Edstrom_ _____ (Seal)
**DANIEL MAJOR EDSTROM** -Borrower          **TERI ANNE EDSTROM** -Borrower

_____ (Seal)     _____ (Seal)
-Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
-Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
-Borrower                                    -Borrower

*[Sign Original Only]*



PAY TO THE ORDER OF:

EMAX FINANCIAL GROUP, LLC
WITHOUT RECOURSE
By: MORTGAGE LENDERS NETWORK USA, INC.

LORI M. FLORES
FUNDING SUPERVISOR

# ALLONGE TO NOTE

**Date of Allonge:** 10/4/2005

**Loan #:**

**Note Date:** 9/7/2005

**Loan Amount:** $500,000.00

**Property Address:** 2690 BROWN BEAR COURT
COOL, CA 95614

**In favor of:** Mortgage Lenders Network, USA, Inc.

**And Executed by:** DANIEL EDSTROM
TERI EDSTROM

**Pay to the order of
Without recourse:**

RESIDENTIAL FUNDING CORPORATION
_____

**By:** _____

**Name:** **Michele Morales**
**Manager of Sales and Acquisitions**
**Emax Financial Group, LLC**

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

By _Judy Faber_
Judy Faber, Vice President

## PREPAYMENT PENALTY NOTE ADDENDUM

For a valuable consideration, receipt of which is hereby acknowledged the undersigned agree that certain Promissory Note of even date to which this Addendum is attached, shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said promissory note or the Deed of Trust, Mortgage, Real Estate Mortgage, Security Deed (Security Instrument) securing same.

This Addendum is attached to and made a part of that certain Promissory Note given by
**DANIEL MAJOR EOSTROM**
**TERI ANNE EDSTROM**

(Borrower) to

**MORTGAGE LENDERS NETWORK USA, INC.**
(Lender), dated **September 7, 2005**, which Note is in the principal amount of
$ **500,000.00**

### PREPAYMENT PENALTY

After **One** **1** **full year(s)** from the date hereof, maker may pre-pay, without penalty, the outstanding principal balance. In the event maker prepays in full the outstanding principal balance and accrued interest during the first **One**
**1** **full year(s)** from the date hereof, maker shall pay in addition to such prepayment a penalty in an amount equal to a percentage of the principal portion of the amount so pre-paid in accordance with the following:

**The Borrower has the right to prepay in California. Lender may charge a prepayment fee for the first 1 years. The prepayment charge may be imposed on any amount prepaid in any 12 month period in excess of 20% of the unpaid balance, so long as the charge does not exceed an amount equal to six months interest on the amount prepaid in excess of the aforementioned 20%.**

Holder shall apply any prepayment first to reduce any interest and charges owing at the time of such prepayment and then to reduce the amount of principal owed under this Note, provided that such balance shall be applied to the principal in reverse order of the due date of each payment and shall not otherwise affect or delay the due date of the next payment under the Note.

| | | | |
|---|---|---|---|
| _Raniul Major Edtom_ 9/7/2005 | | | 9/7/2005 |
| Borrower          Date | | Borrower | Date |
| **DANIEL MAJOR EDSTROM** | | | |
| _Teri Anne Edstrom_ 9/7/2005 | | | 9/7/2005 |
| Borrower          Date | | Borrower | Date |
| **TERI ANNE EDSTROM** | | | |

prepypn 4/2/97 rev 7/98 10/98

# EXHIBIT 9

PLAINTIFFS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS
OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Recording requested by:
**LAWYERS TITLE**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**


ASSG20080134014711

**DOC= 2009-0035006-00**
Check Number  4127650
Wednesday, JUL 15, 2009 13:06:34
Ttl Pd    $12.00        Nbr-0001188307
                                LJP/C1/1-1

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711     Title Order No.: 20863960

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to U S BANK NATIONAL ASSOCIATION, AS TRUSTEE all beneficial interest under that certain Deed of Trust dated 09/07/2005, executed by **DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM**, as Trust or to MITCHELL L. HEFFERNAN, Trustee, and **Recorded on 09/14/2005 as Instrument No. 2005-0077328-00** of Official Records in the County Recorder's office of **EL DORADO** County, California. Describing land therein: **AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.**

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated

JUL 0 7 2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC.

David Seybold, Assistant Secretary

State of      Texas}
County of   Dallas}

Before me _____, the undersigned Notary Public, on this day personally appeared David Seybold, who is the Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC., a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of  JUL 0 7 2009 , 2009

Notary Public Signature

My Commission Expires:

SONIA CARDONA
Notary Public
State of Texas
My Comm. Exp. 06-20-2011

Printed Name of Notary Public

CAASGNDOT.rpt - (01/25/08) / Ver-12                                                                    Page 1 of 1

# EXHIBIT 10

PLAINTIFFS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS
OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

# RELIEF FROM STAY INFORMATION SHEET
## *  *  SEE IMPORTANT INSTRUCTIONS ON FORM EDC 3-468-INST  *  *
*PLEASE COMPLETE ALL PORTIONS APPLICABLE TO THE RELIEF FROM STAY MOTION*

DEBTOR:  Daniel Major Edstrom and Teri Anne Edstrom  CASE NO. 09-36647

MOVANT:  US Bank National Association as Trustee By Residential Funding Company, LLC FKA Residential Funding Corporation Attorney in Fact   DC NO.  PD-1

HEARING DATE/TIME: October 20, 2009  at 9:31 a.m.

RELIEF IS SOUGHT AS TO (✓) REAL PROPERTY  ( ) PERSONAL PROPERTY  ( ) STATE COURT LITIGATION

1. Address OR description of property or state court action  2690 Brown Bear Court, Cool, California 95614

2. Movant's trust deed is a (✓) 1st  ( ) 2nd  ( ) 3rd  ( ) Other: _____

   **OR**

   Leased property is (✓) Residential  ( ) Non-residential  Term: ( ) Month-to-Month  ( ) Other

3. Verified appraisal filed? _____        Movant's valuation of property        $ 250000.00

4. The following amounts are presently owing to movant for:

   | PRINCIPAL | INTEREST | COSTS | TOTAL |
   |---|---|---|---|
   | $ 485,631.10 | $ 53,445.21 | $ 11192.14 | $ 550,083.59 |

5. State identity, rank, and balance owing to other known lien holders. Use additional page if necessary.

   _____  $ _____
   _____  $ _____
   _____  $ _____

   **FOR COURT USE ONLY**

   TOTAL ALL LIENS        $ 550,083.59
   DEBTOR'S EQUITY        $ <300,083.59>

   **FOR COURT USE ONLY**
   Note date: _____
   Note amount: _____
   Note payment: _____

6. Monthly payment is $ 4160.93 , of which $ _____ is for impound account. Monthly late charge is $ _____

7. The last payment by debtor was received on _____ and was applied to the payment due 06/01/08

8. Number of payments past due and amount: (a) Pre-petition  14  $ 71089.43    (b) Post-petition  1  $ 4160.93

9. Notice of Default was recorded on  12/23/08 .  Notice of sale was published on  03/30/09 .

10. If a chapter 13 case, in what class is this claim? _____

11. Grounds for seeking relief (check as applicable):

    (✓) Cause  (✓) Inadequate protection  (✓) Lack of equity  ( ) Lack of insurance  ( ) Bad faith

    (✓) Other  October Payment will come due by the time of the hearing .

12. For each ground checked above furnish a brief supporting statement in the space below.
    - Failure to make payments.
    - Lack of equity.

STEVEN W. PITE (CA SBN 157537)
DAVID E. McALLISTER (CA SBN 185831)
ERIN L. LANEY (CA SBN 259863)
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858)750-7600
Facsimile: (619) 590-1385

Attorneys for  US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL
FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING
CORPORATION ATTORNEY IN FACT

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. 09-36647 |
| DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, | Chapter 7 |
| Debtor(s). | D.C. No. PD-1 |
| | DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY (11 U.S.C. § 362 and Bankruptcy Rule 4001) |
| US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT , | LBR 4001-1 and 9014-1(f)(2) |
| Movant, | DATE:        October 20, 2009 TIME:        9:31 a.m. CTRM:        33 |
| vs. | 501 "I" Street Sacramento, CA 95814 |
| DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, Debtor(s); MICHAEL F. BURKART, Chapter 7 Trustee, | |
| Respondents. | |

I, Teressa J. Williams, declare:

1.      I am employed as an Assistant Secretary by America's Servicing Company. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding US Bank National Association as Trustee By Residential Funding Company, LLC FKA Residential

- 1 -

1  Funding Corporation Attorney in Fact 's ("Movant") interest in the real property that is the subject of

2  this Motion.

3      2.      I am employed by America's Servicing Company, the authorized loan servicing agent

4  for Movant and I am duly authorized to make this declaration on behalf of Movant.

5      3.      I am familiar with the manner and procedures by which America's Servicing

6  Company business records are obtained, prepared, and maintained. Those records are obtained,

7  prepared, and maintained by America's Servicing Company's employees or agents in the

8  performance of their regular business duties at or near the time, and conditions, and/or events

9  recorded thereon. The records are made either by persons with knowledge of the matters they record

10 or from information obtained by persons with such knowledge. I have knowledge and/or access to

11 America's Servicing Company's business records regarding the Note and Deed of Trust that are the

12 subject of this action and have personally reviewed these business records prior to executing this

13 declaration.

14     4.      On or about September 7, 2005, Debtors, for valuable consideration, made, executed

15 and delivered to Mortgage Lenders Network, USA, Inc. ("Lender") a Note in the principal sum of

16 $500,000.00 (the "Note").  Pursuant to the Note, Debtors are obligated to make monthly principal

17 and interest payments commencing November 1, 2005, and continuing until October 1, 2103, when

18 all outstanding amounts are due and payable. A true and correct copy of the Note is attached to the

19 concurrently served and filed Exhibits to the Declaration in Support of Motion for Relief From

20 Automatic Stay ("Exhibits") as exhibit A and incorporated herein by reference.

21     5.      Movant is the current owner of the note and is entitled to enforce the provisions of

22 the Note and Deed of Trust.

23     6.      Movant qualifies as the Note holder with standing to prosecute the instant Motion as

24 Lender specially indorsed the Note to Movant and Movant is currently in rightful possession of the

25 specially indorsed Note.

26     7.      On or about September 7, 2005, Debtors made, executed and delivered to Lender a

27 Deed of Trust (the "Deed of Trust") granting Lender a security interest in the certain real property

28 located at 2690 Brown Bear Court, Cool, California 95614 ("Real Property"), which is more fully

1 described in the Deed of Trust. The Deed of Trust provides that attorneys' fees and costs incurred as
2 a result of the Debtors' bankruptcy case may be included in the outstanding balance under the Note.
3 The Deed of Trust was recorded on September 14, 12005, in the Official Records of El Dorado
4 County, State of California. A true and correct copy of the Deed of Trust is attached to the Exhibits
5 as exhibit B and incorporated herein by reference.

6     8.    Subsequently, Lender's beneficial interest in the Note and Deed of Trust was sold,
7 assigned and transferred to Movant. A true and correct copy of the Corporation Assignment of Deed
8 of Trust evidencing the Assignment of the Note and Deed of Trust to Movant is attached to the
9 Exhibits as exhibit C and incorporated herein by reference.

10     9.    On March 1, 2007, Movant entered into a loan servicing agreement with America's
11 Servicing Company. According to the loan servicing agreement, America's Servicing Company has
12 the contractual right and responsibility to service the obligations under the Note and Deed of Trust
13 for Movant.

14     10.    As the loan servicer, America's Servicing Company acts as an agent for Movant and
15 is responsible for the administration of the loan until the loan is paid in full, assigned to another
16 creditor, or the servicing rights are transferred. Administering the loan includes sending monthly
17 payment statements, collecting monthly payments, maintaining records of payments and balances,
18 collecting and paying taxes and insurance (and managing escrow and impound funds), remitting
19 monies tendered under the Note to Movant, following up on loan delinquencies, home loan
20 workouts and home retention programs, and other general customer service functions. Further, in the
21 event of a default under the terms of the Note or Deed of Trust, America's Servicing Company is
22 authorized by Movant under the terms of the loan servicing agreement to enforce the terms of the
23 Deed of Trust.

24     11.    The obligation under the Note is in default as of July 1, 2008, for failure to make
25 payments to Movant. As of August 31, 2009, the total obligation due and owing under the Note is in
26 the approximate amount of $550,083.59, representing the principal balance of $485,631.10, interest
27 in the sum of $53,445.21, late charges in the amount of $2,002.98, escrow advances in the amount of
28 $6,890.73, and recoverable fees of $2,113.57. This is an approximate amount for purposes of this

Motion only, and should not be relied upon as such to pay off the subject loan as interest and additional advances may come due subsequent to the filing of the Motion. An exact payoff amount can be obtained by contacting Movant's counsel. Further, Movant has incurred additional post-petition attorneys' fees and costs in bringing the instant Motion. Moreover, the total arrears under the Note are in the approximate sum of $75,065.50, excluding the post-petition attorneys' fees and costs incurred in filing the instant Motion.

12.    *Movant is informed and believes that, based on the Debtors' bankruptcy Schedules and Statements, the fair market value of the Property is approximately $250,000.00.* True and correct copies of the Debtors' bankruptcy Schedules "A" and "D" are collectively attached to the Exhibits as exhibit D and incorporated herein by reference.

Based on the above, Movant maintains that the equity in the Property is as follows:

| | |
|---|---|
| Fair Market Value: | $250,000.00 |
| Less: | |
| Movant's Trust Deed | $550,083.59 |
| Equity in the Property: | $<300,083.59> |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this ___16___ day of ___Sept___, 2009, at Fort Mill, South Carolina.

_____
Teressa J. William

Assistant Secretar

- 4 -

STEVEN W. PITE (CA SBN 157537)
DAVID E. McALLISTER (CA SBN 185831)
ERIN L. LANEY (CA SBN 259863)
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858)750-7600
Facsimile: (619) 590-1385

Attorneys for US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL
                 FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING
                 CORPORATION ATTORNEY IN FACT

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM,<br><br>         Debtor(s). | Case No. 09-36647<br><br>Chapter 7<br><br>D.C. No. PD-1<br><br>NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY<br>(11 U.S.C. § 362 and Bankruptcy Rule 4001) |
| US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT<br>         Movant,<br><br>      vs.<br><br>DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM, Debtor(s); and MICHAEL F. BURKART, Chapter 7 Trustee,<br><br>         Respondents. | LBR 4001-1 and 9014-1(f)(2)<br><br>DATE:      October 20, 2009<br>TIME:      9:31 a.m.<br>CTRM:     33<br><br>501 "I" Street,<br>Sacramento, CA 95814 |

TO THE RESPONDENTS NAMED ABOVE:

PLEASE TAKE NOTICE that a hearing on the Motion for Relief From Automatic Stay

brought by US Bank National Association as Trustee By Residential Funding Company, LLC

FKA Residential Funding Corporation Attorney in Fact   ("Movant"), will be heard in the

1   courtroom of the Honorable Thomas Holman in the above-captioned court, located at 501 "I"

2   Street, Sacramento, CA 95814, on October 20, 2009 at 9:31 a.m. This motion is based on the

3   Motion for Relief From Automatic Stay, the Declaration in Support of Motion for Relief From

4   Automatic Stay, and the Notice of Motion for Relief From Automatic Stay, and on such further

5   evidence and oral argument as may be presented to the court at the hearing.

6       PLEASE TAKE FURTHER NOTICE that the motion is being made pursuant to Local

7   Bankruptcy Rule 4001-1 and 9014-1(f)(2), 11 United States Code section 362(d), and Federal

8   Rules of Bankruptcy Procedure 4001. Opposition, if any, shall be presented at the hearing on the

9   Motion. If opposition is presented, or if there is other good cause, the Court may continue the

10  hearing to permit the filing of evidence and briefs.

11  Dated:September 25, 2009              PITE DUNCAN, LLP

12

13                                        /s/ Erin L. Laney  CA  SBN 259863
                                          ERIN L. LANEY
14                                        Attorneys      for US      BANK      NATIONAL
                                          ASSOCIATION        AS      TRUSTEE      BY
15                                        RESIDENTIAL    FUNDING    COMPANY,    LLC
                                          FKA RESIDENTIAL FUNDING CORPORATION
16                                        ATTORNEY IN FACT

17

18

19

20

21

22

23

24

25

26

27

28

1  STEVEN W. PITE (CA SBN 157537)
   DAVID E. McALLISTER (CA SBN 185831)
2  ERIN L. LANEY (CA SBN 259863)
   PITE DUNCAN, LLP
3  4375 Jutland Drive, Suite 200
   P.O. Box 17933
4  San Diego, CA 92177-0933
   Telephone: (858)750-7600
5  Facsimile: (619) 590-1385

6  Attorneys for  US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL
                  FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING
7                 CORPORATION ATTORNEY IN FACT

8

9                    UNITED STATES BANKRUPTCY COURT

10        EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

11  | In re | Case No. 09-36647 |
12  | DANIEL MAJOR EDSTROM AND TERI | Chapter 7 |
    | ANNE EDSTROM, | |
13  | | D.C. No. PD-1 |
14  | Debtor(s). | |
    | | MOTION FOR RELIEF FROM |
15  | | AUTOMATIC STAY AND |
    | | MEMORANDUM OF POINTS AND |
16  | | AUTHORITIES IN SUPPORT THEREOF |
    | | (11 U.S.C. § 362 and Bankruptcy Rule 4001) |
17  | US BANK NATIONAL ASSOCIATION AS | LBR 4001-1 and 9014-1(f)(2) |
    | TRUSTEE BY RESIDENTIAL FUNDING | |
18  | COMPANY, LLC FKA RESIDENTIAL | |
    | FUNDING CORPORATION ATTORNEY IN | DATE:        October 20, 2009 |
19  | FACT , | TIME:        9:31 a.m. |
    | | CTRM:        33 |
20  | Movant, | |
21  | vs. | |
22  | DANIEL MAJOR EDSTROM AND TERI | 501 "I" Street |
    | ANNE EDSTROM, Debtor(s); MICHAEL F. | Sacramento, CA 95814 |
23  | BURKART, Chapter 7 Trustee, | |
24  | Respondents. | |
25

26      US Bank National Association as Trustee By Residential Funding Company, LLC FKA

27  Residential Funding Corporation Attorney in Fact ("Movant"), moves this court for an order

28  terminating the automatic stay of 11 U.S.C. § 362 as to Movant, so that Movant may commence and

                                    -1-

MOTION FOR RELIEF FROM AUTOMATIC STAY

1    continue all acts necessary to enforce its security interest in real property generally described as 2690

2    Brown Bear Court, Cool, California 95614.

3        On or about August 6, 2009, Daniel Major Edstrom and Teri Anne Edstrom ("Debtors") filed

4    a voluntary petition under Chapter 7 of the Bankruptcy Code, and Michael F. Burkart was appointed

5    as Chapter 7 Trustee. As a result of said filing, certain acts and proceedings against Debtors and the

6    bankruptcy estate are stayed as provided in 11 U.S.C. § 362.

7        Movant moves this court for relief from stay under 11 U.S.C. §§ 362(d)(1) and 362(d)(2).

8                    **MEMORANDUM OF POINTS AND AUTHORITIES**

9                                    **I.**

10    **MOVANT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(2).**

11                                **NO EQUITY**

12

13        11 U.S.C. § 362(d)(2) provides that relief from the automatic stay shall be granted if the

14    debtor does not have any equity in the property and the property is not necessary to the debtor's

15    effective reorganization.

16        In <u>In re San Clemente Estates</u>, 5 B.R. 605 (Bankr. S.D. Cal. 1980), the court stated that:

17            § 362(d)(2) reflects congressional intent to allow creditors to
             immediately proceed against the property where the debtor has no
18           equity and it is unnecessary to the reorganization, <u>even where</u> the
             debtor can provide adequate protection under § 362(d)(1). (Emphasis
19           added).

20        Id. at 610 (emphasis added).

21        In <u>In re Mikole Developers, Inc.</u>, 14 B.R. 524, 525 (Bankr. E.D. Pa. 1981), the court stated

22    that in determining whether equity exists in the property for purposes of § 362(d)(2), all

23    encumbrances are totalled, whether or not all the lienholders have joined in the request for relief

24    from stay. The Ninth Circuit has concurred with this view in <u>Stewart v. Gurley</u>, 745 F.2d 1194 (9th

25    Cir. 1984).

26        On or about September 7, 2005, Debtors, for valuable consideration, made, executed and

27    delivered to Mortgage Lenders Network USA, Inc. ("Lender") a Note in the principal sum of

28    $500,000.00 (the "Note"). Pursuant to the Note, Debtors are obligated to make monthly principal

---

-2-

1  and interest payments commencing November 1, 2005, and continuing until October 1, 2103, when
2  all outstanding amounts are due and payable.  The Note provides that, in the event of default, the
3  holder of the Note has the option of declaring all unpaid sums immediately due and payable.  A true
4  and correct copy of the Note is attached to the concurrently served and filed Exhibits to the
5  Declaration in Support of Motion for Relief From Automatic Stay ("Exhibits") as exhibit A and
6  incorporated herein by reference.

7        On or about September 7, 2005, the Debtors made, executed and delivered to Lender a Deed
8  of Trust (the "Deed of Trust") granting Lender a security interest in real property commonly
9  described as 2690 Brown Bear Court, Cool, California 95614 (the "Real Property"), which is more
10  fully described in the Deed of Trust.  The Deed of Trust provides that attorneys' fees and costs
11  incurred as a result of the Debtors' bankruptcy case may be included in the outstanding balance
12  under the Note.  The Deed of Trust was recorded on September 14, 2005, in the Official Records of
13  El Dorado County, State of California.  A true and correct copy of the Deed of Trust is attached to
14  the Exhibits as exhibit B and incorporated herein by reference.

15        Subsequently, Lender's beneficial interest in the Note and the Deed of Trust was sold,
16  assigned and transferred to Movant.  A true and correct copy of the Corporation Assignment of Deed
17  of Trust evidencing the Assignment of the Note and Deed of Trust to Movant is attached to the
18  Exhibits as exhibit C and incorporated herein by reference.

19        The obligation under the Note is in default as of July 1, 2008, for failure to make payments to
20  Movant.  As of August 31, 2009, the total obligation due and owing under the Note is in the
21  approximate amount of $550,083.59, representing the principal balance of $485,631.10, interest in
22  the sum of $53,445.21, late charges in the amount of $2,002.98, escrow advances in the amount of
23  $6,890.73, and recoverable fees of $2,113.57.  This is an approximate amount for purposes of this
24  Motion only, and should not be relied upon as such to pay off the subject loan as interest and
25  additional advances may come due subsequent to the filing of the Motion.  An exact payoff amount
26  can be obtained by contacting Movant's counsel.  Further, Movant has incurred additional post-
27  petition attorneys' fees and costs in bringing the instant Motion.  Moreover, the total arrears under the
28  Note are in the approximate sum of $75,065.50, excluding the post-petition attorneys' fees and costs

-3-

1  incurred in filing the instant Motion.

2                                    **II.**

3                          **RELIEF FROM STAY**

4                          **LACK OF EQUITY**

5        Movant is informed and believes that, based on the Debtors' bankruptcy Schedules and

6  Statements, the fair market value of the Property is approximately $250,000.00. True and correct

7  copies of the Debtors' bankruptcy Schedules "A" and "D" are collectively attached to the Exhibits as

8  exhibit D and incorporated herein by reference.

9        Based on the above, Movant maintains that the equity in the Property is as follows:

10              Fair Market Value:        $250,000.00
                Less:
11                 Movant's Trust Deed      $550,083.59
                Equity in the Property:   $<300,083.59>
12

13

14       As a result, there is no equity in the Property for the bankruptcy estate. Moreover, since this

15  is a Chapter 7 proceeding, there is no reorganization in prospect. As a result, Movant is entitled to

16  relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2).

17                                   **III.**
     **MOVANT IS ENTITLED TO RELIEF FROM THE**
18   **AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)(1).**

19         **CAUSE - LACK OF ADEQUATE PROTECTION**

20

21       Pursuant to the provisions of 11 U.S.C. §§ 361 and 362(d)(1), Movant is entitled to adequate

22  protection of its interest in the Property.

23       Movant submits that adequate protection in this case requires normal and periodic cash

24  payments, as called for by the Note, plus the repayment of any and all delinquent amounts owed to

25  Movant, including all attorneys' fees and costs incurred in the filing of this motion.

26       Movant is informed and believes that Debtors are presently unwilling or unable to provide

27  adequate protection to the Movant and there is no probability that adequate protection can be

28  afforded to Movant within a reasonable time.

         By reason of the foregoing, Movant is entitled to relief from stay under 11 U.S.C.

                                   -4-

1  § 362(d)(1), based upon the failure of Debtors to provide adequate protection to Movant.

2      WHEREFORE, Movant respectfully prays for an Order of this court as follows:

3      1.    Terminating the automatic stay of 11 U.S.C. § 362, as it applies to the enforcement by

4  Movant of all of its rights in the Real Property under the Note and the Deed of Trust;

5      2.    That the 10-day stay described by Bankruptcy Rule 4001(a)(3) be waived;

6      3.    Granting Movant leave to foreclose on the Real Property and to enforce the security

7  interest under the Note and the Deed of Trust, including any action necessary to obtain possession of

8  the Property;

9      4.    Permitting Movant to offer and provide Debtors with information re: a potential

10  Forbearance Agreement, Loan Modification, Refinance Agreement, or other Loan Workout/Loss

11  Mitigation Agreement, and to enter into such agreement with Debtors;

12      5.    Alternatively, in the event this court declines to grant Movant the relief requested

13  above, Movant requests that an Order for adequate protection be issued, requiring the Debtors to

14  reinstate and maintain in a current condition all obligations due under the Note and Deed of Trust

15  and all other deeds of trust encumbering the Real Property, including Debtors' obligations to pay

16  when due (a) the monthly installments of principal and interest, as required under the Note;

17  (b) tax/insurance obligations; and (c) any sums advanced by Movant on behalf of Debtors in order to

18  protect Movant's interest in the Real Property, including all attorneys' fees and costs incurred in the

19  filing of this motion;

20      6.    That the attorneys' fees and costs incurred by Movant for filing the instant Motion be

21  included in the outstanding balance of the Note as allowed under applicable non-bankruptcy law; and

22      7.    For such other and further relief as the court deems just and proper.

23  Dated: September 25, 2009                    PITE DUNCAN, LLP

24

25

26                                              /s/ Erin L. Laney   CA  SBN 259863
                                                ERIN L. LANEY
27                                              Attorneys      for US      BANK       NATIONAL
                                                ASSOCIATION AS TRUSTEE BY RESIDENTIAL
28                                              FUNDING COMPANY, LLC FKA RESIDENTIAL
                                                FUNDING CORPORATION ATTORNEY IN FACT

-5-

1  STEVEN W. PITE (CA SBN 157537)
   DAVID E. McALLISTER (CA SBN 185831)
2  ERIN L. LANEY (CA SBN 259863)
   PITE DUNCAN, LLP
3  4375 Jutland Drive, Suite 200
   P.O. Box 17933
4  San Diego, CA 92177-0933
   Telephone: (858)750-7600
5  Facsimile: (619) 590-1385

6  Attorneys for US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL
   FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING
7  CORPORATION ATTORNEY IN FACT

8

9                    UNITED STATES BANKRUPTCY COURT
10
                     EASTERN DISTRICT OF CALIFORNIA
11
   | In re | Case No. 09-36647 |
12 | | |
   | DANIEL MAJOR EDSTROM AND TERI | Chapter 7 |
13 | ANNE EDSTROM, | |
   | | D.C. No. PD-1 |
14 | Debtor(s). | |
   | | EXHIBITS TO DECLARATION IN |
15 | | SUPPORT OF MOTION FOR RELIEF |
   | | FROM AUTOMATIC STAY |
16 | | (11 U.S.C. § 362 and Bankruptcy Rule 4001) |
17 | US BANK NATIONAL ASSOCIATION AS | LBR 4001-1 and 9014-1(f)(2) |
   | TRUSTEE BY RESIDENTIAL FUNDING | |
18 | COMPANY, LLC FKA RESIDENTIAL | DATE:        October 20, 2009 |
   | FUNDING CORPORATION ATTORNEY IN | TIME:        9:31 a.m. |
19 | FACT | CTRM:        33 |
20 | Movant, | 501 "I" Street |
   | | Sacramento, CA 95814 |
21 | vs. | |
22 | DANIEL MAJOR EDSTROM AND TERI | |
   | ANNE EDSTROM, Debtor(s); | |
23 | and MICHAEL F. BURKART, Chapter 7 | |
   | Trustee, | |
24 | | |
   | Respondents. | |
25
26  / . / . /
27  / . / . /
28  / . / . /

                              - 1 -

# ADJUSTABLE RATE NOTE

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**September 7, 2005**              **Folsom**                    **California**
    [Date]                                    [City]                                    [State]

**2690 BROWN BEAR COURT  , COOL, CA 95614**
                             [Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    **500,000.00**        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **MORTGAGE LENDERS NETWORK USA, INC.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of       **7.2000**      %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **November 1, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **October 1, 2035**              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **10 RESEARCH PARKWAY, WALLINGFORD, CT   06492**

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $       **3,393.95**           . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family - Fannie Mae UNIFORM INSTRUMENT**

VMP®-838N (0005).01          Form 3520 1/01

VMP MORTGAGE FORMS · (800)521-7291

Page 1 of 4          Initials: *P.E.T.*      **MIN- 1002610-4040021649-3**



EXHIBIT A

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **October 1, 2007**, and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six** percentage points ( **6.00000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.2000** % or less than **7.2000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.0000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **13.2000** %. **My interest rate will never be less than 7.2%**

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.                    *

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**\* Except as set forth in the attached Prepayment Penalty Addendum.**

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Form 3520 1/01
Initials: _____

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Ten**

calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
**6.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but
only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a
certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the
interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or
delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to
be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those
expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note
Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will
be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address
if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in
this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is
also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety
or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights
under this Note against each person individually or against all of us together. This means that any one of us may be required to
pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the
right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the
Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as
this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.
That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all
amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**DANIEL MAJOR EDSTROM**                    -Borrower

_____ (Seal)
**TERI ANNE EDSTROM**                    -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

*[Sign Original Only]*


-838N (0005).01

Form 3520 1/01

PAY TO THE ORDER OF:

EMAX FINANCIAL GROUP, LLC

WITHOUT RECOURSE

By: MORTGAGE LENDERS NETWORK USA, INC.

LORI M. FLORES
FUNDING SUPERVISOR

# ALLONGE TO NOTE

Date of Allonge:            10/4/2005

Note Date:                  9/7/2005

Loan Amount:                $500,000.00

Property Address:           2690 BROWN BEAR COURT
                            COOL, CA   95614

In favor of:                Mortgage Lenders Network, USA, Inc.

And Executed by:            DANIEL EDSTROM
                            TERI EDSTROM

Pay to the order of                RESIDENTIAL FUNDING CORPORATION
Without recourse:

By:

Name:    Michele Morales
         Manager of Sales and Acquisitions
         Emax Financial Group, LLC

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

By
Judy Faber, Vice President

10019116

4040021649
FNT 321335
Recording Requested By:
**MORTGAGE LENDERS NETWORK USA, INC.**

Return To:
**MORTGAGE LENDERS NETWORK USA, INC.**
**213 COURT ST. MIDDLETOWN, CT 06457**

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2005-0077328-00**
Acct 2-FIDELITY NATL TITLE CO
Wednesday, SEP 14, 2005 14:30:00
Ttl Pd    $72.00         Nbr-0000775348
                              LJP/C1/1-22

Prepared By:
**MORTGAGE LENDERS NETWORK USA, INC.**
**213 Court St. Middletown CT 06457**

———————————————— [Space Above This Line For Recording Data] ————————————————

## DEED OF TRUST

MIN 1002610-4040021649-3

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "**Security Instrument**" means this document, which is dated **September 7, 2005**
together with all Riders to this document.
(B) "**Borrower**" is
**DANIEL MAJOR EDSTROM AND**
**TERI ANNE EDSTROM , HUSBAND AND WIFE**

Borrower's address is **2690 BROWN BEAR COURT    , COOL, CA 95614**
                                          . Borrower is the trustor under this Security Instrument.
(C) "**Lender**" is **MORTGAGE LENDERS NETWORK USA, INC.**

Lender is a **corporation or association**
organized and existing under the laws of **Delaware**

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005 1/01**

**-6A(CA)** (0207)
Page 1 of 15          Initials:
    VMP MORTGAGE FORMS - (800)521-7291



EXHIBIT

**077328**
**4040021649**

Lender's address is **213 Court St. Middletown CT 06457**

**(D) "Trustee"** is **Mitchell L. Heffernan**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **September 7, 2005**
The Note states that Borrower owes Lender **Five Hundred Thousand and No/100 -------**

--------------------------------------------------------- Dollars

(U.S. $      **500,000.00**     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2035** .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(CA) {0207}                    Page 2 of 15                    Initials: _____                    Form 3005 1/01

077328

4040021649

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of · MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in    trust,    with    power    of    sale,    the    following    described    property    located    in    the **COUNTY**                                                    of **EL DORADO**                                                    :

               [Type of Recording Jurisdiction]                                        [Name of Recording Jurisdiction]
**SEE ATTACHED SCHEDULE A**

Parcel ID Number:                                                              which currently has the address of
**2690 BROWN BEAR COURT**                                                                              [Street]
**COOL**                                                          [City], California **95614**         [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

**-6A(CA)** (0207)                                    Page 3 of 15                    Initials: _____    **Form 3005  1/01**

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10


Initials:

**-6A(CA)** (0207)                    Page 5 of 15                    Form 3005  1/01

4040021649

077328

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

077328

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

4040021649 077328

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

077328

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

Initials: _____

**4040021649**    **077328**

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

-6A(CA) (0207)    Page 10 of 15    Initials: _____    **Form 3005  1/01**

077328

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



4040021649          077328

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

i

**4040021649**    **077328**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



Initials: 

**-6A(CA)** (0207)                    Page 13 of 15                    **Form 3005  1/01**

**4040021649**                077328

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _Daniel Major Edstrom_____(Seal)
                                        **DANIEL MAJOR EDSTROM**          -Borrower

_____        _Teri Anne Edstrom____(Seal)
                                        **TERI ANNE EDSTROM**          -Borrower

_____(Seal)        _____(Seal)
                    -Borrower                            -Borrower

_____(Seal)        _____(Seal)
                    -Borrower                            -Borrower

_____(Seal)        _____(Seal)
                    -Borrower                            -Borrower

**077328**

4040021649

State of California
County of Sacramento  } ss.

On **September 7, 2005**          before me, Laur Capparelli
**DANIEL MAJOR EDSTROM**                                    personally appeared
**TERI ANNE EDSTROM**

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

```
        LAURA CAPPARELLI
      Commission # 1477976
   Notary Public - California
        Placer County
  My Comm. Expires Mar 21, 2008
```

-8A(CA) (0207)                    Page 15 of 15          Initials: _____          Form 3005  1/01

077328

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA, COUNTY OF EL DORADO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 885, of Auburn Lake Trails Unit No. 4, filed May 8, 1970, in Book E, of Maps, at page 61, El Dorado County Records.

APN: 073-141-03-100

09/14/2005, 20050077328

2

Recording requested by:
LAWYERS TITLE COMPANY

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2009-0006093-00**
Check Number  1994124259
Thursday, FEB 12, 2009 14:07:02
Ttl Pd    $11.00       Nbr-0001149389
                        LJP/C1/1-1

ASSG20080134014711

Space above this line for Recorder's use only

Trustee Sale No. : 20080134014711    Title Order No.: 20863960

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to **US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION ATTORNEY IN FACT** all beneficial interest under that certain Deed of Trust dated 09/07/2005, executed by **DANIEL MAJOR EDSTROM AND TERI ANNE EDSTROM,** as Trustor to MITCHELL L. HEFFERNAN, Trustee, and Recorded on 09/14/2005 as **Instrument No. 2005-0077328-00** of Official Records in the County Recorder's office of **EL DORADO** County, California. Describing land therein: **AS DESCRIBED IN DEED OF TRUST MENTIONED ABOVE.**

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated                              **MORTGAGE ELECTRONIC**
        **FEB 0 6 2009**          **REGISTRATION SYSTEMS, INC. AS**
                                   **NOMINEE FOR MORTGAGE LENDERS**
                                   **NETWORK USA, INC.**
State of        **Texas}**
County of       **Dallas}**
                                   Stephen C. Porter, Assistant Secretary

Before me  Leanna Kimball , the undersigned Notary Public, on this day personally appeared Stephen C. Porter, who is the Assistant Secretary of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORTGAGE LENDERS NETWORK USA, INC.,** a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of **FEB 0 6 2009** , 2009.

My Commission Expires:                Notary Public Signature
    3-22-12

                                      Printed Name of Notary Public

CAASGNDOT.rpt - (01/25/08) / Ver-12        LEANNA KIMBALL        Page 1 of 1
                                           Notary Public
                                           State of Texas
                                           My Comm. Exp. 03-22-2012

02/12/2009,20090006093

EXHIBIT C

B6A (Official Form 6A) (12/07)

In re    **Doyle James,**                                              Case No. _____
         **Yulena James**
_____
                                            Debtors
## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Primary Residence:** | **Fee Simple** | **C** | **129,000.00** | **161,259.00** |

**FMV based on comparable sales in the area.**

**4000 Hallisey Court**
**Bakersfield, CA 93309**

|  | Sub-Total > | **129,000.00** | (Total of this page) |
|---|---|---|---|
|  | Total > | **129,000.00** |  |

**0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re    **Doyle James,**                                              Case No. _____
         **Yulena James,**

Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account that the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled 'Disputed'. (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | | |
| Account No.<br><br>**America's Servicing Company**<br>**1 Home Campus**<br>**Des Moines, IA 50328-0001** | | | C | First DOT<br><br>Primary Residence:<br><br>FMV based on comparable sales in the area.<br><br>4000 Hallisey Court<br>Bakersfield, CA 93309 | | | | | |
| | | | | Value $              129,000.00 | | | | 161,259.00 | 32,259.00 |
| Account No.<br><br>**HSBC**<br>**P.O. Box 4153K**<br>**Carol Stream, IL 60197** | | | C | 2006 Yamaha YZ450 Quad | | | | | |
| | | | | Value $                3,040.00 | | | | 8,460.00 | 5,420.00 |
| Account No<br><br>**Kern Schools FCU**<br>**4530 Ming Ave.  PO Box 9506**<br>**Bakersfield, CA 93389-9506** | | | C | 2005 Mazda 3 fair condition with 30,000 miles | | | | | |
| | | | | Value $                7,250.00 | | | | 4,604.29 | 0.00 |
| Account No.<br><br>**Kern Schools FCU**<br>**4530 Ming Ave.  PO Box 9506**<br>**Bakersfield, CA 93389-9506** | | | C | 2007 Trail Sport Travel Trailer, fair condition | | | | | |
| | | | | Value $                8,780.00 | | | | 19,490.39 | 10,710.39 |

**0**   continuation sheets attached

|  | Subtotal<br>(Total of this page) | 193,813.68 | 48,389.39 |
|---|---|---|---|
|  | Total<br>(Report on Summary of Schedules) | 193,813.68 | 48,389.39 |

1   STEVEN W. PITE (CA SBN 157537)
    DAVID E. McALLISTER (CA SBN 185831)
2   ERIN L. LANEY (CA SBN 259863)
    PITE DUNCAN, LLP
3   4375 Jutland Drive, Suite 200
    P.O. Box 17933
4   San Diego, CA 92177-0933
    Telephone: (858)750-7600
5   Facsimile: (619) 590-1385

6   Attorneys for US BANK NATIONAL ASSOCIATION AS TRUSTEE BY RESIDENTIAL
                    FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION
7                   ATTORNEY IN FACT

8

9                        UNITED STATES BANKRUPTCY COURT

10           EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

11  In re                                    Case No. 09-36647

12  DANIEL MAJOR EDSTROM AND TERI            Chapter 7
    ANNE EDSTROM,
13                                           D.C. No. PD-1

14                                           PROOF OF SERVICE BY MAIL AND/OR E-
                                             MAIL
15
                                             DATE:      October 20, 2009
16              Debtor(s).                   TIME:      9:31 a.m.
                                             CTRM:      33
17

18       I, Soheila S. Geoola, declare that:

19       I am employed in the County of San Diego, California.  My business address is: 4375

20  Jutland Drive, Suite 200; P.O. Box 17933, San Diego, CA 92177-0933.  I am over the age of

21  eighteen years and not a party to this cause.

22       On September 25, 2009, I served the RELIEF FROM STAY INFORMATION SHEET;

23  NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY; MOTION FOR RELIEF

24  FROM AUTOMATIC STAY; DECLARATION IN SUPPORT OF MOTION FOR RELIEF

25  FROM AUTOMATIC STAY; EXHIBITS TO DECLARATION IN SUPPORT OF MOTION

26  FOR RELIEF FROM AUTOMATIC STAY; in said cause by placing a true and correct copy

27  thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail

28  at San Diego, California, and/or by sending an e-mail with true and correct copies of the above

1 | <u>**SERVICE LIST**</u>

2 | <u>**SERVED ELECTRONICALLY**</u> | <u>**SERVED BY U.S. MAIL**</u>

3 | <u>**CHAPTER 7 TRUSTEE**</u> | <u>**DEBTOR(S)**</u>

4 | Michael F. Burkart | Daniel Major Edstrom
5150 Fair Oaks Blvd #101-185 | 2690 Brown Bear Ct
5 | Carmichael, CA 95608 | Cool, Ca 95614 and Teri Anne Edstrom
<u>burkart@cwo.com</u> | 2690 Brown Bear Ct
6 | | Cool, Ca 95614

<u>**US TRUSTEE**</u>

7 | | <u>**DEBTOR(S) ATTORNEY**</u>

Department of Justice
8 | Eastern District of California- Sacramento | Steven Karlton Kop
Division | 1333 2nd Street Ste 600
9 | Robert T. Matsui United States Courthouse | Santa Monica, CA 90401
501 I Street, Room 7-500
10 | Sacramento, CA 95814
ustpregion17.sc.ecf@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS
OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

FILED

July 31, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0004366191

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP          BDFTW# 00000003156957
20955 PATHFINDER ROAD SUITE 300
DIAMOND BAR, CA 91765

Attorney for U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR RASC 2005- EMX4 ITS
ASSIGNS AND/OR SUCCESSORS IN INTEREST

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

IN RE:                              § CASE NO. 12-29353-B-11
                                    §
DANIEL MAJOR EDSTROM,               §
    Debtor                          § CHAPTER 11

### NOTICE OF APPEARANCE AND REQUEST FOR DUPLICATE NOTICE COMBINED WITH REQUEST FOR ALL COPIES PURSUANT TO BANKRUPTCY RULE 2002(a), (b) AND PLEADINGS PURSUANT TO BANKRUPTCY RULES 3017(a) AND 9007

Comes now BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP, pursuant to

Bankruptcy Rules 9010 (b), 2002 (a), (b), 3017 (a), 9007, and files

this Notice of Appearance and Demand for Service of Papers as Counsel for U.S. BANK,

NATIONAL ASSOCIATION, AS TRUSTEE FOR RASC 2005- EMX4 ITS ASSIGNS

AND/OR SUCCESSORS IN INTEREST, a secured creditor and party in interest in the

captioned proceedings.

Request is hereby made that all notices given or required to be given in this case and in

any cases consolidated herewith, and all papers served or required to be served in this case and

in any cases consolidated herewith, be given to and served upon the undersigned attorneys at

the address and telephone number as follows:

**BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP**
20955 PATHFINDER ROAD SUITE 300
DIAMOND BAR, CA 91765
(626) 915-5714

This request encompasses all notices and pleadings including, without limitation, notices of any orders, motions, pleadings or requests, formal or informal applications, disclosure statement or plan of reorganization or any other documents brought before this Court in this case.

This Notice of Appearance shall not be construed as authorization to serve counsel for U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR RASC 2005- EMX4 ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST with any summons and complaint or any service of process under Bankruptcy Rule 7001, et. seg. The undersigned firm will not accept service of process in any adversary case for U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR RASC 2005- EMX4 ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST.

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP, additionally requests that

the Debtor and the Clerk of the Court place the name and address of the undersigned attorney

on any mailing matrix to be prepared or existing in the above-numbered case, and on any list of

creditors to be prepared or existing in the above-numbered bankruptcy case.

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP

/s/ DARLENE C. VIGIL _____ 07/31/2012
DARLENE C. VIGIL
CA NO. 223442
BARRETT DAFFIN FRAPPIER TREDER &
WEISS, LLP
20955 PATHFINDER ROAD SUITE 300
DIAMOND BAR, CA 91765
Phone: (626) 915-5714, Fax: (972) 661-7726
E-mail: EDCAECF@BDFGROUP.COM
ATTORNEY FOR SECURED CREDITOR

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2012, a true and correct copy of the Notice of Appearance
and Request for Duplicate Notice was served via electronic means as listed on the Court's ECF
noticing system or by regular first class mail to the parties listed on the attatched list.

Respectfully submitted,

BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP

BY:   /s/ DARLENE C. VIGIL            07/31/2012

DARLENE C. VIGIL
CA NO. 223442
BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP
20955 PATHFINDER ROAD SUITE 300
DIAMOND BAR, CA 91765
Phone: (626) 915-5714, Fax: (972) 661-7726
E-mail: EDCAECF@BDFGROUP.COM
ATTORNEY FOR SECURED CREDITOR

**BY ELECTRONIC NOTICE OR REGULAR FIRST CLASS MAIL:**

**DEBTORS**
DANIEL MAJOR EDSTROM
2690 BROWN BEAR COURT
COOL, CA 95614

DANIEL MAJOR EDSTROM
2690 BROWN BEAR CT
COOL, CA 95614

**DEBTOR'S ATTORNEY**
PRO SE

**TRUSTEE**
U.S. TRUSTEE (SACRAMENTO)
ROBERT T. MATSUI,US COURTHOUSE
501 I STREET, ROOM 7-500
SACRAMENTO, CA 95814

# EXHIBIT 12

B10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF CALIFORNIA | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>DANIEL MAJOR EDSTROM | Case Number<br>12-29353-B-11 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR RASC 2005-EMX4 ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST

**COURT USE ONLY**

| Name and address where notices should be sent:<br>AMERICA'S SERVICING COMPANY<br>ATTN:BK DEPT MAC #D3347-014<br>3476 STATEVIEW BLVD<br>FORT MILL, SC 29715<br>Telephone number: (888) 381-7953          email: POCNOTIFICATIONS@WELLSFARGO.COM | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:** _____<br>*(If known)*<br>Filed on : _____ |
|---|---|

| Name and address where payment should be sent (if different from above):<br>AMERICA'S SERVICING COMPANY<br>1 HOME CAMPUS<br>PYMT PROCESSING MAC#X2302-04C<br>DES MOINES, IA 50328<br>Telephone number: (888) 381-7953          email: POCNOTIFICATIONS@WELLSFARGO.COM | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach a copy of statement giving particulars. |
|---|---|

**1. Amount of Claim as of Date Case Filed:**          $668,183.52

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** MONEY LOANED
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>3  3  7  2 | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☒ Real Estate ☐ Motor Vehicle ☐ Other
Describe: 2690 BROWN BEAR COURT, COOL, CA 95614

Value of Property: $_____

Annual Interest Rate 7.200____ % ☐ Fixed or ☒ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$ 201,349.92

Basis for perfection: Deed of Trust

Amount of Secured Claim:          $ 668,183.52

Amount Unsecured:          $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507 (a)(4). | ☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5). | |
|---|---|---|---|
| ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7). | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8). | ☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__). | **Amount entitled to priority:**<br>$_____ |

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (12/11)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   ANGIE M. MARTH
Title:   ATTORNEY FOR SECURED CREDITOR
Company:   BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP     */s/ ANGIE M. MARTH*        09/25/2012
Address and telephone number (if different from notice address above):    (Signature)           (Date)
20955 PATHFINDER ROAD SUITE 300
DIAMOND BAR, CA 91765

Telephone number (972) 341-0951    email: EDCAECF@BDFGROUP.COM

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | | | | |
|---|---|---|---|---|---|---|
| **Name of debtor:** | DANIEL MAJOR EDSTROM | | **Case number:** | 12-29353-B-11 | | |
| **Name of creditor:** | U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR RASC 2005-EMX4 ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST | | **Last four digits** of any number you use to identify the debtor's account | 3 3 7 2 | | |

Uniform Claim Identifier:

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

**1. Principal due**                                          (1)   $   485,631.10

**2. Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 7.200 % | 06/01/2008 | 05/15/2012 | $ 148,447.01 |
| _____ % | __/__/____ | __/__/____ | $ _____ |
| _____ % | __/__/____ | __/__/____ | + $ _____ |

Total interest due as of the petition date    $ 148,447.01   Copy total here ▶   (2) **+** $   148,447.01

**3. Total principal and interest due**               (3)   $   634,078.11

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | 07/11/2008 through 04/16/2012 | (1) $ | 7,662.96 |
| 2. Non-sufficient funds (NSF) fees | | (2) $ | |
| 3. Attorney's fees | | (3) $ | |
| 4. Filing fees and court costs | | (4) $ | |
| 5. Advertisement costs | | (5) $ | |
| 6. Sheriff/auctioneer fees | | (6) $ | |
| 7. Title costs | | (7) $ | |
| 8. Recording fees | | (8) $ | |
| 9. Appraisal/broker's price opinion fees | | (9) $ | |
| 10. Property inspection fees | 08/06/2008 through 12/19/2008 | (10) $ | 75.00 |
| 11. Tax advances (non-escrow) | | (11) $ | |
| 12. Insurance advances (non-escrow) | | (12) $ | |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | See attached Escrow Analysis | (13) $ | 3,550.65 |
| 14. Property preservation expenses. Specify: _____ | | (14) $ | |
| 15. Other. Specify: _____ | | (15) $ | |
| 16. Other. Specify: _____ | | (16) $ | |
| 17. Other. Specify: _____ | | (17) $ | |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) $ | 11,288.61 |

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

B 10 (Attachment A) (12/11)

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | |
|---|---|---|---|
| 1. **Installment payments due** | Date last payment received by creditor | 06/30/2008 | |
| | Number of installment payments due | (1) 47 | |
| 2. **Amount of installment payments due** | 4 installments @ 4,522.07 | $ 18,088.28 | |
| | 6 installments @ 4,496.26 | $ 26,977.56 | |
| | 6 installments @ 4,164.68 | $ 24,988.08 | |
| | 12 installments @ 3,871.21 | $ 46,454.52 | |
| | 6 installments @ 3,871.20 | $ 23,227.20 | |
| | 6 installments @ 3,871.21 | $ 23,227.26 | |
| | 6 installments @ 3,871.20 | $ 23,227.20 | |
| | 1 installments @ 3,871.21 | + $ 3,871.21 | |

Total installment payments due as of the petition date    $ 190,061.31    Copy total here ▶ (2) $ 190,061.31

3. **Calculation of cure amount**

Add total prepetition fees, expenses, and charges    Copy total from Part 2 here ▶ + $ 11,288.61

Subtract total of unapplied funds (funds received but not credited to account)    − $ 0.00

Subtract amounts for which debtor is entitled to a refund    − $ 0.00

Total amount necessary to cure default as of the petition date    (3) $ 201,349.92

Copy total onto Item 4 of Proof of Claim form

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2012, a true and correct copy of the Proof of Claim was

served via electronic means as listed on the Court's ECF noticing system or by regular first class

mail to the parties listed on the attached list.

Respectfully submitted,

BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP

BY: /s/ ANGIE M. MARTH                    09/25/2012
ANGIE M. MARTH
CA NO. 264567
BARRETT DAFFIN FRAPPIER TREDER &
WEISS, LLP
20955 PATHFINDER ROAD SUITE 300
DIAMOND BAR, CA 91765
Phone: (972) 341-0951, Fax: (972) 661-7725
E-mail: EDCAECF@BDFGROUP.COM
ATTORNEY FOR SECURED CREDITOR

**BY ELECTRONIC NOTICE OR REGULAR FIRST CLASS MAIL:**

**DEBTORS:**
DANIEL MAJOR EDSTROM
2690 BROWN BEAR COURT
COOL, CA  95614

DANIEL MAJOR EDSTROM
2690 BROWN BEAR CT
COOL, CA  95614

**DEBTOR'S ATTORNEY:**
PRO SE

**TRUSTEE:**
U.S. TRUSTEE (SACRAMENTO)
ROBERT T. MATSULUS COURTHOUSE
501 I STREET, ROOM 7-500
SACRAMENTO, CA  95814

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| September 7, 2005 | Folsom | California |
|---|---|---|
| [Date] | [City] | [State] |

**2690 BROWN BEAR COURT , COOL, CA 95614**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **500,000.00** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **MORTGAGE LENDERS NETWORK USA, INC.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.2000** %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **November 1, 2005**

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **October 1, 2035** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **10 RESEARCH PARKWAY, WALLINGFORD, CT 06492**

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ **3,393.95** . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -**
Single Family - Fannie Mae UNIFORM INSTRUMENT

-838N (0005).01     Form 3520 1/01

VMP MORTGAGE FORMS - (800)521-729:

Page 1 of 4    Initials: _P E J E_    MIN-

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **October 1, 2007**, and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six** percentage points ( **6.00000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.2000** % or less than **7.2000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) ( **1.0000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **13.2000** %. **My interest rate will never be less than 7.2%**

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.　*

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**\* Except as set forth in the attached Prepayment Penalty Addendum.**

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Ten** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



| _____ (Seal) | _____ (Seal) |
| **DANIEL MAJOR EOSTROM**      -Borrower | **TERI ANNE EOSTROM**      -Borrower |
| _____ (Seal) | _____ (Seal) |
|                              -Borrower |                              -Borrower |
| _____ (Seal) | _____ (Seal) |
|                              -Borrower |                              -Borrower |
| _____ (Seal) | _____ (Seal) |
|                              -Borrower |                              -Borrower |

*[Sign Original Only]*

PAY TO THE ORDER OF:

EMAX FINANCIAL GROUP, LLC

WITHOUT RECOURSE

By: MORTGAGE LENDERS NETWORK USA, INC.

LORI M. FLORES
FUNDING SUPERVISOR

# ALLONGE TO NOTE

| | |
|---|---|
| **Date of Allonge:** | 10/4/2005 |
| **Loan #:** | |
| **Note Date:** | 9/7/2005 |
| **Loan Amount:** | $500,000.00 |
| **Property Address:** | 2690 BROWN BEAR COURT<br>COOL, CA 95614 |
| **In favor of:** | Mortgage Lenders Network, USA, Inc. |
| **And Executed by:** | DANIEL EDSTROM<br>TERI EDSTROM |
| **Pay to the order of<br>Without recourse:** | RESIDENTIAL FUNDING CORPORATION |

By:

**Name:** Michele Morales
Manager of Sales and Acquisitions
Emax Financial Group, LLC

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

By
Judy Faber, Vice President

## PREPAYMENT PENALTY NOTE ADDENDUM

For a valuable consideration, receipt of which is hereby acknowledged the undersigned agree that certain Promissory Note of even date to which this Addendum is attached, shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said promissory note or the Deed of Trust, Mortgage, Real Estate Mortgage, Security Deed (Security Instrument) securing same.

This Addendum is attached to and made a part of that certain Promissory Note given by
**DANIEL MAJOR EOSTROM**
**TERI ANNE EDSTROM**

(Borrower) to

**MORTGAGE LENDERS NETWORK USA, INC.**
(Lender), dated **September 7, 2005** , which Note is in the principal amount of
$   500,000.00
### PREPAYMENT PENALTY

After **One**              **i     full year(s)**    from the date hereof, maker may pre-pay, without penalty, the outstanding principal balance. In the event maker prepays in full the outstanding principal balance and accrued interest during the first **One**
**1        full year(s)** from the date hereof, maker shall pay in addition to such prepayment a penalty in an amount equal to a percentage of the principal portion of the amount so pre-paid in accordance with the following:

**The Borrower has the right to prepay in California. Lender may charge a prepayment fee for the first 1 years. The prepayment charge may be imposed on any amount prepaid in any 12 month period in excess of 20% of the unpaid balance, so long as the charge does not exceed an amount equal to six months interest on the amount prepaid in excess of the aforementioned 20%.**

Holder shall apply any prepayment first to reduce any interest and charges owing at the time of such prepayment and then to reduce the amount of principal owed under this Note, provided that such balance shall be applied to the principal in reverse order of the due date of each payment and shall not otherwise affect or delay the due date of the next payment under the Note.

| | | | |
|---|---|---|---|
| _Daniel Major Edstrom_   9/7/2005 | | | 9/7/2005 |
| Borrower                      Date | | Borrower | Date |
| **DANIEL MAJOR EDSTROM** | | | |
| _Teri Anne Edstrom_  9/7/2005 | | | 9/7/2005 |
| Borrower                      Date | | Borrower | Date |
| **TERI ANNE EDSTROM** | | | |

*FNT 321335*

Recording Requested By:
**MORTGAGE LENDERS NETWORK USA, INC.**

Return To:
**MORTGAGE LENDERS NETWORK USA, INC.
213 COURT ST. MIDDLETOWN, CT 06457**

El Dorado, County Recorder
William Schultz Co Recorder Office
**DOC- 2005-0077328-00**
Acct 2-FIDELITY NATL TITLE CO
Wednesday, SEP 14, 2005 14:30:00
Ttl Pd    $72.00          Nbr-0000775348
                          LJP/C1/1-22

Prepared By:
**MORTGAGE LENDERS NETWORK USA, INC.
213 Court St. Middletown CT 06457**

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST
MIN

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) **"Security Instrument"** means this document, which is dated **September 7, 2005**
together with all Riders to this document.
(B) **"Borrower"** is
**DANIEL MAJOR EDSTROM AND
TERI ANNE EDSTROM , HUSBAND AND WIFE**

Borrower's address is **2690 BROWN BEAR COURT   , COOL, CA 95614**
. Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is **MORTGAGE LENDERS NETWORK USA, INC.**

Lender is a **corporation or association**
organized and existing under the laws of  **Delaware**

**CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3005 1/01**

-6A(CA) (0207)
Page 1 of 15                Initials: _RE JE_

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **213 Court St. Middletown CT 06457**

(D) "Trustee" is **Mitchell L. Heffernan**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **September 7, 2005**
The Note states that Borrower owes Lender   **Five Hundred Thousand and No/100** --------
-------------------------------------------------------------------- Dollars
(U.S. $    **500,000.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   **October 1, 2035**   .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| **[X]** Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | **[X]** Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**-6A(CA)** (0207)

Page 2 of 15

Initials: _____

Form 3005 1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **EL DORADO** :

[Type of Recording Jurisdiction]           [Name of Recording Jurisdiction]
**SEE ATTACHED SCHEDULE A**

Parcel ID Number:                                              which currently has the address of
**2690 BROWN BEAR COURT**                                                        [Street]
**COOL**                                                       [City], California **95614**        [Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Page 4 of 15                    

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

Initials

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

**-6A(CA)** (0207)

Page 10 of 15

Initials:

Form 3005 1/01

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials 

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
**DANIEL MAJOR EDSTROM**                     -Borrower

_____ (Seal)
**TERI ANNE EDSTROM**                           -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                     -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                     -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                     -Borrower

State of California
County of Sacramento

before me, Laura Capparelli

On September 7, 2005
DANIEL MAJOR EDSTROM
TERI ANNE EDSTROM

} ss.

personally appeared

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Laura Capparelli
(Seal)

LAURA CAPPARELLI
Commission # 1477976
Notary Public - California
Placer County
My Comm. Expires Mar 21, 2008

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this **7th**     day of **September**     **2005** ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
**MORTGAGE LENDERS NETWORK USA, INC.**

("Lender") of the same date and covering the property described in the Security Instrument
and located at:

**2690 BROWN BEAR COURT   , COOL, CA 95614**

### [Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of        **7.2000%**. The Note provides
for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **October 1, 2007**     ,
and on that day every **6th**        month thereafter. Each date on which my interest
rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for six month U.S. dollar-denominated
deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most
recent Index figure available as of the first business day of the month immediately
preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is
based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by
adding  **Six**                                percentage points
(  **6.00000**         %) to the Current Index. The Note Holder will then round the result of

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED
IN THE WALL STREET JOURNAL)** - Single Family - **Fannie Mae Uniform Instrument**

-838R (0402)   **Form 3138 1/01**
Page 1 of 3        Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291



**MIN-**

this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than

     **10.2000** % or less than           **7.2000** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than

**One**                                                   percentage points

(        **1.0000**     %) from the rate of interest I have been paying for the preceding

**6**       months. My interest rate will never be greater than       **13.2000 *** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

**\*My interest rate will never be less than 7.2%**

Initials: $\mathcal{PEJE}$

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Daniel Major Edstrom_ (Seal)     _Teri Anne Edstrom_ (Seal)
DANIEL MAJOR EDSTROM   -Borrower     TERI ANNE EDSTROM   -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                          -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                          -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                          -Borrower

VMP-838R (0402)               Page 3 of 3               Form 3138 1/01

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **7th** day of **September 2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
**MORTGAGE LENDERS NETWORK USA, INC.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**2690 BROWN BEAR COURT , COOL, CA 95614**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **the covenants, conditions and restrictions in the declarations of AUBURN LAKE TRAILS**

(the "Declaration"). The Property is a part of a planned unit development known as **AUBURN LAKE TRAILS**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01**

**MIN—**
Page 1 of 3                    Initials: _P£JE_

**-7R** (0411)          VMP Mortgage Solutions, Inc. (800)521-7291

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _PFJ&_

-7R (0411)                    Page 2 of 3                    Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_Daniel Major Edstrom_ (Seal)    _Teri' anne Edstrom_ (Seal)
**DANIEL MAJOR EDSTROM**    -Borrower    **TERI ANNE EDSTROM**    -Borrower


_____ (Seal)    _____ (Seal)
-Borrower    -Borrower


_____ (Seal)    _____ (Seal)
-Borrower    -Borrower


_____ (Seal)    _____ (Seal)
-Borrower    -Borrower


**VMP**-7R (0411)    Page 3 of 3    **Form 3150 1/01**

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA, COUNTY OF EL DORADO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 885, of Auburn Lake Trails Unit No. 4, filed May 8, 1970, in Book E, of Maps, at page 61, El Dorado County Records.

APN: 073-141-03-100

09/14/2005, 20050677328

**ASC**
AMERICA'S SERVICING COMPANY

PO Box 1507
Des Moines, IA 50306-4547

For informational purposes

Escrow account disclosure statement
and notice of new mortgage payment

| | |
|---|---|
| Loan number: | |
| Next payment due date: | July 01, 2012 |
| New payment effective date: | June 01, 2012 |
| New payment amount: | $8,928.45 |
| Principal balance: | $689,924.90 |
| Interest rate: | 6.125% |
| Statement date: | May 12, 2012 |
| Account review period: | May 2012 - May 2013 |
| Customer service hours: | Mon - Fri 8am - 9pm ET |

We accept telecommunication relay service calls.

Property address:
2690 BROWN BEAR CT
COOL CA 95614

Dear DANIEL MAJOR EDSTROM and TERI ANNE EDSTROM:

Each year, we review your escrow account to make sure the escrow portion of your monthly mortgage payment covers your property taxes and/or insurance premiums. Increases or decreases in your annual taxes and/or insurance premiums may cause your monthly mortgage payment amount to change. Here are the details of your most recent escrow account review.

Note: This notice is for informational purposes only and is being provided as a courtesy should you voluntarily decide to make any escrow shortage payment, if applicable. This notice should not be construed as an attempt to collect a debt or a demand for payment contrary to any protection you may have received pursuant to your bankruptcy case.

### New monthly escrow and mortgage payment amount

| New payment effective date June 01, 2012 [1] | Current monthly payment ($) | New monthly payment ($) |
|---|---|---|
| Principal and/or interest | 4,904.56 | 5,403.69 |
| Escrow payment | 407.50 | 519.75 |
| Escrow shortage/prepayment [2] | 0.00 | 0.00 |
| **Total payment amount** | **4,522.07** | **8,928.45** |

1. If you use one of our automatic payment options, we will adjust your electronic withdrawal(s) to ensure your June 01, 2012 payment is made in full.

2. If your current monthly payment includes an amount to cover a previous escrow shortage, this amount will be added. If your current monthly payment includes an adjustment for escrow funds you deposited in your escrow account, this amount will be deducted.

Your account is in balance. Our calculation has resulted in no projected shortage or overage in your escrow account.

*** This section intentionally left blank ***

For informational purposes                    Loan number

### The following information covers your projected escrow account activity from Jun 2012 to May 2013

**Projected escrow account disbursements**
Annualized items to be paid from your escrow account ($):

| | |
|---|---|
| HAZARD INS | 3,484.00 |
| COUNTY TAX | 2,753.10 |
| Total disbursements | 6,237.10 |
| **Monthly escrow payment** | **519.76[1]** |

*1 Your monthly escrow payment is calculated by dividing the total disbursements by 12.*

---

### Projected escrow account activity for the next 12 months

| | Anticipated payments ($) | | | Escrow balance ($) | |
|---|---|---|---|---|---|
| Date | To escrow | From escrow | Description | Projected | Required |
| Jan 2012 | | | Starting balance | 530.41 | 2,904.24 |
| Jun 2012 | 519.76 | 0.00 | | 66.65 | 3,454.00 |
| Jul 2012 | 519.76 | 0.00 | | 453.41 | 7,003.76 |
| Aug 2012 | 519.76 | 3,484.00 | AMERICAN SECURITY GROUP | 42.110.89 | 1,783.52 |
| Sep 2012 | 519.76 | 0.00 | | 1,908.17 | 1,503.28 |
| Oct 2012 | 519.76 | 0.00 | | 2,471.63 | 2,073.04 |
| Nov 2012 | 519.76 | 1,376.55 | EL DORADO COUNTY | 2,328.40 | 1,222.25 |
| Dec 2012 | 519.76 | 0.00 | | 1,808.64 | 1,742.01 |
| Jan 2013 | 519.76 | 0.00 | | 1,258.88 | 2,261.77 |
| Feb 2013 | 519.76 | 0.00 | | 769.12 | 2,781.53 |
| Mar 2013 | 519.76 | 1,376.55 | EL DORADO COUNTY | 1,825.90 | 1,924.74 |
| Apr 2013 | 519.76 | 0.00 | | 2,108.15 | 2,444.50 |
| May 2013 | 519.76 | 0.00 | | 586.39 | 2,964.26 |
| **Total** | **6,237.12** | **6,237.10** | | | |

The projected escrow account activity is based on the most recent tax and/or insurance information available as well as the amount on that your payment will increase will be agreed.

2. **Projected low point**. The point during the 12 month period at which the projected escrow balance will reach its lowest point.

3. **Required escrow balance**. To cover unanticipated disbursements, including increases to tax or insurance payments, there is a 2-month minimum escrow balance allowable by state law and/or your mortgage contract. This amount does not include mortgage insurance.

- Your 2-month minimum escrow balance is **$1,039.52**
- State law requires that this minimum escrow balance not exceed **$1,039.52**
- Note: If you have an adjustable rate mortgage (ARM), you will receive notice that if your new mortgage payment when your ARM rate is scheduled to change.

---

| Information about your escrow account | |
|---|---|
| Your lowest projected escrow account balance (low point) ($) | 2,511.19 |
| **Plus escrow adjustment[4] ($)** | 3,550.65 |
| Less your required minimum escrow account balance ($) | 1,063.53 |
| **This means your escrow account is in balance** | **0.00** |

4. An Escrow Adjustment of $x,xx0.65, scheduled to be repaid through the bankruptcy, is included in this calculation.

For informational purposes

Loan number:

The following information covers your escrow account history activity from May 2009 to May 2012.

| | Payments to escrow ($) | | Payments from escrow ($) | | | Escrow balance ($) | |
|---|---|---|---|---|---|---|---|
| Date | Projected | Actual | Projected | Actual | Description | Projected | Actual |
| May 2009 | | | | | Starting balance | 1,391.33 | 3,406.73+ |
| May 2009 | 763.77 | 0.00¹ | 0.00 | 0.00 | | 1,855.10 | 3,406.73+ |
| Jun 2009 | 263.77 | 0.00¹ | 0.00 | 0.00 | | 2,318.87 | 3,406.73+ |
| Jul 2009 | 263.77 | 0.00¹ | 0.00 | 0.00 | | 2,782.64 | 3,406.73+ |
| Aug 2009 | 263.77 | 0.00² | 1,086.00 | 3,086.00² | AMERICAN SECURITY GROU | 2,150.71 | 6,530.73+ |
| Sep 2009 | 263.77 | 0.00¹ | 0.00 | 0.00 | | 2,614.78 | 6,530.73+ |
| Oct 2009 | 263.77 | 0.00¹ | 0.00 | 0.00 | | 3,077.95 | 6,530.73+ |
| Nov 2009 | 263.77 | 0.00² | 2,234.63 | 1,598.10¹ | EL DORADO COUNTY | 1,107.09 | 8,488.83+ |
| Dec 2009 | 263.77 | 0.00¹ | 0.00 | 0.00 | | 1,770.86 | 8,488.83+ |
| Jan 2010 | 263.77 | 0.00¹ | 0.00 | 0.00 | | 2,234.63 | 8,488.83+ |
| Feb 2010 | 263.77 | 0.00¹ | 0.00 | 0.00 | | 2,698.70 | 8,488.83+ |
| Mar 2010 | 263.77 | 0.00¹ | 2,234.63 | 1,598.10¹ | EL DORADO COUNTY | 927.54 | 10,086.93+ |
| Apr 2010 | 263.77 | 0.00¹ | 0.00 | 0.00 | | 1,391.31 | 10,086.93+ |
| Oct 2010 | 0.00 | 0.00 | 0.00 | 3,484.00¹ | AMERICAN SECURITY GROU | 1,391.31 | 13,570.93+ |
| Nov 2010 | 0.00 | 0.00 | 0.00 | 1,575.91¹ | EL DORADO COUNTY | 1,391.31 | 14,976.84+ |
| Mar 2011 | 0.00 | 0.00 | 0.00 | 1,575.91¹ | EL DORADO COUNTY | 1,391.31 | 16,552.75+ |
| Aug 2011 | 0.00 | 0.00 | 0.00 | 3,484.00¹ | AMERICAN SECURITY GROU | 1,391.31 | 19,306.75+ |
| Nov 2011 | 0.00 | 0.00 | 0.00 | 1,576.55¹ | EL DORADO COUNTY | 1,391.31 | 21,283.30+ |
| Mar 2012 | 0.00 | 0.00 | 0.00 | 1,576.55¹ | EL DORADO COUNTY | 1,391.31 | 22,859.85+ |
| May 2012 est. | 0.00 | 21,973.44¹ | 0.00 | 0.00 | | 1,391.31 | 886.41+ |
| Totals | 5,565.24 | 21,973.44 | 5,565.26 | 19,153.12 | | | |

1 Indicates where a difference exists between the projected and actual account activity.

Wells Fargo Home Mortgage, doing business as Americans Servicing Company, is a division of Wells Fargo Bank, N.A.
© 2012 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801



**Manage your mortgage payments easily with the Preferred Payment Plan℠**

· Fixed, flexible, biweekly, semimonthly or monthly payments.
· Budget easily and manage with free automatic withdrawals.
· No due dates to remember or checks to write.
· To have accounts and to join us. To enroll, call 1-866-986-3614.

# EXHIBIT 13

1

2

3

4          IN THE UNITED STATES DISTRICT COURT

5          FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    ISABEL SANTOS, individually and as  )  Case No. 12-3296-SC
     trustee and beneficiary of the      )
8    Yolanda Maria Santos Trust,         )  ORDER DENYING DEFENDANTS'
                                         )  MOTIONS (1) FOR JUDGMENT ON
9          Plaintiff,                    )  THE PLEADINGS AND (2) TO
                                         )  DISSOLVE OR MODIFY
10   v.                                  )  PRELIMINARY INJUNCTION
                                         )
11   REVERSE MORTGAGE SOLUTIONS, INC.;   )
12   NDEX WEST, LLC; and DOES 1 through  )
     20,                                 )
13                                       )
                                         )
14         Defendants.                   )
                                         )
15

16   **I.    INTRODUCTION**

17        On June 8, 2012, Plaintiff Isabel Santos ("Plaintiff") filed a

18   complaint against Defendants NDEX West, LLC ("NDEX") and Reverse

19   Mortgage Solutions, Inc. ("RMS") (collectively, "Defendants") in

20   the California Superior Court in and for the County of Contra

21   Costa.  ECF No. 1 (notice of removal ("NOR")) Ex. A ("Compl.").

22   The complaint challenges Defendants' right to foreclose on a home

23   equity conversion mortgage ("HECM"), or so-called "reverse"

24   mortgage, that Plaintiff's mother had taken out on her Pleasant

25   Hill residence.  Id.  The Superior Court entered a preliminary

26   injunction against Defendants, halting the foreclosure process.

27   ECF No. 18-5 ("Prelim. Inj'n Order").  On June 26, 2012, Defendants

28   removed to this Court.  After removal, Defendants filed the two

United States District Court
For the Northern District of California

1  motions now pending: (1) a motion for judgment on the pleadings or,

2  in the alternative, summary judgment, and (2) a motion to dissolve

3  the preliminary injunction or, in the alternative, to modify it by

4  requiring Plaintiff to post a bond equal to the amount of

5  arrearages, which Defendants say is $320,750.96, plus an additional

6  $200,000 in estimated future attorney fees.  ECF Nos. 8 ("MJP"), 12

7  ("Mot. to Dissolve").  Both motions are fully briefed and suitable

8  for decision without oral argument.  ECF Nos. 17 ("Opp'n to MJP"),

9  19 ("Opp'n to Mot. to Dissolve"), 22 ("Reply ISO MJP"), 23 ("Reply

10 ISO Mot. to Dissolve").[1]  For the reasons set forth below, the

11 Court DENIES both motions.

12

13 II.    **BACKGROUND**

14        A.    **The HECM Program**

15        The Court takes its account of the facts from Plaintiff's

16 state-court complaint and construes them in the light most

17 favorable to her.  Gen. Conference Corp. of Seventh-Day Adventists

18 v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230

19 (9th Cir. 1989).  In 2009, Plaintiff's mother, the late Yolanda

20 Maria Santos, took out a federally insured HECM.  Compl. ¶ 15.

21 HECMs are "reverse" mortgages.  Unlike a typical mortgage, where a

22 borrower receives loan proceeds as a lump sum, uses the proceeds to

23 buy a home, and then pays back the loan gradually, a "reverse"

24 mortgage borrower already owns a home and takes out a loan against

25

26 [1] The parties filed requests for judicial notice with their moving
   papers.  ECF Nos. 9 ("RJN ISO MJP"), 13 ("RJN ISO Mot. to
27 Dissolve"), 18 ("RJN ISO Opp'n to MJP"), 20 ("RJN ISO Opp'n to Mot.
   to Dissolve").  The requests are all unopposed and the documents to
28 which they refer are judicially noticeable public records.  The
   Court therefore GRANTS the parties' requests for judicial notice.

United States District Court
For the Northern District of California

its equity. In the reverse of a typical mortgage, an HECM borrower generally receives the loan proceeds in gradual payments and pays back the loan in a lump sum. Repayment is triggered by certain qualifying events, for example, sale of the property.

The HECM at issue in this case was insured through a program of the U.S. Department of Housing and Urban Development ("HUD"). See generally 12 U.S.C. § 1715z-20 (organic statute), 24 C.F.R. § 206.1 et seq. (implementing regulations). The program does not provide mortgages directly; rather, it insures lenders who extend qualifying HECMs to "elderly" borrowers over the age of 62. 12 U.S.C. § 1715z-20(b)(1); 24 C.F.R. § 206.33. The program is designed to make lending to these homeowners more attractive by insulating lenders from risk. See 12 U.S.C. § 1715z-20(a).

HUD regulations implementing the program define the qualifying events that trigger repayment of the insured HECMs. 24 C.F.R. § 206.27(c). One such event is the death of the borrower. Id. In such circumstances, the regulations provide:

> The mortgagee [lender] shall require the mortgagor [borrower] to (i) pay the mortgage balance, including any accrued interest and MIP [mortgage insurance premium], in full; (ii) sell the property for at least 95% of the appraised value . . . , with the net proceeds of the sale to be applied towards the mortgage balance; or (iii) provide the mortgagee with a deed in lieu of foreclosure.

Id. § 206.125(a)(2) (brackets added). The regulations also give borrowers a way to satisfy the mortgage regardless of whether a qualifying event has occurred:

> Whether or not the mortgage is due and payable, the mortgagor may sell the property for at least the lesser of the mortgage balance or the appraised value . . . . If the mortgage is due and payable at the time the contract for sale

3

1

> is executed, the mortgagor may sell the
> property for at least the lesser of the
> mortgage balance or five percent under the
> appraised value. The mortgagee shall satisfy
> the mortgage of record . . . in order to
> facilitate the sale, provided that there are no
> junior liens . . . and all the net proceeds
> from the sale are paid to the mortgagee.

2

3

4

5 Id. § 206.125(c).

6     In short, the regulations contemplate the possibility of HECM
7 mortgagors satisfying their mortgages either before or after the
8 borrower's death by, first, selling the mortgaged property, then
9 either paying the mortgage in full or, if the property is not worth
10 as much as the mortgage balance, paying at least 95 percent of the
11 appraised value of the property (the so-called "95 percent rule").[2]
12 For purposes of such sales, the regulations' definition of
13 "mortgagor" includes "the mortgagor's estate or personal
14 representative." Id. § 206.123(b).

15     In the event that a mortgagor sells the property but the sale
16 proceeds fall short of the amount needed to satisfy the mortgage,
17 the program prohibits HECM lenders from seeking a deficiency
18 judgment against the mortgagor. See id. § 206.27(b)(8). The
19 program also protects HECM lenders by insuring them for the amount
20 of the shortfall. Id. § 206.123(a). Though lenders pay the
21 premium for this mortgage insurance directly to HUD, the
22 regulations permit lenders to pass on at least some of the cost of
23 the premium to borrowers. See id. §§ 206.27(b)(7), 206.109.

24     **B.   The HECM at Issue**

25     On April 20, 2009, Plaintiff's mother, Yolanda Maria Santos,
26 conveyed the subject property to the Yolanda Maria Santos Trust

27

28

---

[2] HUD regulations provide an appraisal procedure. 24 C.F.R. §
206.125(b). Plaintiff does not allege that the subject property
has been appraised through this procedure. See Compl. ¶ 43.

United States District Court
For the Northern District of California

("Santos Trust"), of which she was trustee.  Compl. ¶ 33; RJN ISO MJP at 39-41 ("Grant Deed").  On the same day, Plaintiff's mother took out the HECM at issue in this case.  Compl. ¶¶ 35-40; RJN ISO MJP at 28-38 ("HECM Deed").[3]  The HECM Deed identifies the borrower as "Yolanda Maria Santos, Trustee of the Yolanda Marie [sic] Santos Living Trust."  HECM Deed at 1.  The HECM Deed's borrower section was signed twice, once by Yolanda Maria Santos as an individual and once by her as trustee of the Santos Trust.  Id. at 10.

Paragraph 9(a)(i) of the HECM Deed provides: "Lender may require immediate payment-in-full of all sums secured by this Security Instrument if . . . [a] Borrower dies and the Property is not the principal residence of at least one surviving Borrower." Id. at 4.  Paragraph 9(e) provides: "A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9."  Id. at 4-5.

On or around February 7, 2011, Yolanda Maria Santos died. Compl. ¶ 43.  At the time of her death, the balance on the HECM was approximately $360,000.  Id.  Plaintiff estimates the value of the subject property at the time of her mother's death as $288,000. Id.  Plaintiff also alleges that she is the sole beneficiary of the Santos Trust, as well as its trustee.  Id. ¶¶ 34, 60.  She alleges the existence of a will establishing that she was her mother's heir.  See id. ¶ 60.  She further alleges that she has personally resided in the subject property since 2010.  Id. ¶ 32.

Plaintiff alleges that, following her mother's death, she continually attempted to enter into a payment plan that would pay off the HECM loan and allow her to purchase the subject property,

---

[3] Later citations to the HECM Deed cite its internal page numbers.

but that RMS refused to permit her to purchase it and instead
insisted that the property either be foreclosed or sold to some
third party. See generally id. ¶¶ 43-72. NDEX began foreclosure
proceedings in February 2012. Id. ¶¶ 56-64. Plaintiff alleges
that RMS has insisted that only a full payoff of the mortgage
amount will satisfy the mortgage, as compared to the 95 percent
figure mentioned in the HUD regulations. Id. ¶¶ 15, 78. Plaintiff
further alleges that the notice of default failed to provide her
with required notices, namely, that she could satisfy the HECM by
buying the property herself at 95 percent of its appraised value,
and that foreclosure is prohibited before she receives those
notices. Id. ¶ 78.

On June 8, 2012, Plaintiff filed a complaint in California
state court, asserting four causes of action: (1) breach of
contract, (2) declaratory relief,[4] (3) slander of title, and (4)
cancellation of written instruments pursuant to California Civil
Code § 3412. Id. ¶¶ 73-103. On June 26, 2012, the state court
orally entered a preliminary injunction against Defendants,
prohibiting them from proceeding with the planned foreclosure sale

---

[4] Under federal law, declaratory relief is a remedy, not a claim.
E.g., Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952,
975 (N.D. Cal. 2010). However, Plaintiff originally filed her
complaint in California state court, which permits the pleading of
an independent cause of action for declaratory relief. See Cal.
Civ. Proc. Code § 1060. Since Plaintiff's declaratory relief
"claim" rests on federal statutes and regulations and not solely on
California's declaratory relief cause of action, the Court
construes it as a claim arising under the federal authorities cited
therein. Plaintiff asks for a declaration concerning her right to
receive notice of her right to sell the subject property, as well
as of her right to repurchase the subject property for 95 percent
of its appraised value, and addressing whether, by failing to
provide such notice, Defendants "have violate[d] 12 U.S.C. § 1715z-
20, 24 C.F.R. [§] 206.1 et seq., and the standard HECM loan
contract." Compl. ¶ 85.

1 until trial or further order.[5]  That same day, NDEX, with the
2 consent of RMS, removed to this Court.  NOR ¶¶ 13-14.

3

4 **III. DISCUSSION**

5 **A.  Motion for Judgment on the Pleadings**

6      "After the pleadings are closed -- but early enough not to
7 delay trial -- a party may move for judgment on the pleadings."
8 Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when
9 the moving party clearly establishes on the face of the pleadings
10 that no material issue of fact remains to be resolved and that it
11 is entitled to judgment as a matter of law."  Hal Roach Studios,
12 Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).
13 When a Rule 12(c) motion attacks a complaint, it is subject to the
14 same standard of review as a Rule 12(b)(6) motion to dismiss for
15 failure to state a claim upon which relief can be granted; thus,
16 the complaint must contain sufficient factual matter, accepted as
17 true, to state a claim to relief that is plausible on its face.
18 Johnson v. Rowley, 569 F.3d 40, 44 (2d Cir. 2009); see also
19 Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d
20 1047, 1055 n.4 (9th Cir. 2011) (citing Johnson with approval).  A
21 claim is plausible on its face when the plaintiff pleads "factual
22 content that allows the court to draw the reasonable inference that
23 the defendant is liable for the misconduct alleged."  Ashcroft v.
24 Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly,
25 550 U.S. 544, 556 (2007)).

26

27

28 [5] The order was reduced to writing and signed on June 28, 2012.
Prelim. Inj'n Order.

7

"[D]ismissal on the pleadings is proper only if the moving party is clearly entitled to prevail." Kruse v. State of Hawai'i, 857 F. Supp. 741, 749 (D. Haw. 1994) aff'd 68 F.3d 331 (9th Cir. 1995). Federal courts may decline to enter judgment on the pleadings when they perceive that "hasty or imprudent use of this summary procedure" would impede the strong policy in favor of deciding cases on their merits. See Carrasco v. Fiore Enters., 985 F. Supp. 931, 934 (D. Ariz. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Prac. & Proc., Civil 2d § 1368 (1990)).

As a preliminary matter, the Court addresses the question of who bears the burden of persuasion on the instant motion. Defendants aver that it is Plaintiff. MJP Reply at 4. Defendants are wrong. It is black-letter law that, on a Rule 12(c) motion, the moving party -- here, Defendants -- bears the burden. Hal Roach Studios, 896 F.2d at 1550; Kruse, 857 F. Supp. at 749. The burden does not, as Defendants appear to suggest, shift to the non-moving party after the opposition brief is filed.[6]

Defendants put forward a variety of theories as to why the pleadings entitle them to judgment. For the reasons set forth below, the Court cannot conclude on the state of the arguments submitted that any of Defendants' theories have merit and therefore

---

[6] Defendants seem to rest their novel burden-shifting theory in part on a challenge to Plaintiff's Article III standing. See MJP Reply at 6-7. But Defendants' constitutional standing challenge is procedurally improper for two reasons. First, the proper procedure for challenging Article III standing is a Rule 12(b)(1) motion to dismiss, not a Rule 12(c) motion. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Second, while it is true that Plaintiff bears the burden of establishing her constitutional standing, Defendants raised the standing issue for the first time in their reply brief. Because Plaintiff has not had a chance to respond, basic fairness prevents the Court from considering Defendants' Article III standing challenge at this time.

United States District Court
For the Northern District of California

the Court declines to enter judgment in favor of Defendants. The Court's denial of Defendants' motion is without prejudice and does not bar either party from later seeking judgment on grounds raised here.[7]

## 1. Declaratory Relief

Defendants focus their motion on Plaintiff's claim for declaratory relief, which the Court construes as a claim arising under the federal authorities cited therein. Supra note 4. Defendants' primary argument is that they are entitled to judgment on that claim because Plaintiff is suing under federal regulations which confer no private right of action. However, none of the authority Defendants cite stands for this proposition. The regulations at issue here were promulgated under 12 U.S.C. § 1715z-20, which was added to the National Housing Act ("NHA") in 1988. See Pub. L. 100-242, , § 417(a), 101 Stat. 1815, 1908-12 (1988). Nearly all of the cases relied on by Defendants were decided before this law was enacted and thus are inapposite. The later-decided cases cited by Defendants are inapposite, too, in that they address

[7] Frankly, this is because the arguments submitted by both parties frequently are either (1) unclear or (2) mistaken as to fundamental points of law, such as the identity of the party that bears the burden of persuasion on a Rule 12(c) motion, see MJP Reply at 4, or the fact that federal standards rather than state law standards apply to claims seeking declaratory relief, see MJP Opp'n at 13-14. The Court believes that the parties have not yet joined the issues that will decide this case. One aim of this Order is to focus the issues so that any further motions will come closer to the heart of the matter. The Court also pauses to note defense counsel's troubling tendency to forgo legal argument in favor of irrelevant, inflammatory personal rhetoric. The Court will not tolerate truculence in the papers any more than it would in open court. The Court reminds defense counsel of their ethical obligation to practice before this Court with the level of "decorum required for the fair and efficient administration of justice." Civ. L.R. 11-4(a)(4). Further violations of this rule by either party may result in sanctions.

United States District Court
For the Northern District of California

sections of the NHA not at issue here. Defendants provide no reason why holdings interpreting other sections of the NHA should apply to the section relied on by Plaintiffs. Further, a number of the cases cited by Defendants stand only for the notion that no private cause of action exists to enforce terms of the HUD Handbook. E.g., Roberts v. Cameron-Brown Co., 556 F.2d 356, 357-58 (5th Cir. 1977). That may be so, but, as Plaintiff points out, Opp'n at 14-15, Plaintiff seeks declaratory relief on the basis of authorities other than the HUD Handbook, such as federal regulations. Defendants do not say why holdings applicable to the HUD Handbook -- which share a common premise in that they focus on the Handbook's being unpublished -- would apply to rules published in the Code of Federal Regulations. In short, Defendants' authorities do not support the conclusion Defendants seek.

The Court's primary concern, however, is Defendants' failure to acknowledge the distinction between express and implied rights of action. Defendants' theory is that they are entitled to judgment on Plaintiff's declaratory relief claim because the underlying authorities provide Plaintiff with no private right of action. Private rights of action may be express or implied -- a distinction that is mentioned throughout the cases Defendants cite, but which Defendants themselves never discuss. To prevail on their theory, Defendants would need to show that neither type of right of action exists, which necessarily would entail an analysis under Cort v. Ash, 422 U.S. 66 (1975), and its progeny. Defendants do not attempt this analysis and, because they do not, they cannot and do not carry their burden of showing that Plaintiff has no private right of action here.

United States District Court
For the Northern District of California

1      Defendants also challenge Plaintiff's standing to seek
2 declaratory relief. This challenge concerns Plaintiff's standing
3 under the HECM Deed, as compared to her constitutional standing.
4 See supra note 6. Defendants' first challenge is that Plaintiff is
5 not a real party in interest because she is not one of the original
6 borrowers under the HECM Deed or the notes it secures. This
7 argument fails because it does not account for the fact that
8 Yolanda Maria Santos allegedly signed both the HECM Deed and the
9 notes in both her capacity as trustee of the Santos Trust as well
10 as her personal capacity, and that Plaintiff alleges that she now
11 is trustee of the Santos Trust. Plaintiff's theory, in short,
12 hinges on the notion that the borrower is the Santos Trust.
13 Defendants argue that the Santos Trust cannot be the borrower under
14 the HECM Deed or the notes because the notes limit the definition
15 of "borrower" to "each person signing at the end of this Note."

16      Defendants' argument is unavailing. First, Defendants do not
17 account for the fact that, while the notes indeed define "borrower"
18 in this way, the HECM Deed lists the borrower as Yolanda Maria
19 Santos in her capacity as trustee for the Santos Trust. Second,
20 Defendants apparently interpret the notes' definition of borrower
21 to include only natural persons acting in their individual
22 capacities. The Court is unconvinced that this narrow reading is
23 the correct one. On the contrary, the HECM Deed specifically
24 contemplates transfer of a borrower's interest in the property to
25 or from a separate trust, HECM Deed ¶ 9(e), which suggests that
26 trusts can hold the rights of borrowers under the HECM Deed, as
27
28

11

well as their obligations under the notes. Defendants cite no contrary authority.[8]

Defendants' second challenge to Plaintiff's standing under the HECM Deed is that Plaintiff cannot sue under the HUD regulations because those regulations define "mortgagor" in a way that excludes Plaintiff. The HUD regulation cited by Defendants includes original borrowers, which Defendants say Plaintiff is not, but exclude an original borrower's successors or assigns. See 24 C.F.R. § 206.3. Defendants take the position that Plaintiff therefore is not a "mortgagor" under the regulations and thus lacks a mortgagor's standing to enforce the HECM Deed. The Court is not persuaded. First, Defendants have not established that Plaintiff, in her capacity as trustee, is not an original borrower. Second, although Defendants correctly cite the text of the regulations' general definition of "mortgagor," they ignore a different provision which expands that definition in the case of sales to include "the mortgagor's estate or personal representative." Id. § 206.123(b). Here, Plaintiff alleges the existence of a will that makes her the original mortgagor's sole heir. It is unclear why this status alone does not entitle her to exercise the mortgagor's right to sell the property under the 95 percent rule. Defendants, having failed to cite the applicable regulation, do not address the point.

[8] Defendants do cite a California state case for the uncontroversial proposition that a trust "is not a person but rather a fiduciary relationship with respect to property." MJP at 11 (quoting Ziegler v. Nickel, 64 Cal. App. 4th 545, 548 (1998)). However, trusts must act through persons. Indeed, as the very next sentence of Ziegler states, "an ordinary express trust is not an entity separate from its trustees." Id. Defendants cite this language, but do not say how it undermines Plaintiff's position that the borrower for purposes of the HECM is the Santos Trust.

1     For all these reasons, Defendants fail to carry their burden

2 of showing on that the pleadings entitle them to judgment on

3 Plaintiff's claim for declaratory relief.

### 2. Other Claims

5     Defendants challenge Plaintiff's other three claims -- breach

6 of contract, slander of title, and cancellation of written

7 instruments -- solely on the ground that they are derivative of the

8 declaratory relief claim.  Taking the argument on its own terms,

9 Defendants' challenge to these three claims would fail because

10 their challenge to the declaratory relief claim fails.

11     Looking past the terms of Defendants' argument, however, the

12 Court observes that their position misapprehends the logical and

13 legal structure of Plaintiff's remaining claims.  The breach of

14 contract claim is at least partly premised on the idea that the HUD

15 regulations are incorporated into the HECM Deed by being repeated

16 there nearly verbatim, and thus have legal force not only as

17 federal laws, but as independent contractual terms.  Likewise,

18 Plaintiff's claims for slander of title and cancellation of written

19 instruments are predicated on California state law, not federal

20 law.  It is unclear to the Court how any of Plaintiff's claims are

21 derivative of her declaratory relief claim, legally or logically.

22     Because Defendants have not met their burden of showing that

23 the pleadings clearly entitle them to relief, their Rule 12(c)

24 motion is DENIED.  Defendants also moved for summary judgment in

25 the alternative.  However, Defendants never explain why summary

26 judgment procedures are needed or warranted here, address the

27 standard for summary judgment or how it would apply in this case,

28 or cite evidence.  Accordingly, to the extent that Defendants'

1  motion is construed as one for summary judgment, that motion, too,
2  is DENIED.

## B.  **Motion to Dissolve Preliminary Injunction**

4      Defendants have moved to dissolve the preliminary injunction
5  already entered by the state court or, in the alternative, to
6  modify that injunction by requiring Plaintiffs to post a bond.
7  Defendants request a bond in the amount of $520,750.96 -- that is,
8  the purported amount of arrearages, $320,750.96, plus estimated
9  future attorney fees of $200,000.  Reply ISO Mot. to Dissolve at
10 13.  Defendants provide no evidence in support of their attorney
11 fee estimate.

12     In a civil action removed from state court, as this one was,
13 "[a]ll injunctions, orders, and other proceedings had in such
14 action prior to its removal shall remain in full force and effect
15 until dissolved or modified by the district court."  28 U.S.C. §
16 1450.  Essentially, "[a]fter removal, the federal court takes the
17 case up where the State court left it off."  Carvalho v. Equifax
18 Info. Servs., LLC, 629 F.3d 876, 887 (9th Cir. 2010) (quoting
19 Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers
20 Local No. 70 of Alameda Cnty., 415 U.S. 423, 436 (1974)).  "The
21 federal court treats everything that occurred in the state court as
22 if it had taken place in federal court."  Id. (quoting Butner v.
23 Neustadter, 324 F.2d 783, 785 (9th Cir. 1963) (ellipses omitted)).
24 "Consequently, an order entered by a state court should be treated
25 as though it had been validly rendered in the federal proceeding."
26 Id. (internal quotation marks omitted).  "[F]ederal rather than
27 state law governs the future course of proceedings."  Granny Goose
28 Foods, 415 U.S. at 437.

United States District Court
For the Northern District of California

14

United States District Court
For the Northern District of California

1  In this case, the state court entered a preliminary injunction
2  on June 26, 2012. That injunction prohibits Defendants and any
3  person acting on their behalf from selling, transferring, or
4  encumbering the subject property, and it does not expire until
5  conclusion of trial or modification or dissolution by some further
6  order. See Prelim. Inj'n Order at 2. What Defendants seek, then,
7  is a "further order" issued pursuant to this Court's broad
8  discretion to modify or dissolve preliminary injunctions in the
9  face of changed law or circumstance. See Mariscal-Sandoval v.
10  Ashcroft, 370 F.3d 851, 859 (9th Cir. 2004). Defendants must show,
11  then, some change in law or circumstance. They have not done so.
12  The only thing that has changed since entry of the preliminary
13  injunction is the venue of this action, which has shifted from
14  state to federal court. That change, however, is immaterial,
15  Carvalho, 629 F.3d at 887, and Defendants do not mention any other.

16  The thrust of Defendants' argument is that Plaintiff is
17  unlikely to succeed on the merits of her claim. See Winter v.
18  Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Leaving
19  aside the fact that the state court already ruled on this issue
20  when entering the preliminary injunction, Defendants' attacks on
21  the merits of Plaintiff's claim consist of arguments the Court
22  rejected in Section III.A supra. Indeed, the briefs filed by both
23  sides in connection with the motion to dissolve are obvious copies
24  of the briefs they filed in connection with the motion for judgment
25  on the pleadings. The Court finds Defendants' arguments unavailing
26  in this context, too.

27  By failing to identify any relevant change in law or
28  circumstance, Defendants fail to persuade the Court that it should

15

1  reconsider the state court's earlier entry of a preliminary
2  injunction, including the state court's decision to do so without
3  requiring a bond.  Accordingly, Defendants' motion to dissolve or,
4  in the alternative, to modify the preliminary injunction by
5  requiring a bond of $520,750.96, is DENIED WITHOUT PREJUDICE.  Any
6  further attempt to dissolve or modify the preliminary injunction
7  shall be consistent with the guidance provided in this Order.

9  **IV.   CONCLUSION**

10      For the foregoing reasons, the motion for judgment on the
11  pleadings or, in the alternative, summary judgment, brought by
12  Defendants NDEX West, LLC and Reverse Mortgage Solutions, Inc.
13  against Plaintiff Isabel Santos, is DENIED WITHOUT PREJUDICE.

14      Defendants' motion to dissolve or modify the preliminary
15  injunction originally entered on June 26, 2012 is DENIED WITHOUT
16  PREJUDICE.  The preliminary injunction remains undisturbed.
17  Defendants and their employees, agents, and persons acting with
18  them or on their behalf are enjoined and restrained from selling,
19  transferring any ownership interest in or further encumbering the
20  property located at 930 Santa Cruz Drive, Pleasant Hill,
21  California, 94523, APN: 127-012-019-7, pending the trial of this
22  action or further order of this Court.

24      IT IS SO ORDERED.

26      Dated: October 12, 2012

        UNITED STATES DISTRICT JUDGE

16